1

2

3   *E-Filed on:*   7/6/06

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12   HYNIX SEMICONDUCTOR INC., HYNIX           No. CV-00-20905 RMW
     SEMICONDUCTOR AMERICA INC.,
13   HYNIX SEMICONDUCTOR U.K. LTD., and        ORDER DENYING RAMBUS'S MOTION
     HYNIX SEMICONDUCTOR                        FOR JUDGMENT ON THE PLEADINGS ON
14   DEUTSCHLAND GmbH,                          HYNIX'S EQUITABLE ESTOPPEL
                                                DEFENSE
15                   Plaintiffs,
                                                **[Re  Docket Nos. 1729, 1802, 1854]**
16          v.

17   RAMBUS INC.,

18                   Defendant.

19

20          Defendant Rambus Inc. ("Rambus") moves for judgment on the pleadings on (1) the fifth and

21   sixth affirmative defenses in the Second Amended Reply to Defendant and Counterclaim Plaintiff

22   Rambus's Counterclaim ("SAR") filed by plaintiffs Hynix Semiconductor Inc., Hynix

23   Semiconductor America Inc., Hynix Semiconductor U.K. Ltd., and Hynix Semiconductor

24   Deutschland GmbH (collectively, "Hynix")[1] and (2) the third and fourth claims for relief in Hynix's

25   Second Amended Complaint ("SAC") to the extent those claims allege that Rambus is equitably

26

27          [1]      Hynix was formerly known as Hyundai Electronics Industries, Ltd.  References to
     Hynix in this order refers also to Hyundai Electronics Industries, Ltd.
28
     ORDER DENYING RAMBUS'S MOTION FOR JUDGMENT ON THE PLEADINGS ON HYNIX'S EQUITABLE ESTOPPEL
     DEFENSE
     C-00-20905 RMW
     SPT

1  estopped from enforcing its patents against Hynix.  Hynix opposes the motion.  The court has

2  reviewed the papers and considered the arguments of counsel.  For the reasons discussed below, the

3  court DENIES Rambus's motion.

## I.  BACKGROUND

5       Hynix alleges that Rambus began attending Joint Electron Device Engineering Council

6  ("JEDEC")[2] meetings no later than December 1991 and formally joined as a member in 1992.  SAC

7  ¶ 43.  Around the time that Rambus began attending meetings, JEDEC members were discussing

8  various technological features to be included in an industry standard for a synchronous dynamic

9  random access memory ("SDRAM") device, including an interface technology standard.  SAC ¶ 44.

10      Hynix contends that at all times Rambus was a JEDEC member, JEDEC had in place a patent

11 disclosure policy.  Hynix alleges this JEDEC policy gave rise to a duty to speak, and that Rambus

12 knew of that duty.  SAC ¶ 46.  In 1993, Rambus disclosed its U.S. Patent 5,243,703 ("the '703

13 Patent") to JEDEC members and participants.  *Id.*  Hynix alleges the disclosure of the '703 Patent

14 "affirmatively indicated to JEDEC participants that Rambus was disclosing all of its patents and

15 applications that could be pertinent."  SAC ¶ 51.  Hynix relied on Rambus's disclosure to JEDEC

16 and subsequently spent millions of dollars in product development, testing, and marketing of

17 SDRAM devices compatible "with what was thought to be technology that would be free of patent

18 suits."  SAC ¶ 60.  Hynix states that Rambus disclosed its '703 Patent but failed to disclose its other

19 patents or patent applications to JEDEC or its members and participants with the intention of

20 misleading JEDEC.  SAC ¶ 149.

21      In 1995 while Hynix was a leader in a consortium of memory manufacturers developing the

22 SyncLink dynamic random access memory ("SLDRAM") device Rambus notified Hynix that it

23 believed SLDRAM would violate Rambus's intellectual property rights.  SAR ¶ 149.

24      In December 1995 Hynix entered into a technology license agreement with Rambus for

25 Rambus's dynamic random access memory ("DRAM") technology.  The license agreement between

26 Hynix and Rambus included an "Other DRAM" clause which Hynix contends it negotiated in

27

28         [2]       JEDEC is now known as the JEDEC Solid State Technology Association.

