*E-Filed on*:   7/17/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH,<br><br>        Plaintiffs,<br><br>        v.<br><br>RAMBUS INC.,<br><br>        Defendant. | No. CV-00-20905 RMW<br><br>ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN ISSUES RELATED TO DUTY<br><br>**Re Docket Nos. 1721, 1804, 1856, 1901, 1902** |

      Defendant Rambus Inc. ("Rambus") moves for summary judgment on the breach of contract and fraud claims for relief[1] in the Second Amended Complaint ("SAC") filed by plaintiffs Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd., and

---

    [1]    Hynix's fifth, sixth and seventh claims for relief allege breach of contract, breach of contract by third party beneficiary, and breach of contract by promissory estoppel, respectively, and Hynix's eighth and ninth claims for relief allege actual fraud and constructive fraud, respectively.

1   Hynix Semiconductor Deutschland GmbH ("Hynix").[2]  Rambus's motion also seeks summary

2   adjudication of certain issues related to duty.  Hynix opposes the motion.  The court has reviewed

3   the papers and considered the arguments of counsel.

4        For the reasons discussed below, the court GRANTS Rambus's motion for summary

5   judgment on Hynix's fifth, sixth, seventh and ninth claims for relief and DENIES Rambus's motion

6   for summary judgment on Hynix's eighth claim for relief.  The court also SUMMARILY

7   ADJUDICATES that: (1) the JEDEC duty to disclose did not extend to the beliefs, hopes, or

8   intentions to file or amend patent applications; (2) the JEDEC duty to disclose did not continue after

9   a member left JEDEC, except for specific disclosures that arose before the member left; and (3)

10  breach of any JEDEC disclosure duty, without more, does not give rise to antitrust liability.  The

11  court DENIES SUMMARY ADJUDICATION that (1) any disclosure of patent applications under

12  the JEDEC disclosure policy was voluntary, not mandatory; (2) the JEDEC duty to disclose extends

13  only to patents necessary to practice the contemplated standard, and (3) Rambus's alleged breach of

14  the JEDEC disclosure duty did not cause the injuries Hynix has alleged.

## I.  BACKGROUND

### A.    Rambus Interface Technology

17       In 1990 Rambus applied for a patent with the United States Patent and Trademark Office

18  ("PTO") for a particular type of dynamic random access memory ("DRAM") device that is known as

19  the Rambus DRAM or RDRAM.  Data is transferred between DRAM devices and components such

20  as the central processing unit (or microprocessor) and controller when data is written to or read from

21  the DRAM device.  The RDRAM is a DRAM that is designed with modified architecture and

22  circuitry to enable significantly increased memory bandwidth.  The RDRAM design includes a

23  narrow, multiplexed bus architecture using a packetized communications protocol.  Vega Decl.

24  Supp. Pls.'s Opp. Def.'s Mot. Summ. J. ("Vega Decl."), Ex. 18 at R 111315.  Rambus refers to this

25  modified architecture as the Rambus Interface Technology.  Rambus licenses the Rambus Interface

---

26

27       [2]      Hynix was formerly known as Hyundai Electronics Industries, Ltd.  References to
     Hynix in this order refers also to Hyundai Electronics Industries, Ltd.

28  ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
    CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
    ISSUES RELATING TO DUTY
    C-00-20905 RMW
    SPT                                                                  2

Technology to companies that manufacture DRAMs and other integrated circuits for end users, typically in exchange for royalty payments.[3]

**B.      Joint Electron Device Engineering Council**

In December 1991 Rambus applied for membership in the Joint Electron Device Engineering Council ("JEDEC").[4]  Vega Decl., Ex. 26.  JEDEC is an organization that develops and sets industry standards, including for the design and manufacture of DRAM devices.  Members of JEDEC include representatives of technology companies who develop, manufacture or use DRAM devices.  JEDEC committee members discuss and consider technology proposed to be standardized and also provide input on the extent of their interest in proposed technology or improvements.  The JEDEC committee votes on whether to send a ballot to the JEDEC Council, which determines whether to standardize the technology set forth in the ballot.

JEDEC is part of the Electronic Industries Association ("EIA").  Accordingly, JEDEC's policies are set forth in EIA guidelines and its own manuals.  The EIA Style Manual EP-7-A guards against adopting standards that are covered by patented technology:

> [n]o program standardization shall refer to a patented item or process unless all of the technical information covered by the patent is known to the formulating committee or working group, and the committee chairman has received a written expression from the patent holder that one of the following conditions prevail:
>
> (1) a license shall be made available without charge to applicants desiring to utilize the patent for the purpose of implementing the standard, or
>
> (2) a license shall be made available to applicants under reasonable terms and conditions that are demonstrably free of unfair discrimination.

Vega Decl., Ex. E at R 155981.  JEDEC's manual provides that when patented technology is included in a standard, the JEDEC committee must know the relevant technical information covered by the patent, and the patent holder must have agreed to license the technology on reasonable and non-discriminatory ("RAND") terms.  Vega Decl., Ex. I at R 173476.  Further, the committee

---

[3]      Rambus began licensing the RDRAM technology even before the patents for the RDRAM were issued.  Vega Decl., Ex. 19 at R 46400-04, R46422; Ex. 20 at R 169939; Ex. 21; Ex. 22 at R 2970373; Ex. 23.

[4]      JEDEC is now known as the JEDEC Solid State Technology Association.

ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT                                                                    3

1    chairman should "call attention to the obligation of all participants to inform the meeting of any

2    knowledge they may have of any patents, or pending patents, that might be involved in the work

3    they are undertaking." *Id.*

4          In January 1993 the JEDEC Council added a footnote to its manual that stated the term

5    "patent" as used in its manual includes patent applications.  Vega Decl., Ex. I at R173476.  The

6    JEDEC committee chairman for the single data rate synchronous DRAM ("SDRAM") and double

7    data rate synchronous DRAM ("DDR SDRAM") devices kept a list of patents and patent

8    applications disclosed to JEDEC as possibly bearing on the standards JEDEC was undertaking.

