*E-filed:*   8/2/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH,<br><br>   Plaintiffs,<br><br>   v.<br><br>RAMBUS INC.,<br><br>   Defendant. | No. CV-00-20905 RMW<br><br>ORDER DENYING RAMBUS'S MOTION TO WITHDRAW JURY DEMAND WITH RESPECT TO PHASE III OF TRIAL<br><br>**[Re Docket No. 2175]** |

Defendant Rambus Inc. ("Rambus") moves to withdraw its jury demand for the third phase of trial pursuant to Fed. R. Civ. P. 39(a)(2).  Plaintiffs Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd., and Hynix Semiconductor Deutschland GmbH (collectively "Hynix") oppose the motion.  The court has reviewed the papers and considered the arguments of counsel.  For the reasons set forth below, the court DENIES defendant's motion pursuant to Fed. R. Civ. P. 39(a)(2) to withdraw its jury demand.

## I.  BACKGROUND

Hynix did not file a jury demand with its original Complaint, its Amended Complaint, or its Second Amended Complaint.  When Rambus filed its answers and counterclaims (and amended

1   pleadings) it included a demand for jury trial, stating "Rambus hereby demands trial by jury

2   pursuant to Federal Rule of Civil Procedure 38(b)."  In its Second Amended Complaint ("SAC"),

3   Hynix seeks declaratory judgment of non-infringement, invalidity, and unenforceability and

4   damages for alleged breach of contract and fraud, including, *inter alia*, litigation expenses.

5   Rambus's counterclaims alleged patent infringement and sought enforcement of its patents against

6   Hynix.  The court divided the issues to be tried into three phases.  The trials for the first two phases,

7   concerning spoliation of evidence and Rambus's patent infringement claims, have been completed,

8   with the patent infringement claims tried before a jury.  The remaining phase, as narrowed by the

9   court's recent summary adjudications, involves Hynix's allegations of (1) monopolization and

10  attempted monopolization in violation of § 2 of the Sherman Act, (2) unfair competition in violation

11  of Cal. Bus. & Prof. Code § 17200 *et seq.*, and (3) actual fraud.

12          Hynix's initial Fed. R. Civ. P. 26(a) disclosures set forth damages, including decreased sales

13  attributable to Rambus's license agreement provisions and the publicity of Rambus's claims, Hynix's

14  investments made in reliance on an open standard due to Rambus's purported breach of a duty to

15  disclose, expenses incurred litigating Rambus's right to assert patents that have been improperly

16  acquired, and other damages.  Steven M. Perry Decl. Supp. Mot. Withdraw Jury Demand ("Perry

17  Decl."), Ex. A at 9.  On September 24, 2001 Hynix filed its Objections and Revised Preliminary

18  Answers to Interrogatories which stated, *inter alia*, "Hynix hereby supplements its prior responses to

19  state that Hynix will not claim damages for lost profits, but does intend to seek damages based on

20  the legal expense confronting Rambus patent claims in the United States and abroad."  Perry Decl.,

21  Ex. B at 3.  A November 24, 2004 letter to Rambus further stated, "Hynix disclaimed any damage

22  except legal expenses and attorneys' fees in a supplemental interrogatory response."  Perry Decl., Ex.

23  C at 4.  On January 20, 2006 (approximately two weeks prior to the cut-off of discovery), Hynix

24  submitted "substantially redacted" bills in support of its alleged litigation costs and expenses.  In a

25  February 2, 2006 letter to Hynix, Rambus objected to the submission, claiming that it had been

26  prejudiced by the delay and failure to identify witnesses.

27          On July 7, 2006 this court granted Rambus's motion, summarily adjudicating that Rambus's

28

ORDER DENYING RAMBUS'S MOTION TO WITHDRAW JURY DEMAND WITH RESPECT TO PHASE III OF
TRIAL—C-00-20905 RMW
SPT                                                                                    2

1   instigation and prosecution of its infringement claims are protected petitioning activity under the

2   *Noerr-Pennington* doctrine and, as to state claims, are absolutely privileged under California Civil

3   Code section 47(b).  The court expressly stated, however, that the order did not resolve evidentiary

4   issues that concern whether the filing of the lawsuits and communications associated therewith are

5   admissible as evidence supporting an overall scheme to monopolize.  July 7, 2006 Order at 2.

