*E-filed:*   8/22/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH,<br><br>          Plaintiffs,<br><br>     v.<br><br>RAMBUS INC.,<br><br>          Defendant. | No. CV-00-20905 RMW<br><br>ORDER STAYING PHASE III OF TRIAL PENDING FINAL ORDER OF THE FEDERAL TRADE COMMISSION |

The court raised the issue with the parties as to the effect on Phase III of the pending trial of the August 2, 2006 Federal Trade Commission Opinion that Rambus violated Section 2 of the Sherman Act. As the court anticipated, the parties responded with diametrically opposed opinions. Hynix wants a stay of Phase III. It contends, among other things, that the Final Order of the Commission will have significant impact on the admissible evidence for Phase III, that the "specter of industry-wide relief changes the settlement calculus and should be given time to germinate" (Hynix's Brief filed 8/11/2006, p. 17:22-23), and that proceeding forward at this time has the potential for discriminatorily impacting Hynix's ability to compete with other DRAM manufacturers. Rambus, on the other hand, argues that Phase III should proceed as scheduled, that the

Commission's Final Order will have no evidentiary effect on the trial, and that a stay will allow Hynix to continue infringement of Rambus's patents pending resolution of Phase III.  The court has considered this matter at great length including reading the parties' briefs, allowing the parties to thoroughly argue the matter, and doing considerable independent research on various issues.  The court concludes that a stay until February 2, 2007 or the issuance of a Final Order of the Commission, whichever occurs first, is appropriate on the condition that (1) Hynix posts security satisfactory to the court that will ensure payment of the damages that were awarded to Rambus in Phase II, prejudgment interest on the Phase II award, and royalties on Hynix's SDRAM and DDR SDRAM sales from January 1, 2006 through February 2, 2007 at the rate of 1% for the SDRAM and 4.25% for the DDR SDRAM[1]; and (2) Hynix designates with specificity, within ninety days of the date of this order, any findings by the Commission that it contends should be accorded prima facie effect in Phase III (including the reasons supporting why prima facie weighting should be granted) and a motion for summary adjudication on any claims it is making in Phase III that it asserts are subject to summary adjudication as a result of the Commission's Opinion.  The stay is conditioned upon Hynix's agreement to these conditions and the posting of the required security within ten days of the date of this order.  The stay will not apply to any request for certification for interlocutory appeal, and appeal if certification is given, of the issues resolved in Phases I and II.

## ANALYSIS

> A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  After weighing the competing interests, the court finds a stay appropriate.  The two primary factors that justify the stay are: (1) the increased

---

[1] This reflects the rates the court found appropriate in its Order Granting Hynix's Motion for a New Trial on the Issue of Damages Unless Rambus Elects Remittitur of the Jury Award.

ORDER STAYING PHASE III OF TRIAL PENDING FINAL ORDER OF FEDERAL TRADE COMMISSION
C-00-20905 RMW
2

1  potential for a resolution of this case and the several other litigations between Rambus and various
2  DRAM manufacturers once the parties know what industry-wide remedy the Federal Trade
3  Commission will impose and (2) the difficulty and time that will be needed to sort out what findings
4  from the Federal Trade Commission will be admissible in Phase III, a process that can begin during
5  the stay.

6  The Federal Trade Commission's remedy will have industry-wide application and
7  presumably will establish "reasonable royalty rates for JEDEC-compliant products affected by
8  Rambus's exclusionary conduct" (FTC Opn., p. 119).  Although such a remedy will not resolve all
9  the pending issues between Rambus and Hynix, it will necessarily have a significant impact on any
10 future relationship between the parties and between Rambus and the DRAM manufacturing industry.
11 As the court has previously observed, this case cries out for a business solution as the future success
12 of each company would appear to depend, in significant part, on a business relationship between the
13 two.  For reasons of which the court is not privy (all court sponsored settlement discussions have
14 been referred to another judicial officer), the parties to date have apparently not come close to
15 settlement.  If the Federal Trade Commission sets reasonable royalty rates, Hynix will no longer be
16 at a potential disadvantage vis-a-vis its competition, a concern that it has voiced at various times.[2]
17 The prospect for industry-wide relief changes the landscape significantly and the potential for that
18 relief motivating a settlement between Rambus and Hynix (and between Rambus and other DRAM
19 manufacturers) justifies a stay in this case.  The court recognizes that the Federal Trade Commission
20 remedy will not resolve a number of issues between the parties, such as the royalty rate that Rambus
21 may demand for DDR2 SDRAM.  Nevertheless, the remedy that will be ordered by the Federal
22 Trade Commission will potentially cause, and should cause, the parties to re-evaluate their positions.

