**E-filed:** **11/26/07**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>RAMBUS INC.,<br><br>Defendant. | No. CV-00-20905 RMW<br><br>ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 6 ON PROSECUTION LACHES AND DENYING RAMBUS' MOTION *IN LIMINE* No. 3<br><br>**[Re Docket Nos. 2626, 2632]** |
| RAMBUS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P.,<br><br>Defendants. | No. C-05-02298 RMW<br><br>**[Re Docket Nos. 387, 395]** |

United States District Court
For the Northern District of California

| | |
|---|---|
| RAMBUS INC., | No. C-05-00334 RMW |
| Plaintiff, | |
| v. | **[Re Docket Nos. 540, 550]** |
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR MANUFACTURING AMERICA INC., | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P., | |
| NANYA TECHNOLOGY CORPORATION, NANYA TECHNOLOGY CORPORATION U.S.A., | |
| Defendants. | |
| RAMBUS INC., | No. C-06-00244 RMW |
| Plaintiff, | |
| v. | **[Re Docket Nos. 228, 237]** |
| MICRON TECHNOLOGY, INC., and MICRON SEMICONDUCTOR PRODUCTS, INC. | |
| Defendants. | |

This order addresses two motions related to prosecution laches. The Manufacturers[1] jointly oppose the motions. The court has reviewed the papers and considered the arguments of counsel heard on November 21, 2007. For the reasons set forth below, the court denies Rambus's motion for summary judgment on prosecution laches, except as to the Ware patents-in-suit. The court denies Rambus's motion *in limine* to exclude the testimony of Gerald Mossinghoff and R. Polk Wagner.

## I. ANALYSIS

---

[1] For the purposes of this order, "the Manufacturers" jointly refers to all of the Hynix, Samsung, Micron, and Nanya entities.

### A.     Equity Practice in the Patent Law Preventing Holdup

Commenting in the recent case of *eBay Inc. v. MercExchange, L.L.C.*, Chief Justice Roberts stressed the importance that the "long tradition of equity practice" has on the patent laws. 126 S. Ct. 1837, 1841 (2006) (Roberts, C.J., concurring). When it comes to discerning that practice and applying it to the facts of each case, he repeated that "a page of history is worth a volume of logic." *Id.* at 1842 (quoting *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921) (opinion for the Court by Holmes, J.)).

Equity practice in patent law has long been concerned with preventing a patent owner from using the patent's property right to expropriate another's investments made in reliance on the absence of patent rights. This principle was amply demonstrated in *Miller v. Bridgeport Brass Co.*, where the Supreme Court came down firmly against the abuse of the reissue process to broaden claims to cover existing industries. 104 U.S. 350 (1881). The Court explained,

> But by a curious misapplication of the law [the reissue process] has come to be principally resorted to for the purpose of enlarging and expanding patent claims. And the evils which have grown from the practice have assumed large proportions. Patents have been so expanded and idealized, years after their first issue, that hundreds and thousands of mechanics and manufactures, who had just reason to suppose that the field of action was open, have been obliged to discontinue their employments, or to pay an enormous tax for continuing them.

*Id.* at 354-55. After further lamenting how the process affects "every independent inventor" who relies on the prior narrow patent, the Court remarked that, "It will not do for the patentee to wait until other inventors have produced new forms of improvement, and then, with the new light thus acquired, under pretence of inadvertence and mistake, apply for such an enlargement of his claim as to make it embrace these new forms." *Id.* at 355. In holding the patent at issue unenforceable, the Court held that, "the rule of laches should be strictly applied; and no one should be relieved who has slept upon his rights, and has thus led the public to rely on the implied disclaimer involved in the terms of the original patent." *Id.* As it recommended, the Court strictly applied this version of laches to stamp out the abusive practice. *See Wollensak v. Reihar*, 115 U.S. 96, 100 (1885) (noting that "[t]his doctrine has been reiterated in many cases since, and at the present term has been reconsidered, and emphatically repeated as the settled law").

