**E-filed:** 1/9/2008

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>RAMBUS INC.,<br><br>Defendant. | No. C-00-20905 RMW<br><br>ORDER DENYING MANUFACTURERS' MOTION FOR *PRIMA FACIE* EFFECT AND DENYING MANUFACTURERS' MOTION FOR COLLATERAL ESTOPPEL<br><br>**[Re Docket Nos. 2439, 2679]** |
| RAMBUS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P.,<br><br>Defendants. | No. C-05-02298 RMW<br><br>**[Re Docket Nos. [161, 454]** |

| | |
|---|---|
| RAMBUS INC., | No. C-05-00334 RMW |
| Plaintiff, | **[Re Docket Nos. 224, 225, 580]** |
| v. | |
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR MANUFACTURING AMERICA INC., | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P., | |
| NANYA TECHNOLOGY CORPORATION, NANYA TECHNOLOGY CORPORATION U.S.A., | |
| Defendants. | |
| RAMBUS INC., | No. C-06-00244 RMW |
| Plaintiff, | **[Re Docket Nos. 96, 97, 252]** |
| v. | |
| MICRON TECHNOLOGY, INC., and MICRON SEMICONDUCTOR PRODUCTS, INC. | |
| Defendants. | |

This order addresses two motions and reconsiders a portion of a prior order which all deal with the effect of the Federal Trade Commission's ("FTC") August 2, 2006 opinion in *In the Matter of Rambus Inc.*, Docket No. 9302 ("*FTC Rambus*") on the proceedings before this court.[1]

---

[1] The FTC's August 2, 2006 opinion was not final at the time it issued. On February 5, 2007 the FTC issued its opinion on remedy and its final cease and desist order against Rambus. *See* FTC Opinion and Final Order, *available at*, http://www.ftc.gov/os/adjpro/d9302/index.shtm. Rambus moved for reconsideration of the final order and for a stay pending appeal of the final order. On March 16, 2007 the FTC issued an order and opinion granting in part and denying in part Rambus's motion to stay the order pending appeal. *See id.* On April 27, 2007 the FTC issued an order and opinion granting in part and denying in part Rambus's motion for reconsideration of the final order. *See id.*

On August 22, 2006, this court issued an order staying Phase III of the C-00-20905 case against Hynix. Order Staying Phase III of Trial, Docket No. 2394, C-00-20905 RMW ("Stay Order"). In that order the court concluded that under Section 5(a) of the Clayton Act "there is sufficient potential that certain findings made by the Commission will have *prima facie* effect on Phase III to support [a] decision to stay Phase III." Stay Order at 8:9-10. The court further ordered, *inter alia*, that Hynix "designate[] with specificity, within ninety days of the date of this order, any findings by the Commission that it contends should be accorded *prima facie* effect in Phase III (including the reasons supporting why *prima facie* weighting should be granted)." *Id.* at 9:4-7. On January 30, 2007 the court orally denied Rambus's request that the court reconsider its interpretation of section 5(a) of the Clayton Act. *See* Docket No. 2491, C-00-20905.

On October 16, 2006, Hynix filed a motion requesting that the court grant *prima facie* evidentiary weighting pursuant to section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), to eleven findings made by the FTC. Thereafter, the court consolidated the above-captioned cases and granted Micron, Nanya, and Samsung's request to file a supplemental brief regarding *prima facie* evidentiary weighting of the FTC's August 2, 2006 opinion. On June 28, 2007 Micron, Nanya, and Samsung (together with Hynix "the Manufacturers") filed a supplemental motion.

On October 18, 2007, while the motions seeking *prima facie* weighting were under submission, the Manufacturers[2] moved for an order that certain findings in *FTC Rambus* are entitled to collateral estoppel effect on the Manufacturers' claims for fraud and their defenses of equitable estoppel. Rambus opposes the Manufacturers' motions and submits that the FTC findings in *FTC Rambus* should not be admissible in Phase III for any purpose.

