1

2

3

4

5

6

7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10    SAN JOSE DIVISION

11

United States District Court
For the Northern District of California

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH, | PROPOSED PRELIMINARY JURY INSTRUCTIONS |
| Plaintiffs, | No. CV-00-20905 RMW |
| v. | |
| RAMBUS INC., | |
| Defendant. | |
| RAMBUS INC., | No. C-05-00334 RMW |
| Plaintiff, | |
| v. | |
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR MANUFACTURING AMERICA INC., | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P., | |

| | |
|---|---|
| 1 | |
| 2 | RAMBUS INC., |
| 3 | Plaintiff, |
| 4 | v. |
| 5 | MICRON TECHNOLOGY, INC., and MICRON SEMICONDUCTOR PRODUCTS, INC. |
| 6 | |
| 7 | Defendants. |

No. C-06-00244 RMW

Please see the attached proposed preliminary jury instructions. The court will discuss them at the pretrial conference on Tuesday morning. If you wish to file any written comments regarding the instructions, please do so by noon on Monday.

Please notice jury instruction no. 12 regarding the juror notebooks. The court asks counsel to meet and confer regarding items (2) and (3) and to submit a joint proposal for those items. The court envisions the glossary containing reminders of common acronyms (e.g., JEDEC, DRAM, EIA) and dictionary definitions of common technical terms (e.g., controller, CAS latency) to help increase juror comprehension.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PRELIMINARY JURY INSTRUCTION NO. 1

## Duty of Judge and Jury

Ladies and gentlemen: You are now the jury in this case. I want to take a few minutes to tell you something about your duties as jurors and my duties as judge. I also want to give you some instructions. At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations.

It is my duty to instruct you on the law. You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**PRELIMINARY JURY INSTRUCTION NO. 2**

**Patents — What a Patent Is and How One Is Obtained**

As I will explain in more detail, this case involves patents and conduct relating to those patent. I will now explain what a patent is and how one is obtained. Patents create property rights in inventions that are new, useful and nonobvious.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. A patent exists for a limited time only; they expire 20 years after they were applied for or 17 years from the date they issued.

To obtain a patent, one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a specification, which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are called the patent claims. When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as prior art. The examiner also will review prior art if it is submitted to the PTO by the applicant. In general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in

view of the prior art.

2        After the prior art search and examination of the application, the patent examiner then

3 informs the applicant in writing what the examiner has found and whether any claim is patentable,

4 and thus will be allowed.  If the examiner rejects the claims, the applicant then responds and

5 sometimes changes the claims or submits new claims. During this process, the patent applicant may

6 amend its claims prior to issuance of the patent. This process, which takes place only between the

7 examiner and the patent applicant, may go back and forth for some time until the examiner is

8 satisfied that the application and claims meet the requirements for a patent.  Until a patent is allowed

9 by the PTO, a patent applicant cannot know with certainty what scope of coverage the patent will

10 have.  All of the material pertaining to the application becomes available to the public after the date

11 when the patent issues.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

**PRELIMINARY JURY INSTRUCTION NO. 3**

**Summary of Contentions**

To help you follow the evidence, I will now give you a summary of the positions of the parties:

**Parties**

The parties bringing the claims in this case are Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd., Hynix Semiconductor Deutschland GmbH (collectively "Hynix"), Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively Micron") and Nanya Technology Corp. and Nanya Technology Corp. USA (collectively "Nanya"). Hynix, Micron and Nanya may be referred to in the course of this trial as "the Manufacturers." The party against whom the claims are brought is Rambus Inc. ("Rambus"). Hynix, Micron and Nanya are companies that manufacture a type of computer memory called dynamic random access memory or DRAM. Rambus is a company that develops technology for computer memory products and owns patents to those technologies.

**The Manufacturers' Contentions**

The Manufacturers claim that Rambus has obtained, or attempted to obtain, an unlawful monopoly in certain memory interface technologies and has made fraudulent misrepresentations to the Manufacturers. From January 1992 until June 1996 Rambus was a member of an organization called the Joint Electron Device Engineering Council ("JEDEC"). JEDEC is an organization which develops and publishes standards concerning the design and manufacture of electrical components that are used in computers and related products. Such standards enhance interoperability between different electrical components. Hynix and Micron were members of JEDEC during the same period that Rambus was and are still members today. Nanya was not a member of JEDEC during the period of time in which Rambus was a member.

