**E-filed: 2/3/2008**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>RAMBUS INC.,<br><br>Defendant. | No. CV-00-20905 RMW<br><br>RULINGS ON MANUFACTURERS' MOTIONS *IN LIMINE* [CONDUCT PHASE]<br><br>**[Re Docket Nos. 2870, 2871, 2872, 2873, 2886, 2887, 2888, 2889, 2890, 2891, 2892, 2894, 2896, 2983]** |

| | |
|---|---|
| RAMBUS INC., <br><br> Plaintiff, <br><br> v. <br><br> HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR MANUFACTURING AMERICA INC., <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P., <br><br> NANYA TECHNOLOGY CORPORATION, NANYA TECHNOLOGY CORPORATION U.S.A., <br><br> Defendants. | No. C-05-00334 RMW <br><br> **[Re Docket Nos. 846, 847, 849, 851, 862, 864, 865, 866, 869, 894, 895, 896, 897, 898, 899, 900, 903, 904, 918, 1014]** |
| RAMBUS INC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., and MICRON SEMICONDUCTOR PRODUCTS, INC. <br><br> Defendants. | No. C-06-00244 RMW <br><br> **[Re Docket Nos. 476, 481, 482, 483, 485, 493, 501, 504, 510, 513, 520, 522, 524, 555]** |

The court hereby issues its rulings on the *in limine* motions submitted by Hynix, Micron and Nanya ("the Manufacturers").

**1.   Motion *in Limine* No.1 to exclude evidence of DRAM price-fixing**

Rambus may not introduce into evidence the Samsung or Hynix guilty pleas for the purpose of impeaching character for truthfulness. If Rambus wishes to raise the issue of a price-fixing conspiracy to (1) inquire about specific instances of conduct on cross-examination to impeach character for truthfulness, or (2) rebut evidence regarding various lines of argument about pro-

competitive behavior in the DRAM industry, Rambus must first obtain permission from the court outside the presence of the jury.

**2. Motion *in Limine* No. 2 to exclude evidence of Manufacturers' document retention programs or destruction of documents**

Granted by stipulation. The parties will not argue that any missing document was hidden or destroyed for the purpose of making the party look better or to hide relevant information.

**3. Motion *in Limine* No. 3 to exclude evidence regarding Manufacturers' positions on Rambus's infringement claims and certain aspects of the results of the *Hynix I* patent phase**

Tentatively granted but final ruling is deferred so that court can consider how evidence develops. Rambus must seek permission from the court outside the presence of the jury before mentioning anything about the patent phase of *Hynix I*. In light of the instruction by the court with respect to the validity and infringement of certain Rambus patent claims by certain of the Manufacturers' products, it would appear unnecessary to discuss the Manufacturers' legal contentions on validity and infringement. However, this order does not preclude evidence of the ongoing production of infringing products by the Manufacturers.

The amount of the damages awarded in the *Hynix I* patent trial appears to have marginal relevance and the prejudicial effect of the evidence appears to substantially outweigh that relevance. *See* FRE 403. The award by the jury in *Hynix I* was not supported by the evidence and that is the amount the jury would have considered without bifurcation. The jury at the current trial will have before it all relevant evidence as to the value of Rambus's patents that was before the jury in *Hynix I*. As to the evidence showing bias and interest of certain witnesses, other evidence is available to show Hynix's bias and interest. This order does not prevent Rambus from showing a financial interest by cross-examination and argument that the Manufacturers including Hynix face the prospect of having to pay a significant amount for their past use of the Rambus technology.

**4. Motion *in Limine* No. 4 to exclude reference to the Federal Circuit's opinion in *Rambus Inc. v. Infineon Technologies AG*, 318 F.3d 1081 (Fed. Cir. 2003), and**

**the proceedings in *FTC Rambus*, other than the Commission's liability opinion.**

Tentatively granted but final ruling is deferred so that court can consider how evidence develops. Rambus must seek permission from the court outside the presence of the jury before mentioning anything about the *Infineon* decision or the ALJ's opinion in *FTC Rambus* or the appeal of the Commission's opinion. However, the Manufacturers' presentation may open the door to questions of the Manufacturers' experts on aspects of the *Infineon* decision. For example, if McAlexander testifies as to the scope of the term "bus" based upon the disclosure in Rambus's specification disclosed at JEDEC, he may be subject to cross-examination on whether he considered the *Infineon* decision (which held that one skilled in the art would not read the specification's example as limiting the invention to a narrow, multiplexed bus). Nevertheless, Rambus must request outside the presence of the jury permission to cross-examine regarding any expert's consideration of the *Infineon* decision before doing so. *See also* Docket No. 3088, C-00-20905 (N.D. Cal. Jan. 28, 2008).

