**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E-filed:   2/3/2009**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

HYNIX SEMICONDUCTOR INC., HYNIX
SEMICONDUCTOR AMERICA INC.,
HYNIX SEMICONDUCTOR U.K. LTD., and
HYNIX SEMICONDUCTOR
DEUTSCHLAND GmbH,

        Plaintiffs,

        v.

RAMBUS INC.,

        Defendant.

No. C-00-20905 RMW

ORDER DENYING HYNIX'S MOTION FOR
SUMMARY JUDGMENT OF UNCLEAN
HANDS

**[Re Docket No. 3879]**

        Rambus has accused Hynix[1] of infringing various patents.  In response, Hynix asserted the

defense of unenforceability alleging that Rambus has unclean hands resulting from its destruction of

documents in the late 1990's.  The court held a bench trial on Hynix's unclean hands defense and

ruled in Rambus's favor.  *Hynix Semiconductor Inc. v. Rambus, Inc.*, — F. Supp. 2d —, 2006 WL

565893 (N.D. Cal. Jan. 5, 2006).  Since then, the district court in Delaware held a bench trial with

respect to an essentially identical claim by Micron that Rambus spoliated evidence.  The Delaware

court concluded that Rambus's patents were unenforceable against Micron.  *Micron Tech., Inc. v.*

*Rambus Inc.*, — F.R.D. —, 2009 WL 54887 (D. Del. Jan. 9, 2009).

---

       [1]      The court collectively refers to all of the Hynix entities as "Hynix."

ORDER DENYING HYNIX'S MOTION FOR SUMMARY JUDGMENT OF UNCLEAN HANDS  —  C-00-20905 RMW
TSF

**United States District Court**
For the Northern District of California

1    Invoking the doctrine of issue preclusion, Hynix moves for summary judgment of

2  unenforceability based upon the *Micron* decision, which is later in time than this court's decision

3  rejecting the defense.  In the alternative, Hynix seeks reconsideration of the court's unclean hands

4  decision and other relief.  The bottom line is that Hynix wants to substitute the favorable decision in

5  *Micron* for the unfavorable decision it received here.  Rambus opposes the motion.  The court has

6  reviewed the papers and considered the arguments of counsel.[2]  For the following reasons, the court

7  denies Hynix's motion.

## I. ISSUE PRECLUSION

### A.    Equitable Discretion

10    Non-mutual issue preclusion is a "distinctively risky" doctrine.  18 Wright & Miller § 4416,

11  at 402 (2d ed. 2002).  Its "[w]ise administration requires a delicate balance between broad

12  generalities that too frequently permit unfair preclusion and searching scrutiny that costs more than

13  can be gained by whatever unblemished preclusion survives."  18A Wright & Miller § 4465, at 730

14  (2d ed. 2002).  Thus, the Supreme Court observed that, "no one set of facts, no one collection of

15  words or phrases, will provide an automatic formula for proper rulings on estoppel pleas."

16  *Blonder-Tongue Labs., Inc. v. Univ. of Illinois*, 402 U.S. 313, 333-34 (1971).  "In the end, decision

17  will necessarily rest on the trial courts' sense of justice and equity."  *Id.* at 334.  Here, it is difficult to

18  see how it would be just or equitable to give Hynix the benefit of a decision between Rambus and a

19  third party when Hynix fully litigated the issue with Rambus and lost.

20    Despite these admonitions, litigants and the courts all too frequently reduce this rigorous

21  inquiry to a collection of labels.  Here, Hynix urges that the court only possesses discretion

22  regarding the application of non-mutual issue preclusion in "offensive" situations, and that in

23  "defensive" contexts, the court has *no* discretion regarding the application of issue preclusion.  The

24  Supreme Court's jurisprudence rejects the blanket application of preclusion principles urged by

25  Hynix.  "'[T]here is no intrinsic difference between 'offensive' as distinct from 'defensive' issue

26

27       [2]    The court notes that of the four Manufacturers and Rambus' briefs addressing the issues
raised by the Delaware court's opinion, Hynix's were particularly helpful to the court in grappling with
28  the issues thanks to Hynix's concrete suggestions for how to proceed.

