1 | TOWNSEND AND TOWNSEND AND CREW LLP
THEODORE G. BROWN, III (SBN 114672) *tgbrown@townsend.com*
2 | JULIE J. HAN (SBN 215279) *jjhan@townsend.com*
379 Lytton Avenue
3 | Palo Alto, California  94301
Telephone: (650) 326-2400; Facsimile: (650) 326-2422
4 |
O'MELVENY & MYERS LLP
5 | KENNETH L. NISSLY (SBN 77589) *kennissly@thelen.com*
SUSAN van KEULEN (SBN 136060) *svankeulen@omm.com*
6 | SUSAN ROEDER (SBN 160897*) sroeder@omm.com*
2765 Sand Hill Road
7 | Menlo Park, California  94025
Telephone: (650) 473-2600; Facsimile: (650) 473-2601
8 |
Attorneys for Plaintiffs
9 | HYNIX SEMICONDUCTOR INC.,
HYNIX SEMICONDUCTOR AMERICA INC.,
10 | HYNIX SEMICONDUCTOR U.K. LTD., and
HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH, | Case No.  CV 00-20905 RMW |
| | **HYNIX'S STATEMENT REGARDING ITS PROPOSED FORM AND TERMS FOR THE FINAL JUDGMENT** |
| Plaintiffs, | Date:    March 17, 2009 |
| | Time:   10:00 a.m. |
| v. | Ctrm:   6 (Hon. Ronald M. Whyte) |
| RAMBUS INC., | |
| Defendant. | |

Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd., and Hynix Semiconductor Deutschland GmbH (collectively "Hynix") submit this statement and the supporting Declaration of Theodore G. Brown, III ("Brown Decl.") pursuant to the Court's February 24, 2009 Order Memorializing Compulsory License Negotiation Guidelines.

The parties and their counsel have met and conferred regarding the form and terms of a proposed judgment in this case.  Additional issues were resolved by the parties on March 4, 2009 in Seoul, after the parties' submission of their March 2, 2009 Joint Memorandum and [Proposed] Final

Judgment.  A current version of the form of [Proposed] Final Judgment is attached as Exhibit A to the Brown Decl..  As before, language in italics reflects language or provisions that the parties have not agreed upon.  The convention reflected in the form of Final Judgment is to indicate language proposed by one party but not agreed to by the other.  Language in italics and underlined has been proposed by Hynix but has not been agreed to by Rambus; language in italics and bold reflects language proposed by Rambus but not agreed to by Hynix.  Where the parties have submitted competing language or concepts, the use of a "/" is intended to divide the parties' respective submissions.

As directed by the Court, Hynix has met and conferred and reached certain consensus with Rambus as to the form and contents of the [Proposed] Final Judgment pursuant to Court order.  By doing so, Hynix does not waive, but maintains, all available objections to the provisions of the [Proposed] Final Judgment and to each of the Court's orders and determinations underlying the [Proposed] Final Judgment.  The [Proposed] Final judgment is submitted without prejudice to Hynix's right to appeal any or all aspects of the Final Judgment, including the imposition and terms of the included compulsory license, and any issue underlying the Final Judgment, including but not limited to validity, infringement , and/or enforceability of Rambus's patents and the reasonableness of the royalty awarded to Rambus.

Two issues remain for the Court to determine.  The areas of disagreement between the parties are indicated in the attached [Proposed] Final Judgment, and Hynix's position on each is as follows.

# I.      ROYALTIES:  ACCRUE, PAY TO RAMBUS, OR PAY TO ESCROW

One of the disputes centers on the mechanics of Hynix's on-going royalty obligation:  whether Hynix should accrue the on-going royalties, pay the on-going royalties to Rambus, or place the on-going royalties in an interest-bearing escrow account, for disposition as the Court directs upon resolution of Hynix's appeal.

