1   O'MELVENY & MYERS LLP
    KENNETH L. NISSLY (SBN 77589) *knissly@omm.com*
2   SUSAN G. van KEULEN (SBN 136060) *svankeulen@omm.com*
    SUSAN ROEDER (SBN 160897) *sroeder@omm.com*
3   2765 Sand Hill Road
    Menlo Park, California 94025-7019
4   Telephone: (650) 473-2600; Facsimile: (650) 473-2601

5   TOWNSEND AND TOWNSEND AND CREW LLP
    THEODORE G. BROWN, III (SBN 114672) *tgbrown@townsend.com*
6   JULIE J. HAN (SBN 215279) *jjhan@townsend.com*
    379 Lytton Avenue
7   Palo Alto, California  94301
    Telephone:  (650) 326-2400; Facsimile:  (650) 326-2422
8
    Attorneys for Plaintiffs
9   HYNIX SEMICONDUCTOR INC.,
    HYNIX SEMICONDUCTOR AMERICA INC.,
10  HYNIX SEMICONDUCTOR U.K. LTD., and
    HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH
11

12              **UNITED STATES DISTRICT COURT**

13         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                    **SAN JOSE DIVISION**

15  HYNIX SEMICONDUCTOR INC.,              Case No.  CV 00-20905 RMW
    HYNIX SEMICONDUCTOR AMERICA
16  INC., HYNIX SEMICONDUCTOR U.K.
    LTD., and HYNIX SEMICONDUCTOR         **HYNIX'S NOTICE OF MOTION AND
17  DEUTSCHLAND GmbH,                      MOTION FOR STAY OF EXECUTION OF
                                           MONEY JUDGMENT AND FOR
18              Plaintiffs,                PERMISSION TO POST ALTERNATIVE
                                           SECURITY; MEMORANDUM OF POINTS
19         v.                              AND AUTHORITIES IN SUPPORT
                                           THEREOF**
20  RAMBUS INC.,
                                           **[PUBLIC VERSION]**
21              Defendant.
                                           Date:    May 1, 2009
22                                         Time:    2:00 p.m.
                                           Ctrm:    6
23                                         Judge:   Honorable Ronald M. Whyte

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................. 2

II.     STATEMENT OF FACTS ...................................................... 3

        A.      Final Judgment ....................................................... 3

        B.      Hynix's Financial and Debt Structure ...................... 4

        C.      Hynix's Posting of Bond in September 2006.............. 4

        D.      Status of Hynix's Efforts to Obtain a Supersedeas Bond ............... 5

                1.      Hynix efforts -- Spring and Summer 2008.................... 5

                2.      Deteriorating economic conditions -- Fall 2008 ............ 6

                3.      Recent efforts to obtain a bond ................................ 7

III.    IF EXECUTION OF THE JUDGMENT IS NOT STAYED, ███████████
        ███████████████████████████████ .............................. 8

IV.     BECAUSE THE CURRENT ECONOMIC CRISIS MAKES OBTAINING A
        SUPERSEDEAS BOND IN THE FULL AMOUNT OF THE JUDGMENT
        IMPRACTICABLE, HYNIX SHOULD BE PERMITTED TO SUBSTITUTE AN
        ALTERNATIVE FORM OF SECURITY .............................................. 9

        A.      It is Impracticable for Hynix to Obtain a Supersedeas Bond in the Full
                Amount of the Judgment.......................................................... 9

        B.      Alternative Security Adequately Protects Rambus's Interests............ 11

        C.      The Bond Requirement May Not be Used to Penalize Hynix for Exercising
                its Right to Appeal ........................................................... 13

V.      HYNIX SHOULD BE PERMITTED TO ACCRUE ONGOING ROYALTIES
        AWARDED TO RAMBUS IN THE FINAL JUDGMENT............................ 14

        A.      The Royalties Paid to Rambus will be Recoverable if Hynix Prevails on
                Appeal ...................................................................... 15

        B.      If Rambus Appeals the Denial of a Permanent Injunction, it Cannot
                Simultaneously Collect Ongoing Royalties Because Those Remedies are
                Inconsistent ................................................................. 16

        C.      Hynix Must Pay Withholding Taxes to the Korean Government in
                Connection with Royalty Payments to Rambus or Into an Escrow Account........ 17

        D.      The Court Should Order Accrual of the Royalties.............................. 17

VI.     CONCLUSION ....................................................................... 20

**TABLE OF AUTHORITIES**

Page

**CASES**

*Atl. Coast Line R.R. Co. v. Florida,*
295 U.S. 301 (1935) .................................................................................... 16

*Baltimore & Ohio R.R. Co. v. U.S.,*
279 U.S. 781 (1929) .................................................................................... 16

*Broadcom Corp. v. Qualcomm Inc.,*
585 F. Supp. 2d 1187 (C.D. Cal. 2008) ............................................. 15, 16, 18, 19

*C. Albert Sauter Co. v. Richard S. Sauter Co.,*
368 F. Supp. 501 (E.D. Pa. 1973) ................................................................. 12

*Cordis Corp. v. Medtronic,*
780 F.2d 991 (Fed. Cir. 1984) ...................................................................... 18

*Dillon v. City of Chicago,*
866 F.2d 902 (7th Cir. 1988) ......................................................................... 9

*Enserch Corp. v. Shand Morahan & Co., Inc.,*
918 F.2d 462 (5th Cir. 1990) ........................................................................ 17

*Fed. Prescription Svc., Inc. v. Am. Pharm. Ass'n,*
636 F.2d 755 (D.C. Cir. 1980) ...................................................................... 11

*Finisar Corp. v. The DirecTV Group, Inc.* (Unpublished),
No. 1:05-CV-264, Docket No. 354 (E.D. Texas, Sept. 26, 2006) ................... 18, 19

