1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E-filed:  3/8/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

HYNIX SEMICONDUCTOR INC., HYNIX
SEMICONDUCTOR AMERICA INC.,
HYNIX SEMICONDUCTOR U.K. LTD., and
HYNIX SEMICONDUCTOR
DEUTSCHLAND GmbH,

         Plaintiffs,

    v.

RAMBUS INC.,

         Defendant.

No. C-00-20905 RMW

ORDER TAXING COSTS

Presently before the court is Rambus' Bill of Costs and Hynix's objections thereto filed in

accordance with the court's Order Regarding Entry of Judgment dated March 10, 2009.  In relevant

part, the Order provides:

> The magnitude of this case, and the alleged size of Rambus's cost bill, counsel against
> submitting the bill of costs to the clerk's office in the first instance. *E.g., Syracuse
> Broadcasting Corp. v. Newhouse*, 32 F.R.D. 29, 29 (N.D.N.Y. 1963) ("The attorneys
> for both sides seem satisfied to . . . bypass the Clerk in the first instance. . . . In fact,
> the substantial items challenged are ones peculiarly within the knowledge of the trial
> judge and would be practically an impossible burden for the Clerk to resolve with any
> degree of reason and certainty."); *Deering, Milliken & Co v. Temp-Resisto Corp.*, 169
> F. Supp. 453, 456 (S.D.N.Y. 1959) (explaining why "[t]here is no merit in the
> defendants' contention that Rule 54(d), F.R.Civ.P., requires that costs must be taxed
> in the first instance by the clerk and that the Court has no power to tax them") . . . .
> Rambus shall have 30 days from the entry of judgment to file its bill of costs with the
> court. Hynix shall have 21 days to file any objections to Rambus's bill of costs, and
> may seek from the court any necessary extension.

Order Regarding Entry of Judgment dated March 10, 2009 at 2:8-21.

The parties met and conferred after Rambus first filed its Bill of Costs and resolved many of their disputes concerning the recoverability of costs. On May 14, 2009 they filed a Joint Statement of Disputed Costs that includes Exhibit 1 which identifies all of the costs that Rambus seeks as well as any reduction sought by Hynix and Exhibit 2 which identifies only the objected-to costs, arranged in categories and presented in numbered tables (Tables 1 through 20) to which the court refers in this order. Rambus now seeks an award of $790,234.35 in costs; Hynix objects to $224,770.44 of the claimed costs. To the extent that Hynix does not object to a claimed cost, that cost item is hereby taxed and awarded to Rambus.

### Procedural Background

This action was brought by Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd., and Hynix Semiconductor Deutschland GmbH (hereinafter, collectively "Hynix") against Rambus Inc. ("Rambus"). The case was tried in three phases. The issue in the first phase was whether Rambus's patent infringement claims were barred by the doctrine of unclean hands. The issue was tried to the court, and the court issued its Findings of Fact and Conclusions of Law on Unclean Hands Defense in favor of Rambus on January 5, 2006. *Hynix Semiconductor Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038 (N.D. Cal. 2006).

The second phase concerned Rambus's allegations that Hynix infringed certain claims of U.S. Patents 5,915,105, 6,034,918, 6,324,120, 6,378,020, 6,426,916, and 6,452,863. The issues in the second phase were tried to a jury which rendered its verdict in favor of Rambus on April 24, 2006.

In the third phase, Hynix's affirmative claims of monopolization, fraud and unfair competition and defenses of estoppel, waiver and unenforceability were tried in a coordinated proceeding in which the same issues from other pending litigation between Rambus and Micron, Nanya, Samsung and Hynix were joined. Shortly before the jury trial in the third phase commenced, the trial of the joined issues between Rambus and Samsung were bifurcated. On March 26, 2008, a jury returned a verdict in favor of Rambus and against Hynix, Micron and Nanya on their monopolization and fraud claims. On March 3, 2009, the court rejected the equitable claims and

defenses tried in the third phase and issued its Findings of Fact and Conclusions of Law on those claims and defenses.  Collectively, this third phase has referred to as the "Conduct Trial" or "Conduct Proceedings."  The issues between Rambus and Samsung which were originally coordinated with the Hynix, Micron and Nanya issues, were tried in September 2008.  On or about February 4, 2010 all disputes between Rambus and Samsung were settled and all claims between them were dismissed.

The Conduct Trial disposed of all remaining issues between Rambus and Hynix raised in this case so judgment was entered against Hynix and in favor of Rambus on March 10, 2009 in an amount in excess of $396 million for patent infringement and included prejudgment interest.  With final judgment entered in favor of Rambus and against Hynix, Rambus, as the prevailing party, is entitled to its costs and has submitted its Bill of Costs.  Hynix asserts that Rambus is not entitled to certain of the costs

The Conduct Trial, however, did not resolve all the issues in Rambus' actions involving Nanya and Micron and its other litigation involving Hynix.  Those actions which involve patent infringement issues have been stayed pending resolution of Hynix's appeal to the United States Court of Appeal for the Federal Circuit.  Therefore, although Rambus did prevail on the issues tried in the Conduct Trial, it may or may not ultimately be the prevailing party in the pending stayed cases.  Therefore, at this time, an award of costs can only be made against Hynix in this case.

**Standard for Award of Costs**

Under Federal Rule of Civil Procedure 54(d), costs should be allowed to the prevailing party unless a federal statute or court provides otherwise.  Fed. R. Civ. P. 54(d).  The rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs. *Association of Mexican-American Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000), *citing National Info. Servs. Inc. v. TRW, Inc.*, 51 F.3d 1470, 1471 (9th Cir. 1995).  The court's discretion in awarding costs under Rule 54(d) is limited to awarding costs that are within the scope of 28 U.S.C. § 1920. *Summit Technology, Inc. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1374 (Fed. Cir. 2006).  Section 1920 "enumerates expenses that a federal court may tax as a

cost under the discretionary authority found in Rule 54(d)." *Crawford Fitting Cop. v. J.T. Gibbons, Inc*, 482 U.S. 437, 441-42 (1987). Civil Local Rule 54-3 itemizes the costs that are allowed under Section 1920. *Intermedics, Inc. v. Ventritex, Inc.*, 1993 WL 515879 (N.D. Cal. 1993).

## Analysis

As noted above, Rambus has withdrawn its claim for certain cost items, and Hynix has withdrawn its objection to certain other claimed costs. The table below sets forth the amount of costs Rambus now seeks in various categories and the amount of reduction Hynix requests.

| Category | Claimed Total | Requested Reduction |
|---|---|---|
| Schedule A - filing fees | $ 223.27 | |
| Schedule B - transcripts | $ 290,845.06 | $116,856.77 |
| Schedule C - witness fees and expenses | $ 7,327.92 | $ 4,513.65 |
| Schedule D - exemplification and copies | $ 293,708.28 | $ 46,706.12 |
| Schedule E - interpreters and translators | $ 64,742.82 | $ 40,929.50 |
| Schedule F - trial equipment | $ 24,819.21 | $ 8,764.46 |
| Schedule G - special master fees | $ 108,567.79 | $ 6,999.94 |
| **Total** | **$ 790,234.35** | **$224,770.44** |

*See* Joint Statement of Disputed Costs Ex.'s 1 and 2.

