*E-Filed on 1/11/2012*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> RAMBUS INC., <br><br> Defendant. | Case No. C-00-20905-RMW <br><br> ORDER TAXING COSTS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 39(e); LIFTING HYNIX'S OBLIGATION TO MAINTAIN SUPERSEDEAS BOND; AND DECLINING TO LIFT HYNIX'S OBLIGATION TO MAINTAIN ESCROW ACCOUNT |

Presently before the court are a Bill of Costs, Supplemental Bill of Costs, and Second Supplemental Bill of Costs filed by Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd., and Hynix Semiconductor Deutschland GmbH (collectively "Hynix") pursuant to Federal Rule of Appellate Procedure 39(e). In light of the magnitude of the costs sought by Hynix and the complexity of the issues involved, and pursuant to the stipulation of the parties, the court directed that the cost bills be presented to it in the first instance rather than to the clerk. Having considered the briefing of the parties and the arguments of counsel presented at the hearing on December 16, 2011, the court orders as follows:

# I. BACKGROUND

The facts of this case are well-known to the parties and need not be repeated in full here. In brief, Hynix (then Hyundai Electronics Industries Co., Ltd.) sued Rambus Inc. ("Rambus") for declaratory judgment of noninfringement, invalidity, and unenforceability with respect to several patents owned by Rambus, and for monopolization, fraud, and unfair competition. Rambus counterclaimed for patent infringement. Hynix asserted various affirmative defenses to Rambus's infringement claims, including an unclean hands defense based upon Rambus's alleged spoliation of evidence. The case was tried in three phases: first, Hynix's unclean hands defense was tried to the court; second, Rambus's infringement claims were tried to a jury; and third, Hynix's claims and defenses of monopolization, attempted monopolization, fraud, estoppel, waiver, declaratory judgment of unenforceability, and unfair competition were tried in part to a jury and in part to the court. Rambus prevailed in all three phases. On March 10, 2009, the court entered final judgment for Rambus in the amount of $396,881,244 plus post-judgment interest. The judgment also required Hynix to pay specified royalties to Rambus on an ongoing basis. Hynix appealed.

The court stayed execution of the judgment conditioned upon Hynix's posting of a supersedeas bond in the amount of $250 million and providing alternate security sufficient to cover the remainder of the judgment. Order of May 14, 2009 (filed under seal) at 4. The court permitted Hynix to pay the royalties into an escrow account rather than to Rambus directly. *Id*. Subsequently, the court reconsidered its decision to permit Hynix to provide alternate security, and it ordered Hynix to post a supersedeas bond in the full amount of the judgment. Order of Sept. 17, 2010. Hynix posted an increased bond in the form of a rider to the original bond, and lodged it with the court on October 18, 2010.

On May 13, 2011, the Court of Appeals for the Federal Circuit vacated the judgment and the underlying findings of fact and conclusions of law regarding spoliation, and remanded for further proceedings on the spoliation issue. *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1355 (Fed. Cir. 2011). This court's rulings otherwise were affirmed. *Id*. The appellate court, without elaboration, ordered that "[c]osts are awarded to Hynix." *Id*. The mandate issued

Case No. C-00-20905-RMW
ORDER TAXING COSTS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 39(e) ETC.
CD

on August 9, 2011,[1] reflecting an award of appellate printing costs in the amount of $12,055.76; Rambus has paid those costs.  Hynix seeks additional appellate costs in excess of $16 million, the bulk of which are costs incurred in obtaining and maintaining the supersedeas bond required by the court as a condition of staying execution of the judgment.

## II. DISCUSSION

**A.   Legal Standards**

"When costs are awarded on appeal, a portion of the costs is taxed in the circuit court and a portion is taxed in the district court."  *Record Club of America, Inc. v. United Artists Records, Inc.*, 731 F. Supp. 602, 603 (S.D.N.Y. 1990).  Taxation of costs in the district court is governed by the following provisions of Federal Rule of Appellate Procedure 39:

> **Rule 39. Costs**
>
> **(a) Against Whom Assessed.**  The following rules apply unless the law provides or the court orders otherwise:
>
>> (1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;
>>
>> (2) if a judgment is affirmed, costs are taxed against the appellant;
>>
>> (3) if a judgment is reversed, costs are taxed against the appellee;
>>
>> (4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.
>>
>> . . .
>
> **(e) Costs on Appeal Taxable in the District Court.**  The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
>
>> (1) the preparation and transmission of the record;
>>
>> (2) the reporter's transcript, if needed to determine the appeal;
>>
>> (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
>>
>> (4) the fee for filing the notice of appeal.

