1

2                                            \*E-Filed 5/8/2013\*

3

4

5

6

7

8                   **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                          **SAN JOSE DIVISION**

11

| | |
|---|---|
| 12   SK HYNIX INC., SK HYNIX AMERICA INC., SK HYNIX U.K. LTD., and SK HYNIX | Case No. C-00-20905 RMW |
| 13   DEUTSCHLAND GmbH, | ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT, |
| 14            Plaintiffs, | FOR A NEW TRIAL OR A STAY, AND FOR LEAVE TO FILE A SUPPLEMENTAL |
| 15       v. | REPLY TO RAMBUS'S AMENDED COUNTERCLAIM; (2) GRANTING IN PART |
| 16   RAMBUS INC., | RAMBUS'S MOTION TO AMEND THE COURT'S FFCL; AND (3) IMPOSING |
| 17         Defendant. | SANCTION AGAINST RAMBUS FOR SPOLIATION OF EVIDENCE **[REDACTED]** |

18

19       On September 21, 2012, following remand from the Federal Circuit, this court issued

20 Findings of Fact and Conclusions of Law ("FFCL") addressing the spoliation of documents by

21 Rambus Inc. ("Rambus") and related issues. *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp.

22 2d 939 (N.D. Cal. 2012) ("*Hynix III*"). This court found that Rambus had spoliated documents in

23 bad faith to the prejudice of SK hynix Inc., SK hynix America Inc., SK hynix U.K. Ltd., and SK

24 hynix Deutschland GmbH (collectively, "SK hynix").[1] *Id*. at 984. The court concluded that the most

25 appropriate sanction for Rambus's spoliation was to strike all record evidence that would support a

26 ─────────────────

27        [1]       At the time the court issued its FFCL, the Hynix entities were known as Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Hynix Semiconductor U.K. Ltd, and Hynix

28 Semiconductor Deutschland GmbH. On December 5, 2012, the court granted the Hynix entities' motion to modify the case caption to reflect corporate name changes. This order refers to the Hynix entities by their current names.

1  royalty on the patents-in-suit[2] in excess of a "reasonable and non-discriminatory royalty." *Id.* at 987.

2  The court made clear that any royalty must ensure that SK hynix would not be "not put at a

3  competitive disadvantage in the marketplace." *Id.* The parties were directed to submit supplemental

4  briefing as to what the royalty should be. *Id.*

5  While the parties were preparing those briefs, SK hynix filed three motions: a motion for

6  summary judgment based upon the asserted collateral estoppel effect of recent reexamination

7  decisions, an alternative motion for a new trial or a stay of litigation, and a motion for leave to file a

8  supplemental reply to Rambus's amended counterclaim to add a defense of collateral estoppel. ECF

9  Nos. 4164, 4165, 4166. Rambus filed a motion to amend the court's FFCL. ECF No. 4174. On

10  December 19, 2012, the court heard argument with respect to those motions as well as the issue of

11  the appropriate sanction for Rambus's spoliation.

12  Subsequently, SK hynix filed a motion for summary judgment based upon the asserted

13  collateral estoppel effect of the decision of the United States District Court for the District of

14  Delaware ("Delaware court") dated January 2, 2013. ECF No. 4238; *see Micron Tech., Inc. v.*

15  *Rambus Inc.*, — F. Supp. 2d —, No. 00–792–SLR, 2013 WL 227630 (D. Del. Jan. 2, 2013)

16  ("*Micron III*"). This court solicited a response from Rambus, which was filed on February 15, 2013.

17  ECF No. 4241. The motion thereafter was submitted without oral argument. ECF No. 4243. On

18  February 25, 2013, the Delaware court entered judgment on its January 2 decision.

19  Having considered the briefs, the admissible evidence, and the oral argument presented at the

20  hearing on December 19, 2012, the court finds and concludes as follows.

21  **I.**

22  **BACKGROUND**

23  SK hynix (then Hyundai Electronics Industries Co., Ltd.) commenced this action by suing

24  Rambus for a declaratory judgment of noninfringement, invalidity, and unenforceability with respect

25  to several of Rambus's "Farmwald/Horowitz" patents, which disclose inventions in the fields of

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [2]  The court uses the terms "patents-in-suit" and "claims-in-suit" herein to refer to the patents and claims that actually were tried and upon which Rambus prevailed. Rambus asserted

28  infringement of additional patent claims that were adjudicated against Rambus. Judgment at 7-8, ECF No. 3911.

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

Synchronous Dynamic Random Access Memory ("SDRAM") and Double Data Rate SDRAM ("DDR SDRAM").  Compl., ECF No. 1; *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1340 (Fed. Cir. 2011) (*"Hynix II"*); *Hynix III*, 897 F. Supp. 2d at 944-45.  SK hynix also asserted claims against Rambus for monopolization, fraud, and unfair competition.  Second Am'd Compl., ECF No. 106.  Rambus counterclaimed for patent infringement.  *Hynix III*, 897 F. Supp. 2d at 944.  SK hynix asserted various affirmative defenses to Rambus's infringement counterclaims, including an unclean hands defense based upon Rambus's spoliation of evidence.  *Id.*

The case was tried in three phases.  Judgment, ECF No. 3911.  In the first phase, SK hynix's unclean hands defense was tried to the court.  *Id.* at 2.  On January 5, 2006, the court issued FFCL determining that Rambus had not spoliated documents and thus that there was no factual basis for an unclean hands defense.  *Id.*  In the second phase, Rambus's infringement counterclaims were tried to a jury.  *Id.*  On April 24, 2006, the jury returned a verdict for Rambus.  *Id.*  In the third phase, SK hynix's remaining claims and defenses were tried.  *Id.*  On March 26, 2008, the jury returned a verdict in favor of Rambus with respect to SK hynix's legal claims.  *Id.*  On March 3, 2009, the court issued FFCL in favor of Rambus with respect to SK hynix's equitable claims and defenses.  *Id.*

On March 10, 2009, the court entered final judgment of infringement with respect to ten Rambus patent claims:  claim 33 of U.S. Patent No. 6,324,120 ("'120 patent"); claims 32 and 36 of U.S. Patent No. 6,378,020 ("'020 patent"); claims 9, 28, and 40 of U.S. Patent No. 6,426,916 ("'916 patent"); claim 16 of U.S. Patent No. 6,452,863 ("'863 patent"); claim 34 of U.S. Patent No. 5,915,105 ("'105 patent"); and claims 24 and 33 of U.S. Patent No. 6,034,918 ("'918 patent").  *Id.* at 2-3.  The judgment awarded Rambus $349,035,842 after a remittitur plus prejudgment interest, and required SK hynix to pay specified royalties to Rambus on an ongoing basis.  *Id.* at 2-6.

On May 13, 2011, the Court of Appeals for the Federal Circuit vacated this court's final judgment with respect to the finding of no spoliation and remanded for further proceedings on the spoliation issue.  *Hynix II*, 645 F.3d at 1355.  The judgment otherwise was affirmed.  *Id.*  The Federal Circuit expressly affirmed this court's denial of SK hynix's motion for a new trial on the

1  basis of invalidity for obviousness. *Id*. The mandate issued on August 9, 2011.[3] Mandate, ECF No.
2  4045.

3         On September 21, 2012, after briefing and oral argument on remand, this court issued FFCL
4  determining that Rambus in fact had spoliated documents in bad faith. *Hynix III*, 897 F. Supp. 2d at
5  944-45. The court declined to impose terminating sanctions as requested by SK hynix but instead
6  concluded that the most appropriate sanction was to strike from the record all evidence supporting a
7  royalty in excess of a "reasonable and non-discriminatory royalty"; the court emphasized that any
8  royalty on the patents-in-suit must insure that SK hynix would not be "not put at a competitive
9  disadvantage in the marketplace." *Id*. at 986. In reaching this conclusion, the court relied in part
10 upon the fact "that Rambus's patents otherwise are valid." *Id*. SK hynix now seeks summary
11 judgment under two different collateral estoppel theories and alternatively requests a new trial or a
12 stay, while Rambus seeks modification of the FFCL. The court addresses the parties' motions before
13 turning to the question of the appropriate sanction for Rambus's spoliation of evidence.

**II.**

14

**SK HYNIX'S MOTION FOR SUMMARY JUDGMENT BASED UPON ASSERTED
COLLATERAL ESTOPPEL EFFECT OF THE DELAWARE COURT'S DECISION**

15

16

17        A motion for summary judgment should be granted if "there is no genuine dispute as to any
18 material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see*
19 *also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A summary judgment motion
20 may be brought on the basis of collateral estoppel. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441
21 (9th Cir. 1990).

22        "In the patent infringement context, the legal standard for determining whether a patentee is
23 collaterally estopped from asserting its alleged patent right was established by the Supreme Court in
24 *Blonder-Tongue*."[4] *Pharmacia & Upjohn Co. v. Mylan Pharms, Inc.*, 170 F.3d 1373, 1379 (Fed. Cir.
25 1999). *Blonder-Tongue* established that a judgment of invalidity in one case may collaterally estop

26

_____

27        [3]      The mandate was filed in this court on August 15, 2011.

28        [4]      *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971).

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1 the patent owner from contesting invalidity in a subsequent case, as long as the patent owner had a

2 full and fair opportunity to litigate the validity of the patent in the first case. *Blonder-Tongue Labs.,*

3 *Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333-34 (1971).

4       This court has given extensive consideration to the application of *Blonder-Tongue* and its

5 progeny to decisions issued in the parallel *Micron* action pending in the Delaware court.  Following

6 this court's initial determination that Rambus had not spoliated evidence, SK hynix sought summary

7 judgment on the basis of the asserted collateral estoppel effect of the Delaware court's subsequent

8 determination that Rambus had spoliated evidence. *See Hynix Semiconductor Inc. v. Rambus Inc.*,

9 No. C-00-20905 RMW, 2009 WL 292205, at *1 (N.D. Cal. Feb. 3, 2009) ("'09 Coll. Estop. Order").

10 SK hynix characterized its assertion of the collateral estoppel doctrine as "defensive," and argued

11 that application of the doctrine thus was mandatory rather than discretionary.  This court concluded

12 that the terms "defensive" and "offensive" failed to capture the fluidity of the parties' identities as

13 plaintiffs or defendants given the procedural posture of the case. *Id.* at *2.  Moreover, the court

14 noted that "[a]s the Supreme Court has made clear repeatedly, the application of non-mutual issue

15 preclusion requires a careful weighing of the equities." *Id.*  Relying *inter alia* on *Parklane Hosiery*

16 *Co., Inc. v. Shore*, 439 U.S. 322 (1979) and 18A Charles A. Wright, Arthur R. Miller & Edward H.

