Gregory P. Stone (SBN 078329)
Steven M. Perry (SBN 106154)
Fred A. Rowley, Jr. (SBN 192298)
Jeffrey Y. Wu (SBN 248784)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702
Email:  Gregory.Stone@mto.com
Email:  Steven.Perry@mto.com
Email:  Fred.Rowley@mto.com
Email:  Jeffrey.Wu@mto.com

Peter A. Detre (SBN 182619)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077
Email:  Peter.Detre@mto.com

Rollin A. Ransom (SBN 196192)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013-1010
Telephone:    (213) 896-6000
Facsimile:    (213) 896-6600
Email:  rransom@sidley.com

Attorneys for RAMBUS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| SK HYNIX INC., et al.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>RAMBUS INC.,<br><br>                    Defendant. | CASE NO. CV 00-20905 RMW<br><br>**RAMBUS INC.'S BRIEF IN SUPPORT OF ITS PROPOSED JUDGMENT SUBMITTED PURSUANT TO THE COURT'S MAY 8, 2013 ORDER** |

## I.     **INTRODUCTION**

Rambus Inc. ("Rambus") respectfully submits this brief in support of its Proposed Judgment pursuant to the Court's Order of May 8, 2013 (Dkt. 4244) ("May 8 Order").  The ordering paragraph of the May 8 Order stated that:

> As a sanction for Rambus's spoliation of evidence, the court hereby imposes a monetary sanction of $250 million to be applied as a credit against Rambus's judgment against SK hynix.

*Id*. at 34.  As set out in Rambus's previous briefs and as discussed at the December 19, 2012 hearing, Rambus believes that a sanction of this magnitude is unduly severe, unprecedented and not supported by the evidence or the case law.  Without waiving these arguments, Rambus has submitted a proposed judgment that, pursuant to the May 8 Order, credits $250 million against the damages, reasonable royalties, and prejudgment interest previously awarded to Rambus by the terms of the Court's prior Final Judgment.  *See* Rambus's [Proposed] Final Judgment, concurrently submitted ("Rambus's Proposed Judgment"); *see also* Final Judgment, Mar. 10, 2009 (Dkt. 3911) ("2009 Final Judgment").

The SK hynix entities ("SK hynix") take a very different approach.  SK hynix proposes that the Court increase the monetary amount of the sanction by $135 million, from $250 million to $385 million.  The resulting sanction would amount to a 77% reduction of the original judgment, in contravention of both the May 8 Order and the governing case law.  The Court has itself recognized that the $250 million sanction, which cuts in half the compensatory damages and interest due to Rambus, is "severe."  May 8 Order at 33.  SK hynix's proposed approach would exacerbate the already-excessive nature of the Court's $250 million sanction and would raise additional Seventh Amendment issues.

Finally, SK hynix also proposes that the Court dismiss four of the claims-in-suit with prejudice on the basis of PTO reexaminations.  That position is directly contrary to the May 8 Order, which denied SK hynix's motion for summary judgment of invalidity.  May 8 Order at 9-18.

Rambus therefore requests that the Court reject SK hynix's proposal and enter Rambus's proposed judgment forthwith.

1   **II.     THE PROPOSED JUDGMENTS**

2          *Rambus's Proposed Judgment*:  Rambus's Proposed Judgment follows the May 8

3   Order by crediting the $250 million sanction against the damages and prejudgment interest due to

4   Rambus under the 2009 Final Judgment.  That Judgment, which resulted from a jury verdict of

5   $ 306,967,272 and a subsequent remittitur, awarded to Rambus patent infringement damages of

6   $349,035,842 through January 31, 2009.  *See* 2009 Final Judgment at ¶¶ 1-2; May 8 Order at 3.

7   The Court further awarded Rambus ongoing royalties through April 17, 2010.  *See* 2009 Final

8   Judgment at ¶ 7.  SK hynix has subsequently accrued $69,458,127 in ongoing royalties under the

9   terms of the 2009 Final Judgment.  *See* Rambus's Proposed Judgment at ¶ 3.  The sum of

10  compensatory damages due under the 2009 Final Judgment is therefore $418,493,969.  *See*

11  Rambus's Proposed Judgment at ¶¶ 1-3.

12         The 2009 Final Judgment also awarded prejudgment interest to Rambus under a

13  pre-determined methodology.  *See* 2009 Final Judgment at ¶ 4; *see also* Order Regarding

14  Prejudgment Interest, Aug. 30, 2006 (Dkt. 2402).  The prejudgment interest on the $418 million

15  damages award is $84,478,928 as of today's date.  *See* Ex. A to Rambus's Proposed Judgment.[1]

16  The total damages and interest that would be due under the 2009 Final Judgment is therefore

17  $502,972,896 as of today's date.