1  response to Rambus's disclosure that SLDRAM would infringe Rambus intellectual property rights.

2  *Id.* ¶ 196.  Hynix avers that during negotiations of the license agreement Rambus wrote Hynix a

3  letter stating that an SDRAM that "incorporated any part of the Rambus Interface Technology"

4  would fall within the definition of the "Other DRAM" clause.  *Id.* ¶¶ 202-03.  Hynix alleges that this

5  letter implied Rambus did not believe any JEDEC-standard SDRAM or DDR SDRAM used any part

6  of the Rambus Interface Technology.  *Id.* ¶ 204.

7        At the time the technology license agreement was negotiated between Hynix and Rambus,

8  Hynix was making and selling SDRAMs that were compliant with JEDEC standards.  *Id.*  Hynix

9  contends that, at that time, it was also planning to make and sell double data rate synchronous

10  DRAM ("DDR SDRAM") devices following JEDEC standards.  *Id.*  Hynix alleges that throughout

11  this time Rambus was aware that Hynix was "active in the SDRAM market," yet never demanded a

12  royalty from Hynix under the "Other DRAM" clause for Hynix's manufacture and sale of SDRAM

13  products.  *Id.* ¶ 206.  Rather, Hynix proceeded with its SDRAM and DDR SDRAM development

14  and marketing unaware that its compliance with JEDEC standards would result in products that

15  incorporated the Rambus Interface Technology for which Hynix would owe royalties under its

16  technology license agreement with Rambus.  *Id.* ¶ 207.

17        Hynix alleges that from 1991 until the filing of Hynix's complaint against Rambus, Rambus

18  never affirmatively disclosed to JEDEC or to JEDEC members that Rambus believed the JEDEC

19  standards for SDRAM and DDR SDRAM infringed Rambus patents or patent applications.  SAC ¶

20  48.

21                              **II.  ANALYSIS**

22        Rambus has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the

23  grounds that Hynix's assertion of the defense of equitable estoppel is barred as a matter of law

24  because Hynix's pleadings fail to allege an essential element of equitable estoppel as it applies to

25  patent infringement.

26        **A.    Legal Standard**

27        Judgment on the pleadings is proper when "taking all the allegations in the pleadings as true

28

1   and construed in the light most favorable to the nonmoving party, the moving party is entitled to

2   judgment as a matter of law." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353,

3   360 (9th Cir. 2005).  Under a Rule 12(c) motion for judgment on the pleadings, the court must

4   assume the truthfulness of the material allegations in the complaint.  Moreover, all inferences

5   reasonably drawn from these facts must be construed in favor of the responding party. *Gen.*

6   *Conference Corp. of the Seventh-Day Adventist Congregational Church v. Seventh-Day Adventist*

7   *Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).  Thus, a Rule 12(c) judgment will be

8   granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law.

9   *Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999).

10           **B.       Equitable Estoppel**

11           Rambus argues that, as a matter of law, Hynix is barred from asserting the defense of

12   equitable estoppel because Hynix has failed to plead that it was aware that its SDRAM and DDR

13   SDRAM products infringed any of Rambus's patents until Rambus initiated its first infringement suit

14   against a DRAM manufacturer.  Hynix contends that equitable estoppel does not necessarily require

15   the alleged infringer to know of the patent.

16           Equitable estoppel is a defense against infringement claims.  35 U.S.C. § 282.  It "may serve

17   as an absolute bar to a patentee's claim of infringement." *A.C. Aukerman v. R.L. Chiades Constr.*

18   *Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992).  In *Aukerman*, the Federal Circuit sitting *en banc* set

19   forth the three underlying factual elements of equitable estoppel:

20           1.   The patentee, through misleading conduct, leads the alleged infringer to reasonably
                  infer that the patentee does not intend to enforce its patent against the alleged
21                infringer.  "Conduct" may include specific statements, action, inaction, or silence
                  where there is an obligation to speak;
22
             2.   The alleged infringer relies on that conduct; [and]
23
             3.   Due to its reliance, the alleged infringer will be materially prejudiced if the
24                patentee is allowed to proceed with its claim.