9    Richard Crisp July 20, 2001 Dep. ("Crisp 7/20/01 Dep.") at 434:3.[5]  If standards to be adopted

10   contained patented technology, the JEDEC committee was responsible for determining that patent

11   holders had agreed to RAND licensing terms if patented technology was to be included in JEDEC

12   standards.  Vega Decl., Ex. I at R 173476.  As applicable here, JEDEC adopted standards for the

13   SDRAM device and DDR SDRAM device.  While it was a JEDEC member, Rambus was a member

14   of the JEDEC committee that discussed proposed standards for the SDRAM and DDR SDRAM

15   devices.

16          **C.      Rambus's Relationship with JEDEC**

17          As a JEDEC member, Rambus regularly attended committee meetings, including where

18   JEDEC's policies regarding standardizing patented technology were discussed.  Crisp 7/20/01 Dep.

19   at 434:3-9.  At the September 1993 meeting, the members discussed JEDEC's reaction to Texas

20   Instrument's failure to disclose a patent for quad CAS devices that read on a standard adopted by

21   JEDEC.  Vega Decl., Ex. 38.  It appears JEDEC decided to remove the patented devices from its

22   standard.  *Id.*  In that September 1993 JEDEC meeting, Rambus disclosed its U.S. Patent 5,243,703

23   ("the '703 Patent") which Hynix alleges only tangentially related to the SDRAM standards being

24   developed at the time.  Richard Crisp Apr. 23, 2001 Dep. ("Crisp 4/23/01 Dep.") at 177:25-183:19.

25   Rambus's disclosure did not include any of its pending or planned patent applications or

26   ───────────────

27          [5]      Richard Crisp was an employee of Rambus and served as Rambus's representative at
     JEDEC.

28   ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
     CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
     ISSUES RELATING TO DUTY
     C-00-20905 RMW
     SPT                                                    4

1  amendments that would cover SDRAM features.[6]  The parties do not appear to dispute that during

2  Rambus's membership with JEDEC and after its membership ended, Rambus had pending and

3  planned patent applications that would cover SDRAM and DDR SDRAM technology as

4  standardized by JEDEC.  However, Hynix contends Rambus made changes to its patent applications

5  specifically to claim technology in, or proposed to be added to, the JEDEC SDRAM standards.

6  Crisp 7/20/01 Dep. at 483:15-494:17; 626:3-627:18; Vega Decl., Ex. 37.  JEDEC adopted standards

7  for the SDRAM device around mid-1993 while Rambus was still a member.  Vega Decl., Ex. 32.

8      In October 1995 JEDEC proposed the use of a delayed locked loop ("DLL") or phased

9  locked loop ("PLL") on the chip itself and the use of both edges of the clock as standard SDRAM

10  features.[7]  Vega Decl., Ex. M.  At this time Rambus did not make any disclosures to JEDEC with

11  respect to its patent applications for, or plans to obtain coverage of, SDRAM that utilized DLL, PLL

12  or both edges of the clock.  Vega Decl., Ex. M.  It is undisputed that Rambus was not a party to any

13  RAND licensing agreement with JEDEC with respect to either SDRAM or DDR SDRAM.

14      In June 1996 Rambus formally withdrew as a member of JEDEC.[8]  Vega Decl., Ex. 26 at

15  cx0602-08.  Some time after Rambus's withdrawal, JEDEC adopted standards for the DDR SDRAM

16  device.  The standards adopted for the DDR SDRAM device included the DLL or PLL feature as

17  well as the use of both edges of the clock.

18      Around late 1999 or early 2000 Rambus began notifying manufacturers of DRAM devices

19  using the JEDEC SDRAM and DDR SDRAM standards and end users of such DRAM devices that

20  the manufacture, sale, offer for sale, and use of the DRAM devices infringed Rambus patents.

21  _____

22      [6]    The parties do not dispute that JEDEC had not yet started discussions or development
of any standards for the DDR SDRAM technology at this September 1993 meeting.

23

24      [7]    "Clock" refers to the periodic electronic signals used to coordinate the actions of
circuits.  "Use of both edges of the clock" refers to a design whereby data is transferred on both the
rise (high state) and fall (low state) of the clock to achieve greater bandwidth.  DLL and PLL refer to

25  a circuit design feature that synchronizes the clock signals of the various circuits, allowing increased
performance speeds.  These features were later made part of the DDR standard.

26

27      [8]    Rambus may have withdrawn from JEDEC earlier in 1996, but its formal letter of
withdrawal was dated June 1996.

28  ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT                                                                       5

1      **D.     Rambus's Relationship with Hynix**

2         Hynix manufactures memory devices, including JEDEC-compliant DRAMs such as the

3  SDRAM and the DDR SDRAM.  Though unclear, it appears Hynix was also a member or

4  participant in the same JEDEC committee as Rambus while Rambus was a member.  Beginning in

5  mid-1994, Rambus and Hynix were actively discussing a license by Hynix of Rambus Interface

6  Technology.  Vega Decl., Ex. 22.  On August 31, 1994 Richard Crisp ("Crisp"), a Rambus employee

7  and Rambus's representative at JEDEC at that time, and Bob Proebsting ("Proebsting") of Hynix met

8  to discuss a potential license agreement.  *Id.*  At this meeting, Proebsting informed Crisp of Hynix's

9  intent to manufacture the SDRAM device with a PLL feature.  *Id.*  Proebsting told Crisp of Hynix's

10  belief that the production of RDRAMs would involve paying royalties to Rambus while the