6                                    **II.  ANALYSIS**

7              As an initial matter, the court addresses two issues raised by the parties.  First, Rambus

8   argues that Hynix's evidence of its litigation costs would be inadmissible because Hynix failed to

9   make adequate Fed. R. Civ. P. 26(a) disclosures in support of damages.  Rambus argues primarily

10  that the disclosure consisted of boxes of bills provided just two weeks prior to discovery cut-off (and

11  an unidentified witness for authentication purposes only) and that the bills were heavily redacted so

12  that Rambus could not calculate the purported damages.  It is undisputed that Hynix stated in various

13  discovery disclosures and responses made in December 2000 and again in September 2001 and April

14  2003 that it intended to claim litigation costs and expenses as damages, including the ones upon

15  which Rambus relies to show that Hynix disclaimed all damages but litigation costs and expenses.

16  Hynix's contends that it did not produce the bills until January 20, 2006 to avoid revealing its

17  litigation strategy and because fees and expenses continued to be incurred as the case progressed.

18  Hynix has offered to allow Rambus to do any follow-up discovery it needs on the amount of fees

19  and expenses incurred.  Until the present motion, Rambus did not raise with the court any of its

20  complaints regarding the disclosure of Hynix litigation expenses, seek additional time to depose

21  relevant witnesses, or object that it had not been able to calculate damages from Hynix's disclosures.

22  It now seeks, in conjunction with its motion to withdraw its jury demand, for exclusion pursuant to

23  Rule 37.  "A district court has discretion to issue discovery sanctions under Rule 37(c)(1)."  FED. R.

24  CIV. P. 37(c)(1); *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th

25  Cir. 2001) (noting that a showing of harmlessness or substantial justification could overcome Rule

26  37(c)(1) sanction request).  It is unclear what efforts the parties made to resolve the alleged

27  inadequacies of Hynix's disclosures prior to the present motion.  Although "exclusion is an

28

United States District Court
For the Northern District of California

ORDER DENYING RAMBUS'S MOTION TO WITHDRAW JURY DEMAND WITH RESPECT TO PHASE III OF
TRIAL—C-00-20905 RMW
SPT                                              3

United States District Court

For the Northern District of California

appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)," *Yeti by Molly*, 259 F.3d at 1106, the court does not find it to be appropriate here.  Any further discovery on the subject of the amount of litigation expenses should, however, be at Rambus's convenience and any deposition and copying costs (not attorney's fees) at Hynix's expense.

Second, Hynix contends that Rambus may not unilaterally seek to withdraw its jury demand, upon which Hynix relied, because Fed. R. Civ. P. 38(d) provides: "A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties." "Under Rule 39(a), issues demanded for jury trial are to be so tried unless the parties stipulate for court trial or the court finds that a right of jury trial on some or all of the issues does not exist."  *United States v. Missouri River Breaks Hunt Club*, 641 F.2d 689, 693 (9th Cir. 1981); *see* FED. R. CIV. P. 39(a)(2).  Rambus contends that Hynix does not have a valid claim for damages because the only damages Hynix currently seeks are costs and expenses incurred in litigating claims against Rambus and such costs and expenses are not recoverable because Rambus's patent enforcement suits are protected under the *Noerr-Pennington* doctrine.[1]  Thus, Rambus argues: (1) Hynix does not have a valid claim for damages, (2) assuming Hynix's claims for damages are invalid, the only relief sought is equitable, and (3) where only equitable relief is sought, there is no right to a jury trial.  The court turns first to whether Hynix asserts a valid damages claim.

### A.    *Noerr-Pennington* **Doctrine**

The court's July 7, 2006 order granted Rambus's motion for summary adjudication that Rambus's assertion of patent infringement claims does not, by itself, constitute unlawful conduct. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("the Sherman Act does not prohibit persons from associating together in an attempt . . . to take particular action with respect to a law that would produce a restraint or a monopoly").  Moreover, the court found that the "sham litigation" exception to the *Noerr-Pennington* doctrine did not apply because "the lawsuits were neither baseless nor in bad faith."  July 7, 2006 Order at 3.  Thus, the court

---

[1]    Hynix is not entitled to a jury on its Cal. Bus. & Prof. Code § 17200 or its equitable affirmative defenses (estoppel and laches).

concluded that Rambus was entitled to adjudication that its use of litigation, or threats of litigation, to enforce its patents is protected petitioning activity within *Noerr-Pennington*.