23 The court is, however, concerned that waiting for the Federal Trade Commission to issue its
24 Final Order will delay the resolution of Phase III for an unreasonable length of time.  Therefore, a
25 status conference is set for February 2, 2007 if a remedy has not yet been determined.  At that time,

---

[2] The court recognizes that Infineon could still be in an advantageous position given its settlement with Rambus following the dismissal of Rambus's claims against it based upon unclean hands (spoliation of evidence).

the court can consider whether a continued stay is justified.

Rambus argues that a stay is not appropriate because, among other reasons, the Federal Trade Commission Opinion and the findings therein are not admissible in the Phase III trial. The court concludes otherwise. The governing statute is 15 U.S.C. § 16(a) which reads:

> A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That . . . . Nothing contained in this section shall be construed to impose any limitation on the application of collateral estoppel, except that, in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws or under section 45 of this title which could give rise to a claim for relief under the antitrust laws.

15 U.S.C. § 16(a). Thus, the admissibility of the Federal Trade Commission Order, or findings therein, in Phase III of the trial depends on whether the Commission's Order satisfies the requirements of that section that the Order be: (1) a final judgment or decree (2) rendered in any civil or criminal proceeding (3) brought by or on behalf of the United States (4) under the antitrust laws, (5) to the effect that a defendant has violated said laws. Requirements 2, 3 and 5 are indisputably met. Requirement (1) has not been satisfied. The parties dispute the finality of the Federal Trade Commission Order. The court defers the finality question until after the Commission issues its remedy.

Whether requirement 4 has been met is the most difficult question. The issue, for which there is a dearth of authority providing guidance, is what is meant by the phrase "brought under the antitrust laws." Rambus contends that the proceeding resulting in the Commission's Order was not brought under the antitrust laws because the complaint was brought pursuant to Section 5 of the Federal Trade Commission Act. Rambus argues that based on the last sentence of 15 U.S.C. § 16(a) (which refers to the antitrust laws and Section 5 of the Federal Trade Commission Act separately), the first sentence by necessary implication precludes use of the Opinion as prima facie evidence because that sentence only refers to actions brought under antitrust laws, and Section 5 of the Federal Trade Commission Act is not an antitrust law. Hynix argues that the Commission expressly

undertook to consider and did determine that Rambus violated Section 2 of the Sherman Act. Therefore, submits Hynix, the Commission brought action against Rambus under the antitrust laws. Hynix further asserts that the Commission Opinion has collateral estoppel effect on its unfair competition claim against Rambus because that claim is not an antitrust claim and § 16(a) expressly provides that nothing in the section imposes any limitation on the application of the doctrine except in antitrust cases.[3]

The legislative history does not appear to support a conclusion that Congress intended to withhold its grant of prima facie effect based on what was set forth in the complaint before the Commission regardless of the actual findings by the Commission. "Congress'[s] intent in enacting the original version of Section 5 [of the Clayton Act][4] was 'to minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in antitrust actions.'" *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1030 (9th Cir. 2001) (quoting *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951)). The legislative history explains Congress's intent in providing for prima facie effect to findings of the Commission:

> When Congress enacted Section 5(a) [of the Clayton Act] in 1914 the common law of collateral estoppel had not developed to the point that a private plaintiff could receive any evidentiary effect from a successful government antitrust judgment. Thus, in according government judgments prima facie effect in subsequent proceedings, the Congress gave an antitrust plaintiff more than the common law then permitted, and as much as was thought to be constitutionally permissible. Congress hoped that the plaintiff, by relying on the prima facie effect of a prior government antitrust judgment, would not have to relitigate the entire government case in order to redress his injuries. The result would be a saving of litigation costs and the enhancement of the deterrent effect of the antitrust laws.

H. Rep. No. 96-874, *4 (1980 U.S.C.C.A.N. 2752, 2754); *see also McCook v. Standard Oil Co.*, 393 F. Supp. 256, 259-60 (C.D. Cal. 1975) (noting that the statutory history of Section 5(a) of the Clayton Act "seems to suggest that Congress only intended to set a minimum standard for the effect

---

[3] Hynix also asserts that collateral estoppel applies as to its equitable estoppel defense on the same grounds.

[4] Section 5(a) of the Clayton Act was codified as 15 U.S.C. §16(a). In this order references to Section 5(a) of the Clayton Act and 15 U.S.C. § 16(a) are used interchangeably.