A more familiar application of the equitable principle of laches comes from *Lane & Bodley Co. v. Locke*, where an employee patented an invention and allowed his employer to use it for years without complaint. 150 U.S. 193 (1893). While this fact pattern may now more commonly be addressed under an implied license theory, the Court expressly declined to address a license theory of the case. *See id.* at 196-97. Instead, the Court considered the employee's behavior and held that:

> Courts of equity, it has often been said, will not assist one who has slept upon his rights, and shows no excuse for his laches in asserting them. The plaintiff's excuse in this instance, that he preferred for prudential reasons to receive a salary from the defendant rather than to demand a royalty, is entitled to a less favorable consideration by a court of equity than if his conduct had been that of mere inaction.

*Id.* at 201. In light of the patentee's financially-motivated delay, the Court reversed the lower court decree and ordered the case dismissed. *Id.*

The laches issues raised by the motions before the court deal with delay in prosecuting patent applications. The Supreme Court considered this context in a variety of cases, starting with *Woodbridge v. United States*. 263 U.S. 50 (1923) (Taft, C.J.). The prosecution laches case law has been well-summarized elsewhere, *see Symbol Techs., Inc. v. Lemelson Medical, Education & Research Foundation, L.P.*, 277 F.3d 1361, 1364-65 (Fed. Cir. 2002); *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1139, 1142-43 (E.D. Cal. 2002), but a few details bear repeating. The patentee in *Woodbridge* delayed issuance of his patent claims for over nine years because "it being only lately that any immediate opportunity of rendering it pecuniarily available has occurred." 263 U.S. at 51-53. The patentee also tried to amend the delayed application to cover inventions that had occurred while the application lay dormant. *Id.* at 53-54. As Chief Justice Taft made clear, it was the patentee's "designed delay" that forfeited his right to a patent. *Id.* at 56. To be clear, the Court explained:

> Many inventors were at work in the same field, and had made advances in the art, and the government had used them. When Woodbridge conceived that the time for him had come to assert his monopoly, he became aware of the fact that in his specifications and claims, as allowed, he had not covered the real advance made by his unconscious competitors, and that was the use in a rifled gun of a ring or sabot without projections to fit into the rifling of the bore, which because of the softness of the metal of the ring under the heat and pressure would do so without projections; and so 9 1/2 years after his patent had been allowed, but not issued, he applied for a change of specifications and claims, so that he might cover the patents of these

subsequent inventors.

*Id.* at 57.

The Federal Circuit's guidance in the field of prosecution laches is sparse, but in affirming the district court's finding of prosecution laches in *Symbol Technologies*, the court noted a few factors to guide the lower courts' equitable discretion. *See Symbol Techs., Inc. v. Lemelson Medical, Education & Research Foundation, L.P.*, 422 F.3d 1378, 1385-86 (Fed. Cir. 2005). The court noted that the doctrine should be used "sparingly" and "only in egregious cases of misuse of the statutory patent system." *Id.* at 1385. The court emphasized that various prosecution practices, such as filing divisional and continuation applications, are both legal and legitimate. *Id.* Nonetheless, the inquiry is bound up with the individual facts of each case, and even legitimate prosecution can trigger laches if the facts reveal a pattern of repeated delay. *Id.* at 1385-86 ("On the other hand, an examination of the totality of the circumstances, including the prosecution history of all of a series of related patents and overall delay in issuing claims, may trigger laches.").

This court's case law further illustrates the proper use of equitable discretion in the context of prosecution laches. Judge Walker noted that the reasonableness of a patentee's prosecution turns on whether their delay in issuing claims can be explained by legitimate considerations. *Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1155 (N.D. Cal. 2003). The first factor to place a prosecution laches claim in context is whether "the prosecution history of plaintiff's patents was typical of patents in that field or patents generally." *Id.* Various circumstances within the prosecution history can also explain the reasonableness of prosecution, such as whether there are any unexplained gaps, whether the plaintiff took any unusual steps to speed or delay prosecution, or whether the PTO unusually delayed the application process. *Id.* The inquiry is not limited to the confines of the prosecution file wrapper, however. In light of equity's concern with preventing patent holdup, factors external to prosecution also affect the inquiry. In particular, relevant factors also include whether the patentee "took any steps to limit public awareness of his pending applications or the inventions he sought to patent" or whether "any changes in plaintiff's prosecution of the application coincide with or directly follow evolutions in the field that relate to the claimed