The court held a hearing on the collateral estoppel motion on November 21, 2007. Prior to the hearing, the court shared with counsel a tentative ruling reconsidering that portion of the court's August 22, 2006 Stay Order dealing with *prima facie* weighting. At the hearing, the parties presented their views on *prima face* weighting and collateral estoppel. The court granted the parties leave to file additional briefing regarding *prima facie* weighting. The court has considered this further briefing, and for the reasons set forth below, the court: (1) vacates that portion of the Stay

Order holding that findings of the FTC in *FTC Rambus* could be given *prima facie* weighting in Phase III and enters an order precluding the giving of *prima facie* weighting to any FTC finding; (2) denies the Manufacturers' motion for *prima facie* weighting; and (3) denies the Manufacturers' motion that seeks to preclude Rambus from contesting various elements of the Manufacturers' fraud claims and equitable estoppel defenses.

## I. ANALYSIS

### A. *Prima Facie* Weighting in Private Antitrust Proceedings

Section 5(a) of the Clayton Act provides that:

> A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken. Nothing contained in this section shall be construed to impose any limitation on the application of collateral estoppel, except that, in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws or under section 45 of this title which could give rise to a claim for relief under the antitrust laws.

15 U.S.C. § 16(a). The Manufacturers argue that this section entitles them to introduce at trial multiple findings from the FTC's *Rambus* opinion as *prima facie* evidence in support of their antitrust claims. Despite its prior conclusion, the court, upon further research and consideration finds that Section 5(a) does not allow this.

Section 5(a) accords *prima facie* weight to a final judgment brought "under the antitrust laws." The Clayton Act specifically defines the phrase "antitrust laws." *See* 15 U.S.C. § 12(a). The definition includes the Sherman Act and the Clayton Act, but it does not list the Federal Trade Commission Act (15 U.S.C. §§ 41, *et seq*). This exclusion accords with the final sentence of section 5(a), which distinguishes "the antitrust laws" from "section 45."[2]

The Federal Trade Commission brought its proceeding against Rambus pursuant to Section

---

[2] Section 45 is the provision that outlaws unfair methods of competition and empowers the Federal Trade Commission to prevent them. *See* 15 U.S.C. § 45(a)(1)-(a)(2).

45, which is also known as Section 5 of the FTC Act. *See In re Rambus*, Administrative Complaint, Docket No. 9302, at 1, 31-33 (FTC June 18, 2002).[3] The FTC's final order found that "Rambus's acts of deception constituted exclusionary conduct under Section 2 of the Sherman Act, and that Rambus unlawfully monopolized the markets for four technologies incorporated into the JEDEC standards in violation of Section 5 of the FTC Act." *In re Rambus*, Opinion of the Commission, Docket No. 9302, at 3 (FTC August 2, 2006). Section 5 of the FTC Act incorporates various standards from the antitrust laws and also forbids practices the FTC deems against public policy for other reasons. *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 454 (1986). Although the FTC found that Rambus violated the Sherman Act, the FTC's order was in a proceeding under Section 5 of the FTC Act.

Because an administrative action brought to enforce Section 5 of the FTC Act is not a proceeding "under the antitrust laws" as defined in Section 2 of the Clayton Act, an opinion of the FTC cannot receive *prima facie* weighting. This interpretation squares with a plain reading of Section 5. It also squares with the private opinions of FTC attorneys and the American Bar Association's section on Antitrust Law. *See* Alden F. Abbott & Theodore F. Gebhard, *Standard-Setting Disclosure Policies: Evaluating Antitrust Concerns in Light of Rambus*, 16-SUM Antitrust 29, 34 (2002); *Report of the American Bar Association Section of Antitrust Law Special Committee to Study the Role of the Federal Trade Commission*, 58 Antitrust L.J. 43, 62 (1989) ("The FTC is a less dangerous forum than the federal courts for testing legal theories and considering their application in difficult cases since the FTC's sanctions are civil and prospective and its decisions cannot be used as prima facie evidence to support treble damages awards."). Furthermore, the Ninth Circuit's prior decision in *Pool Water Products v. Olin Corp.* suggests that "*prima facie* weight is given only to violations of the 'antitrust laws' as defined by the Clayton Act [and this] does not include violations of the FTC Act," although the court specifically noted that it was not addressing

---

[3] Specifically, the Administrative Complaint begins, "Pursuant to the provisions of the Federal Trade Commission Act, and by virtue of the authority vested in it by said Act, the [FTC], having reason to believe that [Rambus] has violated Section 5 of the Federal Trade Commission ("FTC") Act, as amended, 15 U.S.C. § 45, and it appearing to the Commission that a proceeding in respect thereof would be in the public interest, hereby issues its complaint[.]"

whether the FTC's Section 5 enforcement actions are proceedings under the "antitrust laws" because the parties did not contest the issue. 258 F.3d 1024, 1032 & fn. 4 (9th Cir. 2001). Finally, this is the same interpretation of section 5(a) that the Southern District of New York reached in identical circumstances. *In re Antibiotic Antitrust Actions*, 333 F. Supp. 317, 322-23 (S.D.N.Y. 1971) (collecting and distinguishing cases applying section 5(a) to FTC decisions based on whether the FTC's action was brought under the FTC Act or under the Clayton Act).