The Manufacturers claim that members of JEDEC had a duty to disclose any patents, any pending patent applications and any intent they had to apply for patents that relate to standards being considered by JEDEC. The Manufacturers claim that this disclosure obligation existed so that standards could be developed that avoided infringing patents, if possible. The Manufacturers further

**United States District Court**
For the Northern District of California

claim that Rambus attended JEDEC meetings and learned what standards were being considered by JEDEC and then, without disclosing its intentions to JEDEC members, amended its patent applications to cover certain features that JEDEC was discussing for inclusion in the JEDEC DRAM standards. The Manufacturers also claim that JEDEC would have incorporated other technologies in the standards had they known of Rambus's intentions and that Rambus deliberately failed to tell the Manufacturers of its intentions until after the Manufacturers had invested substantial sums of money developing and manufacturing products that complied with the JEDEC standards. The Manufacturers claim they were at that point "locked in" to manufacturing products that infringe patents belonging to Rambus.

### Rambus's Contentions

Rambus denies that it violated any JEDEC rules, denies that it had any duty to disclose information about its patents or patent applications to JEDEC, denies that it obtained or attempted to obtain any unlawful monopoly, and denies that it made any misrepresentations to the Manufacturers. Rambus claims that it had proper and legitimate reasons for not disclosing information to JEDEC about its patent applications while the PTO was still reviewing those applications. Rambus further asserts that JEDEC members knew that Rambus was trying to get patents that would cover all of the inventions it believed had been made by Dr. Mike Farmwald and Dr. Mark Horowitz. Rambus also asserts that JEDEC members knew about and had access to a written description of all of those inventions. Rambus also claims that JEDEC members took certain of Rambus's inventions and put them in their products and that the Manufacturers now refuse to pay for using those inventions.

### Relief Sought If Manufacturers Win on Any of Their Claims

The Manufacturers are seeking two types of relief. The only monetary award that the Manufacturers are seeking is the attorneys' fees they claim they necessarily incurred as a result of the claimed antitrust violation by Rambus. If you decide that a Manufacturer has proven its antitrust claim, you then must determine whether that Manufacturer is entitled to attorneys' fees and, if so, the amount of such fees.

None of the Manufacturers is seeking any compensatory damages on its fraud claim but each does claim it is entitled to nominal damages (such as $1.00) and punitive damages to punish Rambus

for its alleged fraudulent conduct. If you decide that a Manufacturer has proven its fraud claim, you will be asked to determine whether that Manufacturer is entitled to nominal damages and punitive damages and, if entitled to punitive damages, how much. If a Manufacturer wins on its antitrust or fraud claims, that Manufacturer will also ask the court to bar the enforcement of Rambus's patents. It will then be up to me as the judge to determine whether Rambus should be barred from enforcing its patents or whether some other form of relief should be imposed.

I will now give you a brief overview of what each Manufacturer must prove to win on its claims. These instructions are merely to give you an overview of what must be proved in order for a Manufacturer to win; you will be given more detailed instructions after the evidence has been presented and those instructions will control your deliberations. The claims made by the Manufacturers are monopolization, attempted monopolization, and fraud. Micron also asserts an additional claim for negligent misrepresentation on which I will defer giving preliminary instructions on since the claim is a separate claim by Micron.

### Elements of a Claim of Monopolization

Each Manufacturer must prove that each of the following is more likely true than not true to win on its monopolization claim:

First, that the market alleged by the Manufacturer is a valid antitrust market;

Second, that Rambus possessed monopoly power in that market;

Third, that Rambus "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct;

Fourth, that the defendant's conduct occurred in or affected interstate or foreign commerce; and

Fifth, that the Manufacturer was injured in its business because of Rambus's anticompetitive conduct.