**5. Motion *in Limine* No. 5 to exclude evidence of, or reference to, alleged boycott or price manipulation**

Ruling is deferred so that court can consider how evidence develops. Rambus must seek permission from the court outside the presence of the jury before mentioning anything about alleged boycott or price manipulation. If the Manufacturers present evidence that RDRAM failed or experienced lack of market success because it was too expensive or had technical flaws or performance problems, Rambus should be able to explain other reasons that caused or contributed to its RDRAM's market performance. However, if the Manufacturers do not get into the reasons for RDRAM's lack of market success, evidence concerning an alleged boycott or price manipulation seems irrelevant.

**6. Motion *in Limine* No. 6 to exclude evidence of a conspiracy to not take a license**

Motion is deferred except as to privileged documents. The scope of the motion is unclear. To the extent the motion requests only an order barring the use of privileged documents, Rambus agrees the motion should be granted and the court hereby grants it.

To the extent the motion wants more, i.e., to exclude all evidence of a conspiracy to not take a license, Rambus argues that evidence is relevant to causation. Specifically, Rambus argues that the Manufacturers' meetings and coordinated litigation efforts tend to disprove that Rambus's anticompetitive conduct *caused* them to defend patent litigation, but that they collectively chose to engage in litigation. Therefore, tot he extent the motion to seeks to preclude more than the allegedly privileged documents, the motion is tentatively denied.

**7. Motion *in Limine* No. 7 to exclude communications from Rambus to third parties regarding Rambus's pending patents**

The motion is denied. The Manufacturers seek to exclude Rambus's communications with other companies. To the extent those companies were members of JEDEC (this is a required foundation for relevance), these communications are relevant because if Rambus discloses relevant patents to JEDEC member –> JEDEC member does not disclose knowledge to JEDEC –> tends to disprove a broad disclosure duty. Further, Nanya's claim requires showing that JEDEC, the entity, was defrauded. Evidence showing JEDEC members knew about Rambus's intellectual property tends to negate that JEDEC was defrauded.

A number of other relevance chains seem possible. Rambus's discussions with Hans Wiggers at HP started because Wiggers was suspicious of Rambus's patent position. This series of conversations demonstrates what Wiggers, a person of ordinary skill, was able to deduce from Rambus's behavior. This undercuts the Manufacturers' evidence presented by McAlexander.

The Manufacturers' FRE 403 arguments are rejected.

**8. Motion *in Limine* No. 8 to exclude *in camera* FTC testimony Rambus has failed to produce**

Resolved by stipulation.

**9. Motion *in Limine* No. 9 to exclude the 1991 company photograph and evidence or testimony regarding awards received by Rambus or its founders**

The motion is denied as to the photograph. It is appropriate background material which will assist Rambus in introducing itself and showing that it is a real company with real employees and

that it is not just a company that licenses patents.

The motion with respect to exclusion of awards raises a more difficult issue. The only award discussed in the motion is an IEEE award given to Horowitz. The receipt of the award by Horowitz is relevant to the industry's recognition of his accomplishments and, therefore, has relevance to how his inventions were viewed in the industry. The article about the award, however, contains laudatory hearsay statements about Horowitz. The Manufacturers' concern that these statements, if admitted, would be considered for their truth regardless of any attempt to limit has merit. A limiting instruction would be difficult to frame and probably be overlooked by a jury. Therefore, the court will defer judgment on whether Rambus can satisfactorily redact the article so that it can be admitted for a legitimate non-hearsay purpose.

### 10. Motion *in Limine* No.10 to preclude Rambus from making any disparaging statements regarding JEDEC's patent disclosure policies and practices

The motion does not appear to be aimed at any evidence, but rather at Rambus's arguments. The motion appears exceedingly broad and is not clear on exactly what arguments the Manufacturers want to prevent. Rambus hopes to prove at trial that JEDEC's rules were "hopelessly vague and indefinite," that the Manufacturers' characterization of the alleged JEDEC disclosure policy is inconsistent with their own practices, and that Rambus's behavior was not anticompetitive. Rambus should not be precluded from arguing these positions. Motion *in Limine* No.10 is denied.