United States District Court
For the Northern District of California

1   preclusion, although a stronger showing that the prior opportunity to litigate was adequate may be

2   required in the former situation than the latter.'" *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322,

3   331 fn.16 (1979) (quoting the Restatement (Second) of Judgments § 88, Reporter's Note).  Indeed,

4   the first endorsement by the Supreme Court of non-mutual issue preclusion related to the

5   "defensive" use of a prior judgment that a patent was invalid.  *Blonder-Tongue*, 402 U.S. at 334.

6   Yet the Court, as quoted above, emphasized the need for careful, equitable application of the

7   doctrine.  *See id.* at 333-34.

8          Hynix cites various cases for the principle that this court lacks discretion in the application of

9   non-mutual issue preclusion in the "defensive" context.  The first, *Blonder-Tongue*, does not support

10  this proposition, as shown above.  In the second, *Liberty Mutual Insurance Co. v. FAG Bearings*

11  *Corp.*, the Eighth Circuit described *Parklane Hosiery* in a parenthetical as "adopting a test of

12  discretion with respect to nonmutual offensive collateral estoppel only."  335 F.3d 752, 757 (8th Cir.

13  2003).  As shown above, this characterization is questionable.  Nonetheless, the Eighth Circuit's

14  ensuing discussion of issue preclusion doctrine was correct: "Because mutuality is not lacking in this

15  case, the equitable considerations requiring deference to the district court's evaluation of the overall

16  fairness to the litigants in a nonmutual case are not present."  *Id.* at 757-58.  *Liberty Mutual* thus

17  neatly recognizes the Supreme Court's discussion of the need for careful, equitable consideration

18  when applying non-mutual issue preclusion.  Hynix also relies on a case from the Third Circuit

19  electing to review *de novo* a trial court's decision regarding the application of "defensive" issue

20  preclusion.  *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).

21  This authority is not binding on this court, and not persuasive for the reasons discussed.

22         Furthermore, this case provides a good illustration of the folly of labeling the use of issue

23  preclusion as "defensive" or "offensive."  The terms do not capture the fluidity of a party's identity

24  created by the ability to seek a declaratory judgment.  While Rambus has lost on Micron's unclean

25  hands defense to Rambus's infringement claims, Rambus was forced to litigate as a counter-claimant

26  when Micron sued it for a declaratory judgment in Delaware.  Thus, while Rambus brought an

27  infringement claim against Micron, it did not choose the time, venue, or adversary.  The unfairness

28  of being precluded based on a trial that a party did not choose animates substantial concern about the

application of non-mutual issue preclusion and the need for a trial court to exercise discretion. *See generally* 18A Wright & Miller § 4465.1 (2d ed. 2002) ("One of the most general concerns attending the abandonment of mutuality has been that it may be unfair to bind a party who did not take the initiative in the first action."). Those concerns and the need for discretion apply equally here, even though Hynix's preclusion argument is properly termed "defensive." *Idaho Potato Commission v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 713 fn.3 (9th Cir. 2005) (defining "defensive" non-mutual issue preclusion as "a defendant['s] attempt[] to preclude a plaintiff from relitigating an issue that the plaintiff previously litigated unsuccessfully against a different party").

In reply, Hynix argues that *Stevenson v. Sears, Roebuck & Co.* precludes this court's discretion to apply the non-mutual issue preclusion doctrine. The court disagrees. In *Stevenson*, the Federal Circuit explained that inconsistent judgments as to validity should not *prevent* a court from applying non-mutual issue preclusion to stop a patentee's infringement case. 713 F.2d 705, 709-10 (Fed. Cir. 1983). Moreover, the court explained that the third court should not attempt to discern which prior court was "correct," in large part because such an inquiry would often fail given the potential for different arguments and allegedly invalidating prior art references. *Id.* Instead, the third court should stick to applying *Blonder-Tongue*'s searching "full and fair opportunity to litigate" inquiry. *Id.* at 709. But as explained above, this inquiry is not an "automatic formula." *Id.* Conflicting invalidity decisions should not lead the third court to reflexively enter judgment of invalidity. *Id.* at 710. On the contrary, such inconsistent outcomes form a "red flag warning" to the trial court to be especially careful when applying the doctrine of non-mutual issue preclusion. *Id.* As the Supreme Court has made clear repeatedly, the application of non-mutual issue preclusion requires a careful weighing of the equities. The court therefore turns to examine the myriad factors that influence its exercise of discretion.