## A.      This Issue Is Ripe For Decision

As a prefatory matter, Rambus maintains that this matter should not be decided now, but should be resolved after entry of judgment, in connection with Hynix's Rule 62 motions.  Rambus's apparent basis for this delay is that it was the route followed in the *Finisar Corp. v The DirecTV Group, Inc.* case.  There, the judgment entered simply provided that the on-going royalties awarded by

the court would be paid by DirecTV to Finisar.  *See* Brown Decl., Exh. B ("*Finisar* Order") at p. 1. When it later developed that Finisar's position was that the on-going royalties so paid would not be refundable under any circumstance, DirecTV moved to amend the judgment to provide that the on-going royalties would be deposited in escrow, pending resolution of DirecTV's appeal.  *Id.* at p. 5.

Hynix submits that this intermediate procedural step is unnecessary and would be inefficient. The issue is ripe for determination now, and it is unclear why Rambus seeks to delay the issue. Rambus has provided no justifiable reason for any delay, and the one case it has cited resulted in denial of the result it apparently advocates here.

The Final Judgment should resolve all outstanding issues.  If the accrue/pay/escrow issue is not resolved until after judgment is entered, the judgment would have to be amended, which could inject uncertainty into the parties' appeal rights.

**B.      Payment of the Royalties By Hynix Will Trigger Complex International Tax Issues**

Either of the two scenarios that would require Hynix to pay the royalties (to Rambus or into escrow, as opposed to accruing them) will create difficult international tax issues.  The Korean government considers royalty payments made by Korean companies to U.S. companies (such as payments by Hynix to Rambus) to be Korean-source income to the U.S. company, and requires that withholding taxes (currently 16%) be deducted from the royalty amount and paid to the Korean government.  The U.S. company can then credit the amount withheld from any U.S. income taxes that it owes.  As reflected in the [Proposed] Final Judgment, Rambus has agreed that this is correct and that Hynix should deduct the withholding tax from any payments to Rambus, pay the withheld amounts to the Korean government on Rambus's behalf, and furnish Rambus with the necessary paperwork to support Rambus's deduction from its U.S. income taxes.  *See* Brown Decl., Exh. A at Section 7, next to last paragraph.  Hynix understands that the same tax withholding is required if the payments were escrowed.

However, in the event that the judgment is reversed or modified, Rambus will be obligated to disgorge the benefits paid, including unwinding its U.S. tax benefits resulting from the taxes paid to the Korean government on Rambus's behalf.  (Rambus's U.S. tax benefit would not necessarily be

1    sufficient, depending at least on its U.S. income tax rate and the extent to which Rambus was able or

2    might in the future be able to offset U.S. income taxes using credits for Korean taxes withheld.)

3    Whether Rambus (or Hynix) could obtain a refund of withholding taxes paid to the Korean

4    government is unknown, and would certainly involve unnecessary complications and significant

5    efforts by the parties, their foreign and domestic tax advisors, and possibly their counsel.  These issues

6    arise whether the payments are made to Rambus or to an escrow account.  On the other hand, if the

7    on-going royalties are accrued, and if the judgment were affirmed on appeal, Hynix could simply

8    withhold all taxes Rambus then owed to the Korean government, on Rambus's behalf.  Only by

9    permitting Hynix to accrue, rather than pay, on-going royalties can the Court avoid the risk that

10   millions of dollars in royalty payments withheld as taxes owed by Rambus, will be unrecoverable by

11   either party.

     **C.**     **Allowing Hynix To Accrue the On-Going Royalties Is the Simplest and Fairest Solution**

14        Compared to payment of the on-going royalties and the corresponding international tax

15   implications, the simplest solution is to require Hynix to accrue the on-going royalties and pay them,

16   as necessary, upon the resolution of the appeal.  The withholding tax issues will be greatly simplified,

17   if not completely eliminated.  This approach of permitting accrual of post-verdict royalties was

18   followed in *Voda v. Cordis Corp.*, 2006 WL 2570614, *6 (W.D. Okla. Sept. 5, 2006).  *See also z4*

19   *Technologies, Inc. v. Microsoft Corp.*, 434 F.Supp.2d 437, 444 (E.D. Texas 2006) (issues of on-going

20   royalties severed, to be made subject of separate suit; quarterly reports required to "preserve z4's

21   rights to future monetary damages in an efficient manner."); Brown Decl., Exh. C at p. 2.