*HCB Contractors v. Rouse & Assoc.,*
168 F.R.D. 508 (E.D. Pa. 1995) .................................................................... 10

*In re JTS Corp.,*
No. C05-4709 JF, 2008 U.S. Dist. LEXIS 98928 (N.D. Cal. Nov. 26, 2008) ....... 10

*Int'l Telemeter, Corp. v. Hamlin Int'l Corp.,*
754 F.2d 1492 (9th Cir. 1985) ..................................................................... 9, 11

*Markman v. Westview Instruments,*
517 U.S. 370 (1996) .................................................................................... 19

*Mendenhall v. Barber-Greene Co.,*
26 F.3d 1573 (Fed. Cir. 1994) ..................................................................... 3, 19

*Olympia Equip. Leasing Co. v. Western Union Tel.,*
786 F.2d 794 (7th Cir. 1986) ............................................................. 8, 9, 10, 11

*On Demand Machine Corp. v. Ingram Indus.,*
442 F.3d 1331 (Fed. Cir. 2006) .................................................................... 16

*Paice LLC v. Toyota Motor Corp.,*
504 F.3d 1293 (Fed. Cir. 2007) .................................................................... 15

*Poplar Grove Planting and Ref. Co. v. Bache Halsey Stuart, Inc.,*
600 F.2d 1189 (5th Cir. 1979) ............................................................. 9, 11, 13

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.,*
897 F.2d 511 (Fed. Cir. 1990) ............................................................. 17, 18, 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Strong v. Laubach*,
   443 F.3d 1297 (10th Cir. 2006)................................................................. 16

*Texaco Inc. v. Pennzoil Co.*,
   784 F.2d 1133 (2d Cir. 1986), *rev'd on abstention grounds*, 481 U.S. 1 (1987).................. 13

*Trans World Airlines, Inc. v. Hughes*,
   515 F.2d 173 (2d Cir. 1975)............................................................. 10, 11, 13, 14

*U.S. v. Boyce*,
   148 F. Supp. 2d 1069 (S.D. Cal. 2001) ........................................................ 9

*United States v. Troyer*,
   No. S90-195 (RLM), 1992 U.S. Dist. LEXIS 6084 (N.D. Ind. Apr. 6, 1992) ...................... 10

*Voda v. Cordis Corp.*,
   No. Civ 03-1512-L, 2006 WL 2570614 (W.D. Okla. Sept. 5, 2006)........................... 18

*z4 Techs., Inc. v. Microsoft Corp.*,
   434 F. Supp. 2d 437 (E.D. Tex. 2006) ....................................................... 18

**RULES**

Fed. R. App. P. 39(e)(3) .................................................................... 14

Fed. R. Civ. P. 62 ...................................................................... 11, 14

Fed. R. Civ. P. 62(a) ....................................................................... 9

Fed. R. Civ. P. 62(d) ..................................................................... 3, 9

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

1                                   **NOTICE OF MOTION AND MOTION**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE that at 2:00 p.m. on May 1, 2009, or as soon thereafter as the

4    matter may be heard by the Honorable Ronald M. Whyte, plaintiffs Hynix Semiconductor Inc.,

5    Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd., and Hynix Semiconductor

6    Deutschland GmbH (collectively "Hynix") will bring a motion to stay execution of the money

7    judgment in this action and for permission to post security other than a supersedeas bond in the

8    full amount of the judgment as specified in Federal Rule of Civil Procedure 62(d).  A Proposed

9    Order is attached to this notice and motion as Exhibit A.

10        The motion will be based on this notice of motion, the memorandum of points and

11    authorities that follows, the declarations of Yoo Ho Roh, Taekjin Sa, Jae Park, and Chang Weon

12    Rhee submitted in support of this motion, any additional evidence or argument that Hynix may

13    submit in support of this motion at or before the hearing of this matter, and upon the documents in

14    the Court's file.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The current global recession is widely considered to be the worst since the Great Depression. One of the signature features of this crisis is that it is centered in the financial sector, causing a severe contraction of the credit markets. The shortage of credit has, in turn, cascaded throughout the larger economy, which relies on the availability of credit in order to function smoothly. As a result, today even the world's most well-established corporations are facing unprecedented business setbacks. In this climate -- which affects the global economy, the Korean economy, the DRAM industry, and Hynix specifically -- Hynix is now faced with the extraordinary challenge of seeking a bond to secure the judgment of nearly $400 million.

The entire DRAM industry is reeling. Average selling prices (ASPs) for DRAMs fell over 50% in 2007, and another 50% in 2008, and are now reported to be below manufacturing costs.[1] Recently, a major producer, Qimonda, declared bankruptcy, and several Taiwanese DRAM companies are seeking merger partners or other business arrangements in order to survive.[2] Even as the world's number two DRAM producer, Hynix's financial condition has worsened significantly in the past year, with revenues, net profits, and cash on hand all falling.[3] Hynix's problems are exacerbated by the fact that the Korean won has fallen 35% against the dollar since last summer, causing Hynix's won-denominated credit obligations to increase.[4]

If the Court does not stay execution of the final judgment



---

[1] http://www.fabtech.org/news/_a/samsung_and_micron_gain_most_market_share_in_dram_crisis/# (article entitled "Samsung and Micron gain most market share in DRAM crisis" (article dated February 17, 2009; last visited March 24, 2009)).
[2] Declaration of Yoo Ho Roh submitted in support of this motion ("Roh Decl."), ¶ 11.
[3] Roh Decl, ¶ 11.
[4] Roh Decl, ¶¶ 11, 17.