Hynix's objections apply generally to Rambus's entitlement to all costs it incurred as the prevailing party as well as to particular categories of claimed costs. The general objections will be addressed first, followed by the objections to specific categories.

### A. Should the Costs Associated with the Conduct Trial Be Apportioned among All Manufacturers, Such That Only One-Third of Such Costs Are Taxed?

Hynix asserts that Rambus' discovery, pretrial and trial costs incurred in the Conduct Proceedings involving the antitrust and unfair competition claims of Hynix, Micron and Nanya[1] should be allocated equally among those three manufacturers. Hynix argues that when cases are coordinated or consolidated, a court may divide costs among the parties. Hynix relies on *Marmo v.*

_____

[1] Hynix does not include Samsung in the coordinated proceedings although Samsung was bifurcated only shortly before the jury trial in the Conduct Proceedings.

*Tyson Fresh Meats, Inc.*, 457 F.3d 748, 764 (8th Cir. 2006), an Eighth Circuit decision that affirmed the district court's equitable division of costs among thirteen plaintiff cases against a common defendant that had been coordinated for pretrial purposes. The court awarded one-thirteenth of the costs incurred to the prevailing plaintiff whose case was tried first.

Hynix argues that it would be "unjust" for Hynix to bear the entire burden of costs incurred in the consolidated proceedings (including items such as deposition expenses, reproducing trial exhibits, and preparing demonstratives), where such costs were incurred by Rambus equally in the defense of all of the manufacturers' conduct claims. Hynix also contends that if it is held solely responsible for all costs associated with the coordinated pretrial and trial proceedings, there is a risk that Rambus will eventually recover duplicative costs or that Hynix will be forced to subsidize the cost obligations of Micron and Nanya. Hynix asserts that there are no mechanisms by which it can recover some portion of these costs from Samsung, Micron or Nanya, after conclusion of those manufacturers' actions

Rambus submits that the general rule in cases involving multiple parties is to impose "joint and several liability" for costs, unless equity dictates otherwise, citing *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002). In *Concord*, the Eighth Circuit held that the district court abused its discretion in allocating the prevailing defendant's costs based upon the damages sought by the plaintiffs against the defendant. *Id.* Rambus contends that it would be inequitable to apportion the costs as Hynix suggests in that doing so would grant Hynix a windfall in the amount of two-thirds of the otherwise taxable costs because Rambus likely would have incurred many of these same costs if the litigation involved only Hynix. Moreover, Rambus argues that Hynix's proposal unfairly puts the burden of collection and the risk of non-collection of such costs on Rambus if, for example, Micron or Nanya could not pay due to insolvency.

Neither case cited by the parties controls the situation here. In *Marmo*, by apportioning the pretrial costs among the thirteen plaintiff's cases the court ensured that the single prevailing plaintiff in the first action did not recover more than her own share of the taxable costs and that the single, losing, defendant would not face the prospect of duplicative cost awards. 457 F.3d at 763-64. That

1   situation is reversed here, where the "single party" is the one who prevailed and apportioning costs

2   would deprive it, for now at least, of its full cost recovery.

3   　　*Concord Boat* is more analogous to the instant situation as it involves multiple losing

4   plaintiffs and a single prevailing defendant.  There, the Eighth Circuit reversed the district court's

5   apportionment of costs, explaining that the equities in that case favored imposing joint and several

6   liability on all losing parties:

> Imposing only individual liability here would be inconsistent with the presumption
> embodied in Rule 54(d) of the Federal Rules of Civil Procedure that a prevailing
> party is entitled to recover all of its costs.  The expense of collection and the potential
> insolvency of several parties make it likely that [the prevailing party] would not
> recover a substantial portion of its award without joint and several liability.  In the
> absence of strong opposing considerations, it would be inequitable to place the risk of
> noncollection on the prevailing party.  Joint and several liability should not unfairly
> force any boat company to bear the costs alone, however.  The companies could
> allocate the risk of costs among themselves, or any party satisfying the judgment
> could seek contribution from the others.

12  309 F.3d at 497 (internal citation omitted).  Unlike the present case, however, in *Concord Boat*, all

13  of the parties' actions had been completed and the court could impose costs jointly and severally

14  upon all losing parties at the time of the cost award.  Here, that cannot be done because the cases

15  against Micron and Nanya have not been brought to judgment and the case against Samsung has

16  been settled.

17  　　The court has considered the cases cited by the parties, as well as cases cited by those cases,

18  and one principle that is clear is that the court has broad discretion in determining whether, and on

19  what conditions, to apportion costs.  The court in *In re Paoli Railroad Yard PCB Litigation*, 221

20  F.3d 449, 469 (3rd Cir. 2000), noted that the general rule "is that a district court, in exercising its

21  equitable discretion may apportion costs between the prevailing and nonprevailing parties as it sees

22  fit."  It went on to elaborate:

> This power to apportion between parties also includes the power to divide costs
> among the losing and winning parties in a case involving multiple defendants and
> plaintiffs such as this one, which involves nineteen plaintiffs and three defendants
> whose cases were all consolidated for efficiency's sake by an unopposed order of the
> District Court. . . . In dividing costs among multiple parties on one side of the bar --
> either prevailing or non-prevailing -- the court may choose to impose costs jointly
> and severally or to disaggregate costs and to impose them individually. . . .
> We read the sparse case law surrounding this issue as placing the burden on the
> losing parties to introduce evidence and persuade the court that costs should be

apportioned, and in the event that they fail to do so, the default rule is that costs may be imposed jointly and severally.

*Id.* (citations and footnote omitted).

*Paoli Railroad* involved a thirteen-year toxic tort dispute involving nineteen cases that had been consolidated for trial. Seventeen of the cases involved personal injury and medical monitoring claims; two of the cases involved claims for property damage only. The district court awarded costs in favor of the prevailing defendants and imposed costs jointly and severally on all nineteen losing plaintiffs. On appeal, the Third Circuit held that the district court did not abuse its discretion in declining to apportion costs among the seventeen similarly-situated personal injury plaintiffs, but did abuse its discretion in not apportioning the costs against the two property damage plaintiffs. The court explained that the claims of the seventeen personal injury/medical monitoring plaintiffs were similar and there was no evidentiary showing that the costs could be connected to a greater or lesser degree with any particular plaintiff, thus joint and several liability for costs was appropriate. *Id.* at 470. With regard to the two property damage plaintiffs, however, the district court abused its discretion in imposing joint and several liability for costs on these two plaintiffs because their claims were so different in kind from the claims of the others and the plaintiffs were "able to disaggregate the amount of money the Defendants spent on diminution of property values claims" so that the district court could have avoided imposing specific costs on plaintiffs whose causes of action did not give rise to these costs. *Id.* at 471.