Fed. R. App. P. 39(a), (e).

---

[1] The mandate was filed in this court on August 15, 2011.

Case No. C-00-20905-RMW
ORDER TAXING COSTS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 39(e) ETC.
CD

"Federal Rule of Appellate Procedure 39(a) is a 'to whom' provision.  It establishes which party is entitled to recover the costs of appeal." *Muniauction, Inc. v. Thomson Corp.*, No. 01-1003, 2009 WL 437883, at * (W.D. Pa. Feb. 21, 2009); *see also L-3 Commun. Corp. v. OSI Systems, Inc.*, 607 F.3d 24, 28 (2d Cir. 2010) ("Subsection (a) of Rule 39, entitled 'Against Whom Assessed,' provides basic default rules that determine which party bears certain costs of appeal 'unless the law provides or the court orders otherwise.'") (quoting Fed. R. App. P. 39(a)). "Subsections (a)(1) through (3) distribute the costs of appeal in situations in which it is generally apparent which party should bear the costs, such as when the appeal is dismissed, affirmed, or reversed." *L-3 Commun.*, 607 F.3d at 28.  "Subsection (a)(4), however, acknowledges that there are some circumstances in which the disposition on appeal will not lend itself to a ready determination of which party, if any, should bear costs on appeal." *Id.*  In such circumstances, "costs are taxed only as the court orders."  Fed. R. App. P. 39(a)(4).

There is a split of authority as to whether in the context of subsection (a)(4) "the court" refers to the appellate court or the district court.  The Ninth Circuit has not addressed this precise issue.[2]  The Second Circuit recently construed the relevant language as follows:  "We read subsection (a)(4) as requiring the appellate court to make a determination about which party, if any, should bear costs before costs may be taxed." *L-3 Commun.*, 607 F.3d at 29.  The Eighth Circuit likewise has concluded that in a subsection (a)(4) case appellate costs may be taxed only after the appellate court enters an order stating that a particular party is entitled to costs on appeal. *Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 497 F.3d 805, 808 (8th Cir. 2007).  At least one district court has held that "[i]n the context of this Rule, 'the court' referenced is clearly the Court of Appeals." *Clark v. Capital Credit & Collection Services, Inc.*, 561 F. Supp. 2d 1213, 1223 (D. Ore. 2008).  However, the Seventh Circuit has held that subsection (a)(4) "affords district courts broad discretion to allocate costs." *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 481 F.3d 442, 449 (7th Cir. 2007).  In *Republic Tobacco*,

---

[2] The Federal Circuit "ordinarily reviews procedural matters not unique to patent issues under the law of the particular regional circuit court where appeals from the district court normally would lie." *Dana Corp. v. IPC Limited Partnership*, No. 90-1443, 1991 WL 5890, at *2 n.2 (Fed. Cir. Jan. 25, 1991).

4

1  the court held that although subsection (a)(4) clearly governed, and the appellate court had

2  ordered that each party bear its own costs on appeal, the district court nonetheless retained

3  discretion to tax appellate costs pursuant to subsection (e). *Id*. The court also concluded that "a

4  district court has discretion not to award a party costs under Federal Rule of Appellate Procedure

5  39(e), despite an order by the appellate court awarding costs to that same party." *Id*. at 448.

6  This approach has been adopted by some district courts. *See, e.g., Smart Marketing Group, Inc.*

7  *v. Publications Intern., Ltd.*, No. 04–cv–0146, 2011 WL 1897214, at *1 (N.D. Ill. May 17, 2011)

8  (Rule 39(a)(4) "gives district courts broad discretion in granting or denying these costs to a

9  successful appellant").

10         This court need not resolve whether "the court" referenced in Rule 39(a)(4) is the Court

11  of Appeals or the district court. If the former, the Federal Circuit clearly granted appellate costs

12  to Hynix. If the latter, this court concludes that Hynix is a prevailing party entitled to costs.