17 Cooper, *Fed. Prac. & Proc.* §§ 4464-4465.2 (2d ed.2002), the court concluded that application of the

18 collateral estoppel doctrine is discretionary in the present case. *Id.* at *3-6.  The court declined to

19 apply the doctrine in light of its own prior conflicting decision on the issue of spoliation, SK hynix's

20 attempt "to take advantage of its coordinated, dual-front litigation against Rambus to capitalize on

21 Rambus's loss in Delaware," and the fact that efficiency would not be served by permitting SK hynix

22 to displace the results of extensive litigation in this court simply because another district court

23 subsequently reached a contrary result. *Id.*

24       This court revisited the issue of collateral estoppel in its FFCL issued on September 21, 2012.

25 *See Hynix III*, 897 F. Supp. 2d at 972-75.  The court again rejected SK hynix's contention that

26 application of the doctrine is mandatory. *Id*.  However, the court observed that circumstances had

27 changed significantly since its '09 Coll. Estop. Order:

28       This court's finding that Rambus did not spoliate evidence has been vacated, while the

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1
2
3
4

> Delaware court's *Micron I*[5] decision to the contrary has been affirmed. As a result, this court no longer is confronted with two inconsistent decisions. Rather, the slate has been wiped clean in the present action while the spoliation issue has been finally adjudicated in *Micron I*. This court no longer has grounds for questioning whether the *Micron I* determination of spoliation is correct. Most importantly, that spoliation finding has been expressly affirmed by the Federal Circuit. *Micron II*,[6] 645 F.3d at 1325–26.

5 *Id.* at 974. While acknowledging that "[t]he forum selection gamesmanship engaged in by Hynix

6 and Micron is troubling," the court concluded that "the circumstances that now exist persuade the

7 court that preclusive effect should be given to the *Micron I* determination, as affirmed by the Federal

8 Circuit, that Rambus spoliated evidence prior to the second shred day." *Id.*

9       SK hynix's current assertion of the collateral estoppel doctrine is nearly identical to its prior

10 position rejected by this court in its '09 Coll. Estop. Order. SK hynix in essence asks this court to

11 replace its own *Hynix III* decision as to the appropriate sanction for Rambus's spoliation with a

12 subsequent decision of the Delaware court. The court declines to do so for all of the reasons

13 discussed in the '09 Coll. Estop. Order. In particular, the conflict between *Hynix III* and *Micron III*

14 suggests that "the outcomes may have been based on equally reasonable resolutions of doubt as to

15 the probative strength of the evidence or the appropriate application of a legal rule of evidence."

16 *Crawford v. Ranger Ins. Co.*, 653 F.2d 1248, 1252 (9th Cir. 1981) (internal quotation marks and

17 citations omitted). Under such circumstances a district court may, in the exercise of its discretion,

18 decline to apply an asserted collateral estoppel bar that is based upon one of two conflicting

19 decisions. *Id*. The circumstances that led the court to apply the collateral estoppel doctrine

20 following *Hynix II* and *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311 (2011) ("*Micron II*) – that

21 is, the Federal Circuit's vacating of this court's determination that no spoliation had occurred and

22 express affirmance of another court's determination that spoliation in fact had occurred – are not

23 present here.

24       SK hynix argues that this court should apply the collateral estoppel bar so as to avoid

25 inconsistent results, citing *Blonder-Tongue* for the proposition that "[p]ermitting repeated litigation

26 of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of

27
28

---

5       *Micron Tech., Inc. v. Rambus Inc.*, 255 F.R.D. 135 (D. Del. 2009).

6       *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311 (2011).

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1   the gaming table or a lack of discipline and of disinterestedness on the part of the lower courts,

2   hardly a worthy or wise basis for fashioning rules of procedure." *Blonder-Tongue*, 402 U.S. at 329

3   (internal quotation marks and citation omitted).  This argument is unpersuasive where, as here, SK

4   hynix attempts to avoid an earlier decision on the appropriate sanction issued by the forum that SK

5   hynix itself selected (this court), in favor of a later decision issued by another forum (the Delaware

6   court).  If any party is attempting repeated bites of the apple in this litigation, it is SK hynix.

7          Finally, SK hynix asserts that it would be fundamentally unfair to enforce the patents-in-suit

8   against it when the patents are not enforced against the other major competitors in the marketplace.

9   The patents have expired.  Hr'g Tr. of 12/19/2012 at 38, ECF No. 4227.  Thus, all competitors are on

10  a level playing field with respect to use of the patented technology going forward.  The only question

11  is whether SK hynix should be required to pay Rambus some amount in royalties for use of the

12  patented technology during the life of the patents.  SK hynix has not demonstrated that imposing

13  such a requirement would place it at a significant competitive disadvantage.  However, as discussed

14  below, the sanction for Rambus's spoliation should not permit Rambus to obtain royalty payments

15  from SK hynix that exceed a reasonable and non-discriminatory rate commensurate with those paid

16  by SK hynix's competitors.  The *Micron III* court's conclusion that the patents-in-suit are

17  unenforceable against Micron does mean that Micron will be in a more favorable position than others

18  in the industry (assuming that judgment is affirmed).  However, Micron is only one of several

19  competitors; others have paid royalties to Rambus for use of the subject patents.  The fact that SK

20  hynix may be at a disadvantage *vis a vis* Micron does not preclude the appropriateness of the

21  sanction determined here.

22         For all of these reasons, the court in the exercise of its discretion declines to apply the

23  collateral estoppel doctrine to *Hynix III*.  Even if the court were inclined to displace *Hynix III* in

24  favor of *Micron III*, it is not at all clear that the prerequisites for application of the collateral estoppel

25  doctrine are satisfied.  In the Ninth Circuit, the doctrine precludes a party from relitigating an issue

26  if: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue

27  was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom

28  collateral estoppel is asserted was a party to or in privity with a party in the previous action."

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1   *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010).[7]  The question before this court is what

2   sanction should be imposed against Rambus for spoliating evidence *to the prejudice of Hynix*.  The

3   *Micron* action did not afford Rambus an opportunity to litigate the prejudice to Hynix, as Hynix is

4   not a party to that action.  The issue of the appropriate sanction *vis a vis* Hynix was not actually

5   litigated in *Micron III*, in which the Delaware court determined only that the patents-in-suit are

6   unenforceable against *Micron*.  *Micron III*, 2013 WL 227630, at *21.

7          The findings and conclusions reached by the Delaware court differ in significant respects

8   from those reached by this court.  For example, this court found that "the evidence does not show

9   that Rambus knowingly destroyed damaging evidence," *Hynix III*, 897 F. Supp. 2d at 980, while the

10  Delaware court found that "Rambus attempted to destroy evidence that would be unfavorable to its

11  litigation position and to keep other, more favorable evidence," *Micron III*, 2013 WL 227630, at *12.

12  This court found that "[t]here is a possibility that Rambus did not destroy any evidence that would

13  have been beneficial to Hynix's litigation position," but concluded that Rambus must suffer the

14  consequences of that uncertainty because Rambus destroyed so many documents without keeping

15  any record of what was destroyed.  *Hynix III*, 897 F. Supp. 2d at 986.  In contrast, the Delaware court

16  concluded that "[t]he wide range and sheer amount of materials destroyed, along with Rambus's bad

17  faith, make it almost certain that the misconduct interfered with the rightful resolution of the case."

18  *Micron III*, 2013 WL 227630, at *19.  The Delaware court concluded that "Judge Whyte's decision is

19  not binding on this court and, in any case, his findings of fact were different from those in the instant

20  case." *Id.* at *18 n.25.  The issues on which this court and the Delaware court differ – the degree of

21  Rambus's bad faith and the extent of prejudice to the opposing party – go to the heart of the sanction

22  determination.  *See Micron II*, 645 F.3d at 1329 (degree of fault and extent of prejudice are two of

23  the three factors that courts must consider before imposing terminating sanctions).  Application of

24  the collateral estoppel doctrine with respect to the appropriate sanction thus would appear

25

26        [7]      Application of *Blonder-Tongue* is considered to be an issue of patent law that is
27  within the exclusive jurisdiction of the Federal Circuit.  *Pharmacia*, 170 F.3d at 1381 n.4.  However, because application of general collateral estoppel principles is not a matter within the exclusive jurisdiction of the Federal Circuit, it is governed by the law of the regional circuit in which the district court is located.  *TorPharm, Inc. v. Ranbaxy Pharmaceuticals, Inc.*, 336 F.3d 1322, 1327
28  (Fed. Cir. 2003).

1   particularly inappropriate here.

2       Accordingly, SK hynix's motion for summary judgment based upon the asserted collateral

3   estoppel effect of *Micron III* is denied.

4                                              **III.**

5       **SK HYNIX'S MOTION FOR SUMMARY JUDGMENT BASED UPON ASSERTED
        COLLATERAL ESTOPPEL EFFECT OF REEXAMINATION DECISIONS**
6

7       Since January 2012, a number of reexamination decisions have issued with respect to several

8   of the Farmwald/Horowitz patents.  The Patent Trials and Appeals Board[8] ("the Board") has

9   determined that four of the ten claims-in-suit are invalid.  Specifically, the Board has determined that

10  claim 33 of the '120 patent and claim 36 of the '020 patent are invalid based on obviousness, and that

11  claim 28 of the '916 patent and claim 16 of the '863 patent are invalid based upon anticipation.

12  Taylor Decl. Exs. 10, 14, ECF 4169; Supp. Brown Decl. Ex. 46, ECF 4180;  Nissly Decl. Ex. A,

13  ECF 4212.  SK hynix asserts that the Board's determinations entitle it to summary judgment as to

14  those four claims[9] (referred to herein as "the Four Claims") on the basis of collateral estoppel.