18         In accordance with the May 8 Order, Rambus's proposed judgment credits $250

19  million against that award, which yields a net damages award, as of May 20, 2013, of

20  $252,972,896.  With adjustments for the various costs that the Court previously awarded to each

21  side, the net judgment as of today's date is $245,607,993.  *See* Rambus's Proposed Judgment at

22  ¶¶ 7-10; *id*. at Ex. A.  That amount is roughly half of what Rambus would have been entitled to if

23  _____

24  [1] The prejudgment interest amount changes daily.  For the Court's convenience, Exhibit A to
    Rambus's Proposed Judgment sets out the amount of prejudgment interest for each day from May
25  20, 2013 through June 14, 2013.  The amount of prejudgment interest also affects the net damages
    award (before adjustments for costs) set forth in Ordering Paragraph 7 of Rambus's Proposed
    Judgment, and the net judgment (after adjustments for costs) set forth in Ordering Paragraph 10
26  of Rambus's Proposed Judgment.  Exhibit A shows the daily amounts of those two figures
    through June 14, 2013 as well.

27  Rambus and Hynix have met and conferred regarding the proper calculation of prejudgment
    interest under the parties' respective proposed judgments, and have agreed that the prejudgment
28  interest reflected herein and in the proposed judgments are correct.

1 | the 2009 Final Judgment were reinstated in full.

2 |       *SK hynix's Proposed Judgment*:  SK hynix's proposed judgment fails completely

3 | to apply a "$250 million … credit against Rambus's judgment against SK hynix," as required by

4 | the May 8 Order.  *See* May 8 Order at 34.  Instead, SK hynix would recalculate damages at

5 | $95,414,034 for the entire infringement period.  With prejudgment interest of $22,253,320, the

6 | total damages award that SK hynix proposes is $117,667,354, which represents a 77% reduction

7 | of the amount due Rambus under the terms of the 2009 Final Judgment.  After adjustments for

8 | costs, the net judgment proposed by SK hynix is $110,302,451.33.

9 | **III.   ARGUMENT**

10 |     **A.   Rambus's Proposed Judgment Implements The Court's $250 Million
Sanction.  SK hynix's Request To Increase The Sanction To $385 Million
Should Be Rejected.**

12 |       As the May 8 Order explains, this patent infringement case has been extensively

13 | litigated over the past 12½ years.  May 8 Order at 3-4.  After lengthy pre-trial proceedings and

14 | three separate phases of trial, this Court entered a Final Judgment on March 10, 2009 in

15 | Rambus's favor.  *Id.*  On May 13, 2011, the Federal Circuit vacated the 2009 Final Judgment with

16 | respect to the Court's finding that Rambus had not engaged in spoliation and remanded for further

17 | proceedings on that issue.  The Final Judgment was otherwise affirmed.  *Id.* at 3, *citing Hynix*

18 | *Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1355 (Fed. Cir. 2011).  *See also* May 8 Order

19 | at 22-23 (rejecting SK hynix's request for a new trial on damages and holding that because the

20 | jury had, without objection by SK hynix, awarded damages based upon infringement by products,

21 | not by patent claim, "the damages award is fully supported.").

22 |       In its September 21, 2012 Order on remand regarding spoliation issues, this Court

23 | concluded that the most appropriate sanction for Rambus's spoliation of evidence was to strike

24 | from the record all evidence supporting a royalty in excess of a "'reasonable and non-

25 | discriminatory royalty.'"  *Id.* at 4, *citing Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp.

26 | 2d 939, 986 (N.D. Cal. 2012).  After further briefing and argument, however, the Court concluded

27 | in its May 8 Order that "trying to fashion an after-the-fact evidentiary exclusion is *not* the most

28 | appropriate mechanism by which to sanction Rambus." *Id.* at 30 (emphasis added).  Instead, the

Court concluded that it should enter a monetary sanction that "takes into account" the rates paid to Rambus by SK hynix's competitors, as "a guideline only," as well as other considerations. *Id.* at 30, 32.[2]  The Court made clear that it "is not attempting to calculate *damages* from SK hynix's infringement of Rambus's patents, but rather to fashion an appropriate *sanction* for Rambus's spoliation." *Id.* (emphasis added).  The Court then concluded that while the "[i]mposition of a monetary sanction is an imprecise, imperfect process," a "monetary sanction of $250,000,000 to be applied as a credit against Rambus's judgment against SK hynix" was appropriate. *Id.* at 33.