25   *Id.*

26

27

28

ORDER DENYING RAMBUS'S MOTION FOR JUDGMENT ON THE PLEADINGS ON HYNIX'S EQUITABLE ESTOPPEL
DEFENSE
C-00-20905 RMW
SPT                                                       4

1    Only the first element is at issue here.  In *Aukerman*, the Federal Circuit elaborated upon this

2    element:

3    > The first element of equitable estoppel concerns the statements or conduct of the
> patentee which must "communicate something in a misleading way."  The patentee's
4    > conduct must have supported an inference that the patentee did not intend to press an
> infringement claim against the alleged infringer.  It is clear, thus, that for equitable
5    > estoppel the alleged infringer cannot be unaware - as is possible under laches - of the
> patentee and/or its patent.

6    *Id.* at 1042.

7    More recently, in *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d

8    1571, 1581 (Fed. Cir. 1997), the Federal Circuit described "a typical equitable estoppel situation as

9    one in which (1) the infringer knows of the patent, (2) the patentee objects to the infringer's

10   activities, (3) but the patentee does not seek relief until much later, (4) thereby misleading the

11   infringer to believe the patentee will not act."  Similarly, in *Winbond Electronics Corporation v.*

12   *International Trade Commission*, 262 F.3d 1363, 1374 (Fed. Cir. 2001), the Federal Circuit

13   concluded "the alleged infringer must have knowledge of the patentee and its patent."[3]

14   Hynix argues in opposition that the *Aukerman* holding applies "to the most common

15   situation" of equitable estoppel but not to all.  Hynix's Opp. to Def.'s Mot. J. Pleadings ("Opp.") at 5.

16   As Hynix points out, *Aukerman* involved a situation where the patentee objected to the allegedly

17   infringing activities and then did not follow up for years.  *See Aukerman*, 960 F.2d 1042.  Hynix also

18   distinguishes *Winbond* because in that case the infringer was unaware of *both* the patent and the

19   allegedly misleading conduct.  Opp. at 8.

20   Hynix's argument is persuasive.  Notably, *Aukerman* did not include an alleged infringer's

21

22

23   ──────────────

24        [3]     *Winbond* involved an implied license by equitable estoppel rather than equitable
     estoppel.  "The primary difference between the estoppel analysis in implied license cases and the
25   analysis in equitable estoppel cases is that implied license looks for an affirmative grant of consent
     or permission to make, use, or sell[,] i.e., a license."  *Wang Labs.*, 103 F.3d at 1581 (citations
26   omitted).  By comparison, "[e]quitable estoppel . . . focuses on 'misleading' conduct suggesting that
     the patentee will not enforce patent rights."  *Id.*  However, the Federal Circuit said in both *Winbond*
27   and *Wang* that the alleged infringer must have knowledge of the patent.  *See Wang Labs.*, 103 F.3d
     at 1581; *Winbond*, 262 F.3d at 1374.

28
     ORDER DENYING RAMBUS'S MOTION FOR JUDGMENT ON THE PLEADINGS ON HYNIX'S EQUITABLE ESTOPPEL
     DEFENSE
     C-00-20905 RMW
     SPT                                                5

1    knowledge or awareness of the patentee and patent as one of the three underlying factual elements

2    for equitable estoppel.  *See Aukerman*, 960 F.2d at 1042.  The Federal Circuit explained:

3         equitable estoppel is not limited to a particular factual situation nor subject to
          hard and fast rules.  At most, courts have provided general guidelines based on
4         fact patterns which have been litigated, albeit attempting to provide a unifying
          set of principles.

5    *Id.* at 1041.