11  production of SDRAMs would not involve a royalty payment to Rambus.  *Id.*  It does not appear

12  Crisp made any response to these statements by Proebsting.  *Id.*  When Proebsting asked Crisp

13  whether Rambus had a patent on such a device, Crisp stated that he could not comment.  *Id.*

14         In April 1995 Rambus and Hynix continued discussions about a potential license agreement.

15  Hynix indicated an interest in producing a SyncLink DRAM device ("SLDRAM").[9]  In response,

16  Rambus noted that the SLDRAM worked in a similar manner to the RDRAM.  Crisp wrote to

17  Hynix:  "since Rambus has filed and had issued a number of very fundamental patents, it seems

18  unlikely a device such as [SLDRAM] could avoid infringing one or more Rambus patents."  Vega

19  Decl., Ex. L at HR 905_176335.  In the course of these contract discussions Rambus never

20  mentioned that the SDRAM might infringe Rambus's intellectual property, including issued or

21  pending patents.

22         In May 1995 JEDEC members discussed the SLDRAM technology and several JEDEC

23  members inquired of Crisp whether such technology infringed Rambus's intellectual property rights.

24  Vega Decl., Ex. 42 at R 69583.  In August 1995 Rambus made disclosures to an IEEE SyncLink

25

26        [9]     In particular, the SyncLink device was designed with a "narrow multiplexed bus
interface with a packetized communications protocol."  Rambus refers to this type of DRAM device
27  as the RamLink.

28  ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT                 6

committee that it believed the SLDRAM was bound to infringe Rambus's intellectual property in the long run.  Vega Decl., Ex. 45 at R 168893.

In December 1995 Rambus and Hynix entered into a technology license agreement ("License Agreement").  Under the License Agreement, Rambus granted Hynix a "worldwide, nonexclusive, nontransferable license, under the Rambus Intellectual Property Rights, to design, make, have made . . . use, import, offer to Sell, and Sell Rambus ICs, Rambus Modules, Rambus Boards, and Rambus Systems" in exchange for royalties.  Vega Decl., Ex. 49 at HR905_000007.  The License Agreement defines the following terms applicable to the license grant:

> "Rambus ICs" means Rambus Memories, Other DRAMs and, only to the extent the option therefor is exercised by [Hynix] . . . Rambus Processors, Rambus Peripherals, and/or Rambus ASICs.

> ***

> "Rambus Memory" means each dynamic random access memory ("DRAM") integrated circuit with a principal function of memory storage which (i) incorporates all or part of the Rambus Interface Technology, (ii) is defined and designed by [Hynix] [or by Rambus for [Hynix]], (iii) is Compatible with the Rambus Interface Specification.

> ***

> "Other DRAM" means each DRAM which incorporates part of the Rambus Interface Technology but is not Compatible with the Rambus Interface Specification.

> ***

> "Rambus Interface Technology" means the following items which are owned by Rambus . . . (a) the bus interface technology described in Exhibit A hereto; and (b) all information, inventions, technology, technical documentation, designs (including circuit designs), materials, know-how which describe use of such bus interface technology and which Rambus provides [Hynix] during the course of implementing this Agreement.

> ***

> "Rambus Interface Specification" means, any time, the then most current version of the interface specification for the Rambus Interface Technology, as such interface specification is finalized and released by Rambus.

ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT

1    Vega Decl., Ex. 49 at HR905_000002-04. The License Agreement specifies separate royalty rates

2    for the Rambus Memories and the "Other DRAMs." *Id*. at HR905_000012. The parties dispute the

3    extent of the scope of the License Agreement.[10]

4                                   **II.   ANALYSIS**

5        **A.    Legal Standard**

6        Summary judgment is granted if there is no genuine issue as to any material fact. FED. R.

7    CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a motion for summary

8    judgment, the court draws all reasonable inferences that may be taken from the underlying facts in

9    the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

10   475 U.S. 574, 587 (1986). In *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, the

11   Ninth Circuit elaborated:

12          In order to carry its burden of production, the moving party must either produce
            evidence negating an essential element of the nonmoving party's claim or defense
13          or show that the nonmoving party does not have enough evidence of an essential
            element to carry its ultimate burden of persuasion at trial. In order to carry its
14          ultimate burden of persuasion on the motion, the moving party must persuade the
            court that there is no genuine issue of material fact.
15
16          If a moving party fails to carry its initial burden of production, the nonmoving
            party has no obligation to produce anything, even if the nonmoving party would
            have the ultimate burden of persuasion at trial. In such a case, the nonmoving
17          party may defeat the motion for summary judgment without producing anything.
            If, however, a moving party carries its burden of production, the nonmoving
18          party must produce evidence to support its claim or defense. If the nonmoving
            party fails to produce enough evidence to create a genuine issue of material fact,
19          the moving party wins the motion for summary judgment.

20   210 F.3d 1099, 1102-03 (9th Cir. 2000) (citations omitted).

21       **B.    Breach of Contract Claims**

22       Hynix's Fifth Claim for Relief alleges that:

23          [a]s a result of its membership in JEDEC, Rambus agreed, both explicitly and
            implicitly, that it would abide by the rules governing JEDEC members. The
24          body of JEDEC rules governing members constitutes a written contract between

25   ─────────────────

26          [10]      Hynix asserts, and Rambus does not appear to dispute, that the "Other DRAM"
     provision was intended to cover the SLDRAM and also applies to SDRAM. Hynix's Opp. Def.'s
27   Mot. Summ. J. at 14.

28

all JEDEC members individually. These rules, among other things require JEDEC members, including Rambus, to disclose to other JEDEC members, including Hynix, any patents or patent applications that may bear upon standards being considered by JEDEC committees.

SAC ¶ 127.