Here, alleges Hynix, it "is not complaining that Rambus enforced its patents; Hynix is complaining that Hynix would not have conformed to technology in Rambus's patents but for a fraudulent course of conduct designed to secure an unlawful monopoly . . . . But for that conduct, Hynix would never have incurred fees to its patent attorneys."  Hynix Opp. 3:18.  Hynix contends that Rambus's enforcement of its patents is but one part of an overall course of conduct to secure a monopoly on a basis other than "superior product, business acumen, or historic accident."  *See United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).  In other words, Hynix asserts that it has been subjected to patent infringement claims only because of Rambus's purported fraudulent conduct.  Hynix relies primarily upon three cases for support:  *Rex Chainbelt, Inc. v. Harco Prods., Inc.*, 512 F.2d 993, 1004 (9th Cir. 1975); *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952); and *Clapper v. Original Tractor Cab Co.*, 270 F.2d 616, 623 (7th Cir. 1959).  Rambus argues that these cases were decided more than thirty years ago and have no merit today because the appellate courts have interpreted *Professional Real Estate Investors* as holding that the only means of overcoming *Noerr-Pennington* immunity are to prove either (1) sham litigation or (2) that the patents were obtained through deliberate fraud within the meaning of *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965).  However, the cases cited by Hynix have not been expressly overruled and, as discussed below, Rambus reads *Professional Real Estate Investors* too broadly.

"Whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law."  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).  In *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304-05 (Fed. Cir. 2004), the Federal Circuit held that one exception to *Noerr-Pennington* immunity is proof that the asserted patent "was obtained through knowing and willful fraud within the meaning of *Walker Process*":

> [T]he patent owner may be subject to antitrust liability for the anticompetitive effects of that suit if the accused infringer proves either of two conditions. First, the accused

United States District Court

For the Northern District of California

> infringer may show that the asserted patent was obtained through knowing and willful fraud.  Alternatively, the accused infringer may show that the infringement suit was a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.

*Id.* (citing *In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1326 (Fed. Cir. 2000); *Nobelpharma*, 141 F.3d 1059, 1068 (Fed. Cir. 1998)).  The cases addressing *Walker Process* fraud address whether or not it has been alleged that fraud had been perpetrated upon the Patent Office in the procuring of a patent.  In *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998), and again in *In re Indep. Serv. Orgs.*, 203 F.3d at 1326, the Federal Circuit concluded that the *Walker Process* analysis was not implicated because there was no allegation that the patent had been obtained through knowing and willful fraud upon the Patent Office.  *See also Andrx Pharm. v. Elan Corp. PLC*, 421 F.3d 1227, 1234 (11th Cir. 2005) (same).

The present issue involves more than the single inquiry into conduct involving the procurement or enforcement of a patent.[2]  Hynix claims that the patent or patent power was obtained through fraudulent conduct, though that purported fraudulent conduct was not necessarily perpetrated upon the Patent Office or limited to the procurement and act of enforcing the patents.  "[B]eyond the limited monopoly which is granted, the arrangements by which the patent is utilized are subject to the general law."  *U.S. v. Singer Mfg. Co.*, 374 U.S. 174, 196 (1963).  The issue before this court is whether Rambus's alleged course of conduct falls within the prohibitions of antitrust laws.  *See Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982) (noting that legitimate petitioning activity that is part of an entire conspiracy may be subject to antitrust laws because it is the conspiracy that is subject to the antitrust laws).  The law of the regional circuit in which the district court sits applies in actions involving federal antitrust law.  *In*

---

[2]     The cited Federal Circuit cases do not address Hynix's argument that the present action is distinct because the litigation is only one integral part of a larger, external plan to threaten competition.  Rather, the Federal Circuit cases cited involve the narrower issue of conduct in obtaining a patent from the Patent Office and enforcing it through petitioning activities.  As the July 7, 2006 Order noted, Rambus's filing of lawsuit, alone, constitutes protected petitioning activity.  Here, Hynix alleges that the patent and enforcement thereof were part of an overall course of conduct that was anticompetitive regardless of whether the patents themselves are lawfully enforceable.  In other words, Rambus's ability to enforce the patent specifically against Hynix's devices is a product of fraudulent conduct.  As noted above, Ninth Circuit law applies in actions involving federal antitrust law.

1   *re Indep. Serv. Orgs.*, 203 F.3d at 1325.  Accordingly, Ninth Circuit (and other appellate cases) are

2   instructive on the present issue.

3          As noted in the July 7, 2006 Order, dicta in *Clipper*, 690 F.2d 1240, supports Hynix's

4   argument.  July 7, 2006 Order at 3.  In *Clipper*, the Ninth Circuit stated:  "If Clipper can prove that

5   the defendants engaged in activities which violated the antitrust laws, those violations do not

6   become immune simply because the defendants used legal means—protests before the ICC—as a

7   means to enforce the violations."  *Clipper*, 690 F.2d at 1265.