1  of prior government antitrust judgments, thereby leaving the courts free to apply in accordance with
2  constitutional limitations any common law doctrines which would increase the effect of the prior
3  judgment beyond the prima facie evidence standard") (citing *Emich Motors Corp. v. Gen. Motors*
4  *Corp.*, 340 U.S. at 567-68; *City of Burbank v. Gen. Elec. Co.*, 329 F.2d 825, 831 (9th Cir. 1964);
5  *Minnesota Mining & Mfg. Co. v. N. J. Wood Co.*, 381 U.S. 311, 319 (1965); 51 Cong. Rec. 16,276
6  (Oct. 7, 1914); S. Rep. No. 698, 63rd Cong., 2d Sess., 45 (July 22, 1914)).  Congress's intent to
7  accord prima facie effect to the extent "constitutionally permissible" does not support the restrictive
8  interpretation of the phrase "brought under the antitrust laws" proposed by Rambus.  Where the
9  Commission makes explicit findings of violation of the antitrust laws that are at issue in a
10 subsequent private civil action, conferring prima facie weighting to such findings would seem to
11 further Congress's intent to avoid relitigation and promote judicial economy.

12      Further, the legislative history, though not explicit, suggests that whether prima facie effect
13 is conferred turns on whether the Commission's *findings* were based on the antitrust laws.  For
14 example, the legislative history to the 1980 amendments of 15 U.S.C. § 16(a) explained: "Section
15 5(a) of the Clayton Act currently provides that a final judgment or decree in a government action in
16 which a defendant was *found to have violated the antitrust laws* can be given rebuttable prima facie
17 effect in subsequent antitrust actions."[5]  H. Rep. No. 96-874, *3 (1980 U.S.C.C.A.N. 2752, 2753)
18 (emphasis added).  In comparing the then newly-added collateral estoppel provision in 15 U.S.C. §
19 16(a), Congress indicated "While the amended bill precludes application of collateral estoppel to
20 certain types of agency findings in a subsequent proceeding under the antitrust laws, any agency
21 *findings* qualified for Section 5(a) treatment [under the Clayton Act] will continue to be eligible for
22 prima facie effect."  H. Rep. No. 96-874, *7 (1980 U.S.C.C.A.N. 2752, 2757).  Thus, Congress does
23 not appear to have restricted the application of prima facie effect to the particular charges filed

---

[5]  Congress went on to state that the bill (H.R. 4046) "amends that provision to provide that the statute shall not be construed to preclude the application of the common law doctrine of collateral estoppel in a subsequent proceeding." H. Rep. No. 96-874, *3 (1980 U.S.C.C.A.N. 2752, 2753).  There is no indication that the amendments change or restrict the original grant of prima facie effect in 1914.

ORDER STAYING PHASE III OF TRIAL PENDING FINAL ORDER OF FEDERAL TRADE COMMISSION
C-00-20905 RMW

before the Commission, but rather to have viewed the statute as applying to the particular findings made by the Commission.[6]

Though limited, the applicable case law appears to further support that it is the findings of the Commission that are relevant to a determination of whether prima facie effect applies.[7]  In *Emich Motors*, the Court held that the plaintiffs were "entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based."  340 U.S. at 414.  The Court reasoned: "We think that Congress intended to confer, subject only to a defendant's enjoyment of its day in court against a new party, as large an advantage as the estoppel doctrine would afford had the Government brought suit."  *Id.* at 413-14.  Similarly, in *Farmington Dowel Products Co. v. Forster Manufacturing. Co.*, 421 F.2d 61, 73 (1st Cir. 1970), the First Circuit held "we conclude that the critical question is whether the safeguards of the Commission are substantial enough to assure the defendant the 'day in court' which the authors of Section 5(a) [of the Clayton Act] intended for him before that section was applied against him."  Therefore, whether the defendant is assured its "day in court" turns not on what is stated in the complaint before the Commission, but on an application of the general principles of estoppel to the findings at issue.  *See Emich Motors*, 340 U.S. at 414 (noting that "[t]he evidentiary use which may be made under § 5 [of the Clayton Act] of the prior conviction of respondents is thus to be determined by reference to the general doctrine of estoppel" and "[s]uch estoppel extends only to questions distinctly put in issue and directly determined in the criminal prosecution"); *see also Pool*

---

[6]  It is not disputed that either the FTC or the Justice Department may enforce the antitrust laws.  *See* http://www.ftc.gov/ftc/antitrust.htm. ("The antitrust laws are enforced by both the FTC's Bureau of Competition and the Antitrust Division of the Department of Justice.  In order to prevent duplication of effort, the two agencies consult before opening any case.  All criminal antitrust enforcement is handled by the Antitrust Division.").

[7]  Neither the cases cited by the parties nor the additional case law considered by the court addressed the precise issue of the prima facie effect of explicit findings of violation of the antitrust laws, (*see, e.g.*, FTC Opn., p. 27), in a Federal Trade Commission proceeding where the complaint was brought pursuant to Section 5 of the Federal Trade Commission Act.  *See also* Concurring Opinion of Commissioner Leibowitz at p. 1, which observed that the Commission found that Rambus's conduct met all of the requisite elements of a Section 2 violation, and that the Complaint Counsel did not litigate the matter as a pure Federal Trade Commission Act Section 5 violation.