invention."[2] *Id.* After holding a bench trial, Judge Walker concluded that the patentee had not unreasonably delayed in prosecuting his patents. *Reiffin v. Microsoft Corp.*, 281 F. Supp. 2d 1149 (N.D. Cal. 2003). The court's findings noted that "[t]he most troubling aspect of plaintiff's prosecution is the fact that changes in claim scope closely tracked external developments in the field. The correspondence between the invention(s) plaintiff claimed with the evolution of the field of computer science is highly suspicious and suggestive of opportunism." *Id.* at 1153. *accord Chiron*, 268 F. Supp. 2d at 1144. On the other hand, the patentee's efforts to publicize his invention militated against inferring that the patentee was trying to "ambush" the field. *See id.* Similar concerns about patent holdup motivated the Eastern District to deny summary judgment on prosecution laches in *Chiron Corp. v. Genentech, Inc. See* 268 F. Supp. 2d at 1144 ("Genentech argues that the reason for Chiron's delay was that it was waiting for Genentech or some other company to develop a lucrative product so that it could craft broader claims designed specifically to cover that product, and Chiron has not offered an alternative explanation.").

**B.     Rambus' Prosecution of its Family of Patents**

After reviewing these "pages of history," the court turns to the circumstances of the present case, drawing all inferences in favor of the Manufacturers as the non-movants on this summary judgment motion.

Rambus filed the original application giving rise to some of the patents-in-suit on April 18,

---

[2] The court is aware that the Federal Circuit has suggested that "there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application." *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988). This statement was made in the context of whether such acts could support a finding of intent to deceive the Patent Office. *Id.* The court believes this statement should not be understood to extend beyond that specific context, because whether a patentee has tried to expand his claims to cover other developments in a field has often been deemed relevant, as demonstrated by the Supreme Court cases discussed above. *See also Chiron*, 268 F. Supp. 2d at 1142-43 ("*Kingsdown* therefore does not preclude an alleged infringer from asserting these kind of circumstances as grounds for a prosecution laches defense.").

1990.[3] After an eleven-way restriction requirement, this application spawned an enormously complex prosecution history. *See* Mossinghoff Report, Ex. G. This resulted in fifteen patents that the Manufacturers argue were unreasonably delayed in their prosecution. These patents issued between nine and fourteen years after the original application was filed.[4] Taken singly, the delay in issuing any of these patents likely cannot support a finding of prosecution laches. *See Symbol Techs.*, 422 F.3d at 1385-86. Taken together, long delays in issuing entire families of patents can raise the specter of prosecution laches. *Id.* In this case, some evidence suggests that the patents-in-suit took longer to issue than 99.9% of similar patents. *See generally* Mossinghoff Report, at 48-49.

Drawing all inferences in favor of the non-movants, the voluminous record developing in these cases further raises genuine issues of material fact regarding prosecution laches that prevent this court from entering summary judgment. While all of these claims were being prosecuted, Rambus had disclosed to JEDEC an issued patent with the same specification but without the claims covering the technologies at issue in this case. This disclosure raises reliance concerns similar to those articulated by the Court in *Miller*. *See* 104 U.S. at 344-45.

Evidence also suggests that Rambus repeatedly delayed issuing its patents or informing others about them until the DRAM industry committed to making infringing products. For example, Rambus was possibly drafting claims to cover features of SDRAM in 1992 or 1993. *See, e.g.,* Hersey Decl., Exs. 19 (internal Rambus email detailing claims directed at DRAM it wished to file); 20 (attorney notes on claims directed at programmable latency and PLL technologies); 21 (internal Rambus email discussing claims to cover DRAM); Raz Decl., Ex. 4 (Steinberg email from 2001

---

[3] The Manufacturers' experts do not address the two Ware patents, U.S. Pat. Nos. 6,493,789 and 6,496,897, at issue in this case. The Manufacturers do not appear to oppose Rambus' motion with respect to these two patents. At oral argument, counsel for the Manufacturers conceded that their prosecution laches allegations do not extend to the Ware patents.