A second textual basis for denying *prima facie* weighting reinforces this interpretation. Section 5(a) of the Clayton Act permits *prima facie* weighting "as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto." 15 U.S.C. § 16(a). This provision limits *prima facie* weighting to those findings that the defendant would be precluded from relitigating in later proceedings with the government. *Pool Water Products*, 258 F.3d at 1030-31. Section 5(a) further notes that it imposes no limits on the doctrine of collateral estoppel, but that "in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws or under section 45 of this title which could give rise to a claim for relief under the antitrust laws." 15 U.S.C. § 16(a).

While convoluted, the meaning of section 5(a) becomes clear when its language is unraveled. In later proceedings brought under the antitrust laws, no finding made by the FTC (under either the antitrust laws or section 45) may receive collateral estoppel effect. This provision applies regardless of who brings suit, including the government. To be clear, the government cannot win before the FTC and then use the FTC's findings to preclude the defendant in a later action. The last sentence of section 5(a) forbids it. Because the government cannot receive collateral estoppel effect for FTC findings,[4] the first sentence of section 5(a) also precludes a private antitrust plaintiff from according *prima facie* weight to the FTC's findings.

---

[4] The Manufacturers point out that the Supreme Court favors applying preclusion to administrative orders. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). That presumption evaporates, however, where Congress intends to prevent an administrative decision from having preclusive effect. *Id.* at 108-09. The text of this section of the Clayton Act demonstrates such an intent with respect to the findings of the FTC in proceedings under the antitrust laws.

The court acknowledges that it previously concluded that applying *prima facie* weighting to the FTC's findings appeared consistent with a Congressional intent to ease the burdens of litigation for injured private parties. *See* Stay Order at 5:7-6:2 (citing *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951)). However, upon further analysis and reflection, the court now believes that the language of Section 5(a) precludes affording *prima facie* weighting to FTC findings. With respect to the policy behind section 5(a), the court previously failed to give sufficient consideration to the difference between according *prima facie* weight to criminal proceedings brought by the Department of Justice in an Article III court (as in *Emich*, 340 U.S. at 559) and civil administrative proceedings brought before the FTC. Aside from the differing burdens of proof, the potential unfairness of affording *prima facie* weighting is exacerbated by the FTC's lack of independence, given the fact that the FTC essentially acts as both the complainant and decision maker. An independent decision maker is particularly important when the administrative goals of the FTC in a particular area, here the setting of policies regarding disclosures to standard setting organizations, is at issue. *Cf. In re House of Lord's, Inc.*, 69 F.T.C. 44, 1966 WL 88206 (1966) (Elman, Comm'r, dissenting).

In their further briefing, Micron and Nanya suggest that section 5(a) is ambiguous and that the legislative history supports their interpretation. The court finds the statute convoluted, but not ambiguous. Even if the court were to consider the legislative history behind section 5(a), the court is not convinced the full breadth of material supports Nanya and Micron's interpretation.

For the above reasons, the court hereby vacates that portion of the Stay Order holding that findings of the FTC in *FTC Rambus* could be given *prima facie* weighting in Phase III and enters an order precluding the giving of *prima facie* weighting to any FTC finding.

### B. Collateral Estoppel Effect

#### 1. Fraud Claims

In addition to their antitrust claims, the Manufacturers have alleged a variety of other claims against Rambus. With respect to their fraud claims and equitable estoppel defenses, the Manufacturers ask the court to preclude Rambus from contesting various findings of the FTC.

As a preliminary matter, courts favor applying preclusion to at least some types of final agency decisions. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). Courts presume that Congress legislates with the expectation that principles of preclusion apply to an administrative scheme unless Congress demonstrates an opposite intent. *Id.* at 108. Rambus argues that Section 5(a) of the Clayton Act demonstrates such an intent.