### Elements of a Claim of Attempted Monopolization

Each Manufacturer must prove that each of the following is more likely true than not true to win on its claim of attempted monopolization:

First, that Rambus engaged in anticompetitive conduct;

1    Second, that Rambus had a specific intent to achieve monopoly power in a relevant market;

2    Third, that there was a dangerous probability that Rambus would achieve its goal of

3 monopoly power in the relevant market;

4    Fourth, that Rambus's conduct occurred in or affected interstate commerce; and

5    Fifth, that the Manufacturer was injured in its business by Rambus's anticompetitive conduct.

6                            **Elements of a Claim of Fraud**

7    To win on its claim of fraud, each Manufacturer must prove that each of the following is

8 more likely true than not true:

9    First, that Rambus made a representation as to a past or existing material fact;

10    Second, that the representation was false;

11    Third, Rambus knew that the representation was false when made or made the representation

12 recklessly without knowing whether it was true or false;

13    Fourth, that Rambus made the representation with an intent to defraud the Manufacturer, that

14 is, it must have made the representation for the purpose of inducing the Manufacturer to rely upon it

15 and to act or to refrain from acting in reliance thereon;

16    Fifth, that the Manufacturer reasonably relied upon the representation;

17    Sixth, the Manufacturer was harmed; and

18    Seventh, that the Manufacturer's reliance on Rambus's representation was a substantial factor

19 in causing harm to the Manufacturer.

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**PRELIMINARY JURY INSTRUCTION NO. 4**

**Validity and Infringement of Rambus's Patents**

There is no issue in this case as to the validity of Rambus's patents. You are to assume that they are valid, in other words, that they cover inventions that are new, useful and nonobvious. You are also to assume that certain claims of Rambus's patents have been infringed by products produced by the Manufacturers that contain one or more of the following technologies: (1) programmable burst length, (2) programmable CAS latency, (3) programmable write latency, (4) on-chip DLL or PLL, (5) dual-edged clocking, and (6) auto-precharge. These technologies will be explained during the trial.

**PRELIMINARY INSTRUCTION NO. 5**

**What Is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

United States District Court

For the Northern District of California

**PRELIMINARY JURY INSTRUCTION NO. 6**

**What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

4. Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**PRELIMINARY JURY INSTRUCTION NO. 7**

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**PRELIMINARY JURY INSTRUCTION NO. 8**

**Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**PRELIMINARY JURY INSTRUCTION NO. 9**

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.  The opportunity and ability of the witness to see or hear or know the things testified to;

2.  The witness's memory;

3.  The witness's manner while testifying;

4.  The witness's interest in the outcome of the case and any bias or prejudice;

5.  Whether other evidence contradicted the witness's testimony;

6.  The reasonableness of the witness's testimony in light of all the evidence; and

7.  Any other factors that bear on believability.

**PRELIMINARY JURY INSTRUCTION NO. 10**

**Jury To Be Guided By Official English Translation/Interpretation**

The Korean and Mandarin languages may be used during this trial. The evidence you are to consider is only that provided through the official court interpreters or translators. Although some of you may know Korean and Mandarin, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation or translation. You must disregard any different meaning.

**Conduct of the Jury**

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own. If you do not understand a piece of testimony, you should submit a question. I will describe how to submit a question shortly.

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

United States District Court
For the Northern District of California

**PRELIMINARY JURY INSTRUCTION NO. 12**

**Juror Notebooks and Taking Notes**

You have been given juror notebooks. Your notebooks contain: (1) a copy of these preliminary instructions; (2) a list of the claim or claims of each of the Rambus patents that the Manufacturers assert, and Rambus denies, are being enforced in violation of the antitrust laws including: (a) the date of issuance of each of the patents, (b) each of the Manufacturer's products that infringes a particular claim and (c) the technological feature of each product that infringes; (3) a glossary of some technical terms that will be used during the trial; and (4) note paper if you wish to take notes to help you remember the evidence.

If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the courtroom or jury room. No one will read your notes, and they will be destroyed when the trial is over.

**PRELIMINARY INSTRUCTION NO. 13**

**Questions By Jurors**

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject. Your ability to ask questions is to help you understand the case.

**United States District Court**
For the Northern District of California

# PRELIMINARY JURY INSTRUCTION NO. 14

## Bench Conferences and Recesses

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**PRELIMINARY JURY INSTRUCTION NO. 15**

**Outline of Trial**

The trial proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The Manufacturers will then present evidence, and counsel for Rambus may cross-examine. Then Rambus may present evidence, and counsel for the Manufacturers may cross-examine. The Manufacturers, since they have the burden of proof, are given the opportunity to offer rebuttal evidence to Rambus's evidence and, if they do so, Rambus's counsel may cross-examine.

During the presentation of evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.