### 11. Motion *in Limine* No.11 to exclude the testimony of Carl Everett

The motion for a blanket exclusion of Everett's testimony is denied without prejudice to the Manufacturers making objection to individual questions asked to Everett on the basis that he lacks personal knowledge, the evidence is cumulative, or that the testimony is not admissible for some other reason.

### 12. Motion *in Limine* No.12 to exclude expert testimony regarding alleged infringement

The court believes that the parties do not substantively disagree with respect to this motion. In view of the court's instruction on the assumed infringement and validity of the Rambus patents,

infringement testimony would seem unnecessary. However, this does not preclude Rambus from offering testimony from Robert Murphy that: (1) the Manufacturers continue to use Rambus's inventions in their newest products developed after Rambus's patent claims were admittedly known; (2) the Manufacturers have added previously unused Rambus features to their products after Rambus's patent claims were widely known; (3) the Manufacturers use Rambus's inventions that they concede are not JEDEC-standard: (4) that the Manufacturers have developed products that do not use certain of Rambus's iniventions; and (5) where the Manufacturers continue to use the subject Rambus features, they sometimes change the implementation of those features.

### 13. Motion *in Limine* No.13 to exclude evidence that proposed alternative technologies are covered by patents

The motion is denied. The majority of the Manufacturers' motion no. 13 is an untimely *Daubert* motion and was struck at the December hearing as untimely. The remaining portion seeks to exclude Murphy's testimony regarding non-Rambus patents reading on the proposed alternatives because there is no evidence that those patents could or would have been enforced against a JEDEC standard. The Manufacturers claim there is no evidence they could be enforced because four of the five patents on Murphy's list were owned by JEDEC members, but not disclosed to JEDEC and hence not enforceable.

There are two flaws with the Manufacturers' argument. First, even if a failure to disclose waived enforcement, only four of the five non-Rambus patents belong to JEDEC members. The fifth belongs to SLDRAM, Inc. Second, the scope and implications of duties at JEDEC are being hotly litigated. Whether a failure to disclose works a waiver, license or estoppel is still being litigated. It is therefore not a basis for excluding evidence that various alternatives were covered by patents that could have been enforced against an alternative standard. Obviously, Murphy's opinion is subject to cross-examination and he will not be allowed to explain his infringement analysis beyond what is in his report.

### 14. Motion *in Limine* No.14 to exclude testimony of Bronwyn Hall

The motion is denied without prejudice, of course, to objection to individual questions she

may be asked.

A portion of this motion was struck as an untimely *Daubert* motion. The remainder of the motion addresses Rambus's failure to disclose Bronwyn Hall as an expert witness. The dispute centers around the Joint Case Management Order, paragraph 6(c):

> On or before June 22, 2007, the party or parties with the burden of proof on an issue shall provide expert disclosures with respect to each issue as to which such party or parties bear the burden of proof. On or before July 20, 2007, the party or parties with the burden of proof on an issue shall provide an expert report addressing that issue. On or before August 17, 2007, the parties shall provide rebuttal expert disclosures and reports. Depositions of experts identified may commence at a mutually convenient time immediately after service of all reports.

Contrary to the Manufacturers' argument, a witness does not have to "rebut" another side's specific expert witness to be considered a "rebuttal witness." Instead, the Order defined the rounds of expert disclosure based on which side had the burden of proof on an issue. The Manufacturers' argument does not address the "burden of proof" language and cannot be reconciled with the order's text.

The Manufacturers' argument regarding the scope of "rebuttal" testimony citing FRCP 26(a)(2)(C) is inapposite because the rule specifically empowers courts to create their own expert disclosure schedules; Rule 26(a)(2)(C) only governs in the *absence* of a scheduling order. While the definition of "rebuttal" testimony in the court's order differs from that in the rules, the parties chose the definition.

The court does agree that much of Hall's testimony seems only marginally relevant. However, the court cannot say that its probative value is substantially outweighed by any FRE 403 concern.