**B.      Inconsistent Outcomes**

"The existence of inconsistent prior judgments is perhaps the single most easily identified factor that suggests strongly that neither should be given preclusive effect." 18A Wright & Miller § 4465.2, at 764 (2d ed. 2002); Rest. 2d Judgments § 29(4). The Delaware court's decision on spoliation differs from this court's as to both factual and legal conclusions. For example, the

Delaware court determined that Rambus anticipated litigation, and thus possessed a duty to preserve evidence, "no later than December 1998" based on Joel Karp's "nuclear winter" memorandum. *Micron*, 2009 WL 54887 ¶ 55. On similar evidence, this court concluded that Rambus did not anticipate litigation until Rambus actually sought out and retained litigation counsel in late 1999. *Hynix*, 2006 WL 565893, *24. As an example of the latter, the Delaware court concluded that Micron's ability to defend against Rambus's claim had been prejudiced because "the record demonstrates that there were documents relevant to [Micron's JEDEC claims and inequitable conduct defense]" that had been destroyed. *Micron*, 2009 WL 54887 ¶ 56. Considering the same issue, this court concluded otherwise:

> Although Hynix has made a showing that Rambus destroyed some relevant documents, Rambus established that adequate similar and material documents or classes of documents were not destroyed. The evidence showed that Rambus has produced to Hynix a large volume of relevant and material documents. According to the testimony of Hynix's counsel, Rambus has produced approximately 1.2 million pages of documents responsive to Hynix's discovery requests in this case. Moreover, for each category of documents material to the validity or enforceability of Rambus's patents that Hynix argued Rambus did not preserve and produce, Rambus has shown by clear and convincing evidence that documents in that category were in fact produced. Although Hynix complained that a notebook, models, and detailed diagrams authored by Dr. Farmwald that Farmwald himself described as being from early to mid-1988 in a September 1995-mail to Crisp were never produced, Rambus has produced various documents relating to the conception and reduction to practice of the patented inventions prior to the April 1990 filing date of the '898 application. These include inventor notes, computer simulations, drafts of patent applications, technical presentations given by the inventors, and several boxes of documents that had been in Farmwald's possession (and thus not subjected to Rambus's enforcement of its Document Retention Policy). Rambus also produced several boxes of prior art. The prior art produced by Rambus included prior art references with fax lines showing that the art was ordered in 1996, prior art references with a few underlines, and prior art references containing a few notations. No evidence suggested that material, non-cumulative prior art exists that Rambus has not produced. Thus, it does not appear that Hynix has been deprived of material, non-privileged, and non-cumulative documents.
>
> Additionally, to the extent that documents such as notes of interviews with the inventors and draft responses to the patent examiner may have been discarded when Attorney Vincent conformed the issued patent files to the PTO file wrapper, those documents would probably be privileged and not been discoverable. . . . With regard to the prior license agreement between Rambus and Hyundai, Hynix acknowledges that a "fairly complete record" has been produced[.] . . . The court concludes that Hynix has not been prejudiced by the destruction of Rambus documents.

*Hynix*, 2006 WL 565893, *27-28.

The existence of inconsistent judgments counsels against the application of issue preclusion.

United States District Court
For the Northern District of California

1   *See Parklane Hosiery*, 439 U.S. at 330.  The judicious application of issue preclusion rests on an

2   assumption that a prior decision was more or less correct.  *Crawford v. Ranger Ins. Co.*, 653 F.2d

3   1248, 1252 (9th Cir. 1981).  This assumption is not warranted where inconsistent decisions have

4   been reached; it instead suggests that "'the outcomes may have been based on equally reasonable

5   resolutions of doubt as to the probative strength of the evidence[.]'"  *Id.* (quoting *State Farm Fire &*

6   *Cas. Co. v. Century Home Components, Inc.*, 550 P.2d 1185, 1192 (Or. 1976)).