     **D.**     **Requiring Hynix To Pay Rambus the On-Going Royalties Would Be  Improper and Premature**

24        A requirement that Hynix pay on-going royalties to Rambus would be improper where, as

25   here, Rambus takes the position that such payments are not refundable regardless of the outcome on

26   appeal.  Any on-going royalties paid to Rambus must be refundable to Hynix in the event of a reversal

27   or substantial modification of the judgment on appeal.  *Broadcom Corp. v Qualcomm Inc.*, 585 F.

28   Supp. 2d 1187, 1192 (C.D. Cal. 2008) (where royalties were paid pursuant to a court order that was

1  subsequently reversed, "Broadcom was never entitled to royalties on the invalid [ ] patent, [and] the

2  Court should return these payments to Qualcomm."); *Finisar* Order at p. 3 ("this remedy of future

3  damages, like the award of past damages, depend[s] upon the judgment being ultimately affirmed.").

4  These cases, the only ones Hynix has found that directly address the disposition of royalties paid

5  under a compulsory license, are in accord with the general principle that damages paid pursuant to a

6  judgment must be returned upon reversal. *Baltimore & Ohio Railroad Company v. U.S.*, 279 U.S.

7  781, 787 (1929) (upon reversal of the administrative agency's decision, party was "entitled to have the

8  amounts so paid by it together with interest thereon from the dates of such payments at the rate

9  established by the law of the State in which such sums were paid"); *Atlantic Coast Line Railroad Co.*

10 *v. Florida*, 295 U.S. 301, 309 (1935) (It is a well-established rule that "what has been lost to a litigant

11 under the compulsion of a judgment shall be restored thereafter, in the event of a reversal by the

12 litigants opposed to him, the beneficiaries of the error."); *Strong v. Laubach*, 443 F.3d 1297, 1300

13 (10th Cir. 2006) (after reversal of a district court decision, party was required to repay workers"

14 compensation payments that were garnished to satisfy on a judgment because they had "received

15 funds to which they are not entitled and must now disgorge those funds."). If the judgment provides

16 for the payment of on-going royalties to Rambus, it should also provide that, in accordance with any

17 future orders of the Court, any such payments should be refundable to Hynix following a successful

18 appeal.

19      There is no question that the compulsory license, as compensation ordered pursuant to an

20 adverse judgment, is a remedy for the judgment of infringement. *See Foster v. Am. Mach. & Foundry*

21 *Co.*, 492 F.2d 1317, 1324 (2d Cir. 1974) (describing a "compulsory license" as a "benefit to the

22 patentee who has been unable to prevail in his quest for injunctive relief"). And as a remedy, the

23 compulsory license and payments under it are valid only insofar as the judgment is ultimately

24 affirmed. In the event of reversal or other relevant modification of the judgment, the compulsory

25 payments are refundable. The Federal Circuit's decision in *On Demand Machine Corp. v. Ingram*

26 *Industries* demonstrates that court-ordered, going-forward royalties are appropriately refunded after a

27 successful appeal. *On Demand Machine Corp. v. Ingram Industries*, 442 F.3d 1331, 1334 (Fed. Cir.

28 2006). In that case, the Federal Circuit reversed the judgment of infringement, which necessitated

1   vacatur of both the award for past damages and the grant of a going-forward, royalty-bearing license

2   during appeal. *Id*.

3       **E.    If Hynix is Required to Pay, Rather than Accrue, the On-Going Royalties,
             Payment Should Be Made Into an Escrow Account**

4

5           If the Court requires Hynix to pay, rather than accrue, on-going royalties before the Federal

6   Circuit's review is complete, a better course of action would be to establish an escrow account, where

7   the disposition of funds deposited would be directed by the Court following appeal.  This is the result

8   reached by the Court in *Finisar Corp. v The DirecTV Group, Inc.*  In that case, after judgment was

9   entered, Finisar took the position that on-going royalties were not refundable.  *Finisar* Order at p. 2.