1

2

3          Hynix would be entitled to an automatic stay of execution if it posted a

4  supersedeas bond.  *See* Fed. R. Civ. P. 62(d).  However, in the current economic environment, no

5  surety will post a bond ███████████████████████████ making it impracticable to

6  obtain a supersedeas bond in the full amount of the final judgment.  Settled law permits

7  alternative security in this situation.  Hynix can provide a supersedeas bond in the amount of $200

8  million, together with ███████████████████████████████

9  ████████████████████████████████████████

10 █████████████████████████  This alternative security adequately protects Rambus's

11 ability to collect on its judgment if it ultimately prevails.  Thus the Court should approve the

12 alternative security so that Hynix and its creditors are not forced to suffer the devastating impact

13 of an unstayed judgment.

14          The Court has suggested that Hynix also address in this motion the issue of

15 whether the ongoing royalties awarded to Rambus should be accrued, paid into escrow, or paid to

16 Rambus.  Rambus has strategically avoided admitting that Hynix would be entitled to recover

17 ongoing royalties paid to Rambus if the judgment in this case is reversed; indeed, Rambus

18 appears poised to argue that it is entitled to retain ongoing royalties even if it loses the appeal.

19 Payment of royalties to Rambus or into escrow will also require Hynix to pay ████████████

20 ██ withholding taxes to the Korean government, and Hynix will have to take various

21 administrative steps to recover those tax payments in the event Hynix wins on appeal.  Most

22 importantly, forcing Hynix to pay Rambus before resolution of the appeal would be manifestly

23 unjust because it would make Hynix the only significant DRAM maker paying royalties to

24 Rambus under the patents-in-suit, thereby impairing Hynix's ability to compete.  *See Mendenhall*

25 *v. Barber-Greene Co.*, 26 F.3d 1573, 1583 (Fed. Cir. 1994).  Under these circumstances, Hynix

26 should be permitted to accrue ongoing royalties while the appeal is pending.

27

28

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

II.     **STATEMENT OF FACTS**

A.     **Final Judgment**

On March 10, 2008, the Court entered final judgment against Hynix in the amount of $396,881,244. *See* Final Judgment (D.E. 3911), ¶¶ 1, 2, and 4. Included in the judgment was an award of ongoing royalties to Rambus during the period after January 31, 2009 and before April 18, 2010. *Id.*, ¶ 7.

B.     **Hynix's Financial and Debt Structure**

Hynix depends on short-term and long-term debt and credit arrangements to fund its business operations, as described in this section. Hynix had consolidated total loans in the amount of approximately ███████████ as of December 31, 2008. Roh Decl., ¶ 12.



NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

C.   **Hynix's Posting of Bond in September 2006**

This is the second time that Hynix has faced the necessity of obtaining a bond in this case, and reviewing the history of the previous Hynix bond demonstrates how dramatically the economic environment has changed over the past two-and-a-half years.  In August 2006, this Court issued an order staying Phase III of the trial until February 2007 in view of the FTC's investigation into Rambus's conduct.  Order Staying Phase III of Trial Pending Final Order of the Federal Trade Commission (D.E. 2394).  The stay was conditional on Hynix posting "security satisfactory to the court that will ensure payment of the damages that were awarded to Rambus in Phase II, prejudgment interest on the Phase II award, and royalties on Hynix's SDRAM and DDR SDRAM sales from January 1, 2006 through February 2, 2007 at a rate of 1% for the SDRAM and 4.25% for the DDR SDRAM."  *Id.* at 8:27-9:4.  In connection with the Stay Order, Hynix retained a broker, Marsh Korea, and on September 22, 2006 filed a bond with American Home Assurance Company as surety in the amount of $192,333,637.  Stay Bond (D.E. 2421).  The bond was backed by stand-by Letters of Credit from various Korean financial institutions.  *See* Hynix Status Conference Statement, filed August 30, 2006.  The bond was released in March 2007, following a lifting of the stay.  *See* March 15, 2007 Order Granting Motion for Release of Bond (D.E. 2508) and March 20, 2007 Supplemental Order Releasing Bond (D.E. 2546).

D.   **Status of Hynix's Efforts to Obtain a Supersedeas Bond**

Shortly after conclusion of the Phase III trial, and many months before final judgment was entered in this case, Hynix began seeking a bond in connection with its planned appeal.  Roh Decl., ¶ 3.  Hynix began these efforts early because from its experience in 2006, coupled with the anticipated size of the judgment, Hynix knew it would take considerable time to obtain a bond.

1.   **Hynix efforts -- Spring and Summer 2008**

In May 2008, Hynix began planning the efforts required to obtain a bond.  Roh Decl., ¶ 3  In June 2008, Hynix identified and retained a broker, ███████ which assisted Hynix in identifying and selecting ███████████████████ as its surety to underwrite a bond.  *Id.*

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

1

2

3

4

5

6

7

8

9

10               In June 2008, Hynix's Share Management Council

11

12

13

14

15

16

17

18

19

20

21

22

23            Due to these efforts, Hynix believed in the summer of 2008 that it would have

24 been able to obtain a supersedeas bond, at least in some significant amount, although it had no

25 firm commitment and could not finalize bond arrangements because the total amount of the final

26 judgment was unknown. *Id.,* ¶ 5.

27         **2.**     **Deteriorating economic conditions -- Fall 2008**

28           The financial turmoil that began in the fall of 2008 has crippled Hynix's efforts to

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

1   obtain ████████████████ a bond.  Banks worldwide are avoiding making inter-bank

2   loans, creating a money shortage among Korean banks.  Roh Decl., ¶ 10.  The credit ratings of

3   Korean commercial banks have been downgraded, █████████████████████████████

4   ██████████████████████████  *Id*.  Meanwhile, the Korean won has fallen 35%

5   against the U.S. dollar since June 2008.  *Id.*, ¶ 16.