The rationale of *Paoli Railroad* offers some support to Rambus's position that apportionment is not appropriate here. Apportionment would be appropriate only if the costs incurred by Rambus in pursuing the parties other than Hynix in the Conduct Proceedings could, with reasonable certainty, be "disaggregated" from those costs necessary for the litigation of the issues raised by Hynix. Such "disaggregation" cannot be practically or fairly done.

The court sees two primary equitable concerns raised by the parties: (1) preventing duplicative cost recovery by Rambus, (2) avoiding "unfairness" in taxing costs, ensuring to the extent possible that Hynix is not taxed with costs that are not fairly taxable to it, while awarding to Rambus the taxable costs to which it is entitled as the prevailing party.

As to the first concern, there is not a significant risk of duplicative cost recovery by Rambus. To the extent Rambus recovers costs against Hynix, Rambus will not be able to collect those same costs from Micron, Nanya or Samsung.

Determining how to avoid unfairness in taxing costs raises more difficult questions. The present case is unusual in that the "losing parties" in the Conduct Trial other than Hynix are not yet losing parties with regard to their overall actions involving Rambus. Those other actions have been stayed pending the outcome of the appeal that Hynix has filed with the United States Court of Appeals for the Federal Circuit. On the one hand, Hynix argues, it would not be fair to Hynix to require it to bear the entire burden of the taxable costs incurred in the Conduct Proceedings since Micron and Nanya also did not prevail on the issues litigated. On the other hand, it would not be fair to Rambus to impose upon it the risk of non-collection for two-thirds of its otherwise presently recoverable costs, particularly in light of the delay that will occur before it is determined whether Rambus is the ultimate prevailing party against Micron and Nanya.

An initial factor that must be recognized is that the costs incurred by Rambus in connection with the consolidated Conduct Trial are not three times the amount they would have been had the litigation been only between Hynix and Rambus, nor does Hynix make such an argument. Many of the costs incurred in defending against the conduct claims of all of the manufacturers would undoubtedly have been incurred even if only one of the manufacturers, such as Hynix, had brought the claims. Thus, to the extent that Rambus' costs would have been incurred even if Hynix had been the only plaintiff, those costs should be taxed and awarded to Rambus. To decide otherwise would be to grant an unfair windfall to Hynix, at the prevailing party's expense.

If Hynix would have the ability to recover a proportionate share of the Conduct Proceedings-related costs from the other manufacturers at the eventual conclusion of their cases against Rambus, the equities would weigh heavily in favor of taxing all those costs to Hynix now. However, Hynix contends that there is no mechanism by which it may recover contribution from the other manufacturers. Rambus, however, disagrees and asserts that Hynix could seek contribution citing

*Concord Boat*. It is not clear, however, whether Hynix would be able to obtain contribution from the other manufacturers upon the conclusion of their litigation with Rambus, assuming Rambus ultimately prevails in those actions. *Cf. Anderson v. Griffin*, 397 F.3d 515, 523-24 (7th Cir. 2005) (discussing case law and noting no right of contribution among co-parties against whom costs have been awarded) *with Concord Boat*, 309 F.3d at 497 (noting in dicta that the losing parties could seek contribution). Ultimately, however, whether or not Hynix may seek contribution from the other manufacturers at the appropriate time does not result in a balance of the equities in favor of Hynix. Even if Hynix is unable to seek contribution from the other manufacturers, as long as the costs taxed to Hynix are approximately what they would have been had Hynix been the only manufacturer participating in the Conduct Proceedings, there is no unfairness in taxing all such costs to Hynix. The other manufacturers may obtain a windfall of sorts, but as between Hynix and Rambus, there is no inequity in a full cost award.

An alternative that Hynix proposes is to delay taxation of costs until the completion of the other manufacturers' cases. Hynix relies on *In Re: Derailment Cases*, 417 F.3d 840 (8th Cir. 2005), as authority for the proposition that where only a portion of consolidated cases have been completed through judgment, the court may hold a cost award in abeyance pending the resolution of all matters so that the court may accurately determine which parties should be named in the order awarding costs.

In the *In Re: Derailment Cases*, the court was presented with separate cases filed by multiple plaintiffs against a railroad company and a rail line inspection company following a train derailment resulting in a toxic spill. The various cases had been all consolidated following removal from state court. As presented to the Eighth Circuit, the consolidated case had largely been resolved in favor of the defendants on summary judgment, with the exception of certain claims in one of the consolidated cases (the Stachon case). The district court found the defendants to be prevailing parties and awarded costs to each, but excepting the Stachon plaintiffs from the cost order. On appeal, the Eighth Circuit reversed.

> We are unable to determine, however, whether BNSF is a prevailing party against the Stachon plaintiffs. Because the general rule is that parties against whom costs are

ordered are jointly and severally liable for those costs, *Concord Boat*, 309 F.3d at 497 (citation omitted), if BNSF is ultimately deemed a prevailing party against the Stachon plaintiffs, then those plaintiffs, along with the other consolidated plaintiffs, will be jointly and severally liable for BNSF's costs. If, on the other hand, BNSF is not designated a prevailing party against the Stachon plaintiffs, then they will have no liability for the award of costs to BNSF.

*Id.* at 844. The court noted that it was error for the district court clerk to have excepted the Stachon plaintiffs from its order awarding costs to defendants, but noted that "it would have been equally erroneous for the clerk to have included the Stachon plaintiffs in that cost award." *Id.* The court concluded: "The most practical resolution of this dilemma is for the district court to hold in abeyance its award of costs to BNSF until the Stachon claims have been resolved. At that point, the district court will be able to determine whether the Stachon plaintiffs should be named in the order awarding costs to BNSF." *Id.*

Rambus does not address the *In re Derailment Cases* in its response, but argues that Hynix's alternate proposal is "unwarranted." Rambus instead cites to *In re Brand Name Prescription Drugs Antitrust Litigation*, 1999 WL 759472 (N.D. Ill. 1999), as a case in which costs were taxed notwithstanding the fact that related actions had not yet proceeded to trial. That case, however, did not address the issue of whether the court should delay a cost award until such time as the other related actions were concluded.

The benefit of holding the cost award in abeyance is the accuracy that would result in apportioning costs among all losing parties and avoiding even the possibility of duplicative recovery by Rambus. The cost of doing so, however, is the lengthy delay that is likely to result, given the procedural status of the other actions. While there is a certain appeal to the logic underlying the Eighth Circuit's preference for holding cost awards in abeyance, it is not clear from the *In re Derailment Cases* decision what remained to be accomplished to resolve the Stachon claims, or how much time would likely pass before the court could finally determine the order awarding costs. Here, given the pendency of the appeal to the Federal Circuit, to be followed, at a minimum, by further proceedings involving patent infringement claims against the other manufacturers, holding the cost award in abeyance would unfairly delay Rambus's ability to collect its taxable costs.