13  Accordingly, under the above authorities, this court must determine whether Hynix has incurred

14  costs that are taxable under subsection (e) and, if so, what those costs are.[3]

15  **B.    Whether Review of Costs Bills Would be Premature**

16         Before undertaking this determination, the court addresses Rambus's contention that it

17  would be premature to award Hynix costs at this time because "Rambus may yet emerge as the

18  judgment winner on remand." Rambus's Opp. to Hynix's Bill of Costs, at 12. Hynix asserts that

19  Rambus has waived this argument by stipulating to a schedule for briefing and hearing the costs

20  issues. The court concludes that Rambus's stipulation with respect to a briefing schedule did not

21  constitute a waiver of any substantive argument. However, Rambus's argument assumes that

22  _____

23         [3] Rambus cites *Golden Door Jewelry Creations v. Lloyds Underwriters Non-Marine*

24  *Ass'n*, 117 F.3d 1328 (11th Cir. 1997), for the proposition that where Rule 39(a)(4) applies a
    district court lacks discretion to tax costs under Rule 39(e) unless those costs are explicitly

25  authorized in the appellate court's mandate. *Golden Door*, 117 F.3d at 1340. This approach has
    been criticized by a number of courts, including the Second Circuit in *L-3 Commun.*, 607 F.3d at

26  29-30. Moreover, the *Golden Door* decision was based in large part upon the language of the
    appellate court's mandate in that case, which provided for "costs on appeal to be taxed by the

27  Clerk of *this* court." *Golden Door*, 117 F.3d at 1340 (emphasis added). The mandate in the
    present case does not contain such limiting language. Accordingly, this court declines to apply

28  *Golden Door* here.

Case No. C-00-20905-RMW
ORDER TAXING COSTS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 39(e) ETC.
CD

1    Hynix's entitlement to appellate costs would be extinguished in the event that Rambus were to

2    prevail on the merits following remand.  This does not appear to be the case.  To the contrary, an

3    order taxing appellate costs is effective immediately, and is not dependent upon the ultimate

4    outcome of the case on remand.  *See Ninilchick Traditional Council v. United States*, 227 F.3d

5    1186, 1196 (9th Cir. 2000) (following reversal of the district court's order, appellant was entitled

6    to costs on appeal under Fed. R. App. P. 39(e)(4), and such entitlement was not dependent upon

7    the outcome of subsequent proceedings); *Mason v. Texaco, Inc.*, 131 F.R.D. 697, 698 (D. Kansas

8    1990) (same).  In *Mason*, the defendant successfully appealed the first trial in the case, and was

9    awarded costs on appeal.  The plaintiff prevailed on retrial, and sought to vacate the award of

10   appellate costs to the defendant.  The district court denied the motion, noting that:  "Irrespective

11   of the disposition of this case upon retrial, defendant was the prevailing party on appeal from the

12   first trial.  Thus, the assessment of costs for defendant's expenses on appeal may not be

13   extinguished by the fact that plaintiff has prevailed in subsequent proceedings."[4]  *Mason*, 131

14   F.R.D. at 698.

15        Rambus relies heavily upon *Berthelsen v. Kane*, 907 F.2d 617 (6th Cir. 1990), in which

16   the appellate court vacated entry of default and default judgment against the defendant, and

17   remanded the case to the district court for a trial on the merits.  The plaintiff subsequently asked

18   the appellate court to clarify whether the defendant's costs in obtaining a supersedeas bond on

19   appeal were taxable against the plaintiff.  The appellate court noted that because the judgment

20   had been vacated, costs on appeal were "allowed only as ordered by the court."  *Id.* at 622.  The

21   appellate court declined to order the plaintiff to pay such costs, noting that if the plaintiff

22   prevailed on the merits, "the appeal merely would have resulted in a further delay of the

23   judgment to which the plaintiff was rightfully entitled."  *Id.* at 623.  The appellate court stated

24

25        [4] California courts follow the same rule, holding that following appeal "the award of
     costs is immediately enforceable."  *Krikorian Premiere Theatres, LLC v. Westminster Central,*
26   *LLC*, 193 Cal. App. 4th 1075, 1083 (2011) (citing 9 Witkin, *Cal. Procedure* (5th ed. 2008)
     Appeal, § 978, p. 1026)).  An award of appellate costs "cannot be affected by any further
27   proceedings in the trial court."  *Id.*; *see also First Nat. Bank of San Pedro v. Stansbury*, 214 Cal.
     190, 192 (1931) ("There is no interdependence between the judgment for costs of the former
28   appeal and any judgment which may subsequently be entered in the main case.").