15      The other six claims-in-suit were subject to ex-parte reexamination at the request of Hynix or

16  *inter partes* reexaminations at the request of third parties, and they have been found not to be invalid

17  on reexamination.  Those are claims 9 and 40 of the '916 patent, claim 34 of the '105 patent, claims

18  24 and 33 of the '918 patent, and claim 32 of the '020 patent.  SK hynix nonetheless contends that it

19  is entitled to summary judgment as to those six claims (referred to herein as "the Six Claims") on the

20  basis that there are no patentably significant differences between them and *other* Farmwald/Horowitz

21  claims (not tried in this case) that have been rejected on reexamination.

22      Rambus argues that the mandate rule bars reconsideration of patent validity and that, in any

23  ────────────

24      [8]    "Pursuant to the America Invents Act ('AIA') amendments to Title 35, (see Public
        Law 112–29), the Board officially changed its name from the Board of Patent Appeals and
        Interferences to the Patent Trial and Appeal Board on September 16, 2012."  *Flo Healthcare*
25      *Solutions, LLC v. Kappos*, 697 F.3d 1367, 1369 n.1 (Fed. Cir. 2012).

26      [9]    At the time that SK hynix filed its motion for summary judgment, only two of the
        claims-in-suit had been determined to be invalid on reexamination (claim 33 of the '120 patent and
27      claim 28 of the '916 patent).  SK hynix subsequently filed a supplemental memorandum informing
        the court that a third claim had been rejected on reexamination (claim 16 of the '863 patent), and a
28      second supplemental memorandum informing the court that a fourth claim had been rejected on
        reexamination (claim 36 of the  '020 patent).  ECF Nos. 4179, 4212.

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1   event, the application of the collateral estoppel doctrine is not warranted here.

2   **A.      Mandate Rule**

3          "The mandate rule requires that the district court follow an appellate decree as the law of the

4   case." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009).

5   "Unless remanded by [the appellate] court, all issues within the scope of the appealed judgment are

6   deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel*

7   *Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999).  "[T]he mandate rule precludes

8   reconsideration of any issue within the scope of the judgment appealed from – not merely those

9   issues actually raised." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008).

10         This court's judgment encompassed the jury's determination that the patent claims-in-suit are

11  not invalid.  That determination has not been disturbed; in fact, the Federal Circuit expressly

12  affirmed this court's denial of SK hynix's motion for a new trial on the basis of invalidity for

13  obviousness.  *Hynix II*, 645 F.3d at 1341.  Nothing in *Hynix II* suggests that the Federal Circuit

14  intended this court to revisit the issue of validity on remand.  Accordingly, it appears that the remand

15  is limited to issues relating to spoliation.

16         SK hynix argues that the defense of collateral estoppel arising from the Board's 2012

17  decisions was not (and could not have been) within the scope of the 2009 judgment, and thus that the

18  mandate rule does not preclude this court from considering it on remand.  The Federal Circuit

19  rejected a similar argument in *Cardiac Pacemakers*, holding that the mandate rule precluded the

20  district court from considering a new anticipation defense to patent infringement, because the new

21  defense was not "directly related" to the issues that had been remanded.  *Cardiac Pacemakers*, 576

22  F.3d at 1356.  As relevant here, a jury found one of Cardiac's patents to be valid and enforceable, but

23  not infringed by St. Jude.  *Id.* at 1352-53.  The district court subsequently granted St. Jude's motion

24  for judgment as a matter of law on the ground that the patent was invalid for obviousness.  *Id.*  On

25  appeal, the Federal Circuit reinstated the jury's verdict as to validity, concluding that it was supported

26  by substantial evidence in the record.  *Id.*  The Federal Circuit also modified in part the district

27  court's claim construction, vacated the jury's finding of noninfringement, and remanded for a new

28  trial on infringement and damages in light of the modified claim construction.  *Id.*  The court

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1  characterized its remand as "for a new trial on literal infringement of one claim of one patent and for

2  any damages determination." *Id*. at 1354 (internal quotation marks and citation omitted).

3      On remand, the district court permitted St. Jude to assert a new defense of invalidity based

4  upon anticipation; St. Jude prevailed on that defense. The Federal Circuit reversed, holding that the

5  issue of invalidity based upon anticipation was outside the scope of the remand because it was not

6  "directly related" to the modified claim construction. *Id*. at 1356-57. The court noted that "the

7  purpose of the remand was for a new trial of infringement and reassessment of damages." *Id*. at

8  1356 (internal quotation marks and citation omitted).

9      In the present case, the purpose of the remand likewise was limited. The Federal Circuit

10 ordered as follows:

11     The district court's Findings of Fact and Conclusions of Law regarding spoliation are
       vacated, as is the district court's Final Judgment, and the case *is hereby remanded for*
12     *reconsideration of the spoliation issue under the framework set forth in Micron II.*
       The district court's decision on waiver and estoppel, its claim construction order, its
13     order denying Hynix's motion for judgment as a matter of law or for a new trial on the
       basis of written description, and its order denying Hynix's motion for a new trial on
14     the basis of obviousness, are affirmed. This court also affirms the district court's
       grant of Hynix's motion for summary judgment for the claims at issue in Rambus's
15     cross-appeal.

16 *Hynix II*, 645 F.3d at 1355 (emphasis added). SK hynix's new collateral estoppel defense is not

17 directly (or even tangentially) related to the spoliation issue that is the subject of the remand. As

18 noted above, the judgment encompassed the jury's express finding that the claims-in-suit are not

19 invalid, which judgment was affirmed. Applying the rationale of *Cardiac Pacemakers*, it would

20 appear that this court is precluded from considering SK hynix's new collateral estoppel defense on

21 remand.

22     SK hynix relies heavily upon *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573 (Fed. Cir.

23 1994) in urging the court to consider the collateral estoppel defense on remand. In that case,

24 Mendenhall sued three different defendants – Barber-Greene, Astec, and Cedarapids – in three

25 different courts for patent infringement. *Id*. at 1576. The *Barber-Greene* trial resulted in a judgment

26 for Mendenhall, which was appealed to the Federal Circuit. *Id*. at 1577. The *Astec* trial resulted in a

27 judgment for Mendenhall on the issue of liability, which was affirmed by the Federal Circuit

28 following an interlocutory appeal. *Id*. at 1576. While the *Barber-Greene* judgment was on appeal

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

11

1 and while *Astec* remained pending in the district court on the issue of damages, a final judgment of

2 invalidity as to all patent claims-in-suit was entered in *Cedarapids*. *Id*.  Barber-Greene then asserted

3 on appeal that Mendenhall was collaterally estopped from continuing to assert the patents' validity in

4 light of the *Cedarapids* judgment. *Id*. at 1577.  Astec moved in the district court to vacate the

5 liability judgment against it on the basis of collateral estoppel, and it subsequently appealed the

6 district court's denial of that motion to the Federal Circuit. *Id*.  Mendenhall appealed the judgment of

7 invalidity in *Cedarapids*. *Id*.  The Federal Circuit heard the *Barber-Greene*, *Astec*, and *Cedarapids*

8 appeals on the same day but it did not consolidate the appeals. *Id*.  The Federal Circuit affirmed the

9 *Cedarapids* invalidity judgment, and the Supreme Court denied review. *Id*.  The Federal Circuit then

10 consolidated *Barber-Greene* and *Astec* for disposition.

11      The court noted that in the patent context, an accused infringer may avoid liability by

12 asserting collateral estoppel based on a third party's success in proving invalidity, despite the accused

13 infringer's failure to prove invalidity in its own case. *Id*. at 1580.  The court held that "the defense of

14 collateral estoppel based on a final judgment of patent invalidity in another suit can 'be timely made

15 at any stage of the affected proceedings.'" *Id*. at 1579 (quoting *Dana Corp. v. NOK, Inc.*, 882 F.2d

16 505, 507 (Fed. Cir. 1989)).  Because Barber-Greene and Astec had raised the defense as soon as

17 possible following the *Cedarapids* judgment, the court deemed the defense to be timely despite the

18 fact that it was raised for the first time on appeal in *Barber-Greene* and following an interlocutory

19 appeal on the determination of liability in *Astec*. *Id*. at 1580.

20      The Federal Circuit rejected Mendenhall's argument that Astec's liability had been finally

21 established as a result of its affirmance on interlocutory appeal.  Pointing out that the interlocutory

22 appeal did not result in a final judgment, and that courts may reconsider liability absent a final

23 judgment ending the litigation, the Federal Circuit concluded that the judgment on interlocutory

24 appeal merely invoked "concepts of law of the case." *Id*. at 1580-82.  "[T]he law of the case doctrine

25 is a policy not a command even respecting a prior appellate decision in the case." *Id*. at 1582.

26 "Federal courts of appeals have recognized a variety of 'special circumstances' under which they

27 would reconsider their previously-determined law of the case." *Id*.  Examples include intervening

28 changes in applicable authority and circumstances in which failure to reconsider would result in clear

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1    error or manifest injustice. *Id*. The Federal Circuit determined that the *Cedarapids* invalidity

2    judgment presented "exceptional circumstances" warranting departure from prior rulings that Barber-

3    Greene and Astec were liable to Mendenhall. *Id*. at 1583. The court characterized the *Cedarapids*

4    judgment as intervening controlling authority, and suggested that it would be manifestly unjust to

5    uphold the liability determinations against Barber-Greene and Astec "when the rest of the industry is

6    not impeded by the patents." *Id*.

7         *Mendenhall* is not precisely on point, as it does not address the scope of a district court's

8    authority following remand. The issue before this court is not the timeliness of SK hynix's assertion

9    of a collateral estoppel defense, but rather the scope of issues that properly may be considered by this

10   court on remand. *Mendenhall* does address the law of the case doctrine, and some courts have

11   characterized the mandate rule as a "specific application of the general doctrine of law of the case."

12   *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002); *see also Cardiac Pacemakers*, 576

13   F.3d at 1356 ("The mandate rule requires that the district court follow an appellate decree as the law

14   of the case."). Cases apply the same exceptions to both the law of the case doctrine and the mandate

15   rule. *See, e.g.*, *Matthews*, 312 F.3d at 657 ("The mandate rule, however, has the same exceptions as

16   does the general doctrine of law of the case; these exceptions, if present, would permit a district court

17   to exceed our mandate on remand."); *Amado*, 517 F.3d at 1359-60 (considering whether an

18   intervening decision foreclosed application of the mandate rule).