Rambus's proposed judgment applies the $250 million credit to the judgment as directed by the Court.  SK hynix, however, is seeking a much larger sanction.  SK is, in effect, proposing an increase of the sanction fixed by the May 8 Order from $250 million to $385 million.[3]

There is no justification for so drastically increasing the sanction against Rambus. The Court has recognized that a $250 million sanction is already "severe" and approaches being "excessive."  May 8 Order at 33.  It is also unprecedented.  During the briefing on remand that led to the Court's decisions on spoliation and the appropriate sanction, no party cited any decision imposing a monetary sanction remotely close to $250 million, and Rambus is aware of none. Indeed, courts have imposed significantly smaller sanctions (i.e., most under $5 million) even where the spoliation was found to be egregious.  *Cf., e.g., United States v. Phillip Morris USA, Inc.*, 327 F. Supp. 2d 21, 25-26 (D.D.C. 2004) ($2.75 million sanction for destruction of emails during litigation in contravention of court order to preserve them); *Bradley v. Sunbeam Corp.*, No. Civ. A. 5:99CV144, 2003 WL 21982038, at *19 (N.D. W. Va., Aug. 4, 2003) (collecting cases with spoliation sanctions ranging from thousands of dollars to $1 million), *reversed on other grounds*, 378 F.3d 373 (4th Cir. 2004).  *See also Willoughby*, Sanctions for E-Discovery

---

[2] The Court acknowledged that various issues Rambus had raised, such as "the benefit to SK hynix of delayed payment" and the distinction between worldwide licenses and licenses limited to U.S. sales, "make it difficult to estimate the prejudice to SK hynix from Rambus's spoliation with any precision . . . ."  May 8 order at 32.  Rambus notes in this regard that SK hynix has promised to appeal the Court's Final Judgment; it will presumably seek to delay any payments for years to come.

[3] If prejudgment interest is ignored, the difference between SK hynix's damages figure of $95 million and the $418 million in damages due under the 2009 Final Judgment would still be $323 million, far in excess of the $250 million sanction fixed by the Court.

1   Violations: By the Numbers, 60 Duke L.J. 789, 814-15 (2010) (surveying federal court monetary

2   sanctions in e-discovery cases and noting that "[t]he awards ranged from $250 to $8,830,983.69,"

3   with only five reported awards over $5 million).

4           SK hynix's proposal to enlarge the sanction to $385 million is clearly excessive.

5   The Federal Circuit requires selection of "'the least onerous sanction corresponding to the

6   willfulness of the destructive act and the prejudice suffered by the victim.'" *Micron Tech., Inc. v.*

7   *Rambus Inc.*, 645 F.3d 1311, 1329 (Fed. Cir. 2011) ("*Micron II*"), citing *Schmid v. Milwaukee*

8   *Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).  The $385 million sanction that SK hynix seeks

9   fails to satisfy this standard, as demonstrated by this Court's finding that a $250 million sanction

10  would "unquestionably deter Rambus and others from engaging in similar conduct" and "strikes

11  the appropriate balance between acknowledging that the majority of Rambus's patents have been

12  determined to be valid and recognizing that Rambus's spoliation of evidence must be redressed in

13  [a] meaningful way."  May 8 Order at 33.

14        **B.**    **Considerations Of Royalty Rates Paid By Other DRAM Manufacturers Do
    Not Justify Increasing The Sanction To $385 Million.**

15
16          During the parties' meet and confer regarding their respective proposed judgments,

    SK hynix explained that its proposed $95 million in pre-interest damages results from a

17  calculation that applies a 0.85% royalty rate to SK hynix's U.S. sales.  The Court's May 8 Order

18  had compared that rate to the royalty rates paid by other DRAM manufacturers.  *See id.*  But

19  neither the royalty rate paid by other DRAM companies, nor the Court's estimate of what it

20  deems an appropriate rate, is the sole determinant of the amount of the spoliation sanction.  As the

21  Court explained, its royalty rate estimate "serves as a guideline only; the court is not attempting to

22  calculate damages from SK hynix's infringement of Rambus's patents, but rather to fashion an

23  appropriate sanction for Rambus's spoliation."  *Id.* at 32.  The sanction that the Court imposed,

24  after considering various factors, is a $250 million credit against the judgment.  *Id.* at 34.