6         Equitable estoppel is an equitable remedy.  It focuses on the patentee's conduct and operates

7    to bar the patentee's claims.  *See, e.g., id.* (accused infringer could reasonably infer from patentee's

8    conduct that patentee had abandoned its claims).  The purpose behind equitable estoppel is to protect

9    a party from a claim of infringement by a patentee who had earlier communicated to that party that it

10   would not disturb the party in the activities in which it was then engaged.  *Winbond*, 262 F.3d at

11   1074.  An absolute requirement that an infringer have knowledge of the patent and patentee

12   regardless of the underlying factual situation would in some cases defeat the purpose of the

13   protection provided by equitable estoppel.  For example, a patentee who misleadingly suggests it has

14   no patent which covers a party's current activities should not be treated any differently than a

15   patentee who misleadingly suggests that it will not enforce a patent against a party's activities.

16   *Aukerman* makes clear that to establish the requisite misleading conduct for equitable estoppel the

17   "patentee's conduct must have supported an inference that the patentee did not intend to press an

18   infringement claim against the alleged infringer."[4]  *Id.* at 1042.

19        Moreover, the Federal Circuit recognized that silence where there is an obligation to speak is

20   a form of misleading conduct for purposes of the first element of estoppel.[5]  *Id.* at 1028, 1041.

21   Notably, neither *Aukerman* nor *Winbond* involved estoppel premised on misleading conduct in the

22   form of "silence where there is an obligation to speak."  *Id.* at 1043-44; *Winbond*, 262 F.3d at 1374-

23

24   _____

25        [4]    It was as to this showing that the court distinguished that the alleged infringer must
26   be aware of the patentee and/or its patent in order to raise equitable estoppel as compared to an
     assertion of laches.  *Aukerman*, 960 F.2d at 1042.

27        [5]    Further, the misleading conduct of the first element of equitable estoppel can consist
     of inaction.  *Aukerman*, 960 F.2d at 1028, 1041.
28

ORDER DENYING RAMBUS'S MOTION FOR JUDGMENT ON THE PLEADINGS ON HYNIX'S EQUITABLE ESTOPPEL
DEFENSE
C-00-20905 RMW
SPT                                                          6

75.  In *Scholle Corp. v. Blackhawk Molding Co., Inc.*, 133 F.3d 1469, 1472 (Fed. Cir. 1998), the alleged infringer and patentee were in litigation regarding the patentee's "WATERSAFETM" cap. Thereafter, the alleged infringer informed the patentee that it would market the "SAFEGARDTM" cap unless the patentee claimed that it considered the SAFEGARDTM cap to infringe its patent.  *Id.* The patentee was aware of the alleged infringer's intention to use the new SAFECARDTM cap.  *Id.* The Federal Circuit found this chain of events "entirely relevant to the equitable estoppel defense." The court stated:

> [f]or [the alleged infringer] to derive an inference that it would not be sued for infringement was wholly reasonable given that [the patentee's] silence occurred in the face of [the alleged infringer's] openly touting the SAFEGARDTM cap as the design-around successor to the previously-accused WATERSAFETM cap. This inference was only reinforced by the course of dealings between the parties.

*Id.*  In particular, the court noted that despite the numerous discussions between the patentee and alleged infringer concerning the WATERSAFETM cap in litigation, the patentee never suggested it had an intent to enforce its patent against the alleged infringer for the SAFEGARDTM cap.  *Id.*  The court found this "cooperative behavior" in light of the patentee's other threats to sue created a reasonable inference that the SAFEGARDTM cap was not infringing or that the patentee did not intend to sue.  *Id.  Scholle's* emphasis on the particular factual situation and the allegedly misleading conduct between the parties supports Hynix's contention that *Aukerman* and *Winbond* are distinguishable.

Moreover, Hynix's allegations are more analogous to the factual situation of *Scholle*.  Hynix alleges a misleading course of conduct that included silence in face of a duty to speak.  Specifically, Hynix alleges that (1) the JEDEC policy gave rise to a duty to speak, and that Rambus knew of that duty, (2) Rambus disclosed its '703 Patent to JEDEC members and participants, and (3) the disclosure of the '703 Patent "affirmatively indicated to JEDEC participants that Rambus was disclosing all of its patents and applications that could be pertinent."  SAC ¶¶ 46, 51.  Hynix contends Rambus was silent in face of a duty to speak in connection with the negotiation and signing of a technology license agreement for Rambus DRAM technology.  Hynix alleges that (1) the license agreement between Hynix and Rambus included an "Other DRAM" clause because Rambus