Hynix's sixth claim for relief is entitled "Breach of Contract by Third Party Beneficiary" and contends that Hynix was a third party beneficiary of Rambus's alleged contract with JEDEC and other JEDEC members. The fifth and sixth claims essentially make the same contention, specifically that "if Rambus is allowed to assert its patents in breach of its agreement with Hynix and other JEDEC members and is successful, Hynix will be damaged in the amount sought by Rambus as license fees . . . ." SAC at ¶ 36.

Rambus contends that its membership in JEDEC does not give rise to any contractual claim or duty.

In order for a contact to be formed, the contract terms must be clear enough that the parties can understand what each is required to do. *See* Cal. Jury Instructions Civil ("CACI") No. 302; Rest. 2d Contracts § 33(1). The question of whether a contract is sufficiently definite is a question of law for the court. *Ladas v. Cal. State Automobile Assn.*, 19 Cal. App. 4th 761, 770 n.2 (1993) (An amorphous promise cannot rise to the level of a contractual duty.).

In *Rambus Inc. v. Infineon Technologies A.G.*, 318 F.3d 1081 (Fed. Cir. 2003), the Federal Circuit reviewed the language of the same EIA/JEDEC policies at issue in the present suit. The Federal Circuit found that:

> [t]he language of these policy statements actually does not impose any direct duty on members, no language – in the membership application or manual excerpts – expressly require members to disclose information, and no indication that members ever legally agreed to disclose information.

*Id.* at 1098. The court further commented on the policy language in connection with whether it raised a disclosure duty that could serve as a basis for a fraud verdict if there were a failure to disclose:

> In this case there is a staggering lack of defining details in the EIA/JEDEC patent policy. When direct competitors participate in an open standards committee, their work necessitates a written patent policy with clear guidance on the committee's intellectual property position. A policy that does not define clearly what, when,

how, and to whom the members must disclose does not provide a firm basis for
the disclosure duty necessary for a fraud verdict.

*Id.* at 1102.  The alleged agreement between JEDEC and Rambus or JEDEC members and Rambus
was not definite enough to make clear to Rambus what disclosures it was required to make, if any.

Another essential element of any contract is the consent of the parties, or mutual assent.
CAL. CIV. CODE § 1550; *Donovan v. RRL Corp.,* 26 Cal. 4th 261, 270 (2001).  "A contract must be
so interpreted as to give effect to the mutual intention of the parties as it existed at the time of
contracting, so far as the same is ascertainable and lawful."  CAL. CIV. CODE § 1636.  Here, "the
staggering lack of details" in the EIA/JEDEC patent disclosure policies precludes a finding of any
mutual assent when Rambus became a member of JEDEC.

Rambus's membership in JEDEC did not, as a matter of law, create a contract between
JEDEC and Rambus or JEDEC members and Rambus.

Hynix's seventh claim for relief is described as "Breach of Contract – Promissory Estoppel."
Hynix claims that "[a]s a result of its membership in JEDEC, Rambus agreed, both explicitly and
implicitly that it would abide by the rules governing JEDEC members . . . . [including] to disclose to
other JEDEC members any patents or patent applications that may bear upon standards being
considered by JEDEC committees."  SAC at ¶ 138.  "The elements of a promissory estoppel claim
are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise
is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the
estoppel must be injured by his reliance."  *U.S. Ecology, Inc.  v. State*, 129 Cal. App. 4th 887, 901
(2005) (internal quotations omitted).  The essential difference between a promissory estoppel claim
and one for breach of contract is that, in promissory estoppel, equitable principles are substituted for
consideration.  *Id.* at 901-02.  In the instant case, since there was no clear and unambiguous promise
by Rambus that it would abide by the JEDEC rules, Hynix does not have a viable promissory
estoppel claim based upon Rambus's membership in JEDEC.

## C.    Fraud

Hynix asserts "Actual Fraud" by Rambus in its eighth claim for relief.  Under California law,

ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT

the elements of fraud are: (1) representation, (2) falsity, (3) knowledge of falsity, (4) intent to

deceive, and (5) reliance and resulting damage. *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App.

4th 282, 291 (2004) (citing 5 *Witkin Cal. Procedure, Pleading* § 668, p. 123 (4th ed. 1997)).

Fraudulent deceit occurs where one "willfully deceives another with intent to induce him to alter his

position to his injury or risk" and therefore "is liable for any damage which he thereby suffers."

CAL. CIV. CODE § 1709.  A deceit, within the meaning of Cal. Civ. Code § 1709 is, in relevant part,

(1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true and

(2) the suppression of a fact, by one who is bound to disclose it, or who gives information of other

facts which are likely to mislead for want of communication of that fact. CAL. CIV. CODE § 1710.

      The fraud or deceit alleged by Hynix is predicated on more than just Rambus's membership

in JEDEC.  Hynix claims that Rambus had a duty to disclose its patent applications and intentions

related to obtaining coverage of SDRAM and DDR SDRAM based upon a number of factors.

Specifically, Hynix asserts:

> that Rambus had a duty to disclose based on (a) the JEDEC patent policy, (b) the "partner" relationship between Rambus and Hynix, (c) Crisp's repeated admissions at the time and during litigation that Rambus had an "obligation" to disclose and should disclose its position the SDRAM and DDR SDRAM infringed, and (d) Rambus's repeated misleading "half-truths" which required full disclosure to avoid deceiving Hynix (e.g. Rambus told JEDEC and Hynix independently that SyncLink infringed Rambus patent rights while saying nothing about SDRAM or DDR SDRAM even though Rambus also believed that those products infringed, Rambus's failure to seek royalties under the "Other DRAM" provision of Hynix's license for SDRAM and DDR SDRAM even though it was Rambus's secret claim that those products used Rambus Technology, and Rambus's disclosure of the '703 patent while failing to disclose the intellectual property that it believed SDRAM and DDR SDRAM would actually infringe, etc.).