8          The Tenth Circuit decision in *Kobe* explained:

9          We have no doubt that [if] there was nothing more than the bringing of the
           infringement action, resulting damages could not be recovered, but that is not the
10         case. The facts as hereinbefore detailed are sufficient to support a finding that
           although Kobe believed some of its patents were infringed, the real purpose of the
11         infringement action and the incidental activities of Kobe's representatives was to
           further the existing monopoly and to eliminate Dempsey as a competitor. The
12         infringement action and the related activities, of course, in themselves were not
           unlawful, and standing alone would not be sufficient to sustain a claim for damages
13         which they may have caused, but when considered with the entire monopolistic
           scheme which preceded them we think, as the trial court did, that they may be
14         considered as having been done to give effect to the unlawful scheme.

15   198 F.2d 416, 425 (10th Cir. 1952); *see Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S.

16   508, 514 (1972) ("It is well settled that First Amendment rights are not immunized from regulation

17   when they are used as an integral part of conduct which violates a valid statute."); *Rex Chainbelt*,

18   512 F.2d at 1004; *Handgards, Inc. v. Ethicon*, 601 F.2d 986, 996 (9th Cir. 1979); *but see Abbott*

19   *Labs. v. Teva Pharms. USA, Inc.*, 2006 WL 1460077, *16 (D. Del. 2006).

20         In *Rex Chainbelt*, 512 F.2d at 1005, the Ninth Circuit held that where it is shown that an

21   infringement suit has been brought as "an integral part of an agreement or plan to violate the

22   antitrust laws and that the defendant sustained resulting damages, treble damages for antitrust

23   violation should be recoverable, whether or not there was a colorable claim of infringement."  The

24   court explained that its holding seeks to balance the policies of the antitrust laws with the policy "not

25   to imperil free access to the courts for determination and protection of patent rights":

26         It is said that to allow recovery of damages resulting from the infringement action
           would be a denial of free access to the courts. We fully recognize that free and
27         unrestricted access to the courts should not be denied or imperiled in any manner.
           At the same time we must not permit the courts to be a vehicle for maintaining and

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

carrying out an unlawful monopoly which has for its purpose the elimination and prevention of competition.

*Id.* (quoting *Kobe*, 198 F.2d at 424). Under such circumstances, attorney's fees incurred in defending patent infringement actions may be awarded as part of antitrust treble damages. *Id.* (noting that in such cases there is "the consistent thread of the patent infringement suit being used with ulterior motives as a predatory means—an aggressive weapon to attain some other anticompetitive end, as opposed to its being used as a defensive shield with which to protect the patent interests").[3]

Although *Walker Process* applies to fraud perpetrated upon the Patent Office, the Court's reasoning is consistent with the concept that improper patent monopolies obtained by fraud could be subject to antitrust liability. In *Walker Process*, the Court held that "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." 382 U.S. at 175. In a concurring opinion, Justice Harlan wrote separately further explaining the court's rationale for finding that patents procured by deliberate fraud are subject to antitrust liabilities:

> To hold, as we do, that private suits may be instituted under § 4 of the Clayton Act to recover damages for Sherman Act monopolization knowingly practiced under the guise of a patent procured by deliberate fraud, cannot well be thought to impinge upon the policy of the patent laws to encourage inventions and their disclosure. Hence, as to this class of improper patent monopolies, antitrust remedies should be allowed room for full play.

*Id.* at 179-80; *see also Cal. Motor Transport Co.*, 404 U.S. at 512-13 (noting in dicta "[u]se of a patent obtained by fraud to exclude a competitor from the market may involve a violation of the antitrust laws"). In *Handsgards*, 601 F.2d at 994-95, the Ninth Circuit explained that apart from alleged fraud within the meaning of *Walker Process* and alleged baseless suits (sham litigation) within the meaning of *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973), "antitrust liability

---

[3] The present suit was initiated by Hynix when it filed an action for declaratory judgment of non-infringement, not by Rambus. Because Hynix must prove that Rambus engaged in fraudulent conduct in obtaining its patents and its ability to enforce its patents upon JEDEC-compliant DRAM manufacturers in order to prove it has a right to attorney's fees, a finding that such fees are not *per se* barred does not seem to infringe upon Rambus's *Noerr-Pennington* immunity. *See, e.g., Dell Computer Corp.*, 121 F.T.C. 616, 624.

ORDER DENYING RAMBUS'S MOTION TO WITHDRAW JURY DEMAND WITH RESPECT TO PHASE III OF TRIAL—C-00-20905 RMW
SPT
8

based on patent enforcement conduct" may be imposed based on allegations of the "overall scheme to monopolize independent of the mere commencement of an infringement suit."