ORDER STAYING PHASE III OF TRIAL PENDING FINAL ORDER OF FEDERAL TRADE COMMISSION
C-00-20905 RMW

*Water Prods.*, 258 F.3d at 1030-31 (Section 5 [of the Clayton Act] "makes available to a private litigant as prima facie evidence all matters respecting which said judgment or decree would be an estoppel between the defendant and the United States.") (internal quotations and citation omitted). As applied here, express findings by the Commission of violations of the antitrust laws could serve as estoppel as between Rambus and the United States, were the government to bring the action directly against Rambus. Thus, the application of prima facie weighting in Phase III to particular findings made by the Commission depends on whether such application would accord with the common law principles of estoppel.

The court is satisfied that there is sufficient potential that certain findings made by the Commission will have prima facie effect on Phase III to support its decision to stay Phase III. The court makes clear that for purposes of this order the court does not decide the questions of whether and which particular findings by the Commission are entitled to prima facie evidentiary value. *See Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 454 (1st Cir. 1963) (noting that "before a plaintiff can invoke the mantle of Section 5 [of the Clayton Act] he must successfully meet both the statutory requirements of estoppel as well as the generic evidentiary test of admissibility—relevancy"). Here, Hynix bears the burden of establishing the applicability of Section 5(a) of the Clayton Act to each finding by the Commission for which prima facie weighting is sought, including the effect of any difference in burdens of proof in the proceeding before the Commission. *See Pool Water Prods.*, 258 F.3d at 1033 ("It is up to the party seeking prima facie weight to establish that it has met the requirements of Section 5 [of the Clayton Act] for each issue as to which it seeks prima facie weight. Neither the district court nor the defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings."). Further, for purposes of this order, the court does not reach the question of whether collateral estoppel applies, as Hynix contends, to Hynix's unfair competition claim or equitable estoppel defense.

**ORDER**

For the foregoing reasons, the court orders that the Phase III trial is stayed until February 2, 2007 or the issuance of a Final Order of the Commission, whichever occurs first, on the condition

that (1) Hynix posts security satisfactory to the court that will ensure payment of the damages that were awarded to Rambus in Phase II, prejudgment interest on the Phase II award, and royalties on Hynix's SDRAM and DDR SDRAM sales from January 1, 2006 through February 2, 2007 at the rate of 1% for the SDRAM and 4.25% for the DDR SDRAM[8]; and (2) Hynix designates with specificity, within ninety days of the date of this order, any findings by the Commission that it contends should be accorded prima facie effect in Phase III (including the reasons supporting why prima facie weighting should be granted) and a motion for summary adjudication on any claims it is making in Phase III that it asserts are subject to summary adjudication as a result of the Commission's Opinion.

      The stay is conditioned upon Hynix's agreement to these conditions and the posting of the required security within ten days of the date of this order. The stay will not apply to any request for certification for interlocutory appeal, and appeal if certification is given, of the issues resolved in Phases I and II. A status conference is set for February 2, 2007 if a remedy has not yet been determined.

DATED:    8/22/2006

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

---

[8] As noted above, this reflects the rates the court found appropriate in its Order Granting Hynix's Motion for a New Trial on the Issue of Damages Unless Rambus Elects Remittitur of the Jury Award.

**THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WAS PROVIDED TO:**

**Counsel for plaintiff:**

Daniel J. Furniss
Theodore G. Brown, III
Jordan Trent Jones
Townsend & Townsend & Crew LLP
379 Lytton Ave
Palo Alto, CA 94301

Patrick Lynch
Kenneth R. O'Rourke
O'Melveny & Myers
400 So Hope St Ste 1060
Los Angeles, CA 90071-2899

Kenneth L. Nissly
Susan van Keulen
Geoffrey H. Yost
Thelen Reid & Priest LLP
225 West Santa Clara Street, 12th Floor
San Jose, CA 95113-1723

Allen Ruby
Ruby & Schofield
125 South Market Street, Suite 1001
San Jose, CA 95113-2285

**Counsel for defendant:**

Gregory Stone
Kelly M. Klaus
Catherine Augustson
Munger Tolles & Olson
355 So Grand Ave Ste 3500
Los Angeles, CA 90071-1560

Peter A. Detre
Carolyn Hoecker Luedtke
Munger Tolles & Olson
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907

Peter I Ostroff
Rollin A. Ransom
Michelle B. Goodman
V. Bryan Medlock, Jr.
Sidley Austin Brown & Wood
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010

Jeannine Yoo Sano
Pierre J. Hubert
Dewey Ballantine
1950 University Avenue, Suite 500
East Palo Alto, CA 94303

Date:    8/22/06              **SPT**
                     **Chambers of Judge Whyte**

ORDER STAYING PHASE III OF TRIAL PENDING FINAL ORDER OF FEDERAL TRADE COMMISSION
C-00-20905 RMW

10