[4] Specifically, the patents accused of being unreasonably delayed are U.S. Patent Nos. 6,182,184 (issued Jan. 30, 2001); 6,266,285 (issued Jul. 24, 2001); 6,314,051 (issued Nov. 6, 2001); 6,546,446 (issued Apr. 8, 2003); 6,584,037 (issued Jul. 24, 2003); 6,697,295 (issued Feb. 24, 2004); 6,715,020 (issued Mar. 30, 2004); 6,751,696 (issued Jun. 15, 2004); 6,324,120 (issued Nov. 27, 2001); 6,426,916 (issued Jul. 30, 2002); 6,452,863 (issued Sept. 17, 2002); 5,915,105 (issued Jun. 22, 1999); 6,034,918 (issued Mar. 7, 2000); 6,038,195 (issued Mar. 14, 2000); and 6,378,020 (issued Apr. 23, 2002). *See* Opp. at 2.

suggesting Rambus was trying to patent SDRAM technologies in 1992 and 1993).  Despite having begun drafting claims against SDRAM in 1992 or 1993, Rambus may have still been filing and prosecuting such claims in late 1998.  *See* Hersey Decl. Ex. 57 at HTX 128.002.  Rambus also once ordered its prosecutors to "hold on patent issuances."  Raz Decl., Ex. 1.

Internal Rambus documents also strongly suggest that Rambus was drafting its claims to cover technologies as they developed.  *See*, *e.g.*, Hersey Decl., Ex. 28 (internal email stating "if it is possible to salvage and get anything that helps us get a claim to shoot synclink in the head, we should do it and file what ever divisional is necessary"); Ex. 57 at HTX 128.002 (internal update from 1998 noting that prosecution strategy is to file continuations on 4/18/90 applications to "cover SDRAM, DDR, SLDRAM, any and all forms of synchronous memory," new patents could be "issued within one year," and to otherwise "continue in stealth mode during '99").

Unlike the patentee in *Reiffin*, evidence suggests that Rambus actively worked to prevent others from learning about its patents.  *See, e.g.,* Hersey Decl., Ex. 50 (internal email instructing "do \*NOT\* tell customers/partners that we feel DDR may infringe – our leverage is better to wait); Ex. 57 at HTX 128.003 (internal update arguing "[Rambus] should not assert patents against Direct partners until ramp reaches a point of no return"); Raz Decl., Ex. 15 (deposition of Joel Karp discussing how Rambus named its IP strategy "Lexington" in reference to the "shot heard 'round the world").

Rambus' opposition argues that Rambus lacked the resources to simultaneously apply for patents on every claim it desired.  Opp. at 14.  Indeed, various patents issued from the original 1990 application prior to the patents-in-suit.  This does not, however, require entering summary judgment in Rambus' favor.  On the contrary, a possible inference from such evidence is that Rambus prosecuted unrelated or weak claims to keep the original application alive while waiting for the DRAM industry to "lock in" to the JEDEC SDRAM standard.  One could infer that only after lock in occurred did Rambus begin earnestly prosecuting the claims it now asserts.  If the evidence at trial demonstrates such a plan, it may qualify as a "designed delay" to enhance the financial worth of the patents, which can support a finding of laches.

Considering the totality of these circumstances, the court cannot say that there is no genuine issue of material fact regarding whether Rambus unreasonably delayed in prosecuting this family of patents. Accordingly, Rambus' motion for summary judgment on prosecution laches is denied.

**C.     Rambus' Motion to Exclude the Testimony of Wagner and Mossinghoff**

Rambus also moves to exclude the testimony of R. Polk Wagner and Gerald Mossinghoff under Rule 702. Rambus argues that because Prof. Wagner's report focuses only on pendency, it is not helpful to the trier of fact. The court agrees that mere length of prosecution is not sufficient alone to support a finding of prosecution laches. *Symbol Techs.*, 422 F.3d at 1385 (noting that "there are no strict time limitations" on prosecution laches). However, the length of prosecution, especially compared to similar patents, is relevant to the inquiry. *Id.* at 1386; *Reiffin*, 281 F. Supp. 2d at 1152. Accordingly, Rambus' argument that "there is no causal link between the proffered expert testimony . . . and the issue for which it is offered" is not persuasive.