As previously discussed, Section 5(a) explicitly disclaims any effect on the doctrine of collateral estoppel, "except that, in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws or under section 45 of this title which could give rise to a claim for relief under the antitrust laws." 15 U.S.C. § 16(a). The court has previously held that, "'any action or proceeding under the antitrust laws' as used in Section 5(a) means all claims that are asserted under the antitrust laws or that are based upon essentially the same factual predicate." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2007 WL 2814654, at *5 (N.D. Cal. 2007). This means that Section 5(a) only bars the use of FTC findings in "claims brought under the antitrust laws including claims that are based upon [sic] same nucleus of facts." *Id.* "It does not include unrelated claims or defenses in a consolidated action." *Id.*

Turning to the present case, the first element of section 5(a) is met. The Manufacturers (other than Samsung) allege that Rambus has violated section 2 of the Sherman Act. Accordingly, section 5(a) prevents the court from according preclusive effect to any FTC finding that satisfies the second element of section 5(a), i.e., that "could give rise to a claim for relief under the antitrust laws."

The Manufacturers request collateral estoppel effect for a variety of FTC findings. The first group of findings would establish Rambus's allegedly deceptive course of conduct, which the Manufacturers argue is relevant to their fraud claims and equitable estoppel defenses:

> Finding 1: JEDEC's policies and practices, considered as a whole, gave JEDEC's members reason to believe the standard-setting process would be cooperative and free from deceptive conduct. Op. at 52.
>
> Finding 2: JEDEC's policies (fairly read) and practices, as well as the actions of JEDEC participants, provide a basis for the expectation that JEDEC's standard

setting activity would be conducted cooperatively and that members would not try to distort the process by acting deceptively with respect to the patents they possessed or expected to possess. Op. at 66.

Finding 3: JEDEC presented the type of consensus-oriented environment in which deception is most likely to contribute to competitive harm. Op. at 66.

Finding 4: JEDEC's members expected disclosure of both patents and patent applications that might be applicable to the work JEDEC was undertaking, if the patents ever were going to be enforced against JEDEC-compliant products. Op. at 66, 53.

Mot. at 8 (cites in quotation are to the FTC's *Rambus* opinion). Each of these findings are on issues that are also relevant to the Manufacturers' antitrust claims. The Manufacturers conceded as much when they defined their antitrust claims in the Joint Case Management Statement, filed on July 31, 2007:

| Claim: | Hynix[5] | Micron[6] | Nanya[7] |
|---|---|---|---|
| Monopolization / Attempted Monopolization | Claim arises out of Rambus's anticompetitive conduct at JEDEC; the continuing exercise of its unlawful monopoly and deception outside of JEDEC; . . . | This arises, without limitation, out of Rambus's anticompetitive conduct at JEDEC; the continuing exercises of its unlawful monopoly and deception outside of JEDEC . . . | This claim arises, without limitation, out of Rambus's anticompetitive conduct at JEDEC; the continuing exercises of its unlawful monopoly and deception outside of JEDEC . . . |
| Fraud | Claim arises out of Rambus's misrepresentations and omissions inside and outside of JEDEC . . . | This arises, without limitation, out of Rambus's misrepresentations and omissions at JEDEC . . . | This claim arises, without limitation, from Rambus's omissions and misrepresentations at and outside of JEDEC . . . |
| Equitable Estoppel / Estoppel Related to JEDEC | Defense arises out of Rambus's deception of the industry as to the scope of its proprietary technology . . . | This arises, without limitation, out of Rambus's deception of the industry by virtue of its representations, partial disclosures, and failures to disclose . . . | Defense arises out of Rambus's conduct during and after its participation in JEDEC meetings. |

Because each of the findings are also relevant to the Manufacturers' antitrust claims, section 5(a)

---

[5] C-05-00334 RMW, Docket No. 295, Attachment 1.

[6] C-05-00334 RMW, Docket No. 295, Attachment 2.

[7] C-05-00334 RMW, Docket No. 295, Attachment 3.

forbids the court from granting collateral estoppel effect to them.