**15. Motion *in Limine* No.15 to exclude testimony of Peter Grindley and Richard Holleman regarding rules and guidelines of standards setting bodies other than JEDEC**

Ruling on this motion is deferred. Although the court finds persuasive the logic of the Manufacturers' argument that the testimony of the two witnesses regarding the patent policies of other standard setting organizations is irrelevant, the testimony may be relevant to rebut the Manufacturers' evidence about the breadth of the disclosure duty that was allegedly created by the

members of JEDEC.

**16. Motion *in Limine* No.16 to exclude testimony of Laurence Pretty regarding theoretical justifications for maintaining the confidentiality of patent applications**

Ruling on this motion is deferred. Although the court finds aspects of the Manufacturers' argument for exclusion persuasive, particularly since Laurence Pretty's testimony is not tailored to the circumstances of this case. Nevertheless, it may have relevance depending upon the evidence presented in the Manufacturers' case. For example, some explanation of why the standard practice of patent practitioners was to keep their pending applications confidential may be relevant to the disputed issue of what JEDEC members understood to be the scope of their disclosure obligation.

**17. Motion *in Limine* No.17 to exclude testimony from Allen Samuels**

Ruling on this motion is deferred. However, it would appear that the Manufacturers are going to offer evidence of a very broad understanding among JEDEC members as to their obligation to disclose. If, for example, Rhoden testifies that JEDEC members recognized and practiced a duty to disclose anything in the patent process that might be relevant to any discussion as to standards, Samuels' testimony concerning patents that met this "might be relevant" standard and were not disclosed would be proper rebuttal. The court may need to evaluate FRE 403 concerns because cross-examining and disproving Samuels' assertions could take significant time and divert the jury's focus on the relevant issues.

**18. Motion *in Limine* to exclude evidence or reference to changes to JEDEC's patent policies after January 2000 (not numbered)**

Prior to the consolidation of these actions for trial, Hynix and Rambus were preparing for trial on Hynix's antitrust claims. During the pretrial preparations, the court ruled from the bench in case no. 00-20905 on a motion *in limine* regarding JEDEC's patent policies after January 2000 that:

> I'm not going to preclude that evidence at this point, but I will require an offer of proof regarding the specific change or particular change that Rambus wants to talk about before I'll allow testimony on that issue.

RULINGS ON MANUFACTURERS' MOTIONS IN LIMINE [CONDUCT PHASE]
C-00-20905; C-05-00334; C-06-00244 RMW
TSF 9

Tr. 119:2-8 (Aug. 3, 2006).

The court extends the order to these consolidated proceeding with the modification that any party that seeks to offer evidence of post-January 2000 JEDEC patent policies must make an offer of proof outside the presence of the jury as to the relevance and admissibility of the evidence.

DATED: 2/3/2008

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Craig N. Tolliver | ctolliver@mckoolsmith.com |
| Pierre J. Hubert | phubert@mckoolsmith.com |
| Gregory P. Stone | gregory.stone@mto.com |
| Carolyn Hoecker Luedtke | luedtkech@mto.com |
| Peter A. Detre | detrepa@mto.com |
| Burton Alexander Gross | burton.gross@mto.com, |
| Steven McCall Perry | steven.perry@mto.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Matthew D. Powers | matthew.powers@weil.com |
| David J. Healey | david.healey@weil.com |
| Edward R. Reines | Edward.Reines@weil.com |
| John D Beynon | john.beynon@weil.com |
| Jared Bobrow | jared.bobrow@weil.com |
| Leeron Kalay | leeron.kalay@weil.com |
| Theodore G. Brown, III | tgbrown@townsend.com |
| Daniel J. Furniss | djfurniss@townsend.com |
| Jordan Trent Jones | jtjones@townsend.com |
| Kenneth L. Nissly | kennissly@thelenreid.com |
| Geoffrey H. Yost | gyost@thelenreid.com |
| Susan Gregory van Keulen | svankeulen@thelenreid.com |
| Patrick Lynch | plynch@omm.com |
| Jason Sheffield Angell | jangell@orrick.com |
| Vickie L. Feeman | vfeeman@orrick.com |
| Mark Shean | mshean@orrick.com |
| Kai Tseng | hlee@orrick.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 2/3/2008    TSF
**Chambers of Judge Whyte**

RULINGS ON MANUFACTURERS' MOTIONS IN LIMINE [CONDUCT PHASE]
C-00-20905; C-05-00334; C-06-00244 RMW
TSF    11