7        The unfairness of applying non-mutual issue preclusion in the face of conflicting

8   adjudications is heightened when those issues are "slippery subjective appraisals or application of

9   generalized standards of conduct."  18A Wright & Miller § 4465.2, at 764; *cf.* Rest. 2d Judgments §

10  29(7) (considering whether "[t]he issue is one of law and treating it as conclusively determined

11  would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon

12  which it was based").  One of the central issues to the spoliation question in these cases is whether or

13  not any Manufacturer has suffered prejudice from Rambus's document destruction.  This subjective

14  determination is plainly an issue on which reasonable minds can differ and, to the extent legal issues

15  are involved, will appropriately require the attention of the Federal Circuit Court of Appeals.  But

16  the issue's "slippery" nature suggests it would be unfair to preclude Rambus from relitigating it.

17       Hynix argues that a "last in time" rule should apply, citing *Americana Fabrics, Inc. v. L & L*

18  *Textiles, Inc.*, 754 F.2d 1524, 1530 (9th Cir. 1985).  A critical feature of *Americana Fabrics*' "last in

19  time" discussion is that it involves mutual, not non-mutual, preclusion.  *See* 754 F.2d 1527-28.  The

20  purpose of the rule is to create finality as between two parties, a value lacking in the non-mutual

21  context.  *Id.* at 1530.  The "last in time" rule has little basis in non-mutual issue preclusion.  It

22  implicitly hypothesizes the existence of conflicting judgments.  But the Supreme Court's discussion

23  in *Parklane Hosiery* explained that it "may also be unfair to a defendant if the judgment relied upon

24  as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the

25  defendant."  *Parklane Hosiery*, 439 U.S. at 330 & fn.14.  Yet, if the "last-in-time" rule governed in

26  non-mutual preclusion cases, the concern regarding inconsistent judgments would be moot.  Thus,

27  Hynix's attempt to extend the last-in-time rule to this context fails.

28       **C.    Hynix's Ability to Have Joined in *Micron***

United States District Court
For the Northern District of California

1    A special consideration highlighted in *Parklane Hosiery* supports denial of the application of

2    issue preclusion as to Hynix. The law of preclusion must not be applied in such a way that it

3    encourages parties to adopt a "'wait and see' attitude, in the hope that the first action by another

4    plaintiff will result in a favorable judgment." *Parklane Hosiery*, 429 U.S. at 330. Instead, the

5    doctrine of issue preclusion should be interpreted to create strong incentives to "join all potential

6    defendants in the first action if possible." *Id.* at 329-30.

7    The Supreme Court's use of "defendants" is an artifact of its failure to discuss the declaratory

8    judgment context. Ideally, this patent litigation would have proceeded before a single court, as done

9    when Rambus sued the Hynix, Nanya, and Infineon entities in the 05-00334 case, and then joined

10   the Samsung entities when Rambus terminated Samsung's patent license.[3] But that is not how this

11   litigation, broadly conceived, begun. Micron sued Rambus for declaratory judgment on August 28,

12   2000 in Delaware. Hynix sued Rambus for declaratory judgment the next day here in San Jose,

13   California. Persuasive circumstantial evidence suggests that Micron and Hynix coordinated their

14   filing of the declaratory judgment lawsuits. *See* Conduct Trial Tr. 4006:8-4008:12 (Mar. 5, 2008)

15   (former Hynix employee Farhad Tabrizi admitting to his belief in 2000 prior to litigation with

16   Rambus that Hynix would litigate "to the end of Rambus company"); 5131:1-25; 5135:1-16 (Mar.

17   18, 2008) (testimony of Micron CEO Steve Appleton that he met with Hynix personnel in early

18   August of 2000 and that he cancelled licensing meetings with Rambus to sue for declaratory

19   judgment); 5633:16-5634:1 (Mar. 20, 2008) (testimony from Hynix employee D.S. Chung about

20   licensing meetings Hynix scheduled with Rambus, then cancelled by suing for declaratory

21   judgment); *cf.* Licensing Trial Tr. 420:24-423:6 (Sept. 24, 2008) (testimony of Samsung employee

22   Jay Shim regarding joint defense agreement between Samsung, Hynix, Micron, and Infineon entered

23   into in August 2000).