10  The Court found that the royalties paid under a compulsory license were more akin to damages, which

11  must be returned in the event of reversal of the judgment, than royalties paid under a voluntary patent

12  license, which normally are not refundable once paid.  *Id*. at pp. 3-4.  Because the on-going royalties

13  would have to be returned following a successful appeal, the Court directed that they be deposited in

14  escrow, pending appeal.  *Id*. at p. 5.  The Federal Circuit has likewise ordered the creation of an

15  escrow account for deposit of ongoing royalties during the pendency of the appeal, where an

16  injunction has been stayed pending appeal.  *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,

17  897 F.2d 511, 516 (Fed. Cir. 1990) *rev'd on other grounds Standard Havens Prods., Inc. v. Gencor*

18  *Indus., Inc.*, 953 F.2d 1360 (Fed. Cir. 1991).

19  **II.    TIMING OF COSTS PROCEEDINGS**

20          The parties dispute the timing for the determination and taxation of costs under Fed. R. Civ.

21  Proc. 54(d)(1).  Rambus has estimated that its taxable costs are $15 million.  Rambus proposes that it

22  submit its bill of costs within thirty (30) days of judgment, which will force Hynix and the Court to

23  expend efforts that could be mooted by the Federal Circuit's decision on appeal – Hynix will be

24  required to prepare and file its objections, and the Court would be required to consider and resolve

25  many issues that are unrelated to the merits of the action.  Although Rambus has not yet offered

26  further explanation of this staggering amount, the sheer magnitude of the anticipated cost bill portends

27  numerous controversies and significant further proceedings.

28          The Court has discretion to defer taxation of costs until after the appeal is complete.  *Fleischer*

1    *v. A. A. P. Inc.*, 36 F.R.D. 31, 164 (S.D.N.Y. 1964); *American Infra-Red Radiant Co. v. Lambert*

2    *Industries, Inc.*, 41 F.R.D. 161, 163 (D. Minn. 1966) (staying taxation of costs pending appeal).

3    Upon a reversal or modification of the judgment, any prior cost decisions are

4    automatically vacated. *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 229, 233 (1964),

5    *disapproved of on other grounds by Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 443,

6    (1987); *Amarel v. Connell*, 102 F.3d 1494, 1523-24 (9th Cir. 1997). As such, it would be a waste of

7    time, money, and the Court's resources to litigate the costs issues now, particularly given the amount

8    of Rambus's claimed costs (which indicates that there may be substantial controversy over the proper

9    amount) and, as the Court has stated, the case has presented several "close issues," indicating that

10   there is at least a substantial chance that the judgment will be modified or changed on appeal.

11   In the Delaware litigation, Rambus advocated an approach similar to Hynix's proposal here.

12   Rambus, while focusing on the potential inefficiency of assessing Micron's attorneys fees prior to

13   resolution of its own appeal, requested that <u>all</u> further proceedings be stayed pending appeal. And, in

14   fact, that is what the Delaware Court ordered. Brown Decl., Exh. D; Exh. E; *see also* Fed. R. Civ. P.

15   54(d)(2)(B); *Glaxo Group Ltd. v. Apotex, Inc.*, 272 F. Supp. 2d 772, 779 (postponing and staying

16   further proceedings on plaintiff's fee petition until conclusion of the appeal). The same concerns

17   dictate that the cost proceedings in this case be stayed.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

### III.    CONCLUSION

2      For the foregoing reasons, in response to the Court's orders (and without prejudice and

3   reserving all rights), Hynix respectfully requests the Court resolve the outstanding issues consistent

4   with Hynix's proposal above.

5

6   DATED:  March 9, 2009                    Respectfully submitted,

7

8                                      By:    /s/ Theodore G. Brown, III
                                            Theodore G. Brown, III
9                                           Julie J. Han
                                            TOWNSEND and TOWNSEND and CREW LLP
10
                                            Kenneth L. Nissly
11                                          Susan G. van Keulen
                                            Susan D. Roeder
12                                          O'MELVENY & MEYERS LLP

13                                          Attorneys for
                                            HYNIX SEMICONDUCTOR INC.,
14                                          HYNIX SEMICONDUCTOR AMERICA INC.,
                                            HYNIX SEMICONDUCTOR U.K. LTD., and
15                                          HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH

    60392355 v1
16

17

18

19

20

21

22

23

24

25

26

27

28