6          The DRAM industry is in serious financial difficulty, with all major DRAM

7   manufacturers (including Hynix) suffering serious losses.  *Id.*, ¶¶ 11, 17.  One major DRAM

8   producer (Qimonda) recently declared bankruptcy, and several Taiwanese DRAM companies are

9   financially distressed.  *Id.*, ¶ 11.  Because DRAM prices are at historically low levels, █████

10  ████████████████████████████████████████████████████████████

11  ███████████

12          **3.**      **Recent efforts to obtain a bond**

13          Following entry of judgment, Hynix obtained a new bond proposal from ███████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████

26          Based on the most recent discussions and information, Hynix presently believes

27  that the largest bond it can obtain will be in the total amount of $200 million, although it does not

28

yet have a firm commitment for ███████████████████████████████.[5] *Id.*,

¶ 20.

**III.   IF EXECUTION OF THE JUDGMENT IS NOT STAYED,** ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

The Court has a duty under these circumstances to consider the interests of all of

Hynix's creditors:

> A judgment creditor is a bona fide creditor, but the court that issues the judgment is not required to ignore the interests of other creditors when deciding how much security to make the [losing party] post as a condition of being allowed to stave off execution of the judgment pending appeal. This becomes apparent when we consider the contingent nature of such a creditor's claim if an appeal is filed, as in this case. If the judgment is reversed, the claim is void *ab initio*. Of course other creditors' claims may be contingent too; nevertheless it would be a painful irony for us to impair and perhaps even destroy the other creditors' claims merely to remove every element of hazard from a claim that may not survive the process of appeal.

*Olympia Equip. Leasing Co. v. Western Union Tel.*, 786 F.2d 794, 798 (7th Cir. 1986). Hynix's

other creditors have rights that, in most if not all cases, take priority over Rambus's rights

because the other creditors' rights arose earlier. ███████████████████████████████

████████████████████████████████████████████████████████████████

---

[5] Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd, and Hynix Semiconductor Deutschland GmbH are subsidiaries of Hynix Semiconductor Inc. ("HSI") engaged in sales and marketing activities in their respective territories. Declaration of Jae Park submitted in support of this motion, ¶ 3. They have very limited assets, and they do not have any ability to post a significant supersedeas bond separate and apart from HSI. *Id.*, ¶ 5.

████████████████████████████████ It would be contrary to law and

manifestly unfair to force Hynix into this position, which would injure all parties including

Rambus, when Hynix is offering adequate alternative security.

## IV.   BECAUSE THE CURRENT ECONOMIC CRISIS MAKES OBTAINING A SUPERSEDEAS BOND IN THE FULL AMOUNT OF THE JUDGMENT IMPRACTICABLE, HYNIX SHOULD BE PERMITTED TO SUBSTITUTE AN ALTERNATIVE FORM OF SECURITY

Pursuant to Federal Rule of Civil Procedure 62(a), execution on a money judgment

is automatically stayed for 10 days from entry of judgment.[6]  Thereafter, a losing party may

obtain an automatic stay of proceedings to enforce a money judgment by filing an appeal and

posting a supersedeas bond.  Fed. R. Civ. Proc. 62(d) ("If an appeal is taken, the appellant may

obtain a stay by supersedeas bond.")  "The bond may be given upon or after filing the notice of

appeal" and "[t]he stay takes effect when the court approves the bond."  *Id.*  The purpose of the

bond requirement is to maintain the status quo and protect the parties from loss pending further

action in the case.  *See Poplar Grove Planting and Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d

1189, 1190-91 (5th Cir. 1979)

A bond is not a mandatory prerequisite for a stay of proceedings to enforce a

money judgment, however.  Settled law establishes that the district court has discretion to accept

an alternative form of security.[7]  *See Int'l Telemeter, Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492,

1495 (9th Cir. 1985) (citing *Poplar Grove Planting and Ref. Co.*, 600 F.2d at 1191).  Acceptance

of an alternative form of security is appropriate where (1) it is impossible or impracticable for the

party seeking substitution to post the supersedeas bond and (2) the proposed alternative is

adequate to safeguard the interests of the other party.  *See Olympia Equip. Leasing Co.*, 786 F.2d

at 796.

---

[6] During court-ordered negotiations over the form and content of the final judgment, Hynix and Rambus agreed that the automatic 10-day stay of execution under Rule 62(a) would be extended until two weeks after the hearing date on this motion, subject to certain conditions which Hynix has satisfied.  *See* Final Judgment, ¶ 10.

[7] The district court also has discretion to do away entirely with the requirement of a supersedeas bond.  *See U.S. v. Boyce*, 148 F. Supp. 2d 1069, 1096 (S.D. Cal. 2001) (citing *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988)) (describing acceptance of alternative security as an alternative to waiving bond requirement by application of *Dillon* factors).  Hynix does not seek to be relieved of the bond requirement entirely, only to be permitted to post adequate alternative security.

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

1

**A.** **It is Impracticable for Hynix to Obtain a Supersedeas Bond in the Full Amount of the Judgment**

2

3          After many months of effort, Hynix believes it will be able to obtain a supersedeas

4   bond in the amount of $200 million.  Roh Decl., ¶ 20. The economic environment generally and

5   conditions in the DRAM industry specifically have made it impracticable for Hynix to obtain a

6   bond in the full amount of the judgment.  *Id.*, ¶¶ 8-20.