After weighing the facts and arguments of the parties, the court concludes that the costs related to the Conduct Proceedings should not be allocated among all of the manufacturers at this time. If and when those same costs are awarded against Micron or Nanya, fairness would suggest that Hynix should be able to seek contribution for any amounts paid in excess of its fair share. However, that issue is not reached here and the court concludes that Hynix's objection on the ground that costs should be allocated is overruled. This ruling affects the costs claimed in the following Tables:[2]

| | |
|---|---|
| Table 7: | $36,980.25 |
| Table 8: | $ 4,513.65 |
| Table 11: | $25,196.17 |
| Table 16: | $12,509.52 |
| Table 18: | $ 5,834.46 |
| Table 20: | $ 2,365.67 |

**B. Should Hynix's Objection to Taxing Costs Associated With Other Manufacturers Be Sustained?**

Hynix objects to several claimed costs on the basis that the costs related to matters involving manufacturers other than Hynix, such as deposition transcripts for the other manufacturer's witnesses, interpreter services for the depositions of other manufacturer's witnesses, translation of documents produced by other manufacturers, and the fees of the Special Master on hearings and disputes not directly involving Hynix. Without citation to authority, Hynix's argument is that "[a]lthough Hynix, Micron and Nanya were all parties to the coordinated proceedings, there is no basis for requiring Hynix to pay the costs associated specifically with" the other manufacturers. Objection at 2. Similarly, Hynix characterizes the expenses associated with Samsung as involving "separate litigation between Rambus and Samsung" and, accordingly, such expenses are not recoverable from Hynix. *Id.*

---

[2] Other objections, addressed below, have also been asserted against some of the cost items claimed in these tables.

Hynix's characterization of the litigation between Samsung and Rambus as "separate litigation" is misleading in the connection with the costs Rambus incurred and can claim against Hynix. The common claims of Samsung, Hynix, Nanya and Micron were all consolidated for trial on April 24, 2007. Case Management Conference Order dated April 24, 2007 at 1. Samsung's claims against Rambus were later bifurcated from the Conduct Trial on December 14, 2007 but on a variety of conditions including Samsung's agreement that any relevant evidence from the Conduct Trial would be admissible in the trial of Samsung's severed claims and that Samsung would be bound by the result on the prosecution laches aspect of the Conduct Trial. The costs incurred related to Samsung were useful, if not necessary, for the presentation of the Conduct Trial.

With the exception of its characterization of the Samsung litigation, Hynix's objection has some merit. To the extent that Rambus' claimed costs were incurred in relation to issues or disputes uniquely applicable to a manufacturer other than Hynix, such costs should not be taxed against Hynix. *See Paoli Railroad*, 221 F.3d at 471 (where losing party can demonstrate that the prevailing party spent money on claims unrelated to the claims or defenses related to that losing party, the court should avoid imposing specific costs on parties whose causes of action did not give rise to the costs). Hynix has the burden of establishing that any such claimed costs are so uniquely particular to other manufacturers that it is inequitable to tax them against Hynix. *Id.* Hynix's objection that certain costs are unrelated to its claims and defenses are directed to costs claimed in Tables 1, 2, 12, 13 and 19.

     1.     Transcript and Video Costs for Deposition of Other Manufacturers' Witnesses (Table 1)

Hynix objects to the claimed transcript and video costs involving Samsung, Micron and Nanya witnesses, totaling $28,260.05. (Table 1). Hynix contends that the transcript and video costs involving Samsung witnesses were incurred in "separate litigation between Rambus and Samsung" and are thus not recoverable in this action from Hynix. Hynix also objects to the claimed transcript and video costs corresponding to various Nanya and Micron witnesses, arguing that "although Hynix, Micron and Nanya were all parties to the coordinated proceedings, there is no basis for requiring Hynix to pay costs associated specifically with Nanya and Micron witnesses." Objection

1    at 2.

2        Rambus counters that it seeks only the costs associated with Samsung, Micron and Nanya's

3    witnesses for depositions that relate to the common claims or defenses coordinated in the January

4    2008 Conduct Trial, and that the testimony of these witnesses was either designated, played or read

5    at the trial, or the witnesses testified live at trial.

6        Local Rule 54-3(c)(1) permits the recovery of the cost of an original and one copy of any

7    deposition taken for any purpose in connection with the case. The challenged costs relate to the

8    depositions of witnesses whose testimony was either played or read at the trial, or who testified live

9    at trial. Notably, the Samsung case was consolidated for trial with the others, by order of the court

10   dated April 24, 2007, and the depositions and hearings of which Hynix complains each took place

11   after that date. Hynix has not met its burden of demonstrating how the depositions of Micron,

12   Nanya or Samsung witnesses are so unique to the claims and defenses related to them as opposed to

13   being related to the common claims and defenses asserted by all the manufacturers including Hynix.

14   Accordingly, Hynix's objections are overruled and Hynix's requested reduction in the amount of

15   $28,260.05 set forth in Table 1 is denied.

16        2.    Transcript Costs and for Hearings Before the Special Master, and the
              Corresponding Special Master Fees, That Hynix Contends Address Issues
17            Specific to Other Manufacturers (Table 2 and Table 19)

18        Hynix objects to the claimed costs corresponding to four hearings on matters relating to

19   Samsung and Nanya, totaling $823.21 in transcript costs (Table 2) and $4,634.27 in fees of the

20   Special Master (Table 19). Hynix argues that the proceedings did not involve Hynix and, therefore,

21   Rambus should not be entitled to recover the costs of the transcripts from Hynix.

22        These hearings related to Samsung's motion to compel the deposition of Joel Karp (Table 2,

23   Item B-317; Table 19, Items G-44 and G-45), resolution of a discovery dispute between Rambus and

24   Samsung regarding privilege logs (Table 2, Item B-318; Table 19, Item G-46), a hearing before the

25   Special Master on Nanya's motion for a protective order regarding the location of the 30(b)(6)

26   deposition of Nanya's witnesses, including at least one (Pei-Lin Pai) whose testimony was

27   designated for the Conduct Trial (Table 2, Item B-291; Table 19, Item G-43), and a hearing before

28

ORDER TAXING COSTS
C-00-20905-RMW
TER                                    13

the Special Master to resolve various discovery disputes between Rambus and Samsung and between Rambus and Nanya, at least some of which were related to JEDEC and participation in meetings. (Table 2, Item B-350; Table 19, Item G-47).

With regard to the motion to compel the deposition of Joel Karp, the contention was made at the hearing that his testimony was necessary for both Samsung's claims and Rambus's defense in the Conduct Trial. Karp was a key witness in the case. Thus, the issue of compelling his deposition was not one uniquely particularized to Samsung.

Nanya's motion for a protective order involved a dispute as to the location for the deposition of Nanya's witnesses, either in Taiwan or in San Francisco. Initially, this dispute appears to be sufficiently particularized to Nanya so that it should not be taxed to Hynix, but at least one of the witnesses' testimony was designated for use at the Conduct Trial, and therefore the issue is not so particularized to Nanya such that taxing the cost to Hynix would necessarily be unjust.