6

1  that the district court could take up the taxability of the premium paid on the supersedeas bond

2  following a determination of on the merits of the case.  *Id.*

3      The present case is distinguishable from *Berthelsen*.  Whereas in *Berthelsen* the appellate

4  court expressed its reluctance to award costs on appeal to the defendant under the particular

5  circumstances of that case, here the Federal Circuit expressly granted costs on appeal to Hynix.

6  Moreover, *Berthelsen* does not address the point discussed above, that a party's entitlement to

7  costs on appeal is not dependent upon the ultimate outcome of the case on remand.  Accordingly,

8  this court will not delay consideration of Hynix's costs bills pending further proceedings.[5]  *Cf.*

9  *Record Club of America*, 731 F. Supp. at 603 ("Since the Second Circuit Court concluded its

10 opinion vacating this Court's prior judgment with the words costs to defendant . . . RCOA

11 cannot argue persuasively that taxing of costs by the district court under Fed. R. App. P. 39(e) is

12 premature.") (internal quotation marks omitted).

13 **C.    Whether this Court May or Should Deny Hynix's Costs Bills in their Entirety**

14     As noted above, this court must determine whether Hynix has incurred costs that are

15 taxable under subsection (e) and, if so, what those costs are.  Rambus asks the court to conclude

16 that any award of costs to Hynix would be inappropriate under the facts of this case.  Rambus

17 relies primarily upon cases addressing the standards for awarding costs in the trial court under

18 Federal Rule of Civil Procedure 54(d).  *See, e.g., Champion Produce, Inc. v. Ruby Robinson Co.*,

19 342 F.3d 1016 (9th Cir. 2003); *Association of Mexican-American Educators ("AMAE") v. State*

20

21      [5] Hynix's right to costs on appeal would be affected were the United States Supreme
   Court to reverse the Federal Circuit's order.  *See Furman v. Cirrito*, 782 F.2d 353, 355 (2d Cir.
22 1986) ("when the Supreme Court reverses a circuit court order, which included an award of costs
   to the then successful appellee . . . [t]he award of costs by the circuit court must be vacated and
23 costs awarded to the now successful appellant for appeals on both the circuit and Supreme Court
   levels, as well as for costs incurred in the district court.").  However, Rambus did not file a
24 petition for writ of certiorari.  During oral argument, Rambus's counsel suggested that while
   *Hynix*'s writ petition is pending, or in the event that it is granted, the Supreme Court might
25 remand the unclean hands issue *sua sponte*.  Trans. of 12/16/2011, 28:23-19.  Counsel
   acknowledged that such action on the part of the Supreme Court was "highly unlikely," but
26 argued that because it was "not impossible," this court should delay awarding appellate costs and
   should maintain the *status quo* with respect to maintenance of the appellate bond and escrow
27 account.  *Id.*  The court is not persuaded that the "highly unlikely" possibility suggested by
   Rambus warrants a delay in awarding Hynix appellate costs to which it is entitled.
28

*of California*, 231 F.3d 572 (9th Cir. 2000).  In *Champion*, the district court declined to award costs to the prevailing plaintiff on several grounds, including the fact that the plaintiff had recovered substantially less in damages than it had sought, and that two affirmative defenses had been successful.  *Champion*, 342 F.3d at 1023.  The appellate court held that "these reasons can support a discretionary decision to deny costs to a prevailing party in a contract action."  *Id.*  In *AMAE*, the district court declined to award costs to the prevailing defendants on the grounds that the case involved issues of substantial public importance, there was a great economic disparity between the plaintiffs and the defendants, the issues in the case were close and difficult, and the plaintiffs' case had some merit.  *AMAE*, 231 F.3d at 592.  The appellate court held that the district court did not abuse its discretion in declining to award costs.  *Id.* at 593.  It is unclear whether these standards are applicable to a district court's award of costs on appeal under Rule 39(e).  Even if they are, the cited cases are so factually different from the present case as to offer very little guidance.  For example, the *AMAE* action, which was brought by minority educators against the State of California, involved "issues of the gravest public importance," and the action affected "tens of thousands of Californians and the state's public school system as a whole."  *Id.*  The only apparent commonalities between the cases cited by Rambus and the present case is that they involve difficult, close questions, and both sides have prevailed on some aspects of the case.  These facts do not persuade this court to exercise its discretion (assuming it has such discretion) to deny Hynix any appellate costs.