19        Even if it were to conclude that *Mendenhall* is applicable here, the court would not be

20   convinced that revisiting the issue of validity is warranted. SK hynix correctly points out that

21   *Mendenhall* illustrates the Federal Circuit's recognition of a strong policy against enforcing patents

22   that have been determined to be invalid, even when the issue of invalidity is raised late in the

23   litigation proceedings. However, the court also emphasized the finality of the *Cedarapids* judgment,

24   observing that the patents "were determined to be invalid after full and fair litigation," *Mendenhall*,

25   26 F.3d at 1578, and that "we no longer have the situation of applying collateral estoppel based on a

26   judgment that might be reversed," *id*. at 1578 n.5. In the present case, the asserted intervening

27   decisions are not final judgments but rather reexamination rulings that remain subject to review by

28   the Federal Circuit. Moreover, not all of the asserted intervening decisions address the claims-in-suit

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1   – some of them address *other* claims that were not tried in this action. On the particular facts of this

2   case, this court concludes that *Mendenhall* does not authorize departure from the mandate rule and

3   that SK hynix's motion for summary judgment is subject to denial as barred by that rule.

4   **B.     Collateral Estoppel Doctrine**

5          Even if it were to consider SK hynix's motion on the merits, the court would conclude that

6   the collateral estoppel doctrine does not entitle SK hynix to summary judgment.

7          **1.     Four Claims-In-Suit Found To Be Invalid On Reexamination**

8          As is noted above, the Board has determined that the Four Claims are invalid. The parties

9   dispute whether a Board decision on reexamination gives rise to a collateral estoppel defense in civil

10  litigation. In general, preclusion does not lie when the case asserted as the basis for the estoppel

11  applied a less strict legal standard than the case in which the estoppel is invoked. *See, e.g., Clark v.*

12  *Bear Stearns & Co.*, 966 F.2d 1318 (9th Cir. 1992) ("collateral estoppel does not preclude claims

13  that have a different burden of proof than previously decided claims"). "[A] challenger that attacks

14  the validity of patent claims in civil litigation has a statutory burden to prove invalidity by clear and

15  convincing evidence." *In re Baxter Intern., Inc.*, 678 F.3d 1357, 1364 (Fed. Cir. 2012). "In contrast,

16  in PTO reexaminations the standard of proof – a preponderance of the evidence – is substantially

17  lower than in a civil case and there is no presumption of validity in reexamination proceedings." *Id.*

18  (internal quotation marks and citation omitted). Nonetheless, at least one district court has held that

19  the Board's rejection of a patent claim on reexamination may preclude relitigation of the claim's

20  validity in the district court. *See Tan v. Integrated Silicon Solutions, Inc.*, No. C 07-06166 WHA,

21  2008 WL 2340217, at *3-4 (N.D. Cal. June 5, 2008). *Tan* does not acknowledge or discuss the

22  difference in the legal standards governing reexamination and civil actions.

23         The parties also dispute whether the Board decisions rejecting the Four Claims are

24  sufficiently final to invoke the doctrine of collateral estoppel. Those decisions clearly are not final

25  with respect to Micron and Samsung Electronics Co. ("Samsung"), which initiated the *inter partes*

26  reexaminations that led to the subject decisions. "An *inter partes* reexamination is a PTO

27  proceeding permitted under Title 35 prior to the [America Invents Act] amendments . . . by which a

28  third party could challenge the validity of an issued patent." *Flo Healthcare Solutions, LLC v.*

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1    *Kappos*, 697 F.3d 1367, 1370 n.4 (Fed. Cir. 2012).[10]   "Unlike an *ex parte* reexamination proceeding,

2    an *inter partes* reexamination proceeding allows the third-party requester to participate in the

3    reexamination by submitting written comments addressing issues raised in the patent owner's

4    response to an office action, appealing a decision in favor of patentability, and participating as a

5    party to an appeal taken by the patent owner."   *Id*. (quoting *Cooper Techs. Co. v. Dudas*, 536 F.3d

6    1330, 1332 (Fed. Cir. 2008)).   Once the *inter partes* proceeding is final, the third-party requester is

7    precluded from challenging in a later civil action "the invalidity of any claim finally determined to be

8    valid and patentable on any ground which the third-party requester raised or could have raised during

9    the *inter partes* reexamination proceedings."   35 U.S.C. § 315(c) (2011).   However, an *inter partes*

10   reexamination is deemed final for § 315(c) purposes only after exhaustion of all appeals, including

11   appeals to the Federal Circuit.   *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 644 (Fed. Cir.

12   2011).   Micron's and Samsung's appeals have not been exhausted as to the Board's rejections of

13   claim 33 of the '120 patent, claim 36 of the '020 patent, claim 28 of the '916 patent, and claim 16 of

14   the '863 patent.

15          SK hynix points out that it is not a requester in the *inter partes* reexaminations at issue here,

16   and thus asserts that it is not subject to the finality requirement applicable to statutory preclusion

17   under § 315(c).   SK hynix argues that the Board decisions are sufficiently final for SK hynix to assert

18   them as the basis of a *collateral estoppel* challenge in this case, even though they are not sufficiently

19   final for Micron and Samsung to assert them as the basis of a *statutory* preclusion challenge.

20   Rambus contends that it would be absurd if the same Board decisions were considered not final as to

21   Micron and Samsung, who actually participated in the reexamination proceedings, but final as to SK

22   hynix, a stranger to the reexamination proceedings.   The parties have not cited, and the court has not

23   located, any controlling authority on this point.

24          The court would not be particularly concerned with these issues if the Four Claims were the

25   only claims supporting the damages award in this case.   In those circumstances, the court likely

26   would at least stay the instant proceedings pending finality of the Board determinations.   If and when

27

28          [10]      "Effective September 16, 2012, the AIA amendments replaced *inter partes*
     reexaminations with a new *inter partes* review process."   *Flo Healthcare*, 697 F.3d at 1370 n.4.   The
     pre-AIA version of 35 U.S.C. §§ 311-318 governs the *inter partes* reexaminations relevant here.

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1    the Four Claims were cancelled, they would be rendered void *ab initio*. *See Flexiteek Americas, Inc.*

2    *v. PlasTEAK, Inc.*, No. 08-60996-CIV, 2012 WL 5364263, at *9 (S.D. Fla. Sept. 10, 2012). At that

3    point, absent any valid patent claims to support the infringement award, the court likely would grant

4    relief to SK hynix. *See id.* at *11 ("[T]o allow the judgment . . . and the related orders to stand when

5    they are predicated on a nullity would undercut the legislative intent of the reexamination process,

6    that is, remedying erroneously issued patents.").

7         However, the Four Claims are *not* the only claims supporting the damages award. The award

8    also was based on the remaining Six Claims, which have been found not invalid on reexamination.

9    At trial, the jury was asked to award damages with respect to two classes of *product* – SDRAM and

10   DDR SDRAM. *See* Special Verdict, ECF 2053. This approach was agreed to by the parties and was

11   consistent with Rambus's licenses entered into in 2000, which licensed Rambus's entire patent

12   portfolio. *See* Wu Decl. Ex. A (trial transcript) at 1054:15-1055:21, ECF 4194. SK hynix has not

13   pointed to any record evidence suggesting that its trial presentation included a breakdown of

14   damages relating to each individual claim-in-suit. Thus, so long as the Six Claims stand, the

15   damages award is fully supported. *See TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1312

16   (Fed. Cir. 2008) ("Because the damages calculation at trial was not predicated on the infringement of

17   particular claims, and because we have upheld the jury's verdict that all of the accused devices

18   infringe the software claims, we affirm the damages award entered by the district court.").

19   Accordingly, SK hynix cannot prevail on its motion for summary judgment unless it demonstrates

20   not only that the Four Claims are barred, but that the Six Claims are barred as well.

21         **2.    Six Claims-In-Suit Found To Be Not Invalid On Reexamination**

22        SK hynix concedes that the Six Claims have been found to be not invalid on reexamination

23   and that those determinations are now final, because they were either *ex parte* reexaminations

24   brought by SK hynix as to which there is no right of appeal, or were *inter partes* reexaminations

25   requested by third parties who have elected not to pursue their rights of appeal. *See* Mot. for Summ.

26   J. at 4-5, ECF 4164. SK hynix contends that the Six Claims nonetheless are barred by the doctrine of

27   collateral estoppel because the Board has determined that *other* claims of *related* patents are invalid.

28        SK hynix relies heavily upon a decision of the District Court for the Southern District of

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1   Ohio, *Ohio Willow Wood Co. v. ALPS South, LLP*, No. 2:04–cv–1223, 2012 WL 2196083 (S.D.

2   Ohio June 15, 2012).  In that patent infringement case, the defendant raised a collateral estoppel

3   defense after claim construction but before disposition of motions and before trial.  *Id*. at *7.  The

4   defense was based upon a decision of the District Court for the Eastern District of Texas (as affirmed

5   by the Federal Circuit) that invalidated claims of a related patent for obviousness.  *Id*.  The Ohio

6   court concluded that "[c]ollateral estoppel may also operate to bar relitigation of common issues in

7   actions involving different but related patents."  *Id*. at *8.  Citing to a case issued by the Federal

8   Circuit's predecessor court, the Ohio court explained that "the key inquiry in determining the

9   collateral estoppel effect of a previous adjudication is whether specific issues related to a patent's

10  validity have been determined in a prior proceeding."  *Id*. (citing *Westwood Chem., Inc. v. United

11  States*, 525 F.2d 1367, 1372 (Ct. Cl. 1975)).  After conducting a side-by-side comparison of the

12  claims at issue before it and the claims adjudicated in the Texas action, the Ohio court concluded that

13  some but not all of the claims-in-suit before it were subject to a collateral estoppel bar arising from

14  the Texas court's ruling.  *Id*. at *16.

15          SK hynix urges this court to conduct a similar side-by-side comparison of the Six Claims

16  with other Farmwald/Horowitz patent claims that have been found to be invalid on reexamination.