25          SK hynix attempts to increase the amount of the monetary sanctions so that it

26  reflects, in some mechanical fashion, the rates paid in the past by other DRAM manufacturers

27  (including manufacturers who have left the market and are no longer competing with SK hynix

28

1  for DRAM sales).  This approach would recalculate the jury's damages award in contravention of

2  settled Seventh Amendment principles.  "The amount of damages based on a reasonable royalty is

3  an issue of fact for the jury."  *Lucent Tech., Inc. v. Microsoft Corp.*, 837 F. Supp. 2d 1107, 1116

4  (S.D. Cal. 2011), citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003).

5  As a result, a court may not, "'according to its own estimate of the amount of damages which the

6  plaintiff ought to have recovered, … enter an absolute judgment for any other sum than that

7  assessed by the jury.'"  *Hetzel v. Prince William County*, 523 U.S. 208, 211 (1998), citing *Kennon*

8  *v. Gilmer*, 131 U.S. 22 (1889); *accord Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed.

9  Cir. 2008) (reversing judgment where district court reduced jury-awarded damages by weighing

10  evidence regarding royalty rates from different license agreements).

11        Here, the reasonable royalty due to Rambus was determined by a jury, and the

12  amount remitted from that jury verdict formed the basis of the damages specified in the 2009

13  Final Judgment.  SK hynix's request that the Court increase the sanction to $385 million in order

14  to conform Rambus's compensatory damages precisely to a particular view of a "reasonable"

15  royalty rate is a request for a recalculation of damages.  The Court has expressly stated that it is

16  not engaging in such an exercise.  *See* May 8 Order at 30 (explaining that although initially "the

17  court believed that imposition of a FRAND rate modified to take into account what SK hynix's

18  competitors paid during the relevant period would carry out its intention of placing SK hynix on

19  essentially equal footing with its competitors, … review of the parties' briefing and the authorities

20  discussed above has persuaded the court that trying to fashion an after-the-fact evidentiary

21  exclusion is *not* the most appropriate mechanism by which to sanction Rambus") (emphasis

22  added); *id*. at 32 (stating that the Court  was not "attempting to calculate a FRAND rate in

23  connection with a *damages* award for patent infringement").  SK hynix's proposed damages

24  amount should accordingly be rejected.

25        **C.**     **SK hynix Will Not Be Prejudiced By The Court's $250 Million Sanction.**

26        SK hynix cannot claim to be prejudiced by this Court's "severe" $250 million

27  sanction that reduces *in half* the compensatory damages SK hynix owes Rambus for its massive,

28  decade-long infringement of Rambus's valid patents.  SK hynix might argue that a $250 million

1    sanction results in a higher effective royalty rate than the rates paid by some of its competitors.

2    But as noted above, royalty rates are a "guideline only" in the Court's consideration of an

3    appropriate sanction under the *Micron II* framework. *Id*. at 32. In any event, SK hynix is

4    differently situated from the other DRAM manufacturers it cites, and SK hynix has never

5    presented a shred of evidence that a future payment to Rambus of any sum would actually

6    disadvantage SK hynix with respect to its remaining competitors.

7           There is no reason for this Court to presume that prejudice to SK hynix would

8    occur if the Court were to impose "only" a $250 million sanction, for several reasons. *First*, other

9    DRAM manufacturers including Elpida, Samsung, and Infineon paid royalties on a worldwide

10   basis, while SK hynix proposes that it pay royalties only for U.S. sales. Rambus has previously

11   demonstrated that SK hynix would have to pay a much higher effective rate on U.S. net sales for

12   it to have paid an amount comparable to the amount paid on average by other DRAM

13   manufacturers on worldwide sales. Declaration of Brian M. Hammer in Support of Rambus's Br.