1   disclosed that Hynix's proposed manufacture of the SLDRAM device would infringe Rambus

2   intellectual property rights, (2) during negotiations of the license agreement Rambus wrote Hynix a

3   letter that the "Other DRAM" clause would cover SDRAM devices that used Rambus Interface

4   Technology, and (3)  throughout negotiations and after the license agreement was entered into

5   Rambus was aware that Hynix was "active in the SDRAM market," yet never demanded a royalty

6   under the "Other DRAM" clause for Hynix's manufacture and sale of SDRAM products.  SAR ¶¶

7   196, 202-04, 206.

8          Viewing *Aukerman* together with the Federal Circuit's ensuing cases addressing equitable

9   estoppel, the court does not find that the knowledge of the patent and patentee is always a necessary

10  requirement to the defense of equitable estoppel where the patentee's course of conduct with the

11  alleged infringer otherwise supports an inference that the patentee did not intend to press an

12  infringement claim against the alleged infringer.  The court finds that Rambus has not established

13  that if all reasonable inferences are drawn in favor of Hynix, the defense of equitable estoppel

14  defense has no merit as a matter of law.

15         **C.     Preemption of Hynix's § 17200 Claim**

16         The court does not find that Hynix's § 17200 claim is preempted.  The § 17200 claim

17  involves more elements than just those needed to establish equitable estoppel.

18                               **III.  ORDER**

19         For the foregoing reasons, the court DENIES defendant's motion for judgment on the

20  pleadings as to plaintiffs' fifth and sixth affirmative defenses in the Second Amended Reply to

21  Defendant and Counterclaim Plaintiff Rambus's Counterclaim and as to plaintiffs' third and fourth

22  claims for relief in the Second Amended Complaint.

23

24  DATED:      7/6/2006                          _____
                                                  *Ronald M Whyte*

25                                                RONALD M. WHYTE
                                                  United States District Judge

26

27

28

ORDER DENYING RAMBUS'S MOTION FOR JUDGMENT ON THE PLEADINGS ON HYNIX'S EQUITABLE ESTOPPEL
DEFENSE
C-00-20905 RMW
SPT                                                8

1  **THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WAS PROVIDED TO:**

2  **Counsel for plaintiff:**
Daniel J. Furniss
3  Theodore G. Brown, III
Jordan Trent Jones
4  Townsend & Townsend & Crew LLP
379 Lytton Ave
5  Palo Alto, CA 94301

6  Patrick Lynch
Kenneth R. O'Rourke
7  O'Melveny & Myers
400 So Hope St Ste 1060
8  Los Angeles, CA 90071-2899

9  Kenneth L. Nissly
Susan van Keulen
10  Geoffrey H. Yost
Thelen Reid & Priest LLP
11  225 West Santa Clara Street, 12th Floor
San Jose, CA 95113-1723

12
**Counsel for defendant:**
13  Gregory Stone
Kelly M. Klaus
14  Catherine Augustson
Munger Tolles & Olson
15  355 So Grand Ave Ste 3500
Los Angeles, CA 90071-1560

16
Peter A. Detre
17  Carolyn Hoecker Luedtke
Munger Tolles & Olson
18  560 Mission Street, 27th Floor
San Francisco, CA 94105-2907

19
Peter I Ostroff
20  Rollin A. Ransom
Michelle B. Goodman
21  V. Bryan Medlock, Jr.
Sidley Austin Brown & Wood
22  555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010

23
Jeannine Yoo Sano
24  Pierre J. Hubert
Dewey Ballantine
25  1950 University Avenue, Suite 500
East Palo Alto, CA 94303

26
**Date:    7/6/2006                          SPT**
27                                            **Chambers of Judge Whyte**

28
ORDER DENYING RAMBUS'S MOTION FOR JUDGMENT ON THE PLEADINGS ON HYNIX'S EQUITABLE ESTOPPEL DEFENSE
C-00-20905 RMW
SPT                                             9