Hynix Opp. Def.'s Mot. Summ. J at 18-19.

> There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

1   *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997) (internal citations omitted).  Exception (1) is

2   not applicable because Rambus was not in a fiduciary relationship with Hynix.  *See infra*.  However,

3   factual questions are raised with respect to the other three circumstances.

4         In addition to looking at the policy language in *Infineon*, the Federal Circuit looked at the

5   conduct and beliefs of JEDEC members and observed:

6         [n]evertheless, because JEDEC members treat the language of [the EIA policy]
      as imposing a disclosure duty, this court likewise treats this language as
7         imposing a disclosure duty.

8   *Infineon*, 318 F.3d at 1098.  The court then reviewed the jury's findings regarding the extent of this

9   duty, and at what stage of the JEDEC process the duty arose and concluded:[11]

10        Infineon provides no evidence that the policy required (or that JEDEC members
      understood the policy to require) disclosure of patents and applications not
11        necessary to practice the standard.  On this record, a reasonable jury could find
      only that the duty to disclose a patent or application arises when a license under
12        its claims reasonably might be required to practice the standard.

13  *Id.* at 1100.

14        The JEDEC policy itself does not state when a committee member's duty arises.

15  *Id.* at 1100-02.  The Federal Circuit found that the *Infineon* record "at most indicates that the

16  disclosure duty arises when proposals are aimed at a particular standard" and that the *Infineon* record

17  "does not show that JEDEC applied the disclosure duty to a member's plans or intentions."  *Id.* at

18  1103.  Turning to the issue of breach, the Federal Circuit then found that Infineon did not establish,

19  by the clear and convincing standard applicable under Virginia law, that the claims of the four

20  patents at issue in that case read on the SDRAM standard.[12]  *Id.*  In addition, because formal

21  proposals related to the DDR SDRAM standards did not occur until after Rambus withdrew as a

22  member, Rambus owed no disclosure duty for claims alleged to read on the DDR SDRAM

23  standards.  *Id.* at 1105.

---

25      [11]    Virginia law was applicable in the *Infineon* case.  Under Virginia law, whether there
26  is a duty is a question of fact.

    [12]    The Rambus patents at issue in the *Infineon* suit were U.S. Patent Nos. 5,954,804;
27  5,953,263; 6,034,918; and 6,032,214.

28

1    Based upon *Infineon* and the record in this case, Hynix may be able to prove facts showing at

2    least a duty to disclose pending amendments that would directly read on the proposed SDRAM

3    standard.

4    A duty to disclose also may arise out of the license negotiations between Rambus and Hynix.

5    Starting in mid-1994, Rambus and Hynix were in preliminary discussions to enter into a technology

6    license agreement.  Vega Decl., Ex. 22.  The record indicates Hynix's representative, Proebsting,

7    made affirmative statements to Rambus's JEDEC representative, Crisp, of Hynix's beliefs that its

8    manufacture of SDRAMs, including possibly with a PLL, would not require it to pay royalties to

9    Rambus.  *Id.*  Proebsting and Crisp also discussed whether SDLRAM might give rise to royalty

10   payments to Rambus.  While Crisp and Rambus responded to Hynix that it is likely that the

11   SLDRAM device would infringe Rambus's patents, they remained silent as to SDRAM and DDR

12   SDRAM.  Vega Decl., Ex. L at HR_905-176335, Ex. 45 at R 16889.  Notably, Rambus does not

13   dispute that it was at least aware Hynix manufactured or intended to manufacture SDRAM and

14   SLDRAM including features that might infringe Rambus patents.

15   The court thus cannot conclude that Rambus did not have a duty to disclose its patents or

16   patent applications based upon Rambus's business and licensing relationship with Hynix.

17   Even where no duty to disclose would otherwise exist, "where one does speak he must speak

18   the whole truth to the end that he does not conceal any facts which materially qualify those stated.

19   One who is asked for or volunteers information must be truthful, and the telling of a half-truth

20   calculated to deceive is fraud."[13]  *Vega*, 121 Cal. App. 4th at 295 (citation omitted).  "Active

21   concealment or suppression of facts by a nonfiduciary is the equivalent of a false representation, i.e.,

22   actual fraud."  *Id.*

23   In *Vega*, the plaintiff alleged that defendant included in its disclosure schedules the pertinent

24   terms of a pending $10 million private stock transaction, but omitted disclosure of the transaction's

25

---

26   [13]    This is distinguished from allegations of negligent misrepresentation which require
     an affirmative assertion.  *See Wilson v. Century 21 Great Western Realty*, 15 Cal. App. 4th 298, 306
27   (1993).  Hynix's SAC does not assert a claim of negligent misrepresentation.

28   ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
     CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
     ISSUES RELATING TO DUTY
     C-00-20905 RMW
     SPT                                                        13

1   "toxic stock" provisions.  There was no dispute that the defendant knew of the toxic stock

2   provisions.  Thus, the plaintiff alleged that defendant "deliberately or with a reckless disregard of the

3   truth concealed the toxic stock provisions."  *Id.* at 292.  The *Vega* court held that the plaintiff's

4   allegations stated an "active concealment or suppression of facts."  *Id.*  The *Vega* court distinguished

5   that "the question in a nondisclosure case is whether the defendant knows of material facts, and also

6   knows that those facts are neither known nor readily accessible to the plaintiff."  *Id.*

7        Here, Hynix points to discussions between Hynix's representative, Proebsting, and Rambus's

8   representative, Crisp, regarding Hynixs intended manufacture of a SDRAM device with a PLL

9   and/or a SLDRAM device and Hynix's beliefs that such devices would not result in a royalty to

10   Rambus as compared to the RDRAM.  Vega Decl., Ex. 22.  The discussions between Hynix and

11   Rambus were not idle exchanges, but were held in anticipation of entering into a license agreement

12   for Hynix's manufacture of DRAMs.  *Id.*  Against this backdrop of interchanges, Rambus

13   nevertheless chose to disclose to Hynix only that the SLDRAM potentially infringed its patents.