Finally, Rambus's position that *Prof'l Real Estate Investors, Inc.* in effect overruled *Rex Chainbelt, Inc., Kobe, Inc.*, and *Clapper* requires extending the application of *Prof'l Real Estate Investors, Inc.* beyond its holding.  In *Prof'l Real Estate Investors, Inc.* the court held that *Noerr-Pennington* immunity protected major motion picture studios from a counterclaim that their suit for copyright infringement was "a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor." 508 U.S. at 51 (internal quotations omitted).  The Court held that there was an objective basis for the copyright claim and the refusal to grant copyright licenses was not separate and distinct from the prosecution of the infringement suit.  *Id.* at 54 n.2.  The Court, however, was not dealing with a situation where the institution of the suit was part of an overall scheme to monopolize.  The fact that the institution of the infringement action is lawful and immunized does not necessarily immunize a fraudulent scheme.  In *Prof'l Real Estate Investors, Inc* the Court noted "we do not consider whether Columbia could have made a valid claim of immunity for anticompetitive conduct independent of petitioning activity."  *Id.*

**B.       Seventh Amendment Right to Trial**

Rambus argues that Hynix's phase three claims seek only equitable relief and therefore are considered claims not traditionally heard at common law.  Rambus thus seeks for the remaining issues of the action to be tried without a jury.  The Seventh Amendment provides in part: "in Suits at common law, where the value in controversy shall exceed $20.00, the right of trial by jury shall be preserved."  U.S. Const. Amend. VII.  This language "defines the kind of cases for which jury trial is preserved, namely suits at common law."  *Tull v. U.S.*, 481 U.S. 412, 426 (1987).  The Federal Rules of Civil Procedure provides: "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."  FED. R. CIV. P. 38(a).  Whether there is a right to trial by jury is a question of law.  *Cal. Scents v. Surco Prods., Inc.*, 406 F.3d 1102, 1105 (9th Cir. 2005); *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 834 (9th Cir. 1963).  It is well established that "[m]aintenance of the jury, as a fact-finding

United States District Court
For the Northern District of California

body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959). Rambus's position that a right to jury trial no longer exists on any of the remaining issues rests on its argument that the damages sought by Hynix cannot be recovered as a matter of law based on the applicability of the *Noerr-Pennington* doctrine to its patent enforcement suits.[4] The court finds that Hynix has alleged a legally viable damage claim which is sufficient to sustain a finding that it has not forgone a right to a jury trial.

### III.  ORDER

For the foregoing reasons, the court DENIES defendant's motion pursuant to Fed. R. Civ. P. 39(a)(2) to withdraw its jury demand.

DATED:    8/2/2006

_Ronald M Whyte_____
RONALD M. WHYTE
United States District Judge

---

[4]        There is no right to a jury trial under Cal. Bus. & Prof. Code § 17200.

ORDER DENYING RAMBUS'S MOTION TO WITHDRAW JURY DEMAND WITH RESPECT TO PHASE III OF TRIAL—C-00-20905 RMW
SPT                                                10

United States District Court

For the Northern District of California

**THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WAS PROVIDED TO:**

**Counsel for plaintiff:**
Daniel J. Furniss
Theodore G. Brown, III
Jordan Trent Jones
Townsend & Townsend & Crew LLP
379 Lytton Ave
Palo Alto, CA 94301

Patrick Lynch
Kenneth R. O'Rourke
O'Melveny & Myers
400 So Hope St Ste 1060
Los Angeles, CA 90071-2899

Kenneth L. Nissly
Susan van Keulen
Geoffrey H. Yost
Thelen Reid & Priest LLP
225 West Santa Clara Street, 12th Floor
San Jose, CA 95113-1723

Allen Ruby          aruby@rubyschofield.com

**Counsel for defendant:**
Gregory Stone
Kelly M. Klaus
Catherine Augustson
Munger Tolles & Olson
355 So Grand Ave Ste 3500
Los Angeles, CA 90071-1560

Peter A. Detre
Carolyn Hoecker Luedtke
Munger Tolles & Olson
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907

Peter I Ostroff
Rollin A. Ransom
Michelle B. Goodman
V. Bryan Medlock, Jr.
Sidley Austin Brown & Wood
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010

Jeannine Yoo Sano
Pierre J. Hubert
Dewey Ballantine
1950 University Avenue, Suite 500
East Palo Alto, CA 94303

Dated:   **8/2/06**                         **SPT**
                                         **Chambers of Judge Whyte**

ORDER DENYING RAMBUS'S MOTION TO WITHDRAW JURY DEMAND WITH RESPECT TO PHASE III OF
TRIAL—C-00-20905 RMW
SPT                                      11

**United States District Court**
For the Northern District of California