Rambus next identifies a variety of errors or biases in Prof. Wagner's method of constructing his data set on prosecution pendency. These alleged errors go to the weight of Prof. Wagner's testimony, but are not so egregious as to render his testimony wholly unreliable. The court also notes that Prof. Wagner's testimony will presumably be presented to the bench, not a jury, because prosecution laches is an equitable defense.

Although a close call, for similar reasons, the court does not see the need to exercise its "gatekeeper" function with respect to Mr. Mossinghoff's conclusions about the reasonableness of Rambus' prosecution. As discussed above, prosecution laches is an equitable doctrine that can encompass a variety of circumstances. Accordingly, Mr. Mossinghoff's conclusions are not based on "markedly incorrect law." Furthermore, the court will not be prejudiced, nor have its "province invaded" if Mr. Mossinghoff's testimony touches on the substance of the patent law and prosecution laches in pointing out areas of delay.

On the whole, the court believes Wagner and Mossinghoff's testimony to be marginally probative, though it may be of some help to the court. Regarding Mr. Mossinghoff's report, the court will only hear testimony dealing with procedural aspects of prosecution history, and not his

opinion on whether any delay was unreasonable. With those limits, Rambus' motion to exclude the testimony of Prof. R. Polk Wagner and Gerald Mossinghoff is denied.

## II.  ORDER

For the foregoing reasons, the court denies Rambus's motion for summary judgment on prosecution laches, except as to the Ware patents-in-suit. The court denies Rambus's motion *in limine* to exclude the testimony of Gerald Mossinghoff and R. Polk Wagner.

DATED:   11/26/07

/s/ Ronald M. Whyte

RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 6 ON PROSECUTION LACHES AND DENYING RAMBUS' MOTION IN LIMINE No. 3 —C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                           10

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Craig N. Tolliver | ctolliver@mckoolsmith.com |
| Pierre J. Hubert | phubert@mckoolsmith.com |
| Brian K. Erickson | berickson@dbllp.com, |
| David C. Vondle | dvondle@akingump.com |
| Gregory P. Stone | gregory.stone@mto.com |
| Carolyn Hoecker Luedtke | luedtkech@mto.com |
| Peter A. Detre | detrepa@mto.com |
| Burton Alexander Gross | burton.gross@mto.com, |
| Steven McCall Perry | steven.perry@mto.com |
| Jeannine Y. Sano | sanoj@howrey.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Matthew D. Powers | matthew.powers@weil.com |
| David J. Healey | david.healey@weil.com |
| Edward R. Reines | Edward.Reines@weil.com |
| John D Beynon | john.beynon@weil.com |
| Jared Bobrow | jared.bobrow@weil.com |
| Leeron Kalay | leeron.kalay@weil.com |
| Theodore G. Brown, III | tgbrown@townsend.com |
| Daniel J. Furniss | djfurniss@townsend.com |
| Jordan Trent Jones | jtjones@townsend.com |
| Kenneth L. Nissly | kennissly@thelenreid.com |
| Geoffrey H. Yost | gyost@thelenreid.com |
| Susan Gregory van Keulen | svankeulen@thelenreid.com |
| Patrick Lynch | plynch@omm.com |
| Jason Sheffield Angell | jangell@orrick.com |
| Vickie L. Feeman | vfeeman@orrick.com |
| Mark Shean | mshean@orrick.com |
| Kai Tseng | hlee@orrick.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   11/26/07                                         TSF
                                                    **Chambers of Judge Whyte**

ORDER DENYING RAMBUS' MOTION FOR SUMMARY JUDGMENT No. 6 ON PROSECUTION LACHES AND DENYING RAMBUS' MOTION IN LIMINE No. 3 —C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF                                                                11