The second group of findings that the Manufacturers propose according preclusive effect further establish Rambus's allegedly fraudulent conduct:

> Finding 5: Rambus engaged in a course of deceptive conduct before JEDEC, which included selective omissions and outright misrepresentations relating to its intellectual property with respect to the four technologies at issue before the FTC: CAS latency, programmable burst length, data acceleration technology, and onchip PLL/DLL technology ("the technologies"). Op. at 69, 9-12.
>
> Finding 6: Rambus concealed its patent applications, patents, and evolving patent claims as to the technologies until after JEDEC had adopted its SDRAM standard. Op. at 37, 66.
>
> Finding 7: Rambus concealed its patent applications, patents, and evolving patent claims as to the technologies until after JEDEC had adopted its DDR SDRAM standard. Op. at 37, 66.
>
> Finding 8: Rambus, through its participation in JEDEC, gained information about the pending standard(s), and then amended its patent applications in an effort to ensure that its patent portfolio would cover the ultimate standard. Op. at 4, 46.
>
> Finding 9: Regarding Rambus's two claimed instances where it allegedly gave notice to JEDEC of its patents and patent applications in response to questions (May 1992 and May 1995), Rambus's responses did not give notice, but were evasive and misleading. Op. at 48.
>
> Finding 10: On June 17, 1996, Rambus sent a resignation letter to JEDEC that did not disclose relevant patents and applications, even though it appeared to disclose relevant patents. Op. at 46.
>
> Finding 11: After resigning from JEDEC, Rambus continued to deceive JEDEC and its members. Op. at 46 n. 251.

Mot. at 9-10. While establishing the Manufacturers' fraud and estoppel claims, these findings are also highly relevant to the Manufacturers' antitrust claims. Because this is an action or proceeding under the antitrust laws and because these findings could give rise to a claim of relief under the antitrust laws, section 5(a) bars the application of collateral estoppel to these findings.

The Manufacturers next request that the court prevent Rambus from litigating "Finding 12: Rambus committed its deceptive conduct knowingly and willfully and with the intent to deceive JEDEC members. Op. at 30, 53, 68." Mot. at 12. While Rambus's intent to deceive is relevant to the Manufacturers' fraud and estoppel claims, it is also highly relevant to the Manufacturers' attempted monopolization claim. Because this is a finding that could give rise to a claim under the antitrust

laws, it cannot receive preclusive effect.

The final set of findings the Manufacturers wish to bar Rambus from contesting "in the context of Manufacturers' fraud claims and equitable estoppel defenses" relate to "causation, inevitability, and lock-in":

> Finding 13: But for Rambus's course of deceptive conduct, JEDEC either would have excluded Rambus's claimed technologies from the JEDEC SDRAM and DDR SDRAM standards, or would have demanded reasonable and non-discriminatory license terms. Op. at 68, 74.
>
> Finding 14: Alternative technologies were available when JEDEC chose the technologies at issue and could have been substituted for the technologies had Rambus disclosed its patent position. Op. at 76.
>
> Finding 15: JEDEC members gave these alternatives serious consideration. Op. at 76.
>
> Finding 16: The evidence does not establish that the technologies incorporated by JEDEC were superior to these alternative technologies on a cost/performance basis. Op. at 82.
>
> Finding 17: Rambus concealed its patents and patent applications until after the standards were adopted and the market was locked into the SDRAM and DDR SDRAM standards by 2000. Op. at 4, 37, 99.
>
> Finding 18: High direct switching costs, combined with significant delays from revising standards and reworking products, rendered infeasible a change in SDRAM and DDR SDRAM to avoid Rambus's patented technologies in 2000. Op. at 107.

Mot. at 13-15. While these findings could all be relevant to establishing the Manufacturers' "actual but unquantifiable" fraud damages, they seem more relevant to establishing the market definitions and market power elements of the Manufacturer's antitrust claims. The resulting prejudice from according preclusive effect to these findings "in the context of the fraud claims and estoppel defenses" while still allowing the underlying issues to be litigated with respect to the antitrust claims would result in the prejudice that Section 5(a) seeks to prevent.

Accordingly, the court denies the Manufacturers' motion for collateral estoppel because section 5(a) expressly prohibits according preclusive weight to these FTC findings in an antitrust proceeding.