24   Hynix now seeks to take advantage of its coordinated, dual-front litigation against Rambus to

25   capitalize on Rambus's loss in Delaware. Were the court to now apply issue preclusion in Hynix's

26   favor, it would be rewarding Hynix's efforts to multiply the scope of this conflict, thus confirming

27

28        [3]    Rambus could not join the Micron entities at the time. When it could, Rambus sued the
     Micron entities in the 06-00244 case in this court, and the cases were consolidated when appropriate.

1   the Supreme Court's fear that improper use of non-mutual issue preclusion "will likely increase

2   rather than decrease the total amount of litigation, since potential plaintiffs will have everything to

3   gain and nothing to lose by not intervening in the first action." *Parklane Hosiery*, 439 U.S. at 330.

4   This consideration highlights the inequity of permitting Hynix to invoke the Delaware court's

5   spoliation order over the order from the venue it chose.

6       **D.    Lack of Efficiency**

7       A fundamental purpose of non-mutual issue preclusion is to promote efficiency in the

8   judicial system. *See generally* 18A Wright & Miller § 4464, at 710-711 (2d ed. 2002); *Blonder-*

9   *Tongue*, 402 U.S. at 328-29 (listing two justifications for non-mutual issue preclusion as the need for

10  "efficient judicial administration" and to dispel "the aura of the gaming table"); *cf. SEC v. Monarch*

11  *Funding Corp.*, 192 F.3d 295, 305-07 (2d Cir. 1999) (reflecting "upon whether the efficiency

12  rationale for collateral estoppel would be advanced or hindered" if applied to criminal sentencing

13  decisions). "If the economies achieved by applying collateral estoppel are not readily apparent, why

14  risk the permanent encapsulation of a wrong result?" *Monarch Funding*, 192 F.3d at 306.

15      The case of *Mozart Co. v. Mercedes-Benz of North America, Inc.* illustrates these concerns.

16  833 F.2d 1342 (9th Cir. 1987). The case arises from parallel antitrust cases. *Id.* at 1343-44. In the

17  California case, the plaintiff lost after an 11-week jury trial when the jury found that a business

18  justification excused the allegedly anticompetitive conduct. *Id.* at 1343. Meanwhile, the same

19  defendant lost in Maryland when a jury did not find that such a business justification existed. *Id.* at

20  1347. The Ninth Circuit's holding appears to be that although the cases both involved allegedly

21  anticompetitive tying, the cases turned on different facts, defeating any potential for issue

22  preclusion. *See id.* at 1348 (noting that "the case before us is based on different evidentiary facts").

23  But the court further explained that "[i]t would be a curious use of affirmative collateral estoppel to

24  permit one who had lost before the jury on certain facts to overturn that verdict by pointing out that

25  on different facts, but identical legal principles, the winner before the jury had lost a jury verdict to a

26  stranger on an earlier day and in a different court." *Id.* The court did not further illuminate its

27  reasoning, but it seems likely that its conclusion stems from the complete absence of efficiency

28  gained by reversing an existing decision simply because a second, contrary decision now exists.

ORDER DENYING HYNIX'S MOTION FOR SUMMARY JUDGMENT OF UNCLEAN HANDS  —  C-00-20905 RMW
TSF                                                    8

**United States District Court**
For the Northern District of California

1    Similarly, in *Gough v. Natural Gas Pipeline Co. of America*, the plaintiff failed to seek non-

2  mutual issue preclusion prior to trial.  996 F.2d 763, 768 (5th Cir. 1993).  When the jury found the

3  plaintiff contributorily negligent, the plaintiff sought to preclude the defendant from asserting the

4  defense based on a prior verdict that the defendant had been solely responsible for the accident.  *Id.*

5  at 768-69.  The Fifth Circuit rejected the argument, noting first that the plaintiff might have been

6  able to join in the first action.  *Id.* at 769.  The court further observed that "efficiency is [offensive]

7  collateral estoppel's only true justification."  *Id.* at 769.[4]  Thus, "[i]t is too late to invoke the virtue of

8  efficiency when the case has already been tried."  *Id.*

9    Hynix has already tried – and lost – the issue of spoliation.  Nothing would be gained by

10  permitting Hynix to invoke "efficiency" now, particularly when it previously collaborated to defeat

11  judicial efficiency.