7          In determining whether a bond is impracticable or impossible to post, courts may

8   consider the assets of the party posting the bond, the liquidity of those assets, and whether

9   financial institutions have agreed to provide a bond to the party.  *HCB Contractors v. Rouse &*

10  *Assoc.*, 168 F.R.D. 508, 512-513 (E.D. Pa. 1995).  The court may also find that a bond is

11  impracticable to post where the size or nature of the bond is unusual.  *See Trans World Airlines,*

12  *Inc. v. Hughes*, 515 F.2d 173, 177 (2d Cir. 1975); *and see Olympia Equip. Leasing Co.,* 786 F.2d

13  at 796 (noting that an inflexible requirement of a bond can be inappropriate "in an age of titanic

14  damage judgments").  Similarly, requirements imposed by the bonding company can render a

15  supersedeas bond effectively unavailable because the judgment debtor is not reasonably able to

16  fulfill those requirements.  *See Olympia Equip.* at 796-797 (concluding that a supersedeas bond

17  was unobtainable where a bond could not be obtained without a letter of credit, and judgment

18  debtor demonstrated that the members of the bank lending consortium most familiar with its

19  business were unwilling to issue a letter of credit).

20          Hynix faces two distinct but interrelated obstacles to obtaining a bond:  the state of

21  the global credit markets and its own financial condition.  Adverse market conditions such as

22  those now present can create a situation where it is impractical to obtain a bond.  *See, e.g., United*

23  *States v. Troyer*, No. S90-195 (RLM), 1992 U.S. Dist. LEXIS 6084, at *2 (N.D. Ind. Apr. 6,

24  1992) (granting stay and waiving posting of supersedeas bond where the premium for a

25  supersedeas bond was minimal but sureties, due to adverse market conditions, required that the

26  bond be secured by cash or cash equivalents in the amount of 110% of the face amount of the

27  bond). [8] ████████████████████████████████████████████

28  ───────────────────────
    [8] Hynix has presented evidence, in the form of declarations, outlining relevant present conditions

1
2

3          At the same time, Hynix is facing serious challenges to its own business.  Hynix is

4   a large company, with a net worth of over $4.3 billion, but the recent price crash in the DRAM

5   industry has severely disrupted Hynix's business

6                                                           Under similar

7   circumstances, judgment debtors have been permitted to post alternative security.  For example,

8   in *Olympia Equip. Leasing,* a judgment of $36 million was entered against Western Union

9   Telegraph Company.  Western Union Telegraph argued it was unable to post a $36 million bond.

10  The Seventh Circuit noted that Western Union Telegraph was "a large company, with total assets

11  nominally worth $2 billion" but was "financially distressed and illiquid."  *See Olympia Equip.*

12  *Leasing Co.*, 786 F.2d at 796.  The Seventh Circuit approved (with minor modifications) the

13  district court's order permitting posting of alternative security, consisting of a combination of

14  pledged cash, accounts receivables, and a security interest in some of the company's physical

15  assets.  *Id.*

16          The cumulative effect of these global, industry, and company-specific forces is

17  that a full supersedeas bond is effectively unavailable, particularly to a company, such as Hynix,

18  which cannot presently meet the heightened requirements for obtaining a bond.  *See id.*

19          **B.      Alternative Security Adequately Protects Rambus's Interests**

20          "Although Federal Rule of Civil Procedure 62 provides that a supersedeas bond

21  may be used to stay execution of a judgment pending appeal, the court has discretion to allow

22  other forms of judgment guarantee."  *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d at

23  1495 (citing *Poplar Grove Planting and Ref. Co.*, 600 F.2d at 1191).  The general requirement of

24  a supersedeas bond has a practical purpose:  to secure the judgment creditor from loss resulting

25  from the stay of execution.  *Fed. Prescription Svc., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760

26

27  in the global economy and the DRAM industry.  Hynix also requests that the Court take judicial
    notice of recent economic events. *See, e.g., In re JTS Corp.*, No. C05-4709 JF, 2008 U.S. Dist.
28  LEXIS 98928, at *3 (N.D. Cal. Nov. 26, 2008) ("the Court takes judicial notice of the changes in
    the economy" in the two years prior to November 2008).

1    (D.C. Cir. 1980).  Where alternative security can accomplish this same goal of protecting the

2    judgment creditor, courts have approved a variety of alternative forms of security, including

3    bonds or letters of credit in the partial amount of the judgment coupled with other security.  *See,*

4    *e.g.*, *Trans World Airlines, Inc.,* 515 F.2d at 177 (letter of credit for $75 million and an agreement

5    to maintain a net worth of over $335 million was held to be adequate security for a judgment of

6    over $83 million); *and see C. Albert Sauter Co. v. Richard S. Sauter Co.,* 368 F. Supp. 501, 520

7    (E.D. Pa. 1973) (bond in the amount of $100,000, stock placed in escrow, and restrictions

8    imposed on financial commitments were sufficient to secure a judgment of $1.2 million).[9]

9         Hynix presently believes it will be able to obtain a supersedeas bond for $200

10   million (just over half the amount of the final judgment).  Roh Decl., ¶ 20.  Hynix can also offer

11   Rambus



24   _____

25   [9] Some cases involve additional restrictions on the judgment debtor's financial affairs, which are
     not appropriate here because (1) Hynix is offering liens sufficient to fully secure the balance of

26   the judgment above the bond amount and (2) such restrictions could harm the interests of Hynix's
     other creditors.

27   [10]

28

1 ████████████████████████████████████

2          Taken together, this package of security protects Rambus's ability to collect on the

3 final judgment if it ultimately prevails. The bond portion protects $200 million of the judgment.