Rambus contends that the hearing on the privilege log dispute included joint defense agreements which it argues were relevant to the Conduct Trial because a joint defense agreement would tend to show that if one of the manufacturers had knowledge of Rambus' patents, the other manufacturers who participated in the joint defense would as well. The transcript excerpt submitted by Rambus, however, does not substantiate its argument, revealing little more than the fact that the hearing related in part to a dispute over the deadline for exchange of privilege logs. The court cannot tell from the excerpt whether the contemplated privilege log exchange involved only Samsung and Rambus or more broadly involved the other manufacturers as well.

The court has reviewed the Special Master's invoices, accompanying the Bill of Costs, and notes that the Special Master billed all five parties for each of these disputes. The April 24, 2007 Joint Case Management Order provides that the Special Master's fees are to be shared equally by all parties where the dispute involves all parties. April 24, 2007 Order at 2(f), p. 5. It further provides that for disputes involving less than all parties, the Special Master's fees shall be shared equally by the parties involved in such dispute and allows the Special Master to decide in his discretion who is "involved" in a dispute for the purpose of allocating his fees. *Id.* Because the Special Master billed

all five parties for these disputes and no objection was made to the Special Master, the court infers that the Special Master concluded that each of the disputes affected all parties and none was particularized to a subset of the parties. This factor tips the scale against Hynix's position. Accordingly, Hynix's objection on the basis that these costs are not taxable to it because they are attributable to other parties is overruled.

The fees of special masters, as a general matter, are taxable as costs. Local Rule 54-3(f). Accordingly, Hynix's objections to the costs claimed in Table 19 are overruled. Hynix's requested reduction in the amount of $4,634.27 set forth in Table 19 is denied.

The costs of reporters' transcripts of hearings, however, are normally not allowed unless the transcripts were necessarily obtained for an appeal, the transcript is of a statement by a judge from the bench which is to be reduced to a formal order prepared by counsel, or if, before the cost is incurred, it is approved by a judge or stipulated to be recoverable by counsel. Local Rule 54-3(b). None of these exceptions to the general rule appears to apply. Therefore, the costs of the hearing transcripts set forth in Table 2 in the amount of $823.21 are disallowed.

        3.        <u>Interpreter Costs for Deposition of Other Manufacturers' Witnesses (Table 12)</u>

Hynix objects to claimed interpreter costs totaling $17,525.42 relating to the depositions of three Samsung witnesses and one Nanya witness (Table 12). Hynix asserts that "these party-specific depositions were taken by Rambus and there is no basis to impose the costs of these depositions on Hynix." Objection at 26.

The three witnesses were M.H. Kim, Pei-lin Pai, K.H. Kyung, and C.H. Kim. Rambus notes that the testimony of all these witness was either designated, played, or read at the Conduct Trial, or the witnesses testified live at trial. Rambus further argues that Section 1920 allows the taxation of "compensation of interpreters" and that courts have allowed the recovery of interpreter costs for depositions when an interpreter is reasonably required for the deposition citing, inter alia, *MEMC Electronic Materials v. Mitsubishi Materials*, 2004 WL 5361246, *12 (N.D. Cal. 2004).

Other than identifying these four witnesses as witnesses of other manufacturers, Hynix has not established how their testimony was so uniquely peculiar to those manufacturers that it does not

overlap with the issues raised by Hynix or Rambus in the Conduct Trial. Accordingly, Hynix has not met its burden of establishing that the cost should not be taxed. Hynix's objection is overruled and its requested reduction in the amount of $17,525.42 set forth in Table 12 is denied.

4.     <u>Costs of Translating Samsung-Produced Documents (Table 13)</u>

Hynix objects to $1,977.43 in claimed costs incurred to translate documents produced by Samsung (Table 13) Hynix acknowledges that the documents were trial exhibits and argues only that because the underlying documents were produced by Samsung, Rambus must seek recover of these costs from Samsung.

The cost of translation is taxable where reasonably necessary. *Gidding v. Anderson*, 2008 WL 5068524 (N.D. Cal. Nov. 24, 2008). Translation of trial exhibits is reasonably necessary. Significantly, Hynix does not contend that the expense is improper, but only that it should be taxed, if at all, against Samsung, merely because the documents were produced by Samsung. Hynix has not argued or established that the document related to an issue uniquely particular to Samsung. Thus, Hynix has not met its burden of establishing that the trial exhibits were solely related to issues involving Samsung and did not overlap with issues asserted by Hynix or to defenses by Rambus in the Conduct Trial. Hynix's objection is overruled and Hynix's requested reduction in the amount of $1,977.43 set forth in Table 13 is denied.

**C.**     **Other Cost Items and Objections**

1.     <u>Costs that Hynix Contends are Duplicative (Table 3)</u>

Hynix objects to $237 in costs relating to two depositions that Hynix contends duplicate other claimed costs (Table 3). Rambus explains that the costs are not duplicative: one is for the cost of a copy of the video and the asserted duplicate is for the cost of the video technician's fee. The cost of videotaping, including video technicians fees, as well as the cost of a copy of the videotape and written transcript are taxable costs. *MEMC Electronic Materials v. Mitsubishi Materials*, 2004 WL 5361246, 3 (N.D. Cal. 2004); Local Rule 54-3(c)(1).

Rambus' explanation is satisfactory, and Hynix's objection is overruled. Hynix's requested reduction in the amount of $237 set forth in Table 3 is denied.

2.    Costs of Synchronizing Deposition Videos (Table 4 and Table 5)

Hynix argues that Rambus is not entitled to recover the costs of synchronizing the deposition videos because synchronization was not necessary to Rambus' preparation of its case or presentation at trial. Hynix argues that while synchronization may make a video presentation more effective, it is not necessary, and therefore is not a taxable cost, citing *Laprade v. Energy Automation Sys.*, 2006 U.S. Dist. LEXIS 6803, *8, 2006 WL 273547 (M.D. Tenn. Feb. 2, 2006) (denying recovery for the costs of preparing video clips for impeachment, finding that video clips were not necessary, and thus not taxable, under Section 1920).

Rambus asserts in response that the synchronization charges are the costs that the video technician charges to synchronize the time of the video to the lines of the transcript. This enables the video to be cut according to designated lines of transcript and for the text of the testimony to be displayed when the video is played. Objections to testimony were often resolved the day before, or the day the testimony was to be displayed, and without synchronization, Rambus could not have cut the video in time to play it at trial. Rambus also asserts that the ability to display the text of testimony during the video assisted the jury in understanding the testimony in that many of the witnesses were non-native English speakers, and, in some cases, the sound quality on the video was not good. Running the transcript text along the bottom of the video was important to enable the jury to accurately understand the testimony. Rambus cites *BDT Products Inc. v. Lexmark Int'l Inc.*, 405 F.3d 415 (6th Cir. 2005), to support its argument that synchronization expenses are taxable.