**D.    Itemized Costs**

**1.    Fees of the Clerk**

The fee for filing the notice of appeal is taxable.  Fed. R. App. P. 39(e)(4).  Hynix claims $455 in filing fees.  Rambus does not dispute these costs.

**2.    Transcript Costs**

The fee for reporter's transcripts is taxable, if the transcripts are needed to determine the appeal.  Fed. R. App. P. 39(e)(2).  Hynix initially claimed $68,867.97 in costs for transcripts needed to determine the appeal.  Following meet and confer between the parties, Hynix realized that it had entered that figure on its costs bill in error; Hynix has reduced its claim for transcript

8

1    costs to $30,611.55. This figure is supported by Hynix's documentation, and Rambus does not

2    contend otherwise. However, Rambus points out that only $6,177.60 of the claimed fees relate

3    to transcripts from the unclean hands phase of the case. Because the remaining transcript costs

4    relate to arguments upon which Hynix did not prevail on appeal, Rambus contends that Hynix

5    should not be permitted to recover them. The court finds this argument persuasive. *Cf. Shum v.*

6    *Intel Corp.*, 629 F.3d 1360 (Fed. Cir. 2010) (discussing factors that may be considered in

7    determining who the prevailing party is for purposes of awarding costs under Federal Rule of

8    Civil Procedure 54 in a mixed judgment case). Accordingly, the court will tax transcript costs in

9    the amount of $6,177.60.

10           **3.    Supersedeas Premiums and Other Security Costs**

11           The district court may tax "premiums paid for a supersedeas bond or other bond to

12    preserve rights pending appeal." Fed. R. App. P. 39(e)(3). Hynix claims in excess of $8 million

13    in premiums paid for the supersedeas bond it acquired, and in excess of $8.3 million in other

14    security expenses related to acquiring the bond.[6] With respect to the other security costs, Hynix

15    asserts that given the global economic climate when it attempted to obtain the original bond in

16    2009, Hynix was required to provide standby letters of credit (or the equivalent) in an amount

17    equal to the original bond. Hynix also was required to provide standby letters of credit (or the

18    equivalent) for the full amount of the increased bond. Rambus contends that these other security

19    expenses are not recoverable under Rule 39(e)(3), and that even the premium expenses

20    themselves are excessive.

21           The circuits are split as to whether security costs, as opposed to bond premiums, may be

22    recovered under Rule 39(e)(3). A number of courts have held that such costs may be recovered.

23    *See, e.g.*, *Republic Tobacco*, 481 F.3d at 450 (permitting recovery of costs incurred in obtaining

24    security in lieu of a supersedeas bond); *Bos*e, 806 F.2d at 305 (permitting recovery of both bond

25    premium and cost of letter of credit); *Dana Corp. v. IPC Limited Partnership*, No. 90-1443,

26    1991 WL 5890, at *2-3 (Fed. Cir. Jan. 25, 1991) (permitting recovery of same). While this court

27

28    _____

          [6] These figures represent bond premiums and other security expenses reflected in Hynix's
     initial Bill of Costs, Supplemental Bill of Costs, and Second Supplemental Bill of Costs.