17  David Taylor, SK hynix's expert, provides extensive analysis of the Board's decisions with respect to

18  such other patent claims, explaining in detail why he believes that those decisions establish that the

19  Six Claims are invalid over prior art.  Taylor Decl. Exh. 16 at 26-31, ECF No. 4169.  He focuses

20  primarily on the five industry-standard DRAM features that were addressed extensively at trial –

21  programmable CAS latency, programmable burst length, autoprecharge, dual-edge clocking, and on-

22  chip DLL – and discusses them in conjunction with several prior art references, including the Intel

23  iAPX432 Interconnect Architecture Reference Manual published in 1982 ("iAPX"), Japanese patent

24  publication JP 57-210495 published December 24, 1982 ("Inagaki"), and Great Britain patent

25  publication GB 2 197 553 A published May 18, 1988 ("Lofgren").  *Id*.

26          Were this court in the position of the Ohio district court – that is, addressing the validity of

27  claims-in-suit for the first time in a pre-trial context – it might well conduct the side-by-side

28  comparison urged by SK hynix.  However, the procedural posture of this case is markedly different

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

from the posture of *Ohio Willow Wood*. Here, the doctrine is being raised after a jury trial has determined that an invalidity defense has not been established as to any of the Six Claims; after that jury determination has been affirmed by the Federal Circuit; after reexamination proceedings have resulted in a determination that the Six Claims are not invalid; and after those reexamination proceedings have become final. SK hynix has not cited, and the court has not discovered, any case in which a court applied an *Ohio Willow Wood* analysis under such circumstances.

As is discussed above, this court is not persuaded that SK hynix's collateral estoppel challenge to the validity of the claims-in-suit is within the scope of the Federal Circuit's remand. Under *Mendenhall*, the court arguably may consider – even at this late date – the collateral estoppel effect of reexamination decisions that expressly invalidate one or more of the claims-in-suit. However, it would be quite a leap to say that the court may go so far as to make *new* invalidity determinations based upon reexamination decisions regarding *other* claims. The process envisioned by SK hynix would require this court to engage in a detailed comparison of claim terms, consider of significant prior art, and evaluate expert testimony. The court concludes that the relevant case law simply does not authorize it to undertake such a process given the procedural posture of this case and the language of the Federal Circuit's remand.

Because SK hynix at most has undermined the validity of four of the ten claims-in-suit supporting the jury's damages award, its motion for summary judgment based upon the asserted collateral estoppel effect of reexamination decisions would be denied even if the court were to reach the merits of SK hynix's collateral estoppel argument.

**IV.**

**SK HYNIX'S MOTION FOR A NEW TRIAL OR A STAY**

In the event that the Court declines to grant summary judgment on collateral estoppel grounds, SK hynix alternatively moves for a new trial on validity, damages, and infringement, or for a stay of litigation.

**A.   Validity**

SK hynix asserts that even if the recent reexamination rulings do not entitle it to summary judgment based upon collateral estoppel, they constitute "new evidence" on the question of validity.

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1    SK hynix moves for a new trial pursuant to Federal Rule of Civil Procedure 59, which provides that

2    a party may move for a new trial "no later than 28 days after the entry of judgment." Fed. R. Civ. P.

3    59(b).

4          As an initial matter, Rambus asserts that SK hynix has selected the wrong procedural vehicle

5    for its motion for new trial. According to Rambus, the Rule 59 motion is untimely because judgment

6    was entered more than three years ago. Rambus asserts that SK hynix instead must seek relief under

7    Federal Rule of Civil Procedure 60(b). Rambus's argument is unpersuasive given that the Federal

8    Circuit's *Hynix II* decision vacated this court's judgment. Because there is no judgment in the case,

9    SK hynix's motion is properly considered under Rule 59(a). *See Contempo Metal Furniture Co. v. E.*

10   *Tex. Motor Freight Lines, Inc.*, 661 F.2d 761, 764 n.1 (9th Cir. 1981) (a motion for new trial filed

11   before entry of judgment is timely under Rule 59).

12         Rule 59(a) does not specify the grounds on which a new jury trial may be granted; it provides

13   that a new trial may be granted "for any reason for which a new trial has heretofore been granted in

14   an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(a). A new trial may be ordered on the

15   ground of newly discovered evidence. *Brown v. Wright*, 588 F.2d 708, 709-10 (9th Cir. 1978). A

16   party seeking a new trial on this basis must show that: (1) the evidence was discovered after trial, (2)

17   the exercise of due diligence would not have resulted in the evidence being discovered at an earlier

18   stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would

19   likely have changed the outcome of the case. *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th

20   Cir. 2000); *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990).

21         The parties dispute whether reexamination decisions that were issued after trial may be

22   considered new evidence for purposes of seeking a new trial under Rule 59(a). The Ninth Circuit

23   has held that the evidence must have "existed at the time of the trial." *Jones*, 921 F.2d at 878.

24   Clearly, the subject reexamination decisions did not exist at the time of trial. However, the Federal

25   Circuit has suggested that the Patent and Trademark Office's decisions to withdraw approval of a

26   certificate of correction and order reexamination might warrant a new trial. *See Standard Havens*

27   *Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 515 (Fed. Cir. 1990).

28         Even assuming that the reexamination decisions constitute "new evidence" discovered after

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1  trial for purpose of satisfying the first factor, it is unclear whether SK hynix acted with sufficient

2  diligence to satisfy the second factor.  All of the patents-in-suit issued between June 1999 and

3  September 2002.  As Rambus points out, SK hynix could have filed requests for *ex*

4  *parte* reexamination of any of the patents-in-suit (or any of the related patents) at any time after they

5  issued.  *See* 35 U.S.C. § 302 (2001) ("*Any* person at *any* time may file a request for reexamination by

6  the Office of any claim of a patent on the basis of any prior art cited under the provisions of section

7  301 of this title.") (emphasis added).  Moreover, SK hynix could have filed requests for *inter partes*

8  reexamination with respect to any of the patents-in-suit (or any of the related patents) that issued

9  from applications filed after November 29, 1999.  *See* 35 U.S.C. § 311 (2001)  (effective Nov. 29,

10  1999) ("*Any* person at *any* time may file a request for *inter partes* reexamination by the Office of a

11  patent on the basis of any prior art cited under the provisions of section 301.") (emphasis added).

12  Four of the six patents-in-suit issued from applications filed after November 29, 1999.[11]  However,

13  SK hynix did not file *ex parte* requests with respect to any of the patents-in-suit until *2009*.  SK

14  hynix never filed *inter partes* requests with respect to any of the patents-in-suit.  Given these facts, it

15  seems apparent that had SK hynix been more diligent in pursuing reexamination, this court would

16  not be confronting the impact of adverse reexamination decisions post-trial, post-appeal, and post-

17  remand.  *Cf. Amado*, 517 F.3d at 1363 (affirming the district court's denial of relief under Fed. R.

18  Civ. P. 60(b) on the ground that the newly discovered evidence arose from a patent reexamination

19  that could have been commenced by the moving party at a much earlier date).

20          In response, SK hynix asserts that "the Federal Circuit has held that there is no requirement

21  for an accused infringer to" seek reexamination, and that it is entitled to rely upon reexamination

22  decisions arising from requests filed by Micron and Samsung.  Br. at 2, ECF No. 4236.  This

23  argument is beside the point.  While SK hynix is correct in its statements of the law, *see In re*

24  *Continental Gen. Tire, Inc.*, 81 F.3d 1089, 1093 (Fed. Cir. 1996) (holding that there is no

25  requirement that an accused infringer seek reexamination); *Mendenhall*, 26 F.3d at 1580-81 (a party

26  is entitled to the benefit of an invalidity determination rendered in another proceeding), the cited

27

28          [11]     While the '105 and '918 patents issued from applications filed prior to the statute's
effective date of November 29, 1999, the '120, '020, '916, and '863 patents issued after the effective
date.

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1    legal principles do not speak to the relevant question:  whether SK hynix's exercise of due diligence

2    would have resulted in the subject reexamination decisions being issued at an earlier stage in the

3    proceedings.

4            SK hynix gives a number of explanations for its delay in seeking reexamination of the

5    patents-in-suit, including its view that *ex parte* reexamination is undesirable because the requestor

6    has no right to participate or to appeal; that the initial *inter partes* reexamination procedures did not

7    involve review by a specialized panel; and that reexamination requests filed after Samsung and

8    Micron initiated reexaminations in 2006 and 2008, respectively, would have been futile because

9    Samsung and Micron raised all the relevant prior art and SK hynix would not have been able to

10   present a substantial new question of patentability.  Br. at 4-5, ECF No. 4236.  SK hynix also points

11   out that Rambus initially asserted fifteen patents containing more than 500 claims, and that Rambus

12   did not narrow its claims until January 2005.  *Id.*  While these explanations illuminate SK hynix's

13   strategies in choosing not to seek reexamination until 2009, it is not clear that they demonstrate SK

14   hynix's diligence in pursuing the "new evidence" upon which the motion for new trial is based.

15           Finally, the court is not persuaded that the reexamination decisions would have changed the

16   outcome of this case.  The reexamination decisions finding the Four Claims to be invalid may have

17   been admissible and may have affected the jury's finding of validity with respect to those claims.  *See*

18   *Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561 WHA, 2012 WL 1189898, at *3 (N.D. Cal. Jan. 4,

19   2012) (reexamination determinations are admissible evidence that may be presented to a jury that is

20   considering the validity of a patent).  However, the damages award is fully supported by the other

21   Six Claims, which have been determined to be not invalid on reexamination.  Obviously the

22   reexamination decisions actually addressing the Six Claims would not have changed the outcome of

23   the case.  The question, then, is whether reexamination decisions regarding *different* patent claims

24   would have affected the validity determinations regarding the Six Claims.  The court concludes that

25   this latter category of reexamination decisions likely would have been excluded under Federal Rule

26   of Evidence 403 on the ground that such decisions would be more confusing than helpful.  *See* Fed.

27

28

1   R. Evid. 403[12]; *Belden Tech. Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 569 (D. Del.

2   2011) ("Admitting evidence about the '503 patent's reexamination, the outcome of which is not

3   binding on the court, would have only served to confuse the jury and was ultimately far more

4   prejudicial than probative.").