14   Regarding the Court's Determination of a RAND Rate Pursuant to Its September 21, 2012 Order,

15   Nov. 13, 2013 (previously submitted under seal), at ¶ 18.

16          *Second*, unlike other DRAM manufacturers who have taken licenses and paid

17   royalties, SK hynix has for thirteen years retained funds that it should have been paying Rambus

18   for the use of its inventions. By withholding from Rambus royalty payments on its infringing

19   products, SK hynix not only deprived Rambus of revenue that Rambus needed and was owed, but

20   SK hynix also gained an advantage over royalty-paying DRAM manufacturers. Using SK

21   hynix's cost of capital as a measure of the economic value of delay, and also taking into account

22   the difference between SK hynix's proposed U.S.-only sales base vis-à-vis the worldwide sales

23   base for royalties paid by other, Rambus has shown that SK hynix would have to pay an effective

24   royalty rate in excess of 2% to be on an economically level playing field with the other DRAM

25   manufacturers. *Id*. at ¶ 19.

26          *Third*, unlike other DRAM manufacturers who took licenses without litigation

27   (e.g., Elpida), or who settled with Rambus before their cases were resolved (Samsung and

28   Infineon), SK hynix is an adjudicated infringer. SK hynix chose to litigate to judgment and

1   assumed the risk that it might have to pay a higher rate than those who did not. "[A] reasonable

2   royalty may permissibly reflect '[t]he fact that an infringer had to be ordered by a court to pay

3   damages, rather than agreeing to a reasonable royalty'." *ResQNet.com, Inc. v. Lansa, Inc.*, 594

4   F.3d 860, 872 (Fed. Cir. 2010) (citation omitted).  Whereas rates from voluntary licenses may

5   reflect some uncertainty regarding infringement and validity, "the removal of some of the

6   uncertainty about infringement or invalidity of the Rambus patents may justify a … higher rate."

7   Order Granting Hynix's Mot. for a New Trial on the Issue of Damages Unless Rambus Elects

8   Remittitur of the Jury Award to $133,584,129, July 14, 2006 (Dkt. 2197), at 4.[4]

9           **D.    The Judgment Must Include All Ten Patent Claims Found Not Invalid And
                    Infringed.**

10          SK hynix argues that four of the claims-in-suit that are subject to pending

11  reexamination proceedings – claim 33 of Patent No. 6,324,120, claim 36 of Patent No. 6,378,020,

12  claim 28 of Patent No. 6,426,916, and claim 16 of Patent No. 6,452,863 – should be dismissed

13  with prejudice.  That position is squarely foreclosed by the Court's May 8 Order, which *denied*

14  SK hynix's motion for summary judgment and found that the mandate rule precludes any

15  redetermination of patent validity on remand.  May 8 Order at 9-18; *see also id.* at 14 ("SK

16  hynix's motion for summary judgment is subject to denial as barred by that rule").  Moreover, as

17  Rambus has shown, SK hynix's summary judgment bid failed on multiple additional grounds,

18  including the non-final status of the reexamination proceedings, the differences in legal standards

19  between PTO and district court proceedings, and discretionary estoppel factors.  *See* Rambus's

20  Consolidated Opposition to Hynix's Motions for Summary Judgment, etc., Nov. 20, 2012 (Dkt.

21  4193), at 13-28.  SK hynix's attempt to circumvent the May 8 Order should be rejected.

22  **IV.    CONCLUSION**

23          The Court has recognized that it is "difficult to estimate the prejudice to SK hynix

24  from Rambus's spoliation with any precision."  May 8 Order at 32.  The above factors amply

25  show that a $250 million sanction—which appears to be by far the largest monetary sanction ever

26

27  [4] Moreover, SK hynix's own defiance of Rambus's patent rights may have exerted downward
    pressure on the rates paid by others who took licenses.  *See ResQNet.com*, 594 F.3d at 872 ("this

28  court has long recognized that a reasonable royalty can be different than a given royalty when, for
    example, widespread infringement artificially depressed past licenses").

imposed for spoliation—will not put SK hynix at any material disadvantage vis-à-vis other DRAM manufacturers.  There is thus no basis to increase the sanction from $250 million to $385 million.  For these and all the foregoing reasons, Rambus respectfully requests that the Court enter the proposed judgment submitted by Rambus and that it reject the proposed judgment submitted by SK hynix.


Dated:  May 20, 2013                         MUNGER, TOLLES & OLSON LLP

                                             SIDLEY AUSTIN LLP


                                             By:              /s/ Gregory P. Stone
                                                           Gregory P. Stone

                                             Attorneys for RAMBUS INC.