14   Vega Decl., Ex. L at HR905_176335.  In December 1995 Hynix and Rambus entered into the

15   License Agreement which covered the Rambus Interface Technology and "Other DRAM"

16   technology.  Vega Decl., Ex. 49.  It is undisputed that Rambus did not claim that Hynix might owe

17   royalties for use of the SDRAM or DDR SDRAM standards from the December 1995 effective date

18   of the License Agreement until its June 2000 notice of infringement to Hynix.[14]

19        The court finds that Hynix has demonstrated that a genuine issue of material fact exists as to

20   its allegations of actual fraud in its eighth claim for relief.

21

22

23

24   [14]        It is immaterial whether the alleged infringed patents were issued, pending or
     planned.  The crux of the issue is whether Rambus knowingly omitted facts material to Hynix when
     it chose to disclose that SLDRAM devices likely infringed Rambus patent in the course of
25   preliminary contract negotiations related to the alternative DRAM technologies.  Notably, Hynix
     had indicated a clear preference to know whether it had to pay royalties to Rambus.  *See, e.g.*, Vega
26   Decl., Ex. 22.  Rambus has not otherwise explained why it needed to disclose the potential
     infringement of SLDRAM but not SDRAM (and later DDR SDRAM), including after it had entered
27   in the License Agreement with Hynix.

28   ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
     CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
     ISSUES RELATING TO DUTY
     C-00-20905 RMW
     SPT                                                                    14

1    In its ninth claim, Hynix asserts constructive fraud on the basis that "Rambus, as a member

2  of JEDEC, owed a fiduciary duty under JEDEC's patent policy, to disclose to JEDEC and other

3  JEDEC members including Hynix, patents and pending patent applications that might be involved in

4  the work that JEDEC was undertaking with respect to the standardization of SDR SDRAM and

5  DDR SDRAM technology."  SAC ¶ 154.  A claim of constructive fraud requires that the parties

6  "stand in a fiduciary relationship."  *Estate of Gump*, 1 Cal. App. 4th 582, 601 (1991).  Hynix alleges

7  that it stood in a fiduciary capacity with Rambus as a co-member of JEDEC.  However, as stated by

8  the Federal Circuit in *Infineon*:

9    Rambus and Infineon are competitors.  There is no basis for finding that Rambus
     and Infineon shares a fiduciary relationship solely by virtue of their JEDEC
10   membership.  Indeed, the implications of holding that mere membership forms
     a fiduciary duty among all JEDEC members could be substantial and raise
11   serious antitrust concerns.

12  *Infineon*, 318 F.3d at 1096 n.7.  This court agrees.  The parties do not dispute that JEDEC is a

13  standard setting body whose goal is to set open standards and avoid standardizing technologies

14  subject to patents.  To find that the members in a standard setting organization owed a fiduciary duty

15  to each other would be inconsistent with the purpose of such an organization.

16    Hynix also points to its License Agreement with Rambus as giving rise to a fiduciary

17  relationship with Rambus.  Relationships between buyers and sellers of goods and services are

18  generally incompatible with fiduciary obligations.  *See Comm. on Children's Television, Inc. v. Gen'l

19  Food Corp.*, 35 Cal. 3d 197, 221-22 (1983).  As Rambus points out, the License Agreement contains

20  a clause that explicitly provides that no partnership or joint venture relationship is created by the

21  License Agreement.  Def.'s Reply Pls.'s Opp. Def''s Mot. Summ. J. at 10.  The License Agreement

22  cannot be reasonably construed to be other than a commercial contract.

23    Even viewing the record in the light most favorable to Hynix, there is no genuine issue of

24  material fact that Rambus and Hynix stood in a fiduciary relationship based on either JEDEC

25  membership or the License Agreement.  Because a fiduciary relationship is an essential element of a

26  constructive fraud claim, the court grants Rambus's motion for summary judgment on Hynix's ninth

27  claim for relief on the basis of constructive fraud.

28  ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT                                                                                    15

1

   **D.   Causation**

2     Rambus asserts Hynix has failed to establish any genuine issue of material fact that Rambus's

3 alleged failure to disclose caused Hynix's alleged damages.  Rambus argues that if it had been

4 required to disclose its patents or patent applications, it would have issued a RAND letter to JEDEC.

5 Def.'s Mot. Summ. J. at 20-21.  Therefore, the JEDEC standards would still incorporate technology

6 covered under Rambus patents and Hynix would still owe royalties to Rambus because it

7 manufactures SDRAM and DDR SDRAM devices following JEDEC standards.  *Id.*

8     Rambus's argument fails to address Hynix's contentions that Rambus's conduct at JEDEC

9 indicated Rambus did not want to issue a RAND letter for the SDRAM and DDR SDRAM

10 standards.  Hynix points to Rambus's June 1996 letter withdrawing from JEDEC, Rambus's failure to

11 inform anyone that the SDRAM and DDR SDRAM standards might infringe its patents or pending

12 patents, and the possibility that JEDEC would exclude from its standards patented technology if a

13 RAND letter were not obtained.[15]  Vega Decl., Exs. 32, 38, 55.  In the June 1996 letter, Rambus

14 stated:

15     Recently at JEDEC meetings the subject of Rambus patents has been raised.
       Rambus plans to continue to license its proprietary technology on terms that are
16     consistent with the business plan of Rambus, and those terms may not be
       consistent with the terms set by standard bodies, including JEDEC.