### 2.  **Equitable Estoppel Defense**

The Manufacturers' equitable defenses are not asserted in actions brought in "an action or

proceeding brought under the antitrust laws." The defenses are asserted to infringement claims in an action or proceeding brought under the patent laws. Nevertheless, sound reasons support the court's exercising its discretion to deny application of collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). In *Parklane*, the Supreme Court recognized that a wide variety of reasons could justify denying preclusive effect. *Id.*; *Western Oil and Gas Ass'n v. E.P.A.*, 633 F.2d 803, 809-10 (9th Cir. 1980) (noting that courts had differed on the legality of the defendant's conduct, and that "[t]he circumstances of each case must provide the touchstone for decision"). In this case, multiple factors counsel against applying collateral estoppel. First, as noted earlier, the FTC findings were not made in the independent forum of an Article III court. The Supreme Court's *Parklane* opinion suggests that offensive collateral estoppel may be unfair "where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Id.* at 331 & n.15; *see also id.* at 351-54 (Rehnquist, J., dissenting). Then-Justice Rehnquist argued that the difference between a jury trial and a bench trial counsels against imposing offensive collateral estoppel. The difference between the two litigation forums here is even more striking. Second, the various findings the Manufacturers request estopping Rambus from contesting will have to be litigated to establish the Manufacturers' antitrust claims. No trial time would be saved. Instead, according collateral estoppel effect would be highly prejudicial and "substantially distort the decision of the issues that remain open." *See generally* Wright, Miller & Cooper, Federal Practice and Procedure § 4465, at 738-39 (2d ed. 2002). Third, the same issues that will be tried at the January 29 trial have generated a broad spectrum of responses from those that have considered them. The Supreme Court has noted that "[a]llowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane*, 439 U.S. at 330. The full Commission of the FTC, which issued the opinion the Manufacturers wish to accord preclusive effect to, had to reverse the administrative law judge that heard the evidence and ruled in Rambus's favor. *See FTC Rambus*, at 15-16 (noting various ALJ findings in Rambus's favor and that Complaint Counsel "challenge[d] virtually all of the ALJ's rulings and ask[ed] that the Initial

Decision be set aside in its entirety"). Considered together, these factors counsel against according collateral estoppel effect to the FTC's findings with respect to the Manufacturers' equitable estoppel defenses.

## II. ORDER

For the foregoing reasons, the court: (1) vacates that portion of the Stay Order holding that findings of the FTC in *FTC Rambus* could be given *prima facie* weighting in Phase III and enters an order precluding the giving of *prima facie* weighting to any FTC finding; (2) denies the Manufacturers' motion for *prima facie* weighting; and (3) denies the Manufacturers' motion that seeks to preclude Rambus from contesting various elements of the Manufacturers' fraud claims and equitable estoppel defenses.

DATED:   1/9/2008

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Craig N. Tolliver | ctolliver@mckoolsmith.com |
| Pierre J. Hubert | phubert@mckoolsmith.com |
| Brian K. Erickson | berickson@dbllp.com, |
| David C. Vondle | dvondle@akingump.com |
| Gregory P. Stone | gregory.stone@mto.com |
| Carolyn Hoecker Luedtke | luedtkech@mto.com |
| Peter A. Detre | detrepa@mto.com |
| Burton Alexander Gross | burton.gross@mto.com, |
| Steven McCall Perry | steven.perry@mto.com |
| Jeannine Y. Sano | sanoj@howrey.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Matthew D. Powers | matthew.powers@weil.com |
| David J. Healey | david.healey@weil.com |
| Edward R. Reines | Edward.Reines@weil.com |
| John D Beynon | john.beynon@weil.com |
| Jared Bobrow | jared.bobrow@weil.com |
| Leeron Kalay | leeron.kalay@weil.com |
| Theodore G. Brown, III | tgbrown@townsend.com |
| Daniel J. Furniss | djfurniss@townsend.com |
| Jordan Trent Jones | jtjones@townsend.com |
| Kenneth L. Nissly | kennissly@thelenreid.com |
| Geoffrey H. Yost | gyost@thelenreid.com |
| Susan Gregory van Keulen | svankeulen@thelenreid.com |
| Patrick Lynch | plynch@omm.com |
| Jason Sheffield Angell | jangell@orrick.com |
| Vickie L. Feeman | vfeeman@orrick.com |
| Mark Shean | mshean@orrick.com |
| Kai Tseng | hlee@orrick.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 1/9/08

TSF
**Chambers of Judge Whyte**

ORDER DENYING MANUFACTURERS' MOTION FOR PRIMA FACIE EFFECT AND DENYING MANUFACTURERS' MOTION FOR COLLATERAL ESTOPPEL —C-00-20905; C-05-00334; C-05-02298; C-06-00244 RMW
TSF  14