12    **E.**    **Conclusion**

13    For the foregoing reasons, the court is not persuaded that "justice and equity" will be served

14  by permitting Hynix to rely on the Delaware court's opinion finding that Rambus engaged in

15  spoliation.  Hynix directly litigated the issue with Rambus and lost.  The existence of inconsistent

16  decisions calls into question the correctness of both of the existing orders.  Moreover, Hynix's

17  litigation tactics confirm the *Parklane* Court's fears about the potential for abuse of non-mutual issue

18  preclusion.  Finally, the application of issue preclusion in this context would generate no efficiency

19  for the court or the parties.

20              **II. RECONSIDERATION**

21    Hynix argues in the alternative that the court should reconsider its prior decision based on

22  the *Micron* decision.  Specifically, Hynix urges this court to adopt the Delaware court's conclusion

23  that the facts show that Rambus anticipated litigation in September 1998 based on Joel Karp's

24  "nuclear winter" memo.  Rambus does not argue that reconsideration in this context is inappropriate.

25  The court agrees that in this situation "the first court should be free to reconsider, and in deciding

26

27

28    [4]    The Fifth Circuit added the word "offensive."  The law review article it paraphrased did not include the word "offensive."  *Compare id. with* Jack Ratliff, Offensive Collateral Estoppel and the Option Effect, 67 Texas L.Rev. 63, 101 (1988).

ORDER DENYING HYNIX'S MOTION FOR SUMMARY JUDGMENT OF UNCLEAN HANDS  —  C-00-20905 RMW
TSF

United States District Court
For the Northern District of California

1   whether to reconsider may take account of the advantage of consistent results."  18 Wright & Miller

2   § 4404, at 79-80 (2d ed. 2002).

3        But the court is not persuaded that its prior opinion is erroneous.  The memo was in evidence

4   (as Hynix Trial Exhibit 4) and subject to substantial testimony.  Spoliation Trial Tr. 294:10-309:22

5   (Oct. 18, 2005).  The court discussed the nuclear winter memo in its findings.  *See Hynix*, 2006 WL

6   565893 ¶¶ 53, 54. The court did not specifically discuss the memo in its conclusions of law, *see id.*

7   at *22-*24, but the court gave it careful consideration – and decided that it did not show an intent to

8   litigate.

9        To begin, the Delaware court described the document as outlining what Mr. Karp believed

10  Rambus's strategy should be "in the 'very unlikely' event that Intel cancelled its RDRAM production

11  and moved instead to a competing technology."  *Micron*, 2009 WL 54887 ¶ 24.  The Delaware

12  court's description alone suggests the tentative and contingent nature of *Mr. Karp's* thinking, and not

13  *Rambus's* "anticipation of litigation."

14       The remainder of the document's contents confirms the hesitant, contingent nature of Mr.

15  Karp's planning.  The memo begins with its "major assumption," described as, "Intel decides to

16  cancel ramp and move away from Rambus to something else (DDR, SLDRAM, PC133, or

17  something else that may be totally new, having been developed in secret by elves in the Black Forest

18  at a cost of $10B, for example)."  Roeder Decl., Ex. J at HTX 004.002.  It is a rare memo that sets

19  forth a company's policy and anticipated court actions and also begins its first sentence with an off-

20  the-cuff reference to Black Forest elves.  The memo continued: "I need to point out at this time that

21  this is a very unlikely scenario, even for something that's purely hypothetical."  *Id.*  Nonetheless, the

22  memo proceeded to outline a scenario in which Rambus's intellectual property could be used to

23  persuade Intel to stick with Rambus.  *See id.*

24       To the extent the nuclear winter memo discussed suing DRAM makers, it did so in the

25  context of maneuvering to put pressure on Intel to continue to support Rambus's DRAM designs.

26  The memo concluded its assessment of suit against a DRAM maker by noting that for such a suit

27  "costs *would* be high ($1.5-3.0M) since we would be fast-tracking everything."  *Id.* at HTX 004.006

28  (emphasis added).  "The case *could* be prepared in 1-3 months."  *Id.* (emphasis added).  Beside being

1   ironically wrong, these estimates show both the speculative, contingent nature of Mr. Karp's

2   planning and the amount of time and effort still needed before litigation would be something that

3   Rambus considered "reasonably foreseeable" or "anticipated," i.e., "look[ed] forward to, look[ed] for

4   (an uncertain event) as certain."  Oxford English Dictionary (2d ed. 1989) (ninth definition of

5   "anticipate, *v.*").