4 ████████████████████████████████████████

5 ████████████████████████████████████████

6 ██ is fully enforceable by Rambus under Korean law.  Declaration of Chang Weon Rhee

7 submitted in support of this motion, ¶¶ 3-4.  There are well-established mechanisms under Korean

8 law for Rambus to register and foreclose on its mortgage lien if Rambus wins on appeal.  *Id.*

9     **C.**    **The Bond Requirement May Not be Used to Penalize Hynix for Exercising its**
        **Right to Appeal**

10

11          The requirement for a supersedeas bond is not meant to penalize a party that wants

12 to exercise its right to appeal.  *Poplar Grove Planting and Ref. Co., Inc.*, 600 F.2d at 1191.  "If a

13 defendant has to liquidate all or a substantial part of his business in order to exercise the right to

14 appeal, then the appeal may surely be of doubtful value."  *Trans World Airlines, Inc. v. Hughes*,

15 515 F.2d at 178; *and see generally Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1152-53 (2d Cir.

16 1986) (holding that judgment debtor would be irreparably harmed if full bond, which was

17 impossible to obtain, was required in order to stay execution where execution would force

18 judgment debtor into bankruptcy, noting due process and other concerns), *rev'd on abstention*

19 *grounds*, 481 U.S. 1 (1987).  Forcing Hynix to take drastic measures to obtain a full supersedeas

20 bond (if that were even possible) would severely undermine Hynix's business and would operate

21 as a penalty on Hynix's exercise of its right to appeal.  The security requirement should not bar

22 the door to an appeal in this case, which presents many close, leading-edge issues.  This is

23 particularly true when Hynix has been "singled out" from the rest of the DRAM industry and

24 final judgment entered largely so that this case can serve as a vehicle for presenting the Federal

25 Circuit with the spoliation decision from this Court at the same time it considers the conflicting

26 Delaware spoliation decision.  Further, all of the claims at issue in this litigation (as well as in the

27 stayed litigation) are currently subject to reexamination over much of the same prior art evidence

28 during the patent trial.  Nearly all of the claims have been rejected, and some have been rejected

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

1   more than once.

2          The cost of providing a supersedeas bond or alternative security are a taxable cost

3   of the appeal, which means that if Hynix prevails on its appeal, Rambus will liable for the costs

4   associated with any security Hynix is required to obtain. *See* Fed. R. App. P. 39(e)(3); *and see*

5   *Trans World Airlines, Inc. v. Hughes*, 515 F.2d at 176. In theory, then, Hynix and Rambus share

6   an interest in minimizing the cost of the security Hynix is required to provide. Moreover, because

7   the final judgment awards Rambus ongoing royalties from Hynix, Rambus has an interest in

8   seeing that Hynix is able to continue business operations.

9          Hynix has engaged in discussions with Rambus as to alternative security, with no

10  success. Hynix explained that it believes the largest bond it will be able to obtain is for $200

11  million. Roh Decl., ¶ 24. Hynix made various proposals for alternative security ████████

12  ████████████████████████ which Rambus has rejected.

13          The parties' shared interest in minimizing the costs of providing security for the

14  judgment casts suspicion on Rambus's refusal to stipulate to or work with Hynix in formulating

15  alternative security, suggesting that Rambus may be using the supersedeas bond requirement

16  improperly as a settlement hammer rather than for its intended purpose. This Court has

17  previously expressed a "firm conviction that Rambus's motive in seeking an injunction is not to

18  prevent irreparable harm but either (a) to increase its leverage in negotiating an ongoing license

19  with Hynix or (b) to punish Hynix out of spite for its decision to contest Rambus's infringement

20  allegations and over a variety of other grievances involving the industry's rejection of RDRAM."

21  Order Granting in Part and Denying in Part Rambus's Motion for Post-Verdict Relief dated

22  February 23, 2009 (D.E. 3902) ("Post-Verdict Relief Order"), at 45:6-10. Although Rambus has

23  a legitimate interest in protecting its right to collect in the event it prevails, any arguments

24  Rambus may make about the adequacy of the security offered by Hynix should be weighed

25  against Rambus's efforts to exert leverage over Hynix.

26  **V.    HYNIX SHOULD BE PERMITTED TO ACCRUE ONGOING ROYALTIES
        AWARDED TO RAMBUS IN THE FINAL JUDGMENT**
27

28          In its March 10, 2009 Order Regarding Entry of Judgment, the Court stated that

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

1   the proper way for Hynix to make its request to accrue ongoing royalties (rather than pay them to

2   Rambus or to an escrow account) was by way of a Rule 62 motion following entry of judgment.

3   Because Hynix is justifiably concerned about its ability to fully recover amounts paid to Rambus

4   and Korean taxing authorities in connection with the ongoing royalties if Hynix prevails on

5   appeal, the easiest and fairest way to implement the ongoing royalties is to permit Hynix to

6   accrue, rather than pay, the ongoing royalties.

7   **A.    The Royalties Paid to Rambus will be Recoverable if Hynix Prevails on Appeal**

8

9          In its Order Regarding Entry of Judgment, the Court stated that "Hynix's fear --

10  that Rambus will not return any royalties paid by Hynix even if Hynix prevails on appeal --

11  appears baseless."  March 10, 2009 Order Regarding Entry of Judgment, p. 1:24-25 (citing

12  *Broadcom Corp. v. Qualcomm Inc.*, 585 F. Supp. 2d 1187 (C.D. Cal. 2008)).  With respect,

13  Hynix contends that the current record validates Hynix's concerns.

14          Rambus has artfully avoided any concession that ongoing royalties must be

15  returned if Hynix prevails on appeal.  In fact, Rambus appears to lay the groundwork for just the

16  opposite argument, by mischaracterizing the ongoing royalties as akin to a voluntary license.  *See,*

17  *e.g.*, Brief of Rambus Inc. Addressing Form of [Proposed] Final Judgment (D.E. 3908), p. 4:8-15

18  (Rambus citing case law on the issue of whether a party to a voluntary, pre-litigation patent

19  license must continue to make royalty payments while it challenges patents in court).  There is

20  some disagreement in the cases regarding the proper terminology for a remedy such as that

21  awarded in this case -- whether it should be designated an "ongoing royalty" or a "compulsory

22  license."  *Compare Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007)

23  (majority opinion explains that "[w]e use the term ongoing royalty to distinguish this equitable

24  remedy from a compulsory license" because "[t]he term 'compulsory license' implies that *anyone*

25  who meets certain criteria has congressional authority to use that which is licensed") *to id.* at

26  1316 (Judge Rader, concurring, states that "calling a compulsory license an "ongoing royalty"

27  does not make it any less a compulsory license"); *and see* Post-Verdict Relief Order, p. 47:20-22

28  ("'ongoing royalty' is merely a nice way of saying 'compulsory license'").