In *BDT Products*, the Sixth Circuit held that there was no abuse of discretion by the district court in taxing video deposition and synchronization costs, finding that such costs were taxable within the court's discretion under 28 U.S.C. §1920. In affirming the district court's allowance of synchronization expenses, the court cited and expressly relied on the rationale of *Tilton v. Capital Cities/ABC, Inc.,* 115 F.3d 1471, 1477 (10th Cir. 1997). In *Tilton*, the Tenth Circuit affirmed the taxation of the costs of both the video deposition and the corresponding written transcription, and its rationale in allowing taxation of the cost of the video was, in part, based on the time saving efficiencies obtained through their use, a rationale that the Sixth Circuit adopted in permitting the

taxation of synchronization costs.

The court is persuaded by *BDT* and *Tilton*. Moreover, Local Rule 54-3(c) allows the cost of depositions, including video taped depositions, and Local Rule 54-3(d)(5) allows for the cost of preparing videotapes, if such exhibits are reasonably necessary to assist the jury in understanding the issues at trial. Taken together, this is sufficient authority to support the taxation of video synchronization costs.

*Laprade*, cited by Hynix, is distinguishable. There, the prevailing party sought to have taxed the costs of preparing video clips that were used for impeachment. The court found that such impeachment could have been obtained through the use of a written transcript, and thus, even if use of video taped testimony was more effective in impeachment, such use was not necessary, and hence not taxable under Section 1920.

Hynix's objection to the costs of synchronizing deposition videos is overruled. Hynix's requested reduction in the amounts of $43,051.25, set forth in Table 4, and $7,373.75, set forth in Table 5, are denied.

      3.    <u>Court Transcript Costs for ASCII and/or Condensed Format Transcripts (Table 6)</u>

Hynix objects to $131.26 of the claimed costs associated with hearing transcripts from four proceedings before the Special Master. Through the parties' meet and confer process, the dispute appears to have narrowed to the cost of providing four rough transcripts of hearings before the Special Master to the Special Master to assist him in resolving discovery disputes.

Hynix cites *Auto Wax Co. v. Mark Prods.*, 2002 U.S. Dist. LEXIS 2944, *15, 2002 WL 265091, (N.D. Tex., Feb. 22, 2002), for the proposition that the costs of ASCII copies of transcripts are not recoverable. The court in *Auto Wax* noted that ASCII format, and other alternative formats, are typically provided for the convenience of counsel and are not taxable as "necessarily obtained" for use at trial, and denied such costs whether for deposition transcripts or hearing transcripts. In this case, however, Rambus's basis for seeking to recoup the cost is that the ASCII format transcripts were provided to the Special Master to assist him in resolving discovery disputes. Thus, implicitly, Rambus suggests that the costs were not incurred merely for the convenience of counsel.

Rambus, however, has not explained why the ASCII format transcripts were provided to the Special Master, and in particular, whether they were provided at the Special Masters' request or instead because Rambus believed that providing such transcripts would be of assistance to the Special Master. If the ASCII format transcripts were provided at the Special Master's request, then the costs could arguably be taxed. Rambus has not made this showing, however.

Otherwise, as noted above, the cost of reporters' transcripts of hearings are normally not allowed unless the transcripts were necessarily obtained for an appeal, the transcript is of a statement by a judge from the bench which is to be reduced to a formal order prepared by counsel, or if, before the cost is incurred, it is approved by a judge or stipulated to be recoverable by counsel. Local Rule 54-3(b). None of these exceptions appears applicable. The $131.26 in costs set forth in Table 6 are disallowed.

    4.   <u>Cost of Patent File Histories (Table 9)</u>

Hynix objects to $6,934.20 of the $11,364.20 in claimed costs for obtaining patent file histories from the United States Patent and Trademark Office (Table 9). These costs relate to Rambus's obtaining twelve file histories for patents related to the patents in suit, plus the file histories associated with four of Hynix's patents. The patents corresponding to these file histories, however, were not asserted in the litigation.

Hynix observes that the twelve file histories had previously been produced by Rambus in the litigation in December 2000 and thus argues that the cost is duplicative. Hynix further argues that the file histories of the patents assigned to Hynix were not relevant to Rambus' case, much less necessary to it.

Rambus asserts that the costs incurred were to obtain certified copies of the file histories of patents in the same family as the asserted patents against Hynix and for the file histories of Hynix patents that cited the patents in suit. Rambus argues that the costs were not duplicative because certified copies may be needed for evidentiary purposes even if uncertified copies had previously been produced. Rambus further argues that the file histories for Hynix's patents could be used for impeachment, and that the file histories for patents in the family of the patents-in-suit were relevant

1   for, among other things, rebutting Hynix's prosecution laches defense by demonstrating that Rambus

2   did not delay in prosecuting its patents.

3          Local Rule 54-3(d)(1) allows for the taxation of "costs of reproducing and certifying

4   government records used for any purpose in the case...."  If, as Rambus contends, it obtained

5   certified copies of the twelve file histories in order to defend against Hynix's prosecution laches

6   defense, then the cost would be potentially taxable.  Similarly, obtaining certified copies of the file

7   histories of the Hynix patents which cited the patents in suit, in order to be able to use them for

8   impeachment would be potentially taxable.  It appears, however, that the twelve Rambus file

9   histories and four Hynix file histories were not in fact used for defense or impeachment.  Thus, the

10  costs are not taxable under Local Rule 54-3(d)(1) because they appear not to have been used in the

11  case.   The court will exercise its discretion and decline to tax these costs against Hynix.  $6,934.20

12  of the claimed costs, as set forth in Table 9, are disallowed.

13          5.      Trial Exhibit Costs (Table 10)

14         Hynix objects to Rambus's claimed costs for trial exhibits and seeks a reduction of

15  $14,575.75 as set forth in Table 10, because the claimed costs include the costs of an extra set of

16  trial exhibits prepared for Rambus's counsel's use in its office/war room.  Local Rule 54-3(d)(4)

17  authorizes the cost of reproducing trial exhibits to the extent that the court requires copies to be

18  provided, and Hynix does not object to the cost of three sets (one for the court, and one each for

19  Rambus and Hynix).

20         Rambus explains that it is seeking the cost of three sets of its own exhibits (one for the court,

21  one for use in the courtroom, and one for Rambus's use in its office) and for two sets of Hynix's and

22  the other manufacturer's exhibits, one copy for use in the courtroom and one for use in Rambus's

23  office.  Rambus argues that the courts in this district have interpreted Local Rule 54-3(d)(1) "to

24  allow taxation of costs that are reasonably necessary in addition to the number of copies actually

25  provided to the Court."  Response at 12.

26         Rambus has cited no authority, however, that stands for the proposition that a prevailing

27  party may recover the cost of two sets of trial exhibits that were for the prevailing party's own use –

28

one in court and one in its trial preparation area. *Intermedics, Inc. v. Ventritex, Inc.*, 1993 WL 515879, 7 (N.D. Cal. 1993), taxed the cost of five copies of exhibits, but three were required by the court (original, plus two) and the remaining two copies were for the parties' use, one each. Similarly, in *Color Graphics, Inc. v. Travelers Property Cas. Ins. Co.*, 2007 WL 832935, 5 (N.D. Cal. 2007), costs associated with three sets of trial exhibits, one for the court, one for the opposing party and one for the producing party were awarded. Finally, *Pixion Inc. v. PlaceWare, Inc.* 2005 WL 3955889, *3 (N.D. Cal. 2005), involved three sets of trial exhibits required by the court.