Case No. C-00-20905-RMW
ORDER TAXING COSTS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 39(e) ETC.
CD

1  finds the rationales underlying these decisions appealing, it is bound to follow Ninth Circuit

2  authority.  *See Dana Corp*., 1991 WL, at *2 n.2.  In *Johnson v. Pacific Lighting Land Co.*, 878

3  F.2d 297 (9th Cir. 1989), the Ninth Circuit framed the question before it as follows:  "This case

4  of first impression involves the question of whether the costs of a letter of credit used to secure a

5  supersedeas bond are properly taxable as costs of the appeal."  *Id*. at 297.  It is clear from the

6  opinion that, like Hynix, the appellant in *Johnson* was required to obtain a letter of credit as

7  security in order to obtain the supersedeas bond necessary to stay execution of the judgment.  *Id*.

8  The appellant was successful on appeal; the appellate court reversed the judgment, remanded the

9  case for trial, and ordered that appellate costs be taxed.  *Id*.  Nonetheless, the Ninth Circuit held

10  that the costs of the letter of credit were not taxable under Rule 39(e)(3).  *Id*. at 298.  In noting

11  that the First Circuit had permitted taxation of such costs in *Bose Corp. v. Consumers Union of

12  U.S., Inc.*, 806 F.2d 304 (1st Cir. 1986), the Ninth Circuit commented that:  "[w]here a letter of

13  credit has been used and the total cost has been no greater than a supersedeas bond without

14  collateral, the charge for the letter of credit has been treated as the equivalent of premiums paid

15  for the cost of a supersedeas bond."  *Johnson*, 878 F.2d at 298.  The court distinguished *Bose* by

16  stating that in the case before it "the costs paid for the letter of credit were in addition to the

17  costs of the premiums paid for the supersedeas bonds."  *Id*.  The court concluded that there

18  simply "was no authorization in Rule 39 for such costs," and that "[i]t was an abuse of discretion

19  to allow them."  *Id*.  In accordance with the holding in *Johnson*, Hynix's security expenses other

20  than the bond premiums are not taxable.

21  However, the bond premiums themselves fall squarely within Rule 39 and, therefore, are

22  recoverable.  Rambus contends that Hynix paid excessive rates for the supersedeas bond.  In

23  support of this contention, Rambus submits the declaration of E. Allen Jacobs, who has a Ph.D.

24  in economics.  Jacobs discusses in great detail the declarations of Yoo Ho Roh submitted in

25  support of Hynix's costs bills, and opines about numerous shortcomings in the manner in which

26  Hynix obtained and maintained the supersedeas bond.  Hynix relies upon the Roh declarations

27  and the exhibits attached thereto to prove that it struck the best deal it could given the economy

28  in 2009, when it obtained the initial bond, and its relatively weak bargaining position. *See, e.g.,*

10

1   Second Suppl. Decl. of Yoo Ho Roh ¶¶ 4-8.  Hynix was able to get better terms on the increased

2   bond.  *Id*. ¶ 13.  Although the evidence is conflicting, the court is not persuaded that Hynix could

3   have obtained the supersedeas bond on more favorable terms.  It appears that Hynix was highly

4   motivated to obtain the bond on the best terms possible, but that it was presented with a number

5   of hurdles that were costly to overcome.  Based upon this record, the court declines to deny or

6   reduce Hynix's recovery of the premium costs.

7        Finally, Rambus requests that the court reduce any award of bond premiums to reflect the

8   fact that Hynix prevailed only partially on appeal.  As discussed above, the court finds Rambus's

9   "proportional success" argument persuasive with respect to Hynix's transcript costs; those costs

10  were dictated by Hynix's choices as to the scope of its appeal and the necessity of certain

11  transcripts.  However, Hynix had no choice but to post the full amount of the supersedeas bond

12  required by the court.  Rambus has not cited, and this court has not found, any cases holding that

13  bond premiums subject to taxation under Rule 39(e) should be reduced to reflect the prevailing

14  party's proportional success on appeal.  Hynix has presented substantial evidence that the

15  premiums were necessary and reasonable under the circumstances.  Accordingly, the court will

16  tax costs in the amount of the total bond premiums paid by Hynix through discharge of the bond.

17  **E.      Continued Bond and Escrow**

18        In light of the fact that the judgment has been vacated, Hynix requests that the court lift

19  its obligations to maintain a supersedeas bond and to continue paying royalties into escrow.