5           Accordingly, SK hynix's motion for a new trial on the issue of validity is denied.

6   **B.    Damages**

7           In the event that it is entitled to judgment as to some but not all of the claims-in-suit, SK

8   hynix requests that the court grant a new trial on the issue of damages, asserting that "[b]ecause of

9   the way Rambus tried the patent trial, there is no way to determine which portion of the damages

10  awarded by the jury was attributable to which claim." Mot. for New Trial at 12, ECF No. 4166.  SK

11  hynix relies upon *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007), in

12  which the Federal Circuit affirmed the jury's liability finding as to two of three patents-in-suit, and

13  remanded for a new trial on liability with respect to the third patent in light of the district court's

14  erroneous claim construction.  The court noted that the jury verdict of $58,000,000 gave no

15  indication as to which damages were attributable to which patents, and stated that "where the jury

16  rendered a single verdict on damages, without breaking down the damages attributable to each

17  patent, the normal rule would require a new trial as to damages." *Id*. at 1309-10.  Because "[t]he

18  parties ha[d] not briefed whether there is any reason to depart from this general rule," the court

19  remanded the damages issue to the district court as well.  *Id*. at 1310.

20          The present case is distinguishable from *Verizon*, because Rambus has articulated good

21  reasons for departing from the general rule.  As is discussed above, damages were awarded based

22  upon infringement by particular products, not upon infringement of particular patent claims.  SK

23  hynix did not request an instruction giving the jury a method for calculating damages on a claim-by-

24  basis nor did SK hynix argue to the jury that a claim-by-claim method of calculating damages was

25  appropriate or could even be done.  Because each class of products infringes one of the Six Claims

26  _____

27          [12]     Rule 403 provides that "[t]he court may exclude relevant evidence if its probative
        value is substantially outweighed by a danger of one or more of the following: unfair prejudice,
28  confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting
        cumulative evidence." Fed. R. Evid. 403.

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1    that have not been found invalid on reexamination, the damages award is fully supported. *See TiVo,*

2    516 F.3d at 1312.[13]

3    **C.      Infringement**

4           SK hynix asserts that it is entitled to a new trial on infringement in light of the Federal

5    Circuit's construction of the term "memory device" in *In re Rambus, Inc.*, 694 F.3d 42 (Fed. Cir.

6    2012). That decision adjudicated Rambus's appeal of a final Board decision regarding SK hynix's

7    request for *ex parte* reexamination of claims of the '918 patent. The examiner construed the term

8    "memory device" broadly as a "device that allows for the electronic storage and retrieval of

9    information." *Id*. at 44. Under this construction, the examiner found the '918 patent's "memory

10   device" analogous to the memory module disclosed in the iAPX Manual. *Id*. at 44-45. The

11   examiner confirmed claims 24 and 33 (both claims-in-suit in the present case) but rejected claim 18

12   (not a claim-in-suit in the present case) as anticipated by the iAPX Manual. *Id*. at 45. The Board

13   affirmed the examiner's rejection of claim 18. *Id*. at 45-46. On appeal to the Federal Circuit,

14   Rambus argued that the term "memory device" must be construed more narrowly than construed by

15   the Board, in that it must be a single chip device. *Id*. at 46. The Federal Circuit rejected this

16   construction, holding that "we construe a 'memory device' as a component of a memory subsystem,

17   not limited to a single chip, where the device may have a controller that, at least, provides the logic

18   necessary to receive and output specific data, but does not perform the control function of a CPU or

19   bus controller." *Id*. at 50. The court emphasized that, "[i]n sum, 'memory device' is a broad term

20   which has been used consistently in the '918 patent and in the family of patents related to it to

21   encompass a device having one or more chips." *Id*. at 48.

22          In the present case, the parties stipulated to a definition of "memory device" as "an integrated

23   circuit device in which information can be stored and retrieved electronically." "Integrated circuit

24

25          [13]      Rambus argues that in any event, SK hynix has waived a challenge to the damages
     award, citing SK hynix's failure to request a reduction in damages when it moved for a new trial and
26   judgment as a matter of law on invalidity. *See Energy Transp. Grp., Inc. v. William Demand
     Holdings A/S*, 697 F.3d 1342, 1357 (Fed. Cir. 2012) (holding that the defendants waived any
27   argument for reduction in damages when they failed to request such a reduction in the event that the
     district court granted their motion for judgment as a matter of law that one of the patents-in-suit was
28   not infringed). The court need not reach the issue of waiver given its disposition of the motion for
     new trial on other grounds.

1  device," in turn, was construed by this court as "a circuit constructed on a single monolithic

2  substrate, commonly called a 'chip.'"  SK hynix contends that because the jury was instructed with

3  these constructions, which have now been rejected by the Federal Circuit, SK hynix is entitled to a

4  new trial in which the jury is given the correct construction for "memory device."

5        The Federal Circuit expressly affirmed this court's claim construction.  *Hynix II*, 645 F.3d at

6  1355.  Thus, further litigation of claim construction issues would appear to be barred by the mandate

7  rule.  However, even if *In re Rambus* is considered to be an intervening decision warranting

8  departure from the mandate rule, SK hynix has not demonstrated that the alleged error in the jury

9  instructions prejudiced it at trial.  *See Bettcher*, 661 F.3d at 638 ("[A] jury verdict generally will not

10 be set aside, on motion for judgment as a matter of law or new trial, based on erroneous instructions

11 unless the movant can establish that the instructions were legally erroneous and that the errors had a

12 prejudicial effect.").  In the same reexamination that gave rise to *In re Rambus*, the examiner

13 confirmed both of the '918 claims that were tried in the present case, claims 24 and 33, each of which

14 contains the "memory device" limitation.  SK hynix has not articulated how the Federal Circuit's

15 post-trial construction of "memory device" would have changed the outcome of the trial in the

16 present case.  SK hynix argues generally that "[t]he Court's erroneous jury instruction prejudiced

17 Hynix because it affected the jury's consideration of a key piece of prior art – the iAPX Manual –

18 'which contains several chips.'"  Reply at 32, ECF No. 4200 (quoting *In re Rambus*, 694 at 50).  The

19 court concludes that this speculation is insufficient to meet SK hynix's burden on a motion for new

20 trial.[14]

21 **D.    Stay**

22        In the alternative to its motion for new trial, SK hynix requests that this court stay the

23 litigation pending final disposition of the relevant reexamination proceedings.  A district court has

24 discretion to grant or request a stay pending the outcome of reexamination proceedings.  *See Viskase*

25

26        [14]    SK hynix cites *Medtronic, Inc. v. White*, 526 F.3d 487 (9th Cir. 2008) for the
   proposition that prejudice is presumed where an erroneous jury instruction is used.  The cited Ninth
27 Circuit case is not controlling here, as the Federal Circuit has held that:  "The legal sufficiency of
   jury instructions on an issue of patent law is a question of Federal Circuit law which this court
28 reviews *de novo*, ordering a new trial on that basis only when errors in the instructions as a whole
   clearly misled the jury."  *Bettcher*, 661 F.3d at 638.

1  *Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1327-28 (Fed. Cir. 2001).  Because reexamination

2  proceedings of the Six Claims are final, and because the Six Claims standing alone are sufficient to

3  support the damages award for infringement, the motion for stay is denied.

**V.**

**SK HYNIX'S MOTION TO FILE SUPPLEMENTAL REPLY**

6       SK hynix seeks leave to supplement its reply to Rambus's amended counterclaim in order to

7  add a defense of collateral estoppel.  Given the court's disposition of SK hynix's arguments based

8  upon collateral estoppel, permitting the requested amendment would be futile.  Accordingly, this

9  motion is denied.

**VI.**

**RAMBUS'S MOTION TO AMEND FFCL**

12      In its FFCL issued September 21, 2012, the court concluded that SK hynix's "destruction of

13  documents during Shred Days 1998, 1999 and 2000 constituted spoliation."  *Hynix III*, 897 F. Supp.

14  2d at 975.  Rambus seeks to amend the FFCL to omit the conclusion that Shred Day 2000, which

15  was scheduled in connection with Rambus's office move in December 2000, resulted in spoliation.

16  Rambus asserts that this court and the *Micron* courts have found that Rambus instituted a litigation

17  hold in December 1999, and that a determination that Rambus spoliated documents in December

18  2000 is inconsistent with those findings.  Rambus requests that the court amend its FFCL pursuant to

19  Federal Rule of Civil Procedure 52(b) to reflect that Shred Day 2000 did not result in spoliation of

20  evidence.

21      There is no dispute that Rambus put a litigation hold in place in connection with the *Hitachi*

22  litigation.  *See Micron II*, 645 F.3d at 1318; *Micron Tech. Inc. v. Rambus Inc.*, 255 F.R.D. 135, 146

23  n.55 (D. Del. 2009).  This court expressly found that Rambus instituted a litigation hold in December

24  1999, prior to suing Hitachi in January 2000.  *Hynix III*, 897 F. Supp. 2d at 964.  The court found

25  that in December 1999, Steinberg (Rambus's counsel) and Karp (Rambus's vice-president in charge

26  of intellectual property) "identified Rambus personnel who were likely to have relevant documents

27  and told them to retain all such documents."  *Id.*  "Lawyers from Gray Cary, after the firm was

28  retained in connection with the *Hitachi* litigation, also instructed dozens of Rambus employees that

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1  they needed to preserve all documents that could be relevant to the litigation." *Id*.

2      There is no direct evidence that the litigation hold was withdrawn.  However, the court found

3  that Rambus resumed destroying documents following the settlement of the Hitachi litigation in June

4  2000.  *Id*. at 964.  The court noted that on the same day that the Hitachi litigation settled, Rambus's

5  outside patent prosecution counsel, Vincent, resumed purging his patent files.  *Id*.  Rambus also gave

6  notice to SK hynix (Hyundai) of its alleged infringement.  *Id*.  In July 2000, Steinberg sent an email

7  to Rambus executives reminding them to destroy drafts and materials used during contract

8  negotiations.  *Id*.  In December 2000, Rambus held a third company shred day during which Rambus

9  employees destroyed 410 bags (the equivalent of 300–400 boxes) of documents.  *Id*. at 965.