17 Vega Decl., Ex. 55.

18     Viewing the record in the light most favorable to the nonmoving party, there is a genuine

19 issue of material fact as to whether Rambus would have agreed to a RAND letter if it had disclosed

20 that the JEDEC SDRAM standards infringed its patents or any patent for which application had been

21 made or planned.  In addition, there is a genuine issue of material fact as to whether JEDEC would

22 have adopted standards that infringed Rambus's patents whether or not Rambus refused to issue a

23 RAND letter acceptable to JEDEC.

24

25

26 ────────────────

       [15]     Notably, this would be consistent with JEDEC's overall policy to avoid standardizing
27 technology subject to patents and to promulgate open standards.

28 ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
   CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
   ISSUES RELATING TO DUTY
   C-00-20905 RMW
   SPT                                           16

**E.     Rambus''s Motion for Summary Adjudication of Certain Issues**

**1.     Disclosure of Patent Applications**

Rambus seeks summary adjudication that any disclosure of patent applications was voluntary, not mandatory.  In determining the existence of a JEDEC duty, the court considered the JEDEC members' treatment of the JEDEC patent disclosure policy.  In addition to showing that members believed the policy imposed a duty to disclose patents, the record also shows facts that suggest that members believed patent applications should be disclosed.  *See, e.g.*, Vega Decl., Ex. I at R 173476; Hynix Opp. Def.'s Mot. Summ. J. at 6 (noting that JEDEC's JEP21-I required the committee chair to "call attention to the obligation of all participants to inform the meeting of any knowledge they may have of any patents, or pending patents, that might be involved in the work they are undertaking").

**2.     Beliefs, Hopes or Intentions to File or Amend Patent Applications**

Rambus next seeks summary adjudication that if there was a disclosure duty, it did not extend to beliefs, hopes or intentions to file or amend patent applications.  Hynix provides no evidence that any disclosure duty extends to beliefs, hopes or intentions to file or amend patent applications or that any disclosure duty should continue after a member left JEDEC.  In *Infineon*, 318 F.3d at 1102, the Federal Circuit held that JEDEC's policy did not extend to the beliefs, hopes or intentions to file or amend patent applications.  The court concludes that the JEDEC disclosure duty did not extend to Rambus's beliefs, hopes or intentions to file or amend its patent applications and that Rambus's JEDEC duty to disclose ended after it formally withdrew from JEDEC.  However, the court notes that this conclusion extends only to Rambus's duty pursuant to the JEDEC policy.

**3.     Disclosure Duty after a Member Leaves JEDEC**

Rambus moves for summary adjudication that if there was a disclosure duty, it did not continue after a member left JEDEC.  Hynix does not provide any evidence that any disclosure duty would continue after a member leaves JEDEC, except as to disclosure duties that had arisen before the member left.  The court grants as unopposed Rambus's motion for summary adjudication that the JEDEC duty to disclose ends once a member formally withdraws from JEDEC.

1

### 4.   Disclosure Only of Patents Necessary to Practice the Contemplated Standard

2    Rambus also seeks summary adjudication that if there was a disclosure duty, it applied only

3   to patents necessary to practice the contemplated standard.  In *Infineon*, the Federal Circuit

4   addressed a similar issue.  There, the court observed that the record indicated that disclosure only

5   related to issued or pending claims necessary to practice the standard.  *Infineon*, 318 F.2d at 1100.

6   Thus, the court concluded:

7    Rambus's duty to disclose extended only to claims in patents and applications
      that reasonably might be necessary to practice the standard.  In other words, the
8      duty encompassed any patent or application with claims that a competitor or
      other JEDEC member reasonably would construe to cover the standardized
9      technology.

10   *Id.*[16]  The court explained "to hold otherwise would contradict the record evidence and render the

11   JEDEC disclosure duty unbounded." *Id.* at 1101.

12    Here, Hynix contends that the JEDEC disclosure policy includes patents that *might* be

13   necessary to practice a standard.  Hynix points to JEDEC's JEP21-I which required the committee

14   chair to "call attention to the obligation of all participants to inform the meeting of any knowledge

15   they may have of any patents, or pending patents, that might be involved in the work they are

16   undertaking."  Hynix Opp. Def.'s Mot. Summ. J. at 6.  Hynix notes that when Texas Instruments

17   argued to JEDEC that the patent disclosure policy only required disclosure of essential patents,

18   JEDEC responded that "the committee was concerned with any patent that might be necessary to

19   practice a standard."  Vega Decl., Ex. 39 at R 69526.  These statements do not make clear what

20   additional disclosures are required in addition to those that are reasonably necessary to practice the

21   standard.

22    Rambus's argument that the disclosure policy should be limited is well taken.  However, as

23   discussed above, the disclosure duty arising from the practice of JEDEC members is defined by the

24   members' conduct and treatment of the stated policy.  Therefore, there is a genuine issue of material

25   

26    [16]    The court also held that Rambus's disclosure of the '703 patent satisfied any duty to
    disclose technologies described but not claimed in its patents or applications.  *Infineon*, 318 F.3d at
27   1100.

28   ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
    CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
    ISSUES RELATING TO DUTY
    C-00-20905 RMW

1    fact with respect to whether the disclosure is limited to patents and applications reasonably

2    necessary to practice the standard or extends to patents and patent applications that might be

3    necessary to practice the standard.

### 5.    Antitrust Liability

5    Rambus also seeks summary adjudication that as a threshold issue of antitrust law, the

6    JEDEC disclosure duty Hynix has alleged was too vague for any breach to give rise to antitrust

7    liability.  Rambus notes that the activities of standard setting organizations can sometimes tread a

8    fine line between the policies of the United States patent laws and antitrust laws.  Therefore,

9    Rambus argues that the rights and duties of participants in standard setting organizations must be

10   clearly defined with respect to their intellectual property rights.