6       Thus, the court remains unpersuaded that Rambus considered litigation "reasonably

7   foreseeable" as of the date of Joel Karp's "nuclear winter" memo.

8                               **III.  HYNIX'S REQUESTED STAY**

9       Hynix also moves for a stay of proceedings in 00-20905 and for the spoliation issue to be

10  certified for interlocutory appeal with the *Micron* spoliation order.  As described in an

11  accompanying order, the court agrees with Hynix that consolidated review of the two conflicting

12  spoliation decisions is prudent and that a stay of the 05-00334 action is appropriate.  The court does

13  not, however, agree that certification and a stay of the 00-20905 case is appropriate.  Instead, the

14  court aims to resolve the outstanding issues in this case to permit appellate review of a final

15  judgment.

16      Hynix's briefs also explore some of the difficult issues looming, like the mechanics for

17  posting an adequate appellate bond in light of the battered credit markets.  These issues concern the

18  court, but they do not provide a basis for not forging ahead.  They may be addressed by motion, if

19  not resolved by a meet-and-confer between the parties.  The court requests that Rambus and Hynix

20  meet and confer about the form and content of the final judgment to be entered in the 00-20905

21  action and, if unable to agree, to arrange a conference call with the court during the week of

22  February 16, 2009.

23                                    **IV.  ORDER**

24      For the foregoing reasons, the court denies Hynix's motion.

25

26  DATED:      2/3/2009                        *Ronald M Whyte*

27                                          RONALD M. WHYTE
                                            United States District Judge

28

United States District Court
For the Northern District of California

Notice of this document has been electronically sent to counsel in: 00-20905.

| Counsel | Email | Appearances: 05-00334 | 05-02298 | 06-00244 | 00-20905 |
|---|---|:---:|:---:|:---:|:---:|
| **Rambus:** | | | | | |
| Kathryn Kalb Anderson | Kate.Anderson@mto.com | x | | x | |
| Peter A. Detre | detrepa@mto.com | x | x | x | x |
| Erin C. Dougherty | erin.dougherty@mto.com | x | x | x | x |
| Sean Eskovitz | sean.eskovitz@mto.com | x | x | x | x |
| Burton Alexander Gross | Burton.Gross@mto.com | x | x | x | x |
| Keith Rhoderic Dhu Hamilton, II | keith.hamilton@mto.com | x | x | x | x |
| Pierre J. Hubert | phubert@mckoolsmith.com | x | x | x | x |
| Andrea Jill Weiss Jeffries | Andrea.Jeffries@mto.com | x | x | x | |
| Miriam Kim | Miriam.Kim@mto.com | x | x | x | x |
| Carolyn Hoecker Luedtke | carolyn.luedtke@mto.com | x | x | x | x |
| Steven McCall Perry | steven.perry@mto.com | x | x | x | x |
| Jennifer Lynn Polse | jen.polse@mto.com | x | x | x | x |
| Matthew Thomas Powers | mpowers@sidley.com | x | | | |
| Rollin Andrew Ransom | rransom@sidley.com | x | x | x | x |
| Rosemarie Theresa Ring | rose.ring@mto.com | x | x | x | x |
| Gregory P. Stone | gregory.stone@mto.com | x | x | x | x |
| Craig N. Tolliver | ctolliver@mckoolsmith.com | x | x | x | x |
| Donald Ward | Bill.Ward@mto.com | x | x | x | |
| David C. Yang | david.yang@mto.com | x | x | x | x |
| Douglas A. Cawley | dcawley@mckoolsmith.com | | | x | |
| Scott L Cole | scole@mckoolsmith.com | | | x | |
| William Hans Baumgartner, Jr | wbaumgartner@sidley.com | | | | x |
| Scott W. Hejny | shejny@sidley.com | | | | x |
| Kelly Max Klaus | kelly.klaus@mto.com | | | | x |
| Catherine Rajwani | crajwani@sidley.com | | | | x |
| Thomas N Tarnay | ttarnay@sidley.com | | | | x |
| **Hynix:** | | | | | |
| Theodore G. Brown , III | tgbrown@townsend.com | x | x | x | x |
| Daniel J. Furniss | djfurniss@townsend.com | x | | | x |
| Joseph A. Greco | jagreco@townsend.com | x | | | x |
| Julie Jinsook Han | JJHan@townsend.com | x | x | x | |
| Tomomi Katherine Harkey | tharkey@omm.com | x | | | x |
| Jordan Trent Jones | jtjones@townsend.com | x | | | x |
| Patrick Lynch | plynch@omm.com | x | | | x |
| Kenneth Lee Nissly | kennissly@omm.com | x | | x | x |
| Kenneth Ryan O'Rourke | korourke@omm.com | x | | | x |
| Belinda Martinez Vega | bvega@omm.com | x | x | x | x |
| Geoffrey Hurndall Yost | gyost@thelenreid.com | x | x | x | x |
| Susan Gregory van Keulen | svankeulen@omm.com | x | | | x |
| Allen Ruby | ruby@allenrubylaw.com | | | | x |
| **Micron:** | | | | | |
| Robert Jason Becher | robertbecher@quinnemanuel.com | x | | x | x |
| John D Beynon | john.beynon@weil.com | x | x | x | x |
| Jared Bobrow | jared.bobrow@weil.com | x | x | x | x |
| Yonaton M Rosenzweig | yonirosenzweig@quinnemanuel.com | x | | x | x |
| Harold Avrum Barza | halbarza@quinnemanuel.com | | | x | |