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

1    Regardless of terminology, however, the forward-looking remedy that has been

2    awarded to Rambus is *not* analogous to a voluntary, pre-litigation license.  Instead, the ongoing

3    royalties awarded here are more properly treated as damages paid pursuant to a judgment, which

4    must be returned upon reversal.  *See Broadcom Corp. v. Qualcomm Inc.*, *supra,* 585 F. Supp. 2d

5    at 1194 (upon reversal of court order, party that paid royalties as a result of the order was entitled

6    to recover those royalties under theories of restitution, contempt, and implied patent license); *and*

7    *see, e.g.*, *Baltimore & Ohio R.R. Co. v. U.S.*, 279 U.S. 781, 787 (1929) (upon reversal of

8    administrative agency's decision, party entitled to return of amounts paid pursuant to decision,

9    with interest);  *Atl. Coast Line R.R. Co. v. Florida*, 295 U.S. 301, 309 (1935) ("what has been lost

10   to a litigant under the compulsion of a judgment shall be restored thereafter, in the event of a

11   reversal by the litigants opposed to him, the beneficiaries of the error"); *Strong v. Laubach*, 443

12   F.3d 1297, 1300 (10th Cir. 2006) (after reversal of a district court decision, party was required to

13   repay workers' compensation payments that were garnished to satisfy judgment).  The Federal

14   Circuit's decision in *On Demand Machine Corp. v. Ingram Indus.*, 442 F.3d 1331, 1334 (Fed.

15   Cir. 2006), demonstrates that court-ordered, going-forward royalties are appropriately refunded

16   after a successful appeal.  In that case, the Federal Circuit reversed the judgment of infringement,

17   which necessitated the vacatur of both the award for past damages and the grant of a going-

18   forward, royalty-bearing license during appeal.  *Id.*

19        The Court's characterization of Hynix's concerns as "baseless" implies that Hynix

20   will be entitled to a return of the royalties paid if it prevails, but without an explicit order to that

21   effect at this time it seems likely that Rambus will later contest this issue.  Indeed, it seems likely

22   that Rambus opposes any refund order so that it can recognize the ongoing royalties as revenue.

23   Even with such an order, given economic conditions, Rambus's financial condition may

24   deteriorate, making it difficult or impossible for Hynix to recover the royalty payments.

25   **B.   If Rambus Appeals the Denial of a Permanent Injunction, it Cannot**
        **Simultaneously Collect Ongoing Royalties Because Those Remedies are**
26      **Inconsistent**

27        If Rambus appeals the denial of a permanent injunction, its appeal would provide

28   an additional basis for permitting Hynix to accrue rather than pay ongoing royalties, because

- 16 -

1     Rambus's efforts to obtain prospective injunctive relief would be inconsistent with its collection

2     of ongoing royalties. *See Enserch Corp. v. Shand Morahan & Co., Inc.*, 918 F.2d 462, 464 (5th

3     Cir. 1990) ("a lower court judgment may be suspended without bond when the relief sought by

4     the prevailing party on appeal is inconsistent with enforcement of the lower court's judgment,"

5     giving as an example that a party that is trying on appeal to obtain specific performance in lieu of

6     damages cannot at the same time attempt to execute a damage judgment).  Accordingly, Rambus

7     should not be permitted to receive payment of the ongoing royalties unless and until it renounces

8     any intention to appeal the denial of injunctive relief.

9        **C.**     <u>**Hynix Must Pay Withholding Taxes to the Korean Government in**</u>

10             <u>**Connection with Royalty Payments to Rambus or Into an Escrow Account**</u>

11        The Korean government considers royalty payments made by a Korean company

12     to a U.S. company (such as payments of ongoing royalties from Hynix to Rambus) to be Korean-

13     source income to the U.S. company, and requires that withholding taxes (currently 16.5%) be

14     deducted from the royalty amount and paid to the Korean government.  Declaration of Taekjin Sa,

15     ¶ 3.  Hynix would be required to pay these withholding taxes -- ████████████████

16     ████████████ -- regardless of whether royalty payments are made to Rambus or into an

17     escrow account. *Id.*, ¶ 5.  There is a mechanism by which Hynix could request a refund of the

18     withholding taxes paid to the Korean government (for example, if this case is reversed on appeal

19     and Rambus is held not to have a right to ongoing royalties), but a refund requires administrative

20     procedures by the Korean tax authorities. *Id.*, ¶¶ 6-7.  Payment of royalties to Rambus or into

21     escrow thus injects unnecessary international tax issues into the case.

22        **D.**     <u>**The Court Should Order Accrual of the Royalties**</u>

23        Rambus contends that to support a ruling ordering accrual of the ongoing royalties,

24     Hynix must meet the test set forth in *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897

25     F.2d 511 (Fed. Cir. 1990) for obtaining a stay of an injunction pending appeal. *See* Brief of

26     Rambus Inc. Addressing Form of [Proposed] Final Judgment (D.E. 3908), p. 4:26-5:5.  For a

27     number of reasons, Rambus's argument mischaracterizes the current posture of this case and has

28     no basis in law.