The court has no doubt that a duplicate set of trial exhibits–one for use in court and one for use in the office–was useful to Rambus and more convenient that transporting a full set of trial exhibits back and forth from the courtroom to the office each day. It was not necessary, however, nor is its recovery allowed by Local Rule 54-3(d)(4).

Hynix's objection to this claimed cost is sustained and the cost will not be taxed against it. The $14,575.75 in costs set forth in Table 10 are disallowed.

6. <u>Translation Costs that Hynix Contends are Unnecessary (Table 14)</u>

Hynix objects to $696.30 in costs for a certified translation of Trial Exhibit 5218 on the ground that the cost was unnecessary because Hynix itself had produced certified translations. Rambus counters that it should not be required to accept Hynix's translation at face value, and that the cost of obtaining its own translation was reasonably necessary to verify the accuracy of Hynix's translation.

The court is not persuaded by Hynix's argument and finds that it was reasonable for Rambus to obtain its own certified translation of the trial exhibit. As noted above, translation of trial exhibits is a reasonable and necessary cost. Hynix's objection is overruled. Hynix's requested reduction in the amount of $696.30 set forth in Table 14 is denied.

7. <u>Travel, Hotel and Meal Expenses of Interpreters (Table 15)</u>

Hynix objects to $8,220.83 in claimed costs for the travel, hotel and meal expenses of interpreters. Hynix concedes that Section 1920 allows recovery of "compensation" for interpreters, but contends that there is no basis under the statute to permit recovery of the expenses incurred by

those interpreters. Hynix relies on *Forest Labs, Inc. v. Abbott Labs.*, 2006 U.S. Dist. LEXIS 33743, *9 (W.D. N.Y. May 16, 2006) as a case in which the interpreter's travel expenses were denied because such expenses were not "compensation."

Rambus, in turn, contends that the interpreter expenses were charged to Rambus by the interpreters and therefore the costs are part of the compensation paid to the interpreters. Rambus cites *Suppa v. Costa Crociere, S.p.A.*, 2008 WL 4629078, *3 (S.D. Fla. 2008), as a case in which the travel and parking expenses of the interpreters were included in the "compensation" of the interpreters, and was thus includable in taxable costs.

*Suppa* offers no analysis for its finding that the travel and parking expenses were included in the compensation of the interpreters. *Forest*, by contrast, disallowed the travel costs of the interpreter based on statutory analysis of Section 1920(6). Specifically, the court noted that Section 1920(6) allows for both the "compensation of interpreters" and for the "costs of special interpretation services under section 1828" (which was not applicable in the case). From that observation, the court reasoned that "[h]ad Congress intended to allow interpreter "costs," including travel costs, in addition to compensation, in non-§ 1828 cases, it would have expressly so stated." *Id.* at *9.

*Forest's* analysis, however, is flawed in that the court misconstrued the nature of the "costs" in the "costs of special interpretation services under section 1828." Section 1828 provides for "Special Interpretation Services" and is addressed to the program within the Administrative Office of the Courts for the provision of special interpretation services in criminal actions and civil actions initiated by the United States. §1828(a). The expenses of providing services under Section 1828(a) are to be paid by the Director of the Administrative Office of the Courts from sums appropriated to the federal judiciary, but a judge may order that all or part of the expenses shall be apportioned between or among the parties or taxed as costs in a civil action. §1828(c). Section 1920(6) complements §1828(c) in that it directly authorizes the "costs of special interpretation services under section 1828" to be taxed as costs in a civil action. The word "costs" in the phrase "costs of special interpretation services under section 1828" refers to the expenses incurred by the federal judiciary in providing special interpretation services under Section 1828, and is not of the same nature as the

"travel costs" of interpreters hired by private parties. Thus, Section 1920(6) cannot be fairly read to authorize only the "compensation" but not "costs" (*i.e.*, reimbursed expenses) incurred by interpreters because it also expressly allows for the taxation of the "costs" of special interpretation services. For that reason, the court declines to follow *Forest.*

Logic dictates that reimbursement of the expenses incurred by the interpreters is a part of the overall compensation paid to the interpreter. Defining "compensation" narrowly so that it encompasses only that portion of the remuneration paid to an interpreter for the interpretation service alone, while excluding reimbursement of the necessary and reasonable "expenses" incurred by the interpreter to travel to the location for the purpose of performing those interpretation services, would unreasonably split statutory hairs. The more reasonable interpretation of the statutory phrase "compensation of interpreters" is to include all of the expenses billed by the interpreter and paid by the party for the interpreter's services, including reasonable travel expenses, parking, and meals that were reasonably necessary in connection with the provision of services.

Hynix's objection is overruled. Hynix's requested reduction in the amount of $8,220.83 set forth in Table 15 is denied.

### 8. Trial Equipment Costs (Table 17)

Hynix objects to $2,930 in claimed costs for the rental of trial equipment, specifically the rental of book carts for the courtroom in the Unclean Hands trial and in the Patent Trial. Hynix argues that the cart rental was for the convenience of Rambus' attorneys in the courtroom and that the convenience of counsel is not a basis for recovering costs.

Rambus argues that the "book carts were necessary to house the set of trial exhibits that were kept in the courtroom and therefore were reasonably necessary, and not merely for the convenience of Rambus' counsel." Response at 13.

Hynix's objection is sustained. The expense incurred by Rambus for renting book carts upon which to house its set of trial exhibits undoubtedly made managing and accessing that set of exhibits more convenient for Rambus' counsel. Such costs, however, are not among the taxable costs identified in Local Rule 54-3 or listed as taxable in 28 U.S.C. §1920. The $2,930 in costs set forth

in Table 17 are disallowed.

**Summary**

For the reasons stated above, the following amounts are deducted form the costs claimed by Rambus:

| | |
|---|---|
| Table 2: | $   823.21 |
| Table 6: | $   131.26 |
| Table 9: | $ 6,934.20 |
| Table 10: | $14,575.75 |
| Table 17: | $ 2,930.00 |
| **Total Reduction** | **$25,394.42** |

Therefore, Rambus is entitled an award of **$764,839.93** in costs from Hynix as set forth below:

| Category | Claimed | Reduction | Award |
|---|---|---|---|
| Schedule A - filing fees | $        223.27 | $        0.00 | $        223.37 |
| Schedule B - transcripts | $ 290,845.06 | $        954.47 | $ 289,890.59 |
| Schedule C - witness fees and expenses | $     7,327.92 | $        0.00 | $     7,327.92 |
| Schedule D - exemplification and copies | $ 293,708.28 | $ 21,509.95 | $ 272,198.33 |
| Schedule E - interpreters and translators | $   64,742.82 | $        0.00 | $   64,742.82 |
| Schedule F - trial equipment | $   24,819.21 | $   2,930.00 | $   21,889.21 |
| Schedule G - special master fees | $ 108,567.79 | $        0.00 | $ 108,567.79 |
| **Total** | $ 790,234.35 | $ 25,394.42 | **$ 764,839.93** |

**Order**

The court taxes costs and awards them to Rambus in the amount of **$764,839.93**.