20  Rambus insists that the *status quo* should be maintained.

21        This court's order of May 14, 2009, staying execution of the judgment, provided as

22  follows:

23          This stay shall remain in effect until thirty days following the later of (1) remand
            to the district court following completion of all proceedings in the United States
24          Supreme Court, if a petition for writ of certiorari is granted; (2) denial of any
            petition for writ of certiorari to the United States Supreme Court; (3) expiration of
25          the time to file a petition for writ of certiorari if no such petition is filed; or (4)
            until such time as otherwise ordered by the court.
26

27  Order of May 14, 2009, at 5.  The parties stipulated with respect to Hynix's obligation to pay

28  royalties into the escrow account:

11

> If the Final Judgment is reversed or vacated so as to affect the basis for the
> Ongoing Royalty award, the funds in the Escrow Account, including interest
> and/or profits therein, shall not be released to any party pending further
> proceedings before this Court, but shall be released in accordance with any
> further order by the Court.  No funds in the Escrow Account shall be released
> sooner than (1) thirty days following the later of remand to the district court
> following completion of all proceedings in the United States Supreme Court, if a
> petition for writ or [sic] certiorari is granted; (2) denial of any petition for writ of
> certiorari to the United States Supreme Court; (3) expiration of the time to file a
> petition for writ of certiorari if no such petition is filed; or (4) until such time as is
> otherwise ordered by this court.

Stipulation and Order of November 24, 2009, at 4:8-13.

Rambus did not seek review in the Supreme Court and the deadline for it to do so has expired.  Hynix timely filed a petition for writ of certiorari seeking review of the Federal Circuit's decisions with respect to equitable estoppel and claim construction.  Rambus obtained an extension of time until December 30, 2011 to file a response to that petition.  Accordingly, the conditions for expiration of the bond and the escrow account have not yet been met as a technical matter.  However, the aspect of the appellate decision that led the Federal Circuit to vacate the judgment – the determination that the court did not apply the proper legal standard to the unclean hands defense – is, for all practical purposes, final.[7]  Under these circumstances, there does not appear to be any justification for requiring Hynix to continue to maintain the bond.  The purpose of the bond was to secure payment of a now-vacated judgment.  In addition, the record indicates that Hynix is in a much better position financially than it was at the time the court required the bond.  The evidence suggests that Hynix would be able to satisfy a future judgment against it were Rambus to prevail on remand.  Hynix claims that maintenance of the bond is costing it in excess of $1.2 million per quarter.  Accordingly, the court lifts Hynix's obligation to maintain a supersedeas bond as it implicitly has the power to do under the order of May 14, 2009.  Order of May 14, 2009 at 5:10.

The escrow account presents a somewhat different situation.  The record is not clear as to the precise amount of the expense incurred in maintaining the account, but the court presumes

---

[7] As discussed in note 5, above, Rambus argues that it is "not impossible" that the Supreme Court could remand the unclean hands issue *sua sponte*.  This court declines to base its determination as to the necessity of a continued bond upon this remote possibility.

that it is relatively minor.  Rambus yet may prevail on the merits, in which case the existence of the escrow account would simplify greatly the calculation and transfer of royalties due.  Hynix stipulated to maintaining the escrow account pending the satisfaction of certain conditions, which have not yet occurred, and that "[i]f the Final Judgment is reversed or vacated so as to affect the basis for the ongoing award, the funds in the Escrow Account . . .shall *not* be released to any party pending further order by this Court, but shall be released in accordance with any further order by the Court."  Stipulation and Order of November 24, 2009, at 4:8-13 (emphasis added).  Accordingly, the court declines to lift Hynix's obligation to pay the specified royalties into the escrow account at this time.

### III. ORDER

Good cause therefor appearing, in is hereby ordered that:

(1)     costs are taxed against Rambus and in favor of Hynix in the amount of $455 in filing fees; $6,177.60 in transcript fees; and in the amount of total bond premiums paid by Hynix through the date of discharge of the bond, which shall be as soon as is practicable following this order.  Hynix shall file a supplement to its costs bills indicating the final amount of bond premiums;

(2)     Hynix's obligation to maintain a supersedeas bond is released; and

(3)     Hynix's obligation to make continuing royalty payments into the escrow account is not lifted at this time.

DATED: January 11, 2012

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

Case No. C-00-20905-RMW
ORDER TAXING COSTS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 39(e) ETC.
CD