10  Rambus's motion to amend the court's September 21, 2012 FFCL seeks "to clarify that spoliation has

11  not been shown with respect to Rambus's December 2000 office move, and to remove all references

12  in the Opinion to the office move as 'Shred Day 2000.'" Rambus's Mot. to Amend FFCL at 1, ECF

13  No. 4174.

14      Although the court made some findings of fact in its FFCL issued September 21, 2012 with

15  respect to the destruction of documents at the time of Rambus's office move in December 2000, it

16  did not focus on whether that destruction involved spoliation.  The purging by Vincent and

17  instruction from Steinberg reminding Rambus executives to destroy draft materials used in contract

18  negotiations do not, under the circumstances shown, justify a conclusion that Rambus spoliated

19  documents after the *Hitachi* litigation hold went into effect.  Vincent was not Rambus's counsel for

20  the litigation and apparently resumed purging his patent files on his own initiative.  *See Hynix III*,

21  897 F. Supp. 2d at 964.  Rambus negated any prejudice to SK hynix resulting from any alleged loss

22  of documents pertaining to contract negotiations between Rambus and SK hynix by producing or

23  logging as privileged numerous internal communications. *See Hynix I,* 591 F.Supp. 2d at 1064;

24  *Hynix III*, 897 F. Supp. 2d at 967-68 (Finding Nos. 138-42).  The fact that Rambus had these

25  documents also suggests that the litigation hold remained in effect.

26      "Rule 52(b) motions are appropriately granted in order to correct manifest errors of law or

27  fact or to address newly discovered evidence or controlling case law."  *Ollier v. Sweetwater Union*

28  *High School Dist.*, 858 F. Supp. 2d 1093, 1117 (S.D. Cal. 2012).  Rambus has demonstrated that the

court erred in concluding in *Hynix III* that Rambus's December 2000 shredding of documents constituted spoliation.  Thus the court amends its September 2012 FFCL under Rule 52(b) to correct a manifest error.  The court reaffirms its conclusion reached in *Hynix I* on the question of whether Rambus spoliated evidence in connection with its December 2000 office move:

> Rambus did shred additional records when it moved its offices in December 2000. Hynix initiated the instant lawsuit against Rambus on August 29, 2000.  Therefore, Rambus was engaged in litigation at the time of its move and attendant disposal of documents.  This raises the question of whether the third shredding event constituted spoliation.  The evidence presented by Hynix did not demonstrate that any documents material to Rambus's patent claims were destroyed in conjunction with the 2000 move.  At best, Hynix speculated that internal documents relating to the 1998 negotiations between Rambus and Hynix over the "Other DRAM" provision or the Hynix-LGS post-merger license had been destroyed to the extent those documents survived the shred days in 1998 and 1999.  Rambus has negated that speculation by producing or logging as privileged numerous internal communications regarding these topics.

*Hynix I*, 591 F. Supp. 2d at 1064.  The court amends the following passage in its FFCL dated September 21, 2012 as follows:

> Application of the collateral estoppel doctrine establishes that litigation was reasonably foreseeable prior to Shred Day 1999, and thus that destruction of documents during Shred Day 1999 ~~and thereafter~~ constituted spoliation.  After reconsidering the record in this case under the framework set forth in *Micron II*, this court concludes that in fact litigation was reasonably foreseeable prior to Shred Day 1998, and thus that destruction of documents during Shred Days 1998~~,~~ [and] 1999 ~~and 2000~~ constituted spoliation.

*Hynix III*, 897 F. Supp. 2d at 975 (as amended herein).

# VII.

## SANCTIONS FOR RAMBUS'S SPOLIATION OF EVIDENCE

**A.     Standard for Determining an Appropriate Sanction**

The court's ultimate task is to determine the sanction to be imposed for Rambus's spoliation. As noted in its FFCL issued on September 21, 2012, the court has wide discretion to fashion an appropriate sanction.  *See Hynix III*, 897 F. Supp. 2d at 984; *see also Aptix Corp. v. Quickturn Design Systems, Inc.*, 269 F.3d 1369, 1378 (Fed. Cir. 2001) (discussing limits on a court's authority to declare a patent unenforceable and holding that, "[w]ithin the limits discussed above, courts are free to sanction bad faith conduct that arises during the course of litigation."); *Herson v. City of Richmond*, No. C 09–02516 PJH (LB), 2011 WL 3516162, at *4 (N.D.Cal. 2011) (listing possible

1  sanctions for spoliation of evidence, including monetary sanctions, adverse inference, exclusion of

2  evidence, and dismissal of claim).  The three main factors to be weighed in determining an

3  appropriate sanction in this case are:  (1) the degree of fault of Rambus; (2) the degree of prejudice

4  suffered by SK hynix; and (3) whether there is a lesser sanction than dismissal that will address the

5  prejudice to SK hynix and will deter similar conduct in the future by Rambus and others.  *See*

6  *Micron II*, 645 F.3d at 1329.

7         **1.      Degree of Fault of Rambus**

8         Rambus willfully destroyed large volumes of documents when litigation was reasonably

9  foreseeable.  *Hynix III*, 897 F. Supp. 2d at 985.  It kept no records of what it destroyed.  *Id.*  Although

10  the evidence does not establish that it deliberately singled out particular damaging documents for

11  destruction, Rambus's conduct makes it impossible to tell what evidence was lost, and Rambus must

12  suffer the consequences of that uncertainty.  *Id.*; *see also Anderson v. Cryovac, Inc.*, 862 F.2d 910,

13  925 (1st Cir. 1988) ("As between guilty and innocent parties, the difficulties created by the absence

14  of evidence should fall squarely upon the former.").

15         **2.      Degree of Prejudice Suffered by SK hynix**

16         The evidence does not show that SK hynix was prejudiced in its assertion of invalidity

17  defenses.  *See Hynix III*, 897 F. Supp. 2d at 982.  However, as a result of Rambus's destruction of

18  documents related to the Joint Electron Device Engineering Council ("JEDEC"), Hynix is presumed

19  to have been prejudiced in its ability to litigate its equitable claims and defenses.  *Id*. at 984.  Had

20  Rambus disclosed its intent to obtain patent coverage of the standard then being considered at

21  JEDEC, it most likely would have been required to license its technology at a fair, reasonable and

22  non-discriminatory ("FRAND" or "RAND") royalty rate.[15]

23         **a.      FRAND**

24         Members of standard setting organizations who hold intellectual property rights in

25  standard-essential intellectual property often are required to license that technology to "all comers on

26  terms that are reasonable and nondiscriminatory, or RAND." *Microsoft Corp. v. Motorola, Inc.*, 696

27  _____

28         [15]      The terms FRAND (fair, reasonable and non-discriminatory) and RAND (reasonable and non-discriminatory) are used interchangeably herein.

1    F.3d 872, 876 (9th Cir. 2012) (internal quotation marks and citation omitted).  While standards

2    provide many benefits to technology consumers, such as interoperability, lower product costs, and

3    increased price competition, "[t]he catch with standards is that it may be necessary to use patented

4    technology in order to practice them."  *Id*. (internal quotation marks and citation omitted).  Once

5    compliance with a particular standard is effectively required to compete in a particular market, the

6    patentee gains disproportionate bargaining power and may "extract unreasonably high royalties from

7    suppliers of standard-compliant products and services."  *Id*.  Requiring that the patent be licensed to

8    all on FRAND terms prevents this type of patent "hold-up."  *Apple, Inc. v. Motorola, Inc.*, 869 F.

9    Supp. 2d 901, 913 (N.D. Ill. 2012).

10       "The proper method of computing a FRAND royalty starts with what the cost to the licensee

11   would have been of obtaining, just before the patented invention was declared essential to

12   compliance with the industry standard, a license for the function performed by the patent."  *Id*.  "The

13   purpose of the FRAND requirements . . . is to confine the patentee's royalty demand to the value

14   conferred by the patent itself as distinct from the additional value – the hold-up value – conferred by

15   the patent's being designated as standard-essential."  *Id*.  When determining a FRAND rate, "the

16   court must employ a methodology which in some way reconstructs the negotiation that would have

17   taken place" between the parties prior to the date on which the patented invention was adopted as

18   part of the industry standard.  *Microsoft Corp. v. Motorola, Inc*, 2012 WL 5248439, at *11 (W.D.

19   Wash. Oct. 22, 2012).

20       The parties have presented evidence as to what SK hynix would have had to pay for a license

21   for Rambus's technology in the 1995-96 time frame, when JEDEC was considering adoption of a

22   standard for DDR SDRAM.  Both sides rely upon expert opinion analyzing *inter alia* licensing

23   agreements for "Other DRAM" products and RDRAM products from the 1995-96 time frame.[16]

24   _____

25       [16]     SK hynix objects to the declaration of Rambus's expert, Brian Hammer ("Hammer")
     on the grounds that Rambus failed to:  provide SK hynix with a written report as required under
26   Federal Rule of Civil Procedure 26(a)(2)(B); make Hammer available for deposition as required
     under Federal Rule of Civil Procedure 26(a)(4); qualify Hammer as an expert witness in this case as
27   required under Federal Rule of Evidence 702; and provide SK hynix an opportunity to cross-examine
     Hammer.  SK hynix also asserts that Rambus improperly permitted Hammer to review documents
28   designated as "Special Confidential" or "Confidential – Outside Counsel Only."  In response,
     Rambus points out that SK hynix did not provide a written report in connection with the October

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1    That evidence would have been useful in determining an appropriate FRAND rate as of the 1995-96

2    time frame.  A true FRAND analysis would have been based on then available evidence with the

3    goal of having a fair royalty rate that would be non-discriminatory in the marketplace.  Here,

4    however, in order to determine a fair, non-discriminatory rate, the rates negotiated with SK hynix's

5    competitors after Rambus's misconduct was disclosed must be considered.  That is why the court in

6    its September 2012 FFCL requested information about the licenses SK hynix's competitors obtained.

7    If a FRAND rate were determined as of the 1995-96 timeframe and that rate were applied to SK

8    hynix's sales during the relevant period, SK hynix would suffer significant prejudice by having to pay

9    a non-competitive rate.  Therefore, to maintain the goal of a FRAND rate in this case, the rates

10   actually paid by SK hynix's competitors must be considered.