11   In opposition, Hynix argues that Rambus's conduct associated with its breach of the JEDEC

12   disclosure requirement is part of a course of conduct to unlawfully secure a monopoly of the DRAM

13   interface technology market.  Hynix points to alleged predatory and anticompetitive conduct by

14   Rambus.  Specifically, Hynix asserts Rambus attended JEDEC meetings so that it could secretly

15   amend it patent applications to claim SDRAM and DDR SDRAM technology being standardized by

16   JEDEC.  Vega Decl., Exs. 30, 31, 33-35.  Hynix asserts that the evidence shows that Rambus chose

17   not to disclose these amendments because it did not "yet" want the industry to know that its patents

18   or patent applications covered JEDEC standards.  *See, e.g.*, Exs. 24, 32.

19   The court agrees that industry wide standards set by organizations such as JEDEC can serve

20   to foster competition, but at the same time also pose a risk of anticompetitive conduct.  *See Allied*

21   *Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500-01 (1988).  In addition, the patent

22   laws secure upon patentees lawful monopolies to encourage innovation.  *Intergraph Corp. v. Intel*

23   *Corp.*, 195 F.3d 1346, 1362 (Fed. Cir. 1999).  "It is well-settled that the secrecy of pending and

24   abandoned United States patent applications should be preserved whenever possible." *Cordis Corp.*

25   *v. SciMed Life Sys., Inc.*, 982 F. Supp. 1358, 1360 (D. Minn. 1997).  On the other hand, it is apparent

26   that abuse of the standards setting process could lead to serious anticompetitive and antitrust

27   concerns.  *See, e.g., Infineon*, 318 F.3d at 1096 (noting that interpreting JEDEC membership as

28   ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT                                                                   19

1    creating a fiduciary duty among members would raise serious antitrust concerns).

2            In light of the patent law policies implicated, breach of the JEDEC disclosure policies,

3    without more, cannot give rise to antitrust liability.  To do so, particularly in light of the vagueness

4    of the JEDEC disclosure policy at issue, would directly conflict with the protection afforded

5    patentees and patent applicants to encourage innovation.  The court finds that breach of JEDEC's

6    disclosure policy, by itself, is not sufficient to constitute antitrust liability.  The court notes,

7    however, that Hynix is not barred from asserting that Rambus's overall course of conduct, which

8    may include the circumstances and intent behind its decision to not disclose its patents and patent

9    applications, violated antitrust laws.

10                   **6.        Causation of Alleged Injuries**

11           Finally, Rambus seeks summary adjudication that its alleged breach of the JEDEC disclosure

12   duty did not cause the injuries Hynix has alleged.  For the same reason that the court denied

13   Rambus's motion for summary judgment that Rambus's breach of its JEDEC disclosure duty did not

14   cause Hynix's alleged damages, the court also denies summary adjudication of this issue.

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF
     CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN
     ISSUES RELATING TO DUTY
     C-00-20905 RMW
     SPT

### III.   ORDER

For the foregoing reasons, the court GRANTS defendant's motion for summary judgment on plaintiffs' fifth, sixth, seventh, and ninth claims for relief and DENIES defendant's motion for summary judgment on plaintiffs' eighth claim for relief.

The court also SUMMARILY ADJUDICATES that: (1) the JEDEC duty to disclose did not extend to the beliefs, hopes, or intentions to file or amend patent applications; (2) the JEDEC duty to disclose did not continue after a member left JEDEC, except for specific disclosures that arose before the member left; and (3) breach of any JEDEC disclosure duty, without more, does not give rise to antitrust liability.  The court DENIES SUMMARY ADJUDICATION that (1) any disclosure of patent applications under the JEDEC disclosure policy was voluntary, not mandatory; (2) the JEDEC duty to disclose extends only to patents necessary to practice the contemplated standard, and (3) Rambus's alleged breach of the JEDEC disclosure duty did not cause the injuries Hynix has alleged.

DATED:      7/17/2006                                    *Ronald M Whyte*
                                                       RONALD M. WHYTE
                                                       United States District Judge

ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT

**THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WAS PROVIDED TO:**

**Counsel for plaintiff:**
Daniel J. Furniss
Theodore G. Brown, III
Jordan Trent Jones
Townsend & Townsend & Crew LLP
379 Lytton Ave
Palo Alto, CA 94301

Patrick Lynch
Kenneth R. O'Rourke
O'Melveny & Myers
400 So Hope St Ste 1060
Los Angeles, CA 90071-2899

Kenneth L. Nissly
Susan van Keulen
Geoffrey H. Yost
Thelen Reid & Priest LLP
225 West Santa Clara Street, 12th Floor
San Jose, CA 95113-1723

**Counsel for defendant:**
Gregory Stone
Kelly M. Klaus
Catherine Augustson
Munger Tolles & Olson
355 So Grand Ave Ste 3500
Los Angeles, CA 90071-1560

Peter A. Detre
Carolyn Hoecker Luedtke
Munger Tolles & Olson
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907

Peter I Ostroff
Rollin A. Ransom
Michelle B. Goodman
V. Bryan Medlock, Jr.
Sidley Austin Brown & Wood
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010

Jeannine Yoo Sano
Pierre J. Hubert
Dewey Ballantine
1950 University Avenue, Suite 500
East Palo Alto, CA 94303

Date:    **7/17/2006**               **SPT**
                                     **Chambers of Judge Whyte**

ORDER DENYING IN PART AND GRANTING IN PART RAMBUS'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT AND FRAUD CAUSES OF ACTION AND GRANTING PARTIAL SUMMARY ADJUDICATION OF CERTAIN ISSUES RELATING TO DUTY
C-00-20905 RMW
SPT