ORDER DENYING HYNIX'S MOTION FOR SUMMARY JUDGMENT OF UNCLEAN HANDS  —  C-00-20905 RMW
TSF

| | | | | | |
|---|---|---|---|---|---|
| Linda Jane Brewer | lindabrewer@quinnemanuel.com | | | x | |
| Aaron Bennett Craig | aaroncraig@quinnemanuel.com | | | x | x |
| Leeron Kalay | kalay@fr.com | | | x | |
| David J. Lender | david.lender@weil.com | | | x | |
| Rachael Lynn Ballard McCracken | rachaelmccracken@quinnemanuel.com | | | x | |
| Sven Raz | sven.raz@weil.com | | | x | |
| David J. Ruderman | davidruderman@quinnemanuel.com | | | x | |
| Elizabeth Stotland Weiswasser | elizabeth.weiswasser@weil.com | | | x | |

**Nanya:**

| | | | | | |
|---|---|---|---|---|---|
| Jason Sheffield Angell | jangell@orrick.com | x | x | x | x |
| Kristin Sarah Cornuelle | kcornuelle@orrick.com | x | x | x | |
| Chester Wren-Ming Day | cday@orrick.com | x | | | |
| Jan Ellen Ellard | jellard@orrick.com | x | | x | |
| Vickie L. Feeman | vfeeman@orrick.com | x | x | x | |
| Robert E. Freitas | rfreitas@orrick.com | x | | | |
| Craig R. Kaufman | hlee@orrick.com | x | | | |
| Hao Li | hli@orrick.com | x | | | |
| Cathy Yunshan Lui | clui@orrick.com | x | | | |
| Theresa E. Norton | tnorton@orrick.com | x | | | |
| Mark Shean | mshean@orrick.com | x | | | |
| Kaiwen Tseng | ktseng@orrick.com | x | | | |

**Samsung:**

| | | | | | |
|---|---|---|---|---|---|
| Steven S. Cherensky | steven.cherensky@weil.com | x | x | | |
| Dana Prescott Kenned Powers | dana.powers@weil.com | x | x | x | |
| Matthew Douglas Powers | matthew.powers@weil.com, matthew.antonelli@weil.com | x | x | | |
| Edward Robert Reines | Edward.Reines@weil.com | x | x | | x |

**United States Dept. of Justice**

| | | | | | |
|---|---|---|---|---|---|
| May Lee Heye | may.heye@usdoj.gov | | | | x |
| Eugene S. Litvinoff | eugene.litvinoff@usdoj.gov | | | | x |
| Niall Edmund Lynch | Niall.Lynch@USDOJ.GOV | | | | x |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program in each action.

**Dated:**      2/3/2009                                    TSF
                                                  **Chambers of Judge Whyte**