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

First, the Court has the power to implement the ongoing royalties scheme it has imposed in any manner it chooses. There is case authority for permitting accrual, rather than payment, of royalties. *See, e.g., Voda v. Cordis Corp.*, No. Civ 03-1512-L, 2006 WL 2570614, at *6 (W.D. Okla. Sept. 5, 2006); *and see z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 444 (E.D. Tex. 2006). Similarly, there is support in the cases for placing ongoing royalties in escrow pending appeal. *See* Order Granting Defendants' Motion for Approval of an Interest-Bearing Escrow Arrangement from *Finisar Corp. v. The DirecTV Group, Inc.* (Unpublished), No. 1:05-CV-264, Docket No. 354 (E.D. Texas, Sept. 26, 2006).[11]

Second, as discussed in Section V(A) above, the pre-litigation license cases cited by Rambus in support of its argument (such as *Cordis Corp. v. Medtronic*, 780 F.2d 991, 994-995 (Fed. Cir. 1984)) do not apply in the context of Court-ordered ongoing royalties such as those involved here. *See Broadcom Corp. v. Qualcomm Inc.*, 585 F. Supp. 2d 1187, 1193-94.

Third, Rambus's argument hinges on its faulty attempt to cast the ongoing royalties as a remedy akin to injunctive relief. The Court expressly denied Rambus's motion for a permanent injunction. *See* Final Judgment, ¶ 6; *and see* Post-Verdict Relief Order. Accordingly, there is no basis here for application of the *Standard Havens* test.

Finally, even if Hynix is required to make such a showing, it has done so. Other courts have determined that Rambus cannot enforce its patents because of its spoliation of evidence, and as the Court has noted, this case involves many other close issues. *See* Post-Verdict Relief Order, 3:24-4:3. This case presents an extraordinary situation in which three district courts have considered the same spoliation evidence and issues; two of the courts have disagreed with this Court and barred Rambus's enforcement of its patents. Critical decisions by the Supreme Court and the Federal Circuit on obviousness, claim construction, and written description, among many other issues, have reordered patent law during the pendency of this case. Respectfully, Hynix suggests that it meets the standard for showing likelihood of success on its appeal. This is especially true when, as discussed above, Hynix has made a strong showing

---

[11] This opinion was submitted to the Court on March 9, 2009 as Exhibit B to the Declaration of Theodore G. Brown, III (D.E. 3907). For ease of reference, the opinion is attached to this Motion as Exhibit B.

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW

that it will suffer irreparable injury if it is forced to pay royalties to Rambus, both in the potential loss of the withholding tax paid to the Korean government and in the possible inability to recover royalties paid to Rambus if Hynix prevails on appeal. *See Standard Havens*, 897 F.2d at 513 (when there is a strong showing of harm to applicant for stay, necessary showing for likelihood of success is lower). Rambus, by contrast, cannot demonstrate that it will suffer any injury if Hynix accrues the ongoing royalties. Finally, the public interest weighs in favor of permitting Hynix to accrue the royalties. Forcing Hynix to pay Rambus is likely to create additional disputes and drain Court and party resources in order for Hynix to obtain recovery of that money if it prevails. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 585 F. Supp. 2d at 1187 (party who paid royalties during appeal forced to bring motion to recover them after winning appeal).

Given that Rambus's patent cases against Samsung, Micron, and Nanya are stayed pending the Federal Circuit's consideration of the spoliation decisions from this Court and the Delaware district court, Hynix would be the only major manufacturer of industry-standard DRAM products that would be forced to pay royalties to Rambus on the patents-in-suit during the appeal. Forcing Hynix to pay royalties during appeal is particularly inappropriate given the strong public interest in consistent results in patent cases, because it would further exacerbate the fact that, as things stand, Rambus's patents-in-suit are enforceable only against Hynix. *See generally Markman v. Westview Instruments*, 517 U.S. 370, 390 (1996) (uniformity in treatment of a given patent "strengthen[s] the United States patent system"), *and Mendenhall v. Barber-Greene Co.*, 26 F.3d at 1583 (noting fairness concerns when "the rest of the industry is not impeded by the patents"). The fact that the claims-in-suit are under PTO reexamination (where nearly all have been rejected) exacerbates these concerns. At most, Hynix should be ordered to pay ongoing royalties into an escrow account, rather than paying them to Rambus. *See Finisar Corp. v. The DirecTV Group, Inc.*, *supra*.

1   **VI.    CONCLUSION**

2          For the foregoing reasons, Hynix requests that the Court stay execution of the

3   money judgment in this case and grant Hynix 30 days to put into place the alternative security

4   described above.

5   Dated: March 24, 2009                    By:  /s/ *Kenneth L. Nissly*
                                                       Kenneth L. Nissly
6
                                             KENNETH L. NISSLY
7                                            SUSAN van KEULEN
                                             SUSAN ROEDER
8                                            O'MELVENY & MYERS LLP

9                                            THEODORE G. BROWN III
                                             JULIE J. HAN
10                                           TOWNSEND and TOWNSEND and CREW LLP

11                                           Attorneys for Plaintiffs
                                             HYNIX SEMICONDUCTOR INC.,
12                                           HYNIX SEMICONDUCTOR AMERICA INC.,
                                             HYNIX SEMICONDUCTOR U.K. LTD., and
13                                           HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH

14

15  MP1:1174631.1

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT AND MOT FOR STAY OF
EXECUTION OF MONEY JUDGMENT
CASE NO.: CV 00-20905 RMW