DATED:      3/8/10

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

This document has been electronically sent to: counsel in 00-20905.

| Counsel | Email | Appearances: | | | |
|---|---|---|---|---|---|
| | | 05-00334 | 05-02298 | 06-00244 | 00-20905 |
| **Rambus:** | | | | | |
| Kathryn Kalb Anderson | Kate.Anderson@mto.com | x | | x | |
| Peter A. Detre | detrepa@mto.com | x | x | x | x |
| Erin C. Dougherty | erin.dougherty@mto.com | x | x | x | x |
| Sean Eskovitz | sean.eskovitz@mto.com | x | x | x | x |
| Burton Alexander Gross | Burton.Gross@mto.com | x | x | x | x |
| Keith Rhoderic Dhu Hamilton, II | keith.hamilton@mto.com | x | x | x | x |
| Pierre J. Hubert | phubert@mckoolsmith.com | x | x | x | x |
| Andrea Jill Weiss Jeffries | Andrea.Jeffries@mto.com | x | x | x | |
| Miriam Kim | Miriam.Kim@mto.com | x | x | x | x |
| Carolyn Hoecker Luedtke | carolyn.luedtke@mto.com | x | x | x | x |
| Steven McCall Perry | steven.perry@mto.com | x | x | x | x |
| Jennifer Lynn Polse | jen.polse@mto.com | x | x | x | x |
| Matthew Thomas Powers | mpowers@sidley.com | x | | | |
| Rollin Andrew Ransom | rransom@sidley.com | x | x | x | x |
| Rosemarie Theresa Ring | rose.ring@mto.com | x | x | x | x |
| Gregory P. Stone | gregory.stone@mto.com | x | x | x | x |
| Craig N. Tolliver | ctolliver@mckoolsmith.com | x | x | x | x |
| Donald Ward | Bill.Ward@mto.com | x | x | x | |
| David C. Yang | david.yang@mto.com | x | x | x | x |
| Douglas A. Cawley | dcawley@mckoolsmith.com | | | x | |
| Scott L Cole | scole@mckoolsmith.com | | | x | |
| William Hans Baumgartner, Jr | wbaumgartner@sidley.com | | | | x |
| Scott W. Hejny | shejny@sidley.com | | | | x |
| Kelly Max Klaus | kelly.klaus@mto.com | | | | x |
| Catherine Rajwani | crajwani@sidley.com | | | | x |
| Thomas N Tarnay | ttarnay@sidley.com | | | | x |
| **Hynix:** | | | | | |
| Theodore G. Brown , III | tgbrown@townsend.com | x | x | x | x |
| Daniel J. Furniss | djfurniss@townsend.com | x | | | x |
| Joseph A. Greco | jagreco@townsend.com | x | | | x |
| Julie Jinsook Han | JJHan@townsend.com | x | x | x | |
| Tomomi Katherine Harkey | tharkey@omm.com | x | | | x |
| Jordan Trent Jones | jtjones@townsend.com | x | | | x |
| Patrick Lynch | plynch@omm.com | x | | | x |
| Kenneth Lee Nissly | kennissly@omm.com | x | | x | x |
| Kenneth Ryan O'Rourke | korourke@omm.com | x | | | x |
| Belinda Martinez Vega | bvega@omm.com | x | x | x | x |
| Geoffrey Hurndall Yost | gyost@thelenreid.com | x | x | x | x |
| Susan Gregory van Keulen | svankeulen@omm.com | x | | x | x |
| Allen Ruby | ruby@allenrubylaw.com | | | | x |
| **Micron:** | | | | | |
| Robert Jason Becher | robertbecher@quinnemanuel.com | x | | x | x |
| John D Beynon | john.beynon@weil.com | x | x | x | x |
| Jared Bobrow | jared.bobrow@weil.com | x | x | x | x |

ORDER TAXING COSTS
C-00-20905-RMW
TER

| | | | | | |
|---|---|---|---|---|---|
| Yonaton M Rosenzweig | yonirosenzweig@quinnemanuel.com | x | | x | x |
| Harold Avrum Barza | halbarza@quinnemanuel.com | | | x | |
| Linda Jane Brewer | lindabrewer@quinnemanuel.com | | | x | |
| Aaron Bennett Craig | aaroncraig@quinnemanuel.com | | | x | x |
| Leeron Kalay | kalay@fr.com | | | x | |
| David J. Lender | david.lender@weil.com | | | x | |
| Rachael Lynn Ballard McCracken | rachaelmccracken@quinnemanuel.com | | | x | |
| Sven Raz | sven.raz@weil.com | | | x | |
| David J. Ruderman | davidruderman@quinnemanuel.com | | | x | |
| Elizabeth Stotland Weiswasser | elizabeth.weiswasser@weil.com | | | x | |
| **Nanya:** | | | | | |
| Jason Sheffield Angell | jangell@orrick.com | x | x | x | x |
| Kristin Sarah Cornuelle | kcornuelle@orrick.com | x | x | x | |
| Chester Wren-Ming Day | cday@orrick.com | x | | | |
| Jan Ellen Ellard | jellard@orrick.com | x | | x | |
| Vickie L. Feeman | vfeeman@orrick.com | x | x | x | |
| Robert E. Freitas | rfreitas@orrick.com | x | | | |
| Craig R. Kaufman | hlee@orrick.com | x | | | |
| Hao Li | hli@orrick.com | x | | | |
| Cathy Yunshan Lui | clui@orrick.com | x | | | |
| Theresa E. Norton | tnorton@orrick.com | x | | | |
| Mark Shean | mshean@orrick.com | x | | | |
| Kaiwen Tseng | ktseng@orrick.com | x | | | |
| **Samsung:** | | | | | |
| Steven S. Cherensky | steven.cherensky@weil.com | x | x | | |
| Dana Prescott Kenned Powers | dana.powers@weil.com | x | x | x | |
| Matthew Douglas Powers | matthew.powers@weil.com, matthew.antonelli@weil.com | x | x | | |
| Edward Robert Reines | Edward.Reines@weil.com | x | x | | x |
| **United States Dept. of Justice** | | | | | |
| May Lee Heye | may.heye@usdoj.gov | | | | x |
| Eugene S. Litvinoff | eugene.litvinoff@usdoj.gov | | | | x |
| Niall Edmund Lynch | Niall.Lynch@USDOJ.GOV | | | | x |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program in each action.

**Dated:** _____3/8/10_____     _____TER_____
**Chambers of Judge Whyte**

ORDER TAXING COSTS
C-00-20905-RMW
TER