11          **b.      Royalty Rates Paid by SK hynix's Competitors**

12          When it initially concluded that "the sanction most commensurate with Rambus's conduct . . .

13   is to strike from the record evidence supporting a royalty in excess of a reasonable,

14   non-discriminatory royalty," *Hynix III*, 897 F. Supp. 2d at 986-87, the court believed that imposition

15   of a FRAND rate modified to take into account what SK hynix's competitors paid during the relevant

16   period would carry out its intention of placing SK hynix on essentially equal footing with its

17   competitors, *see id.* ("Rambus's spoliation of evidence should preclude it from entitlement to a

18   royalty that places Hynix at a competitive disadvantage").  However, review of the parties' briefing

19   and the authorities discussed above has persuaded the court that trying to fashion an after-the-fact

20   evidentiary exclusion is not the most appropriate mechanism by which to sanction Rambus.  The

21   court now concludes that a monetary sanction that takes into account the royalty rates negotiated and

22   paid by SK hynix's primary competitors is a more appropriate and straightforward way to mitigate

23   the prejudice to SK hynix caused by Rambus's spoliation.  Those competitors are Samsung, Infineon

24

25
_____

26   2012 declaration of its expert, Roy Weinstein ("Weinstein"), and did not provide Rambus with an
     opportunity to cross-examine Weinstein.  Thus, Rambus asserts that if Hammer's declaration is
27   subject to exclusion, Weinstein's declaration likewise is subject to exclusion.  The court has relied
     upon only some of the figures provided by the experts and those figures do not appear to be disputed;
28   as to those figures, the objections are overruled.  *See Beech Aircraft Corp. v. United States*, 51 F.3d
     834, 842 (9th Cir. 1995) (district courts have broad discretion to admit or exclude expert testimony).

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1  Technologies ("Infineon"),[17] and Elpida Memory, Inc. ("Elpida").[18]

2          The royalty rates negotiated and paid by Samsung, Infineon, and Elpida have been submitted

3  under seal and are not recited here.  *See* Weinstein Decl. ¶ 11, ECF No. 4208.  It appears that none of

4  the licensees paid the negotiated royalty rates for long; instead, they paid "effective royalty rates" or

5  "ERRs."  *Id*.  ERRs "are calculated by comparing payments made to the licensor with a licensee's

6  actual revenues over a particular period of time."  *Id*. at ¶ 12.  The ERRs of  Samsung, Elpida, and

7  Infineon fall into a very narrow range that is quite a bit lower than the negotiated rates and the 2.5%

8  "Other DRAM" rate urged by Rambus under a FRAND analysis.  *Id*. at  ¶¶ 21, 36, and 45.  SK hynix

9  requests that the court apply one of the ERRs, or an average ERR, to its total sales of SDRAM and

10  DDR SDRAM products during the agreed-upon damages period (June 23, 2000 through the

11  expiration of the patents-in-suit on April 18, 2010).  During that time frame, SK hynix generated

12  approximately $11.267 billion in net sales of SDRAM and DDR SDRAM in the United States.  *Id*. at

13  Ex. 13.

14          Rambus objects to the court's consideration of the ERRs of SK hynix's competitors on the

15  ground that those rates were reached after litigation, citing *LaserDynamics, Inc. v. Quanta*

16  *Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012).  *LaserDynamics* addressed issues raised on appeal in a

17  patent infringement case after the trial court had entered judgment on a jury verdict awarding the

18  patentee $8.5 million in damages.  The court concluded that the trial court had erred in permitting

19  evidence of a license that LaserDynamics had entered into with a third party as part of a settlement

20  reached on the eve of trial after the third party had been repeatedly sanctioned.  *Id*. at 77.  The court

21  noted "the longstanding disapproval of relying on settlement agreements to establish reasonable

22

23  ────────────────

24  [17]          Rambus's license to Infineon was assigned to Infineon's successor DRAM
manufacturer, Qimonda AG, in 2006.  Weinstein Decl. ¶¶ 14-15, ECF No. 4208.  Qimonda declared
bankruptcy in April 2009, and subsequently was liquidated.  *Id*. at ¶ 17.  For ease of reference,
25  Infineon and Qimonda will be referred to collectively as "Infineon" herein.

26  [18]          The rate paid by Micron could be considered to be 0% and used as a factor in
determining an appropriate sanction.  The court hesitates to consider this 0% "rate," as it resulted
27  from the *Micron* court's declaration of unenforceability and not from any negotiation between
Rambus and Micron.  As discussed below, the court concludes that the high end of the range paid by
28  SK hynix's competitors provides the most appropriate guideline for a sanction in this case.
Accordingly, inclusion of a 0% "rate" would not affect the court's analysis.

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

1  royalty damages," and concluded that there was no basis for departing from the normal rule that

2  "license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a

3  reasonable royalty." *Id*.  The court distinguished *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860

4  (Fed. Cir. 2010), in which a license that arose out of litigation was determined to be the most reliable

5  evidence of a reasonable royalty. *Id*.  Rambus's objection to consideration of the royalties paid by

6  Samsung, Elpida and Infineon might well have merit if the court were attempting to calculate a

7  FRAND rate in connection with a *damages* award for patent infringement.  However, as discussed

8  herein, the court's task is to determine an appropriate *sanction* for Rambus's misconduct that

9  mitigates the prejudice to SK hynix.  The ERRs of SK hynix's competitors, which were influenced at

10 least in part by the same spoliation of evidence at issue here, would seem, in the unique

11 circumstances here, to be relevant.

12       The court acknowledges the parties' assertions that a number of other considerations should

13 play into the calculation of an appropriate royalty rate.  For example, SK hynix argues that the ERRs

14 paid by its competitors included consideration for more than just licenses, and that JEDEC may have

15 selected a different standard if Rambus had disclosed its intentions.  Rambus, on the other hand,

16 contends that other licensing factors should be considered, such as the benefit to SK hynix of delayed

17 payment, that it gave SK hynix volume discounts on RDRAM to incentivize SK hynix to push

18 RDRAM into the mainstream market, that it anticipated co-development agreements with its

19 RDRAM licensees, and that both Rambus and SK hynix had a preference for a world-wide license as

20 opposed to one limited to United States sales.  Although these factors, among others, make it

21 difficult to estimate the prejudice to SK hynix from Rambus's spoliation with any precision, the court

22 nevertheless concludes that a royalty rate that does not place SK hynix at a competitive disadvantage

23 *vis a vis* its competitors must be the primary consideration in determining an appropriate sanction.

24 The estimate serves as a guideline only; the court is not attempting to calculate damages from SK

25 hynix's infringement of Rambus's patents, but rather to fashion an appropriate sanction for Rambus's

26 spoliation.

27

28

1     **3.     Is there a Sanction Less Severe than Dismissal that Adequately Sanctions
            Rambus for its Spoliation**

2

3        As previously noted, dismissal as a sanction is reserved for particularly egregious situations;

4   the presence of bad faith and prejudice, without more, do not justify the imposition of a dispositive

5   sanction. *Micron II*, 645 F.3d at 1328-29.  This court does not believe that Rambus's conduct was so

6   egregious as to call for dismissal. *See Hynix III*, 897 F. Supp. 2d 986-87.

7   **B.     Conclusion**

8        Imposition of a monetary sanction is an imprecise, imperfect process.  After considering all

9   of the evidence and argument submitted by the parties, and the relevant authorities, the court

10  concludes that a monetary sanction of $250,000,000 to be applied as a credit against Rambus's

11  judgment against SK hynix recognizes that Rambus's conduct was inexcusable but not so egregious

12  as to justify dismissal of its infringement case.  This sanction applies a royalty rate of between .80%

13  and .85% to Rambus's total United States sales.  Although slightly in excess of what SK hynix's

14  major competitors paid, this rate is not so great as to put SK hynix at a significant competitive

15  disadvantage.[19]  It also takes into account that the rates actually negotiated with SK hynix's

16  competitors were higher than the ERRs for reasons that are not clear.  The amount of the sanction is

17  severe and would be excessive if such amount were not necessary to mitigate the presumed prejudice

18  resulting to SK hynix from Rambus's spoliation.[20]  It also strikes the appropriate balance between

19  acknowledging that the majority of Rambus's patents have been determined to be valid and

20  recognizing that Rambus's spoliation of evidence must be redressed in meaningful way.  The

21  sanction will unquestionably deter Rambus and others from engaging in similar conduct in the

22  future.  Finally, from the public's standpoint, imposition of this sanction lays to rest years of

23  complicated and expensive litigation.

24

25      [19]     [REDACTED]

26      [20]     The Federal Trade Commission ("FTC") determined that Rambus should be
    precluded from recovering royalty rates in excess of 0.25% for JEDEC-compliant SDRAM and 0.5%

27  for JEDEC-compliant DDR SDRAM. *Rambus Inc.*, No. 9302, 2007 WL 431522, at *2 (F.T.C. Feb.
    2, 2007), *vacated on other grounds*, *Rambus Inc. v. Fed. Trade Comm'n*, 522 F.3d 456 (D.C. Cir

28  2008).  Although it does not rely upon the now-vacated determination, this court notes that the rates
    imposed by the FTC are similar to the ERRs considered and the rate ultimately settled on herein.

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW

# VIII.

# ORDER

(1)     SK hynix's motions for summary judgment, for a new trial or a stay, and for leave to file a supplemental reply are DENIED;

(2)     Rambus's motion to amend the court's FFCL is GRANTED IN PART;

(3)     As a sanction for Rambus's spoliation of evidence, the court hereby imposes a monetary sanction of $250 million to be applied as a credit against Rambus's judgment against SK hynix; and

(4)     the parties shall submit a proposed form judgment to the court within ten (10) days; if the parties cannot agree as to the form of the judgment, each party shall submit a proposed judgment to the court within ten (10) days.

DATED:  May 8, 2013

*Ronald M. Whyte*
_____
RONALD M. WHYTE
United States District Judge

ORDER (1) DENYING SK HYNIX'S MOTIONS FOR SUMMARY JUDGMENT ETC.
C-00-20905 RMW